**JACKSON LEWIS P.C.**
Joshua A. Sliker, Nevada Bar No. 12493
Joshua.Sliker@jacksonlewis.com
3800 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone:   (702) 921-2460
Facsimile:    (702) 921-2461

**HUESTON HENNIGAN LLP**
John C. Hueston (*pro hac vice forthcoming*)
jhueston@hueston.com
Robert N. Klieger (*pro hac vice forthcoming*)
rklieger@hueston.com
Marshall A. Camp (*pro hac vice forthcoming*)
mcamp@hueston.com
Allison L. Libeu (*pro hac vice forthcoming*)
alibeu@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:    (888) 775-0898

Attorneys for Plaintiff
Tesla, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TESLA, INC., a Delaware corporation, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| MARTIN TRIPP, an individual, | |
| Defendant. | |

COMPLAINT

5336561

**SUMMARY OF DISPUTE**

1. This suit arises from the misconduct of Martin Tripp ("Tripp"), a former employee of Tesla, Inc. ("Tesla") who unlawfully hacked the company's confidential and trade secret information and transferred that information to third parties.

2. Tesla has only begun to understand the full scope of Tripp's illegal activity, but he has thus far admitted to writing software that hacked Tesla's manufacturing operating system ("MOS") and to transferring several gigabytes of Tesla data to outside entities. This includes dozens of confidential photographs and a video of Tesla's manufacturing systems.

3. Beyond the misconduct to which Tripp admitted, he also wrote computer code to periodically export Tesla's data off its network and into the hands of third parties. His hacking software was operating on three separate computer systems of other individuals at Tesla so that the data would be exported even after he left the company and so that those individuals would be falsely implicated as guilty parties.

4. Tripp also made false claims to the media about the information he stole. For example, Tripp claimed that punctured battery cells had been used in certain Model 3 vehicles even though no punctured cells were ever used in vehicles, batteries or otherwise. Tripp also vastly exaggerated the true amount and value of "scrap" material that Tesla generated during the manufacturing process, and falsely claimed that Tesla was delayed in bringing new manufacturing equipment online.

**JURISDICTION AND VENUE**

5. The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Defend Trade Secrets Act, 28 U.S.C. § 1836, *et seq.*, and has supplemental jurisdiction over the remaining claims under 29 U.S.C. § 1367.

6. This Court also has original jurisdiction of this action under 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Tesla, on one hand, and Tripp, on the other, are citizens of different States.

7. This district is the proper venue for this action, as a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## PARTIES

8. Plaintiff Tesla, Inc. is a publicly traded Delaware corporation with its principal place of business in Palo Alto, California.

9. Defendant Martin Tripp is an individual who, on information and belief, resides in Sparks, Nevada.

## BACKGROUND

10. Tripp joined Tesla in October 2017 at the Nevada Gigafactory as a process technician, a job which Tripp later complained was not a sufficiently senior role for him. As part of his job, Tripp had access to highly sensitive information relating to, among other things, certain facets of the manufacturing process for the company's battery modules.

11. Before joining Tesla, and as a condition to his continuing employment, Tripp agreed not to use or disclose Tesla's confidential and proprietary information except in connection with his work with Tesla. This obligation is memorialized in the Employee Proprietary Information and Inventions Agreement that Tripp signed electronically on October 6, 2017 (the "Proprietary Information Agreement"). In addition to his contractual obligations, Tripp owed a duty of undivided loyalty to Tesla under Nevada law and was legally required to act with good faith towards the company.

12. Within a few months of Tripp joining Tesla, his managers identified Tripp as having problems with job performance and at times being disruptive and combative with his colleagues. As a result of these and other issues, on or about May 17, 2018, Tripp was assigned to a new role. Tripp expressed anger that he was reassigned.

13. Thereafter, Tripp retaliated against Tesla by stealing confidential and trade secret information and disclosing it to third parties, and by making false statements intended to harm the company.

14. On June 14 and 15, 2018, Tesla investigators interviewed Tripp regarding his misconduct. After Tripp initially stated that no misconduct had occurred, Tesla investigators confronted him with evidence to the contrary. At that point, Tripp admitted to writing software that hacked Tesla's MOS and to transferring several gigabytes of confidential and proprietary Tesla data

to entities outside the company. This included dozens of photographs and a video of Tesla's manufacturing systems.

15. During the interview, Tripp also admitted that he attempted to recruit additional sources inside the Gigafactory to share confidential Tesla data outside the company.

16. While its investigation is still in the early stages, Tesla has also discovered that Tripp authored hacking software and placed it onto the computer systems of three other individuals at the company so that confidential Tesla data could be persistently exported off its network from these other systems to unknown third parties.

17. Tripp also made false claims about the information he stole from Tesla. Tripp claimed that punctured battery cells had been used in some Model 3 customer vehicles even though the evidence clearly demonstrates that no punctured cells were ever used. Tripp also used the Tesla data that he exported to grossly overstate the true amount and value of "scrap" material that Tesla generated during the manufacturing process, and he falsely claimed that Tesla was delayed in bringing new manufacturing equipment online at the Gigafactory.

18. Although Tesla's investigation is ongoing, it has already suffered significant and continuing damages as a result of Tripp's misconduct, which it seeks to recover through this action.

## FIRST CLAIM FOR RELIEF

**Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.***

19. Tesla realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

20. Tesla owns and possesses certain confidential, proprietary, and trade secret information, as alleged above. This confidential, proprietary, and trade secret information relates to products and services that are used, shipped, sold and/or ordered in, or that are intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce. Tesla vehicles and their components are used worldwide.

21. Tesla derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily

ascertainable through proper means. Tesla has taken, and continues to take, reasonable measures to keep that information secret and confidential.

22. Without Tesla's consent, Tripp misappropriated the confidential, proprietary, and trade secret information in an improper and unlawful manner as alleged herein, and thereby committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

23. The improper means used by Tripp to acquire and disclose Tesla's trade secrets include:

   a. Breaching specific provisions of the Proprietary Information Agreement;
   b. Writing software to hack Tesla's MOS;
   c. Exfiltrating confidential and proprietary data from Tesla's MOS for the purpose of sharing the data with persons outside the company;
   d. Sending third parties a confidential code or "query";
   e. Taking and sharing with third parties dozens of photographs of Tesla's manufacturing systems;
   f. Taking and sharing with third parties a video of Tesla's manufacturing systems; and
   g. Attempting to conceal electronic evidence of his misappropriation and disclosure of trade secrets.

24. As a direct result of Tripp's conduct, Tesla has suffered, and if the conduct is not enjoined, will continue to suffer, harm.

25. Tripp's conduct entitles Tesla to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i).

26. Tesla requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Tripp's computers, personal USB and electronic storage devices, email accounts, "cloud"-based storage accounts, and mobile phone call and message history to determine the extent to which Tesla trade secrets were wrongfully taken and/or disseminated to others.

27. Tripp's misappropriation and disclosure of Tesla's trade secrets entitles Tesla to monetary damages, fees, and costs, as provided in 18 U.S.C. § 1836(b)(3)(B). Tesla is also entitled to recover for Tripp's unjust enrichment.

28. Tripp's misappropriation of Tesla's trade secrets was willful and malicious and was undertaken for the purpose of harming Tesla. Tesla therefore seeks exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(C).

## SECOND CLAIM FOR RELIEF

**Nevada Uniform Trade Secrets Act, Nev. Rev. Stat. §§ 600A.10** *et seq.*

29. Tesla realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

30. As set forth above, Tesla owns and possesses data, compilations, programs, techniques, methods, products, systems, processes, designs, procedures, and computer programming instructions and code that derive independent economic value from not being known generally to, and not being readily ascertainable through proper means by, the public or any other persons who can obtain commercial or economic value from the information. Tesla has made, and continues to make, reasonable efforts to maintain the secrecy of these trade secrets.

31. At all relevant times, Tripp had a duty to maintain the secrecy of Tesla's trade secrets. However, in violation of this duty and Nevada law, Tripp disclosed that information to others, and by doing so misappropriated Tesla's trade secrets. Nev. Rev. Stat. § 600A.030(2).

32. As a direct result of Tripp's conduct, Tesla has suffered, and if the conduct is not enjoined, will continue to suffer, harm. Tesla requests injunctive relief pursuant to Nev. Rev. Stat. § 600A.040.

33. Tripp's conduct entitles Tesla to its damages, as well as Tripp's unjust enrichment, in an amount to be proven at trial. Nev. Rev. Stat. § 600A.050(1).

34. Tesla requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Tripp's computers, personal USB and electronic storage devices, email accounts, "cloud"-based storage accounts, and

mobile phone call and message history to determine the extent to which Tesla trade secrets were wrongfully taken and/or disseminated to others.

35. Tripp's misappropriation of Tesla's trade secret information was willful, wanton, and/or reckless, and Tesla accordingly requests exemplary damages, as well as its attorney's fees. Nev. Rev. Stat. § 600A.050(2); § 600A.060.

### THIRD CLAIM FOR RELIEF

### Breach of Contract

36. Tesla realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

37. Tesla and Tripp are parties to the Proprietary Information Agreement that Tripp signed electronically on October 6, 2017. The contract is governed by California law.

38. Tesla has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Proprietary Information Agreement.

39. Pursuant to Section 1 of the Proprietary Information Agreement, Tripp agreed to "hold in strictest confidence" and "not disclose, use, lecture upon or publish" any of Tesla's Proprietary Information without express authorization.

40. Per the Proprietary Information Agreement, Proprietary Information includes "information relating to products, processes, know-how, designs, formulas, methods, developmental or experimental work, improvements, discoveries, inventions, ideas, source and object codes, data, programs, other works of authorship, and plans for research and development."

41. Despite the express terms of the Proprietary Information Agreement, Tripp breached his contractual obligations to Tesla by, among other things:

    a. Writing software to hack Tesla's MOS;

    b. Divulging confidential and proprietary information, combined with fabricated data and other false information, about Tesla's Model 3 operations at the Gigafactory to third parties;

    c. Transferring confidential and proprietary data from Tesla's MOS to third parties;

      d.     Sending third parties a confidential code or "query";

      e.     Taking and sharing with third parties dozens of photographs of Tesla's manufacturing systems; and

      f.     Taking and sharing with third parties a video of Tesla's manufacturing systems.

42. Through his conduct described herein, Tripp breached his contractual obligations to Tesla.

43. As a direct and proximate result of the foregoing breaches, Tesla has suffered, and will continue to suffer, damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty of Loyalty

44. Tesla realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

45. As an employee of Tesla, under Nevada law, Tripp owed a duty of loyalty to act solely in the interests of his employer within the business area for which he is employed.

46. As a trusted employee, Tripp owed Tesla a duty that required him to, among other things, refrain from conducting activities in any manner inimical to Tesla's best interests.

47. Tripp breached his fiduciary duty of loyalty to Tesla by engaging in the wrongful conduct alleged herein while still employed by Tesla, including, but not limited to:

      a.     Writing software to hack Tesla's MOS;

      b.     Divulging confidential and proprietary information in violation of his Proprietary Information Agreement and duties to Tesla;

      c.     Providing third parties with unauthorized access to proprietary information contained in Tesla's electronic devices and systems;

      d.     Taking and sharing with third parties dozens of photographs of Tesla's manufacturing systems;

      e.     Taking and sharing with third parties a video of Tesla's manufacturing systems;

   f. Falsely modifying Tesla's proprietary information before sending it to third parties; and

   g. Making false claims to third parties about the information that he wrongly took.

48. Tripp's wrongful conduct alleged herein occurred at a time when he continued to owe duties to Tesla. Tripp utilized Tesla's time, facilities, and resources to engage in this wrongful conduct.

49. As a direct and proximate result of these breaches, Tesla has sustained and will incur further damages including, but not limited to, damages reflecting lost business, lost profits, and damage to its goodwill, in amounts to be proven at trial. Tesla has also suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

50. The aforementioned wrongful conduct was intentional, malicious, and in bad faith and has subjected and will continue to subject Tesla to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages according to proof at trial.

## FIFTH CLAIM FOR RELIEF

### Nevada Computer Crimes Law (Nev. Rev. Stat. § 205.4765)

51. Tesla realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

52. Tripp has violated Nev. Rev. Stat. § 205.4765(1) by knowingly, willfully and without authorization modifying, disclosing, using, transferring, taking, retaining possession of, copying, obtaining or attempting to obtain access to, and permitting access to data, programs, and supporting documents that exist inside or outside Tesla's computers, computer systems, and/or computer networks.

53. Tripp has violated Nev. Rev. Stat. § 205.4765(3) by knowingly, willfully and without authorization taking, altering, transferring, disclosing, copying, using, retaining possession of,

obtaining or attempting to obtain access to, and permitting access to Tesla's computers, computer systems, and/or computer networks.

54. As described above, Tripp wrote software that hacked Tesla's MOS and transferred to third parties confidential data (including photographs and a video of Tesla's manufacturing systems), combined with fabricated data and other false information, that was not authorized to be disclosed regarding, among other things, Tesla's financials, the process for manufacturing batteries for Model 3, and the amount of scrap and raw materials used at the Gigafactory.

55. As a direct and proximate result of Tripp's unlawful conduct within the meaning of Nev. Rev. Stat. § 205.4765, Tripp has caused damage to Tesla in an amount to be proven at trial. Tesla is also entitled to recover its reasonable attorneys' fees pursuant to Nev. Rev. Stat. § 205.511(1)(c).

56. Tesla is informed and believes that the aforementioned acts were willful and malicious in that Tripp's acts described above were done with the deliberate intent to injure Tesla's business. Tesla is therefore entitled to punitive damages under Nev. Rev. Stat. § 205.511(1)(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Tesla respectfully prays for relief as follows:

A. For injunctive relief enjoining Tripp and all persons or entities acting in concert or participation with him from obtaining, using, or disclosing any of Tesla's confidential information or trade secrets;

B. For compensatory damages in an amount to be proven at trial;

C. For punitive and exemplary damages;

D. For prejudgment interest according to law;

E. For recovery of attorneys' fees, costs, and expenses incurred in this action; and

F. For such other and further relief as the Court may deem just and proper.

5336561

| | | |
|---|---|---|
| 1 | Dated: June 19, 2018 | JACKSON LEWIS P.C. |
| 2 | | |
| 3 | | By: */s/ Joshua A. Sliker* |
| | | Joshua A. Sliker |
| 4 | | Attorneys for Plaintiff |
| | | Tesla, Inc. |
| 5 | | |
| 6 | Dated: June 19, 2018 | HUESTON HENNIGAN LLP |
| 7 | | |
| 8 | | By: */s/John C. Hueston* |
| | | John C. Hueston (*pro hac vice forthcoming*) |
| 9 | | Attorneys for Plaintiff |
| 10 | | Tesla, Inc. |

- 10 -
COMPLAINT

5336561

**DEMAND FOR JURY TRIAL**

Plaintiff Tesla, Inc. hereby demands a trial by jury of all issues so triable.

Dated: June 19, 2018              JACKSON LEWIS P.C.

                                  By:  */s/ Joshua A. Sliker*
                                       Joshua A. Sliker
                                       Attorneys for Plaintiff
                                       Tesla, Inc.

Dated: June 19, 2018              HUESTON HENNIGAN LLP

                                  By:  */s/John C. Hueston*
                                       John C. Hueston (*pro hac vice forthcoming*)
                                       Attorneys for Plaintiff
                                       Tesla, Inc.

**STATEMENT REGARDING LR IA 11-2**

Counsel for Plaintiff Tesla, Inc. will comply with LR IA 11-2 within 21 days of this filing.

Dated: June 19, 2018                                JACKSON LEWIS P.C.

                                                                    By:  */s/ Joshua A. Sliker*
                                                                            Joshua A. Sliker
                                                                            Attorneys for Plaintiff
                                                                            Tesla, Inc.

Dated: June 19, 2018                                HUESTON HENNIGAN LLP

                                                                    By:  */s/John C. Hueston*
                                                                            John C. Hueston (*pro hac vice forthcoming*)
                                                                            Attorneys for Plaintiff
                                                                            Tesla, Inc.