**JACKSON LEWIS P.C.**
Joshua A. Sliker, (Nevada Bar No. 12493)
*joshua.sliker@jacksonlewis.com*
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 921-2460
Facsimile: (702) 921-2461

**HUESTON HENNIGAN LLP**
John C. Hueston (*admitted pro hac vice*)
*jhueston@hueston.com*
Robert N. Klieger (*admitted pro hac vice*)
*rklieger@hueston.com*
Allison L. Libeu (*admitted pro hac vice*)
*alibeu@hueston.com*
523 W. 6th St., Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Plaintiff/Counterdefendant Tesla, Inc.*

**TIFFANY & BOSCO, P.A.**
Robert D. Mitchell (*admitted pro hac vice*)
*rdm@tblaw.com*
William M. Fischbach III (*admitted pro hac vice*)
*wmf@tblaw.com*
Christopher J. Waznik (*admitted pro hac vice*)
*cjw@tblaw.com*
Matthew D. Dayton (Nevada Bar No. 11552523)
*md@tblaw.com*
Camelback Esplanade II, Seventh Floor
2525 East Camelback Road Phoenix, Arizona 85016-4229
Telephone: (602) 255-6000
Facsimile: (602) 255-0103

*Attorneys for Defendant/Counterclaimant Martin Tripp*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TESLA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN TRIPP, an individual,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM | Case No.: 3:18-cv-00296-LRH-CBC<br><br>**CASE MANAGEMENT REPORT** |

Plaintiff Tesla, Inc. ("Plaintiff" or "Tesla") and Defendant Martin Tripp ("Defendant" or "Tripp") hereby submit the following case management report.

### 1. Statement of the Case

Plaintiff's Statement:  This action arises from the misconduct of Martin Tripp, a former employee of Tesla, who – while he was working for the company – collected and stole Tesla's confidential trade secret information and then transferred this information to third parties to harm Tesla.  Incredibly, Tripp's illegal actions have continued even after the initiation of this lawsuit.  Only weeks ago, Tripp took to Twitter and posted screenshots and excerpts from confidential Tesla documents he stole from the company, photographs of proprietary Tesla equipment and facilities, and incendiary and false statements about Tesla.  Tesla seeks to hold Tripp accountable for these actions and to recover damages for the harm he has caused the company.

Within a few months of joining Tesla in October 2017, Tripp's managers identified Tripp as being disruptive and combative with his colleagues.  As a result of these and other issues, on or around May 17, 2018, Tripp was assigned to a new role.  Tripp retaliated against Tesla by stealing confidential and trade secret information and disclosing it to members of the media.  Tripp also made false claims to the media about the information he stole.  For example, Tripp claimed that punctured battery cells had been used in certain Model 3 vehicles even though no punctured cells were ever used in vehicles, batteries, or otherwise.  Tripp also vastly exaggerated the true amount and value of "scrap" material that Tesla generated during the manufacturing process and falsely claimed that Tesla was delayed in bringing new manufacturing equipment online.

Tripp remains bent on harming Tesla at any cost, and not even this lawsuit has dissuaded him from disclosing Tesla's proprietary information.  On August 15, 2018 (nearly two months after this case was filed), Tripp publicly posted on Twitter information that he had stolen from the company, combined with fabricated data and other false information.  Tripp tweeted screenshots of Tesla's confidential operating systems, email, spreadsheets, and other non-public, proprietary material.  Tripp also posted vehicle indemnification numbers ("VIN") of certain Model 3s, falsely claiming that punctured battery cells were installed in those vehicles.  To reiterate, no punctured cells were ever used in any Model 3 vehicles.

Less than one hour after Tripp's Tweetstorm began, Tesla alerted Tripp's counsel to the situation and demanded that Tripp take down the material. Tripp's counsel, however, could not get in touch with Tripp right away, resulting in Tesla's confidential information being publicly posted on Twitter for approximately 12 hours or more. Although Tripp's counsel eventually persuaded him to delete Tweets containing Tesla's proprietary information, the material is now forever public, causing irreparable harm to Tesla.

Tesla asserts claims against Tripp for violation of the Defend Trade Secrets Act (18 U.S.C. §§ 1836, *et seq.*); violation of the Nevada Uniform Trade Secrets Act (Nev. Rev. Stat. §§ 600A.10, *et seq.*), breach of contract; breach of fiduciary duty; and violation of the Nevada Computer Crimes Law (Nev. Rev. Stat. § 205.4765).

In response, Tripp asserted counterclaims for defamation, invasion of privacy/false light, and intentional infliction of emotional distress.

<u>Defendant's Statement</u>: After being recruited by Tesla, Tripp, a former technician for the U.S. Navy, was thrilled about moving to Nevada to work at Tesla's Gigafactory. Unfortunately, once he began his employment, Tripp became aware of numerous safety problems and production irregularities that were wasteful and dangerous to Tesla's employees, customers, and investors. After repeatedly reporting the serious safety and production issues to his managers and supervisors for months but seeing no corrective action, Tripp spoke with a member of the media to detail his concerns in an altruistic effort to make the public aware of the disconcerting and dangerous practices he had learned during his employment. As but one example, Tripp learned that over 700 dented and/or punctured battery modules had been used in Tesla Model 3 vehicles and that to "rework" the modules, Tesla's technicians merely squeezed an adhesive into the dent/hole and glued a piece of clamshell over the adhesive to make the battery appear undamaged.

Furthermore, Tripp was reassigned to a different department at Tesla due to his refusal to clean up the mounds of scrap that were lying around the facility in a veiled attempt by his supervisor to make the workspace appear clean for a factory visit by Tesla's CEO, Elon Musk. Tripp refused to do so because he had been complaining about the mounds of scrap for weeks and then, only to appease Mr. Musk, did his supervisor take action. Tripp was reassigned the next day.

After being terminated by Tesla, Tesla proceeded to make multiple highly-publicized, inflammatory, false and defamatory statements about Tripp, seemingly in an effort to discredit Tripp.  Further, it appears that for some time after the termination, Tesla somehow tracked Tripp somehow as it knew where Tripp was located.  Tripp was thereafter forced to relocate out of the country for fear of his family's safety.  Then, in this litigation, Tesla has attempted to enforce a highly restrictive protective order to keep clearly relevant information away from Tripp and out of the public eye.  As a result, Tripp made additional comments on Twitter about Tesla, but has since deleted that account and all of his other social media accounts.  It should further be noted that Tripp's Twitter posts were not done in an extortionary fashion, nor was Tripp selling information "to the highest bidder."  Tripp was and remains concerned that Tesla has been less than candid to the public about safety problems and manufacturing defects in the Model 3 vehicles that put people's lives at risk.

In any event, Tripp disputes that the majority, if not all, of the items Tesla contends Tripp misappropriated and/or disclosed are in fact protectible "trade secrets" under federal and Nevada law.  For example, some of the items are nothing more than pictures of semi-trucks that were readily observable by the general public.

Tripp denies liability under Tesla's claims against him and seeks damages for defamation, false light invasion of privacy, and intentional infliction of emotional distress.

**2.    Principal Factual and Legal Disputes**

Plaintiff's Statement:  The principal legal and factual disputes in the case are as follows:

(a)    Whether Tripp misappropriated Tesla's confidential, proprietary, and trade secret information, and thereby, committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*;

(b)    Whether Tripp violated his duty to maintain the secrecy of Tesla's trade secrets by disclosing the information to others in violation of the Nevada Uniform Trade Secrets Act, Nev. Rev. Stat. §§ 600A.10, *et seq.*;

   (c)  Whether Tripp breached his obligations under the Employee Proprietary Information and Inventions Agreement that he signed electronically on October 6, 2017 (the "Proprietary Information Agreement") by divulging confidential and proprietary information, combined with fabricated data and other false information, to third parties;

   (d)  Whether Tripp breached his duty of loyalty to Tesla by divulging confidential and proprietary information, combined with fabricated data and other false information, to third parties;

   (e)  Whether Tripp violated the Nevada Computer Crimes Law, Nev. Rev. Stat. § 205.4765, by accessing and transferring data and information from Tesla's computer systems to third parties without authorization; and

   (f)  Whether statements Tesla allegedly made about Tripp were true, substantially true, expressions of opinion, and/or privileged.

  <u>Defendant's Statement</u>:  In addition to those disputes identify by Tesla above, Tripp identifies the following disputes:

   (a)  Whether any of the information allegedly misappropriated and/or disclosed by Tripp actually constitutes protectible trade secret information under applicable federal and Nevada law;

   (b)  What damages Tesla suffered, if any, as the direct and proximate result of Tripp's purported misconduct;

   (c)  Whether any of Tripp's affirmative defenses excused and/or justified his actions;

   (d)  Whether Tesla's statements about Tripp placed Tripp in a false light;

   (e)  Whether Tesla intentionally or recklessly caused Tripp to suffer emotional distress; and

   (f)  Whether punitive damages against Tesla are warranted as the result of its intentional and/or reckless conduct.

### 3.   Jurisdictional Bases

The Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under the Defend Trade Secrets Act, 28 U.S.C. § 1836, *et seq.*, and has supplemental jurisdiction over the remaining claims under 29 U.S.C. § 1367.

This Court also has diversity jurisdiction of this action under 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Tesla, on one hand, and Tripp, on the other, are citizens of different States.  Tesla is a Delaware corporation with its principal place of business in Palo Alto, California.  Tripp is an individual who resides in Budapest, Hungary.  Both parties seek damages in excess of $1,000,000.

### 4.   Parties

Both parties have been served, have appeared in the action, and have answered each other's respective pleadings.

### 5.   Additional Parties

Neither party anticipates adding additional parties to the case or otherwise amending the pleadings.  Pursuant to paragraph 3 of the Court's Discovery Plan and Scheduling Order (Dkt. No. 31), the last day to file motions to amend pleadings or add parties is October 9, 2018.

### 6.   Contemplated Motions

The parties anticipate dispositive motions may be filed in this case.  Pursuant to paragraph 5 of the Court's Discovery Plan and Scheduling Order (Dkt. No. 31), the last day to file dispositive motions is February 6, 2018.  If necessary, the parties will file motions relating to discovery.

### 7.   Pending Motions

There are no pending motions.

### 8.   Related Cases

There are no related cases.

### 9.   Discovery

(a)   The parties anticipate that party discovery will include interrogatories, requests for admission, and requests for and production of documents in their respective

possession, including paper records and electronically stored information ("ESI"). The parties further anticipate that discovery will include third-party document and deposition subpoenas.

(b) The parties do not request changes to the discovery limitations imposed by the Federal Rules of Civil Procedure and LR 26-1(b).

(c) Unless otherwise stipulated or ordered by the Court, the parties agree that each deposition (except of person(s) designated under Federal Rule of Civil Procedure 30(b)(6)) should be limited to one day of seven hours, as provided by Federal Rule of Civil Procedure Rule 30(d). At the appropriate time, the parties will meet and confer on the durational limit for the deposition of person(s) designated under Federal Rule of Civil Procedure 30(b)(6).

**10.     Electronically Stored Information**

The parties agree that ESI should be produced in the form specified in paragraph 14 of the Court's Discovery Plan and Scheduling Order (Dkt. No. 31).

**11.     Privilege and Work Product**

The parties agree to be bound by Federal Rule of Evidence 502 and paragraph 15 of the Court's Discovery Plan and Scheduling Order (Dkt. No. 31).

**12.     Pretrial Disclosures**

Pursuant to paragraph 7 of the Court's Discovery Plan and Scheduling Order (Dkt. No. 31), the disclosures required by Federal Rule of Civil Procedure 26(a)(3), and any objections thereto, shall be included in the pretrial order.

**13.     Discovery Schedule**

The Court's Discovery Plan and Scheduling Order (Dkt. No. 31) sets forth deadlines for (a) the completion of discovery (¶ 2); (b) amending the pleadings and adding parties (¶ 3); (c) disclosure of expert testimony (¶ 4); (d) filing of dispositive motions (¶ 5); and (e) the joint pretrial order (¶ 6). The deadlines are in compliance with LR 26-1(b).

**14.     Local Patent Rules**

Not applicable, as this is not a patent case.

**15. Alternative Dispute Resolution**

As set forth in paragraph 8 of the Court's Discovery Plan and Scheduling Order (Dkt. No. 31), the parties certify that they have met and conferred about the possibility of using alternative dispute-resolution processes, including mediation, arbitration, and the Early Neutral Evaluation ("ENE") process. The parties believe settlement efforts are premature and do not request the Court's assistance at this time.

**16. Jury Trial**

Both parties requested trial by jury. (Dkt. Nos. 1 & 25.) The parties estimate that trial of this matter will last seven days. As set forth in paragraph 9 of the Court's Discovery Plan and Scheduling Order (Dkt. No. 31), the parties certify that they have met and considered a trial by magistrate judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 and the use of the Court's Short Trial Program. At this time, the parties do not consent to trial by magistrate judge or to the use of the Court's Short Trial Program.

**17. Other Matters**

Plaintiff's Statement: The parties are in the process of negotiating a proposed protective order to facilitate the exchange of confidential, proprietary, and/or trade secret information that warrants special protection from disclosure and from use for any purpose other than prosecuting, defending, or resolving this case. Although the parties agree on most provisions of the proposed protective order, the parties need the Court's assistance in resolving two remaining issues.

(a) Attorneys' Eyes Only Provision: Tripp demanded that Tesla strike from the proposed protective order provisions permitting Tesla to designate its trade secrets and other extremely confidential information as "Attorneys' Eyes Only" ("AEO"). Tripp's demand for access to Tesla's trade secrets is unreasonable given the legal and factual landscape of this case.

As the Ninth Circuit has held, the use of AEO provisions is appropriate in cases, like this, that involve the exchange of trade secret information. *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471-72 (9th Cir. 1992) (affirming magistrate judge's entry of protective order that limited disclosure of trade secrets to outside counsel and independent consultants/experts). In such cases, the party accused of trade secret theft does not have an

"unfettered right to the discovery documents." *Id.* at 1472. Rather, a protective order with AEO provisions "strikes a reasonable balance" between shielding the party from personal knowledge of the opponent's trade secrets while allowing access to such information through outside counsel and an independent consultant. *Id.* at 1471.

Here, Tripp's demand to eliminate standard AEO provisions is particularly unreasonable. As discussed above, Tripp has repeatedly demonstrated that he cannot be trusted with access to Tesla's extremely confidential materials. During the pendency of this action, Tripp publicly posted Tesla's confidential materials on Twitter. This demonstrates that neither the existence of this action nor Tripp's own lawyers could have dissuaded him from taking illegal action to harm Tesla, and that another outburst—via reinstated social media accounts, or some other channel—may be imminent. Thus, the risk to Tesla in allowing Tripp to have access to its most sensitive and confidential material is too great. This risk is particularly significant given that Tripp is apparently living abroad, where he may flout orders of the Court or ignore potential sanctions orders.

Tripp claims to need access to Tesla's AEO materials to assist his lawyers in this case. As the Ninth Circuit has stated, however, Tripp does not have an "unfettered right" to access Tesla's discovery documents. Tesla's proposed protective order (attached hereto as Exhibit A) permits Tripp to view all materials that are designated "confidential." (Ex. A ¶ 8(c)(i).) Tripp is only precluded from accessing AEO materials, which the protective order expressly limits to "extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or competitive disadvantage to the Producing Party." (*Id.* ¶ 9(a).) Tesla's proposed protective order "strikes a reasonable balance" by giving Tripp's outside counsel and consultants/experts access to AEO materials. It also provides a mechanism for Tripp to challenge designations that he does not agree merit AEO protection. (*Id.* ¶ 11.)

(b)     <u>Expert Notice Provision</u>: Tripp also demanded that Tesla remove from the proposed protective order a provision under which the parties agree to give one another notice of which experts and consultants will have access to protected information. (*Id.* ¶ 10.) In response to comments by Tripp, and in an effort to achieve compromise, Tesla significantly narrowed this

- 8 -
CASE MANAGEMENT REPORT

provision, wholly excluding non-testifying consultant experts and limiting the information required to be exchanged. But despite these significant concessions, Tripp refused to agree to the provision, arguing that it grants Tesla a de facto "veto" power over his selection of experts.

Once again, given his prior behavior, Tripp's position is untenable. Tesla is entitled to an assurance that Tripp will not share its confidential materials with individuals who will treat the material with as little care as he has. And the provision does not in any way give Tesla the veto power Tripp imagines; on the contrary, all the provision does is permit a party to "object in writing to [an expert] for good cause," following which—if a meet-and-confer process is unsuccessful—that party is required to "seek relief from the Court." Tesla therefore must ultimately justify to the Court any objection it has to Tripp's experts. Tripp's refusal to agree to even this narrow provision only validates Tesla's concerns about what he intends to do with Tesla's proprietary information.

For the foregoing reasons, Tesla respectfully requests that the Court enter Tesla's proposed protective order, which is attached hereto as **Exhibit A**.

Defendant's Statement: In addition to responding to Tesla's additional statements, Tripp wishes to raise an additional component of the draft protective order.

(a)     Protective Order. Without knowing exactly what information Tesla believes would warrant designation as "Attorneys Eyes Only," Tripp can only surmise that the majority of information produced by Tesla in this case will be designated as such. For example, Tesla has already designated its initial disclosure statement as "Confidential" notwithstanding the fact that the disclosure included nothing but a few names and generic description of documents (but no actual documents). Further, Tripp disputes that Tesla's proffered Attorneys Eyes Only provision is limited to actual "trade secret" information as recognized under Nevada and federal law. While it is true that Tripp does not have an "unfettered" right to Tesla's actual trade secrets, the only information Tripp will be seeking in this case is directly relevant to Tesla's own claims and allegations it made against Tripp in public filings and/or other publications. For example, Tesla claims that Tripp "falsely modified" certain records of Tesla and "grossly exaggerated" the amount of "scrap" generated by Tesla, disclosed such "false" information to third parties, all while apparently coding and implanting "hacking software" on several of his co-worker's computers to

1  "persistently export" Tesla information after he was terminated.  Tripp is entitled to demand and
2  review all of Tesla's records, whether "trade secret" or not, that relate to such allegations.

3  Furthermore, the case cited by Tesla, *Brown Bag Software v. Symantec Corp.*, 960 F.2d
4  1465 (9th Cir. 1992), is completely irrelevant.  For one, that case, involving a claim of copyright
5  infringement, was not a case with "allegations of trade secret theft."  Second, in that case, the
6  parties were direct competitors of each other and the court needed to decide whether in-house
7  counsel for one competitor should be allowed to review trade secret information of the other
8  competitor.  Here, Tripp is not even remotely a competitor of Tesla, and his review of documents
9  would strictly be limited to assisting his counsel in defending against and prosecuting the claims.

10  To the extent Tripp's statements during the pendency of this litigation are relevant, Tripp
11  has deleted all of his social media accounts and is subject to direct order of the Court.  He should
12  not be barred, by the mere whim of Tesla's identification of documents as "Attorneys Eyes Only,"
13  from reviewing documents that are directly relevant to the claims brought against him in this case.
14  Doing so would be extraordinarily prejudicial and is entirely unnecessary.  Finally, Tripp's draft of
15  the Protective Order has a provision in which he may be shown "Attorney's Eyes Only" material
16  only for purposes of viewing and inspection, and may not "copy, photograph, or otherwise retain
17  any" such material.  This should be sufficient to allay Tesla's concerns.

18  (b)  Expert Notice Provision: Tesla has misframed its expert notice provision as though
19  it is to be applied equally to both parties.  But since virtually all (if not completely all) of the
20  Protected Material in this case will be designated as such by Tesla, Tesla's proposed expert notice
21  provision will be deployed asymmetrically against Tripp by Tesla to obtain a tactical advantage.
22  Tesla has already used the Protected Material designation generously, having designated its initial
23  disclosure statement as "CONFIDENTIAL."  Thus, under Tesla's proposed notice provision, Tripp
24  cannot even provide a copy of Tesla's initial disclosure statement to a prospective testifying expert
25  without first giving Tesla advance notice and an opportunity to object.   Tesla elected to sue Tripp,
26  and it cannot now cry foul that it may have to relinquish its sensitive data to Tripp's experts.

27  For the foregoing reasons, Tripp respectfully requests that the Court enter Tripp's proposed
28  Protective Order, which is attached hereto as **Exhibit B**.  A redline to Tesla's order is **Exhibit C.**

|   |   |   |
|---|---|---|
| | | Respectfully submitted, |
| Dated: September 20, 2018 | | **HUESTON HENNIGAN LLP** |
| | | */s/ Allison L. Libeu*<br>Allison L. Libeu<br>*Attorneys for Plaintiff Tesla, Inc.* |
| Dated: September 20, 2018 | | **TIFFANY & BOSCO, P.A.** |
| | | */s/ Robert D. Mitchell*<br>Robert D. Mitchell<br>*Attorneys for Defendant Martin Tripp* |