1              UNITED STATES DISTRICT COURT
                   DISTRICT OF NEVADA
2      BEFORE THE HONORABLE CARLA BALDWIN CARRY, MAGISTRATE JUDGE
                        ---o0o---
3

4      TESLA, INC., a Delaware          :
       corporation,                     :
5                                       :
                    Plaintiff,          : No. 3:18-cv-296-LRH-CBC
6                                       :
            -vs-                        : October 1, 2018
7                                       :
       MARTIN TRIPP, an individual,     : Reno, Nevada
8                                       :
                   Defendant.           :
9      _____:

10

11           TRANSCRIPT OF CASE MANAGEMENT CONFERENCE

12

13     APPEARANCES:

14     FOR THE PLAINTIFF:        ALLISON LAREN LIBEU and
                                 STEPHEN RICHARDS
15                               Attorneys at Law
                                 Los Angeles, California
16

17

18     FOR THE DEFENDANT:        WILLIAM M. FISCHBACH, III
                                 Attorney at Law
19                               Phoenix, Arizona

20

21

22     Transcribed by:           Margaret E. Griener, CCR #3, FCRR
                                 Official Reporter
23                               400 South Virginia Street
                                 Reno, Nevada 89501
24

25

1          RENO, NEVADA, MONDAY, OCTOBER 1, 2018, 9:00 A.M.

2                          ---o0o---

3

4               THE CLERK:  This is the date set for a case

5     management conference in case number 18-CV-0296-LRH-CBC,

6     Tesla, Incorporated, versus Martin Tripp.

7               Present on behalf of plaintiff, Allison Libeu

8     and Stephen Richards.  Present on behalf of defendant, William

9     Fischbach.

10              THE COURT:  Good morning, everyone.  Thank you

11    so much for being here today.

12              We have several things, I think, to go over with

13    the case management report so I'm just going to go through

14    first what I've reviewed so that you're aware of my knowledge

15    level of the case, and then we'll just work through the case

16    management report.

17              At the end, which I think is really where more

18    of the issues are, we'll get to the protective order issues

19    specifically, and we'll go through those, and hopefully we can

20    get all that resolved today so that you guys can move forward

21    with your discovery.

22              For purposes of this hearing, I have reviewed

23    the complaint as well as the -- which is docket number 1, the

24    stipulation and order on the extension of time for the

25    original scheduling order, which was docket number 14, the

1    answer and counterclaims at docket 25 and all of those

2    attachments that were there as well, the scheduling order at

3    docket 31, and then, of course, the case management report and

4    the specific attachments to that.

5                So I'm very familiar with the case and familiar

6    with the issues that are going on.

7                Let me start with this.  According to paragraph

8    9(a) of the case management report, let's see, at paragraph

9    31 -- or docket 31, at paragraph 1 which was filed on

10   August 29th of 2018, there was a reference in there -- let me

11   pull it up so that I know what I'm talking about here -- that

12   the initial disclosures were due on August 29th of 2018.

13               And just so I'm clear for the record, my

14   assumption is that that is not -- those have not been provided

15   because of the issues with the protective order, or have those

16   been provided already?

17               MS. LIBEU:  Those have been provided by both

18   sides.  We have exchanged those.

19               THE COURT:  Okay.  And for purposes of this

20   hearing, feel free, please, to just stay seated and move the

21   microphones close to you, so that way we can pick up all the

22   information, no need to stand up.  I appreciate that, but no

23   need to do that.

24               MS. LIBEU:  Thank you, your Honor.

25               THE COURT:  So there have been initial

1   disclosures made, but there just hasn't been additional

2   document discovery at this point beyond the initial

3   disclosures; is that accurate?

4           MR. FISCHBACH:  Actually, your Honor, Mr. Tripp

5   has disclosed quite a bit of information in forms -- in the

6   form of documentary evidence some of which I believe Tesla has

7   already designated as confidential.

8           THE COURT:  Okay.

9           MS. LIBEU:  Yes, your Honor.  What we did in the

10  interim is counsel agreed between us to treat things

11  designated confidential as confidential until a protective

12  order is entered at which time it will govern.  So the entry

13  of the protective order hasn't held up discovery in the case.

14          THE COURT:  Okay.

15          MS. LIBEU:  Both sides have exchanged document

16  requests and interrogatories.  I believe we got Mr. Tripp's

17  first set last week.

18          THE COURT:  Okay.  Perfect.

19          So that was going to be my question was at what

20  point was there an issue with the protective order.  I just

21  wanted to make sure that it wasn't slowing up discovery at

22  this point.

23          Have both parties dis -- or exchanged

24  interrogatories and other requests for production at this

25  point, or is that just on the one side?

1                    MR. FISCHBACH:  We have, your Honor.

2                    THE COURT:  Okay.

3                    MS. LIBEU:  Both sides have done so, yes.

4                    THE COURT:  Great.  Have you at this point

5        started considering the scheduling of depositions or how many

6        you intend to have?

7                    MS. LIBEU:  We haven't had discussions about

8        depositions yet, your Honor.

9                    THE COURT:  Okay.

10                    MR. FISCHBACH:  And, Judge, part of that is

11       driven by -- as you probably know, our deadline to amend

12       pleadings is approaching.

13                    We're considering whether or not we should amend

14       to include Mr. Musk as an individual defendant, or other

15       officers of Tesla.  That may affect what depositions are or

16       are not taken.

17                    THE COURT:  Okay.  And I guess that brings me to

18       my -- my general concern is that with discovery starting to

19       tick already with July 31st as an answering date, I think the

20       scheduling order that we have now, and likely the discovery

21       cutoff, I'm assuming that -- I would assume that everybody is

22       already looking at those dates and thinking that those might

23       be too soon?

24                    I'm not sure, but, you know, that certainly if

25       there's going to be amended pleadings to add different

1    defendants and things like that -- we'll get to that when that

2    happens, but I certainly was looking at that thinking

3    especially -- although I have -- I will say this, I'm very

4    pleased to hear that so much has happened.  I was under the

5    impression that maybe nothing had happened because of the

6    protective order so I'm very pleased to hear that you guys

7    have continued to do that.

8              Let's see.  The one area of concern that I do

9    have relates to the electronic discovery, and a part of that

10   is this:  I appreciate that everyone has agreed to the use of

11   concordance and two formats and metaformats and all of the

12   metadata, but what I am a bit concerned about is that we have

13   no limitations on dates in terms of the scope of where -- you

14   know, what dates these were going to be because, obviously,

15   without any kind of parameters around what's supposed to be

16   gathered without dates or times or things like that, it makes

17   me a little bit concerned that it's going to be very onerous

18   and very expensive.

19             I will leave that to the parties, but it's just

20   something that immediately kind of struck me.

21             The other concern I had is there's no limitation

22   on search terms or anything of that nature to sort of make

23   sure that the parties are staying within the realm of what's

24   in the complaint, in the answer, in the counterclaim.

25             So I would simply at this point let you all know

1    that if there's issues with discovery over the ESI, and

2    there's complaints about those things, since there hasn't been

3    those limitations, I may impose those if we get to that point,

4    but it immediately struck me that those weren't -- weren't

5    somehow delineated.

6              And I'll be honest with you, I'm quite pleased

7    with how detailed you are with respect to what you have in

8    here, but those limitations I think could become problematic

9    without having them already in there on a going-forward basis.

10             That's just a thought from my perspective, so if

11   we do end up with discovery disputes over that, we'll have to

12   revisit whether or not parameters need to be placed in there

13   on those.

14             I want to make sure that both parties have

15   access.  There isn't any issue with the use of concordance or

16   anything like that.  Is that true?

17             MS. LIBEU:  Yes.

18             THE COURT:  Okay.

19             MS. LIBEU:  Both sides agreed to that format.

20             MR. FISCHBACH:  That was agreed to, Judge.

21             THE COURT:  Okay.  Well, my only concern is that

22   I have people say that, and then they come back and say, "I

23   can't access the database, I can't get in."  So I want to make

24   sure that everybody is able to do that so we don't have any

25   problems with that.

1             MR. FISCHBACH:  Judge, I'll give my adversaries

2   an A plus plus in terms of their professionalism, and so we've

3   been working very well on these issues.

4             THE COURT:  All right.  Perfect.

5             MS. LIBEU:  I would, by the way, echo that, your

6   Honor.  Counsel has, I think, been very professional on the

7   other side as well, so we've been able to work many of these

8   issues out.

9             THE COURT:  Well, I can tell you from what I've

10  seen, it appears that you are working very well together on

11  what could be a very complex and even difficult piece of

12  litigation, so I do appreciate that.

13            Let's see.  The next issue I have concerns about

14  had to do with privileged communications.

15            I didn't see any glaring issues, but there

16  doesn't seem to be -- I guess my concern would be whether or

17  not there would have been any privilege issues as it related

18  to the breach in terms of the statements that were made, you

19  know, whether any internal communications going on as to what

20  could be released and what couldn't, and I could see there

21  being some privilege issues over that if there's in-house

22  counsel making, you know, advise or outside counsel that had

23  been brought on based on what had happened.

24            Again, this is just my observations for people

25  to be aware of what I see as potential issues so that we can

1    sort of make sure that we're prepared for those before they

2    happen.

3              I don't know if that will be a major issue in

4    this case, but it was something that sort of stuck out to me

5    as I read through your joint discovery statement, so I just

6    wanted to raise that with everybody.

7              Those can be very complex issues for us to work

8    through when there are privilege issues so just -- that was my

9    immediate thing.

10             I think that really brings us to the heart of

11   what we need to discuss today, and that's the protective order

12   and the parameters on the protective order.

13             I've read the case that's been provided by

14   Tesla, the *Brown Bag* case from the Ninth Circuit, and the one

15   thing I will say is that I was -- that case doesn't seem to be

16   directly on point because it was dealing with the issue of, as

17   I recall, in-house counsel who isn't necessarily a party to

18   the litigation.

19             So here we have a party that we're trying to

20   exclude from being able to review and look at discovery, and

21   so I think that that actually changes the analysis to some

22   degree.

23             I have done pretty extensive independent

24   research trying to come up with what would be the appropriate

25   parameters and scope of this.

1              I will say that under the Federal Rules of Civil

2    Procedure 26(c), (f), (g), there is obviously a mechanism for

3    that.  In fact, the rule actually contemplates that where

4    trade secrets are going to be at issue, there can be a way for

5    those to be limited in how they're revealed and the way that

6    they're designated, so it's not totally outside of the scope

7    to have that.

8              But I do have concerns about limiting the

9    ability of a party to have access to discovery because I do

10   think it becomes an issue of whether that person is able to

11   really assist their counsel if they can't see it.

12             So I have a variety of questions for both sides

13   that I'd like to kind of go through to see if I can get a

14   better handle on how we can move forward with this.

15             I will say that I have found at least one case

16   where a party has been limited so it's not unheard of.

17             So let me start with Tesla's counsel.  I guess

18   the first thing that seems sort of obvious to me is, aren't

19   these already issues that the defendant would have already

20   had?

21             You know, whatever is going to be disclosed in

22   discovery, aren't you already alleging that he's already had

23   access to them and, in fact, has disclosed them to third

24   parties, so what exactly would you be needing to protect that

25   he hasn't already seen?

 1                    MS. LIBEU:  Certainly, your Honor.

 2                    With the information that he's already seen,

 3      we've designated that already confidential.

 4                    What we're talking -- and counsel on the other

 5      side has no issue with having a confidentiality designation in

 6      the protective order.

 7                    THE COURT:  Correct.

 8                    MS. LIBEU:  So we don't anticipate and haven't

 9      designated those materials attorneys' eyes only.

10                    What we're talking about is additional materials

11      that we would be producing in the case, and some of those

12      materials may relate to things that are very commercially

13      sensitive and proprietary to Tesla, including the

14      manufacturing process for battery 3s, issues in that process,

15      how it's done, the amount of scrap generated.

16                    Those are things where we will be showing that

17      the information Mr. Tripp has is, in fact, not correct, and

18      this is new information that we will be handing over to his

19      attorneys that we would not like Mr. Tripp to have, and, in

20      particular, because we are very concerned, not only did he

21      disclose information before this lawsuit was filed, but during

22      the lawsuit while he was represented by counsel, Tweeted

23      screenshots of information that he took from Tesla, including

24      VIN numbers of cars and screenshots of internal documents.

25                    And counsel, to their credit, encouraged

1    Mr. Tripp to delete those Tweets after the fact, but they

2    couldn't get in touch with him for half a day or such, so the

3    information remained online causing harm to Tesla.

4              And we're concerned about something like that

5    happening again, especially because Mr. Tripp, we understand,

6    is abroad, may not be -- may flout the Court's orders knowing

7    that he is abroad.

8              And if I may say one thing about *Brown Bag*, your

9    Honor, I understand your point about it being a little

10   different than this case, but it was in-house counsel.

11             Because it was a company in that case, in-house

12   counsel essentially is the client, because it's a party,

13   because in-house counsel is the representative of the party, I

14   would respectfully submit that it is the same thing because

15   you're denying the parties' representative, because the party

16   is an entity, of having that information in that case, and

17   although it's an individual here, the same thing applies.

18             What the Ninth Circuit said was we strike a

19   reasonable balance in cases where disclosure of trade secrets

20   that are at issue, and the reasonable balance the Ninth

21   Circuit struck and said was appropriate was outside counsel

22   and experts could see the materials, but the party itself who

23   was represented by the in-house counsel could not.

24             And that's exactly what we're asking for here is

25   a reasonable balance where his legal counsel and expert team

1  can review the materials, and, again, this would only apply to

2  the limited set of attorney's eyes only materials.

3                 Mr. Tripp can see confidentially designated

4  materials, just not the more limited AEO materials.

5                 And if his concern is that we are going to over

6  designate AEO materials, obviously there's a mechanism in the

7  protective order -- if he doesn't believe that the materials

8  we designate as attorneys' eyes only merit that designation,

9  there's a mechanism for her -- for him to challenge that, and

10 then your Honor would be the ultimate arbiter of what is and

11 what is not appropriate in that designation.

12                 THE COURT:  Okay.  Let me just direct

13 everybody -- when I was prepping for this, I was really using

14 the Exhibit C, so it may be best if we just kind of walk

15 through Exhibit C as we walk through my questions because one

16 of the points that you've just made actually brings me to

17 paragraph 6 -- or section 6, paragraph (b).

18                 You indicate that he's already overseas, and it

19 seems to me that that particular paragraph actually addresses

20 the issue that this information can't be sent overseas.  So if

21 he's overseas, isn't that already going to deal with that

22 issue?

23                 MS. LIBEU:  Exactly.  I'm hopeful that's the

24 case.  But counsel for Mr. Tripp has said they may, because

25 he's overseas, want to share things on a screen-sharing

1    software, which although itself doesn't allow download, he

2    could take screenshots or photos and the like, and, if he's

3    overseas, isn't supposed to be looking at this material

4    overseas.

5              I understand the issue with them is part of the

6    reason they want to be able to share materials with him in an

7    electronic format is that he is overseas, but I do agree with

8    you that this provision should prevent that from happening,

9    the sharing with it while he's overseas.

10             THE COURT:  Okay.  Well, let me just say right

11   now that I am not inclined to grant, even if we get to that

12   point, the ability of him to review things via Skype, FaceTime

13   or things like that.

14             And I'll tell you right now, because I actually

15   have had cases where somebody on the other side of that is not

16   supposed to be taking screen captures and is doing exactly

17   that.  In one of the cases I had, it ended up in resulting in

18   a very high level extortion of the other party.

19             So I'm not inclined to do that because there's

20   no control for the counsel on one end to prevent him from

21   doing that on the other end.

22             But at the same time I'm not comfortable with

23   the idea that he be completely excluded from the materials,

24   and I know that that makes it harder for defense counsel

25   because he's overseas, but there has to be some sort of a way

1    that we're balancing both parties' interests but at the same

2    time protecting the material.

3                    I think that takes me -- let's see.  Under

4    section 7, paragraph (d), I think I have some concerns with

5    how this is phrased, and that's particular to line 14 where

6    you have a sentence in there,

7                    "If no indication on the record is made, all

8            information disclosed during a deposition will

9            automatically be deemed 'CONFIDENTIAL - ATTORNEYS'

10           EYES ONLY' until such time as it may be appropriately

11           designated...."

12                   That seems to be concerning to me, especially if

13   you are going to be limiting the ability of who can see those

14   materials.  To have it automatically default to that most

15   sensitive disclosure seems to me to be a bit overinclusive and

16   concerning in that perspective.

17                   Can you speak to that issue.

18                   MS. LIBEU:  This provision in particular is

19   agreed upon by counsel but with the caveat, of course, that

20   the attorneys' eyes only provision that Mr. Tripp's counsel

21   provided has a provision in which he can review the materials

22   under certain circumstances.

23                   We'd be willing to change this from

24   "confidential - attorneys' eyes only" to just "confidential"

25   in this particular provision if that would allay the Court's

1    concerns about it.

2                    THE COURT:  Well, I mean, if -- can you speak to

3    that?

4                    MR. FISCHBACH:  And I think that makes good

5    sense, Judge.  I don't know that we've kind of thought that

6    all the way through when both sides were agreeing to that.  So

7    I think that's a good -- a good compromising resolution on

8    that issue, Judge.

9                    THE COURT:  Okay.  Perfect.

10                    Let me -- just going back, just as a

11   typographical issue -- first off, I want to thank everybody

12   for providing me a redline version because it makes it much

13   easier to see where the differences and the distinctions are

14   between the parties.

15                    Just going back -- and, I'm sorry, I should have

16   brought this up at the very beginning.  At the very front of

17   this there was a deletion of "a Delaware corporation," and an

18   inclusion of "an individual."  I'm assuming that's a

19   typographical error?

20                    MS. LIBEU:  It's a typographical error, yes,

21   your Honor.  I believe that was a typographical error on our

22   end, and we apologize for that.

23                    THE COURT:  Okay.  I just wanted to make sure.

24   I think that's the subject of a different lawsuit.

25                    Okay.  Let me move over to -- section 8(b) is my

1    next concern.  Let me see.

2              So in this provision the plaintiff is

3    unilaterally designating information as confidential that's

4    actually in the defendant's possession.

5              MS. LIBEU:  Yes.

6              THE COURT:  Before they've even seen what's in

7    the defendant's possession?

8              MS. LIBEU:  Well, we've fixed -- addressed this,

9    your Honor.

10             THE COURT:  Okay.

11             MS. LIBEU:  Because we've now seen -- Mr. Tripp

12   has now produced what's in his possession.

13             THE COURT:  Okay.

14             MS. LIBEU:  So we've designated the materials

15   that he produced document by document which are confidential

16   Tesla information.  So because he obviously took information

17   from Tesla, there's Tesla confidential information we would

18   like to designate confidential.

19             That is what this paragraph is meant to address,

20   but since then we have now designated it by Bates number.

21             THE COURT:  Okay.

22             MS. LIBEU:  So we've done that with counsel and,

23   in addition to stamping the documents, sent a letter

24   identifying by Bates number those documents.

25             THE COURT:  Okay.  Does defense have any issue

1   with that?

2               MR. FISCHBACH:  I think given where we're at,

3   Judge, seeing as how they have now taken the additional step

4   of designating by Bates number everything that's confidential,

5   I mean, the paragraph is almost superfluous at this point.

6               THE COURT:  Okay.  I just wanted to make sure

7   because there was sort of an ongoing concern for me that, you

8   know, before defendant can even turn anything over, there's

9   some blanket confidentiality imposed on the defense.

10              And I think there's other provisions that

11  indicate that if it's the parties' own documents, they're not

12  prohibited from using those or what have you.  So those two

13  things seem to be intention.

14              But if that's already kind of dealt with, then I

15  think -- I'm fine with that, but I just wanted to clarify it.

16              MS. LIBEU:  If I may, your Honor, I think the

17  issue here is that we have the unusual situation where, of

18  course, if it's your own document, you can use it, but

19  Mr. Tripp is in possession of Tesla's documents.

20              THE COURT:  Okay.

21              MS. LIBEU:  So that's what this is meant to

22  posses.

23              Certainly his own information independent of

24  Tesla is not meant to cover.  This is just meant to cover the

25  information that he has that he took from Tesla.

1              MR. FISCHBACH:  And, Judge, I'd -- and I'd maybe

2   like to suggest we consider at this point deleting that

3   paragraph because I understand what Tesla is trying to do.

4   They didn't know what he had at that point.

5              THE COURT:  Okay.

6              MS. LIBEU:  Right.

7              MR. FISCHBACH:  And they said until further

8   notice, that's all confidential.

9              THE COURT:  Right.

10             MR. FISCHBACH:  But you're correct, Judge, this

11  could be read so broadly is, if I hire an expert and say, hey,

12  here's his CV, well, it's confidential now, and I don't think

13  that's what the parties were intending.

14             MS. LIBEU:  Certainly not.

15             THE COURT:  Okay.

16             MR. FISCHBACH:  So I'd suggest maybe -- and I'd

17  obviously welcome Ms. Libeu's input just deleting the

18  paragraph at this point in time because it's been overcome by

19  events.

20             MS. LIBEU:  I think what I would suggest we do

21  is not delete the paragraph in its entirety but rephrase it so

22  it's clear that Tesla documents that we've designated by Bates

23  number, and we can maybe insert the Bates number here --

24             THE COURT:  Or even --

25             MS. LIBEU:  -- are confidential.

1          THE COURT:  I guess one thing I would say is

2    just to -- it does say derived from plaintiff's

3    confidential -- but I think it may be better to say I'm hereby

4    designating as confidential that was plaintiff's property.

5          MS. LIBEU:  We can do that.

6          THE COURT:  Or something of that nature, or

7    derived from plaintiff's property, so that way it's clear that

8    it's only to those documents that would have been specifically

9    alleged to be the plaintiff's or somehow derivative of that as

10   opposed to just a broad, open-ended thing just to be -- so

11   that it's more clear.

12          I will tell you that the detail on this

13   protective order is the type of thing that ends up causing a

14   lot more litigation than the more simple protective order.  So

15   that's one thing I'm trying to avoid is a lot of litigation

16   over the protective order itself in the future, although I

17   will say I'm very pleased with how well everybody is getting

18   along.  I would have not expected that in this kind of

19   litigation.

20          So that brings me to paragraph 9 --

21          MR. FISCHBACH:  I'm sorry, Judge, before we --

22   before we -- would you like the parties to meet and confer on

23   some proposed language and maybe just e-mail it to your

24   chambers or -- I think we can figure it out is kind of what

25   I'm saying.

1                    THE COURT:  With all of this?

2                    MR. FISCHBACH:  Well, no, with 8(b).

3                    THE COURT:  Yeah, that's fine.  But what my

4      suggestion is, is just to work on some sort of language to

5      narrow that.

6                    MS. LIBEU:  Certainly.

7                    THE COURT:  If you want to work on it together

8      to come up with that, because always what my plan will be

9      after the end of this is that you both re-prepare something

10     for me based on what we talk about today.  So however you want

11     to do that, I'm happy with that.  But we can get through this

12     and then we can go from there.

13                   MS. LIBEU:  I'm confident that we can agree on

14     language along the lines that your Honor proposed.

15                   THE COURT:  Okay.  Moving on to paragraph 9(a),

16     I have to say one thing that struck me here in this particular

17     paragraph at line 21 is where it states it contains or

18     reflects information that is, and I quote, "extremely

19     confidential."

20                   Is there anything more than just confidential?

21     I mean, I guess that language seems very ambiguous to me and

22     should be more specifically designated as pursuant to the

23     rule, you know, something that reflects information that is

24     trade secrets or deemed trade secrets or something like that.

25                   I think language like it's "extremely

1    confidential," I don't know, that's like saying I strenuously

2    object from the movie *A Few Good Men* -- I mean, it's an

3    objection, there isn't really anything more than that.

4              We already have confidential, so it should be

5    more specific to what that is.  So that would be my suggestion

6    for that language unless the parties have any objection to

7    that.

8              MS. LIBEU:  No, your point is well taken, your

9    Honor.

10             THE COURT:  Okay.

11             MS. LIBEU:  I think we can -- we can work on

12   language along those lines.

13             THE COURT:  Okay.  Anything from the defense on

14   that?

15             MR. FISCHBACH:  I agree, Judge, I think we

16   can -- we can tighten it up.

17             THE COURT:  Okay.  I've already indicated that

18   I'm not comfortable with the idea that the defendant be able

19   to have access to these materials via some sort of online

20   medium or teleconferencing medium without having any ability

21   to control what he can do on the other end.  I just -- I don't

22   think there's any way to do that.

23             And unless I hear something different, and I'll

24   let the defense, you know, respond to that, but those are my

25   concerns, and if you can address that, I think that would be

1    helpful, I think, at this point.

2              MR. FISCHBACH:  And I'm happy to, Judge.

3              As you know, Mr. Tripp is living abroad now, and

4    he's living abroad because of fears for his safety.

5              As you know, one of the things we allege in our

6    counterclaim is that Tesla appeared to have information on his

7    exact location as these events were unfolding, and I don't

8    doubt that Tesla, being very well resourced, essentially has

9    the ability to continue doing that.

10             So he has -- he has fled the country out of

11   fears for his privacy and for the privacy of his family, and

12   so I -- I don't know that it's fair to punish him for moving

13   out of the country because of Tesla's conduct and, therefore,

14   he now can't participate in the defense of his own case.

15             I agree that if he was still here, we could

16   just, you know, summon him to our office and say all right,

17   let's go over this stuff here in our office.

18             But I think in this case where -- is -- the

19   circumstances of being overseas was prompted by Tesla's own

20   conduct, I'd ask the Court to reconsider that position.

21             THE COURT:  Well, like I said, I still have --

22   and I understand the position, and I understand the concerns,

23   but I have grave concerns with the idea, and I think that

24   Tesla's point's well taken in that, you know, this whole case

25   emanates from the idea -- and it's allegations, so, you know,

1    it's something that will be proved at trial.

2              But the allegations at this point are that this

3    particular plaintiff had -- or defendant had access to

4    plaintiff's information and disclosed that, and so I think

5    there's legitimate concerns about their trade secrets and

6    things like that being further disclosed.  I don't think

7    that's an unfair position for them to take.

8              I have, as I know I've already indicated,

9    concerns about the way that that could be done through

10   teleconferencing or through some sort of online mechanism

11   because I still don't hear anything that says that there's a

12   way to prevent him from, you know, essentially recording on

13   the other end.

14             But it seems like there's got to be some sort of

15   medium between all of this.  I think that the protective order

16   itself already provides for mechanisms that prevent the

17   plaintiff -- or the defendant from disclosing this, and, in

18   this case, you now have a situation where, if he signs the

19   protective order, he agrees to the terms of the protective

20   order.

21             It is a little bit different than at the

22   beginning of the litigation where at that point he could be

23   held in contempt, there could be sanctions, and, quite

24   frankly, I mean, I wouldn't be surprised if there couldn't be

25   criminal proceedings as it relates to some of this breach

1    information.

2             So I do think that it is sufficient to be able

3    to designate it as attorneys' eyes only, but to the extent

4    that he needs to see it, I think that at some point he's going

5    to have to come back to the United States, correct me if I'm

6    wrong, and if there really are issues that you need to provide

7    to him, then that should be done in your office in the

8    presence of someone else, whether it be an expert or attorneys

9    or something like that, that prohibits him from making copies,

10   from having any, you know, cellphones or anything where he

11   could photograph or otherwise duplicate that.

12             But I think that that has to be the mechanism,

13   that he has to be physically here to see it so that he can't

14   somehow duplicate it.  And I know that that makes that a

15   little bit onerous, but, at the same time, it doesn't entirely

16   prevent him from being able to assist you if it's needed.

17             If that becomes a serious problem for you, then

18   we just -- you know, call chambers, come back in, and we'll

19   see how we can work through some way to make that so that it

20   works for your client.

21             But my position is that -- and what my

22   expectation will be for this is that the defendant can have

23   access, but it is limited to his attorneys' offices in the

24   presence of a third person, and I think that that strikes the

25   balance that it may be difficult for both parties, but I think

1    it's the best that we can do under the circumstances.

2                But there should be a provision in there that if

3    there is an issue for the defense truly being able to prepare,

4    that they have a mechanism to come back to court for us to set

5    up some sort of an exception to that as needed.

6                MR. FISCHBACH:  And, Judge, I think we can work

7    on that.  A lot of it will depend just how liberally or

8    conservatively Tesla applies the attorneys' eyes only

9    designation.

10                THE COURT:  And I agree, and I think that was

11    one of my concerns.

12                And what I read in the case conference report,

13    too, is that over designation, you know, making everything

14    attorneys' eyes only and that type of thing, is not going to

15    be looked at favorably by the Court, I can tell you right now.

16                Those make -- in any litigation, it makes it

17    much more onerous for everyone involved, and that should not

18    be liberally used.  That's not to say that you shouldn't be

19    making sure that you're protecting your client's information,

20    but you also should not be making it difficult for everybody

21    to litigate the case when it's unnecessary.  So I will say

22    that on the record.

23                MR. FISCHBACH:  And, Judge, while we're -- this

24    has kind of caused me to have some concerns now about 6(b)

25    because I think we can -- assuming Tesla is reasonable with

1     the attorneys' eyes only designation, if it means Mr. Tripp

2     has to fly back here, then so be it.

3                 But under 6(b), it basically precludes us from

4     sending him anything if it's deemed confidential, and I think

5     that's -- the concerns you're having there are -- the

6     exception is now kind of swallowing the rule here.

7                 THE COURT:  Well, maybe what that gets changed

8     to is the -- you know, the "confidential - attorneys' eyes

9     only" doesn't get sent overseas, or maybe there's a specific

10    provision in there that makes an exception for confidential

11    materials that may need to be sent to the defendant, may be

12    allowed, but beyond that it can't go to anybody else.

13                But if it's only designated as confidential,

14    he's going to have to sign the protective order, and I

15    understand the concerns that he might be outside the scope of

16    the jurisdiction of the Court theoretically, but he's also

17    party to this litigation.  So that puts him in a bit of a

18    different position, I think, ultimately as that relates to his

19    requirements to comply with the Court's orders.

20                But I think that's a point well taken to make

21    sure that that isn't, as you said, swallowing -- you know, the

22    exception swallowing the rule in that particular provision.

23                MR. FISCHBACH:  Thank you, Judge.  We'll work on

24    that.

25                THE COURT:  Okay.  Thank you.

1          The next thing, really, I think goes to the

2    expert notices, and I'll be honest with you, I'm not going to

3    agree to that, and this is my main concern.

4          If Tesla's true concern is really that whoever

5    gets this, they need to know who it is, why would they be

6    agreeing to not require that for the unknown consultant who

7    isn't testifying?

8          So, from my perspective, I agree with the

9    defense that this really looks more like some sort of a

10   litigation tactic.

11         And I think it's unfair to both parties to

12   require people to designate specifically who is going to be a

13   testifying witness and who isn't before they even know who

14   they want to have as a testifying witness, for one, going to

15   the point of having people's CVs having to be turned over and

16   their titles and their employers, I just don't think that's

17   appropriate.

18         We already have the protections of the

19   protective order.  They have to sign those.  I think that

20   that's more than sufficient.

21         If it becomes a problem, as I've already

22   indicated, I'm more than happy, we can set a hearing and we'll

23   deal with it.  But if you're going to allow unknown

24   consultants and those people to have access without having to

25   know any of that, it seems -- quite frankly, it doesn't make

1    any sense to me to require people that you actually are going

2    to know about to do it instead.  That doesn't make a lot of

3    sense to me.

4                    So I'm not going to impose those notice

5    requirements so those need to be deleted.

6                    MS. LIBEU:  If I may just briefly, your Honor, I

7    understand -- I understand your ruling.  I just want to

8    clarify the exception for consultants was at the request of

9    opposing counsel.  Our original provision did not have an

10   exception.

11                   THE COURT:  Okay.

12                   MS. LIBEU:  And they raised the point that

13   they're not required to disclose on unknown consultants and

14   they're allowed to keep them confidential.

15                   We thought that was a good point which is why we

16   put in that exception.  So I don't want it to seem like -- it

17   wasn't a litigation tactic for that reason, that was a

18   concession we made.

19                   THE COURT:  I agree.  And I appreciate that.

20   Thank you for clarifying that.  But I guess that's kind of the

21   issue, it's like that --

22                   MS. LIBEU:  Understood, understood.

23                   THE COURT:  Those things don't really make sense

24   at the end of the day, and if that's the compromise, it

25   doesn't seem to really make a lot of sense to me.

1      And, again, you know, you already have the
2  protections of the protective order itself that these
3  individuals are going to have to comply with.
4      And, certainly, I mean, you're all
5  representatives of the court as well, you know, so you're
6  going to be the ones that are providing these protective
7  orders, explaining it to them, making them sign that.
8      I don't think anybody in the room wants to come
9  before a judge and have to explain why somebody that they
10  brought into a case has violated the terms of the protective
11  order.  So I just think that that becomes a problem overall,
12  and I don't think it's necessary, to be totally frank with
13  you.
14      That moves me to the filing of protected
15  information under what's paragraph -- or section 12 in this
16  particular version.
17      My concern is that that doesn't -- it
18  obviously -- you've tried to massage the requirements under
19  the local rule, but the problem is, is that when you file
20  something under the local rule, the clerk's office have
21  expectations about how that's going to look, and so changing
22  those requirements could be problematic internally for the
23  court.
24      And so I think it needs to comply with the local
25  rule in the way that it's drafted, but there's -- there's got

1    to be some way to do that, and I totally understand what the

2    parties are trying to do.

3              If you're submitting something to the court, and

4    you don't necessarily consider it confidential under the

5    protective order, you don't want to have to file a motion that

6    says this should be kept under seal, and I get that.  But the

7    problem is that that's the expectation that the court will

8    have is that a motion is filed along with anything that's

9    filed under seal.

10             Now, that motion can read, you know, we are

11   preparing this and filing this under seal, we request that it

12   remain under seal for a period of time to allow the other

13   party to do something, but there needs to be some sort of

14   motion filing made at the time that the protected material is

15   filed under seal so that way it alerts the Court and the

16   clerk's office that we're complying with the rules and that

17   they will allow that to move forward.

18             And then we can deal with it with a motion to

19   seal if one is made, but I think that that needs to be somehow

20   reflective of the way that the local rule and the mechanism in

21   the local rule operates.  So we'll need to have that modified

22   to some extent.

23             So I'll allow the parties to sort of work

24   through how to do that, but that -- that's something that I

25   don't think we can do without causing problems internally for

1    the court.

2                    MR. FISCHBACH:  And, Judge, if I could be heard

3    on that just briefly.  You're right, we took the local rule

4    and tried to -- tried to massage it as you said.

5                    I just want to be -- just so I'm clear, there

6    may be instances where, for example, Mr. Tripp is filing

7    something that includes material that Tesla has designated as

8    confidential, and under the local rule we would be required to

9    file a contemporaneous motion to seal.

10                   Would it even be appropriate for us to take the

11   position in that motion that we're filing the motion to seal

12   because it's been designated as confidential, but we really

13   don't think this ought to be sealed away from public view?

14                   That was the issue we kept running into is that

15   we might be filing a motion to seal even though we really

16   thought it shouldn't be sealed.

17                   THE COURT:  Well, I think that the basis for the

18   motion to seal is that this is protected under the protective

19   order.  We don't want to violate the protective order by

20   disclosing information.

21                   However, you know, we have -- I don't know how

22   you want to phrase it, but I think from that perspective the

23   requirement of the party to file that motion to seal is

24   twofold.

25                   First, the rule requires if you're filing

1    something under seal, to file something along with it

2    contemporaneous alerting the Court as to why it's been filed

3    under seal.

4                Now, at that point the Court could say we deny

5    the motion to seal because you haven't provided us the basis

6    for sealing.  However, if the opposing party comes in and

7    says, no, we are asking for it to be sealed and here are the

8    reasons for that, then we can look at it that way.

9                But that's how I would phrase it, is that the

10   motion to seal is really to ensure that you're complying with

11   the terms of the protective order you've entered into, but

12   whether or not the First Amendment and right of access issues

13   can be addressed through that, probably not.  So it would then

14   be the opposing counsel to file something to really assure

15   that those things are actually addressed, if that makes sense.

16               MS. LIBEU:  It makes sense I believe, your

17   Honor.

18               THE COURT:  Okay.

19               MR. FISCHBACH:  It does, Judge.  We know how

20   Courts don't like things to be filed under seal so we were

21   just trying to avoid that whenever possible.

22               THE COURT:  No, and I appreciate -- I appreciate

23   the situation that the rule creates, especially when you have

24   issues like this.

25               And I also understand that this may create a

1    little bit more complexity in attorney's fees and time and

2    things like that that may not be entirely, you know, from your

3    perspective, necessary.  However, that's the rule, and that's

4    the way we need to comply with it to make sure that we don't

5    have any confusion.

6              My concern would be that if a motion wasn't

7    filed under seal, that the clerk's office would not file it

8    under seal or would unseal it unilaterally, and then we would

9    have a problem if it was, in fact, something that should have

10   been designated properly under seal.

11             So I don't want to have any issues on our side

12   creating that situation, so that's where my concern comes

13   from.

14             That takes us to section 17, paragraph (b).  The

15   last line, I think it's lines 10 and 11, where you indicate

16   that the Court shall retain jurisdiction?  No, the Court will

17   not retain jurisdiction.

18             So at the end of litigation, once this case is

19   over, if there's violations of the protective order that you

20   want to challenge, that will have to be done through a

21   separate suit.  We do not maintain jurisdiction through

22   protective orders, jurisdictionally we just don't do that.  So

23   that line will have to be taken out.

24             As well as in paragraph (f) there are sections

25   that talk about the responsibility to enforce the order, those

1    last two sentences that start at line 3 and go through line 6,

2    those need to be modified to say something to the extent of

3    during the pendency of this litigation, or as long as this

4    case is pending before the court, or something like that, to

5    ensure that there is no confusion over the long-term

6    jurisdictional requirements or obligations of the District

7    Court of Nevada as it relates to this protective order.

8              So does anybody have any questions over any of

9    that, or concerns that you want to raise on the record?

10             MS. LIBEU:  No, your Honor.

11             MR. FISCHBACH:  No, Judge.

12             THE COURT:  Okay.  So that takes me to the

13   last -- so are we clear on all the different modifications and

14   changes that I've asked for and that I've agreed to just

15   before we move on to anything else?

16             MS. LIBEU:  Yes, your Honor.

17             MR. FISCHBACH:  Very clear here, Judge.

18             THE COURT:  Okay.  Perfect.

19             Okay.  That takes me to the last thing that I

20   wanted -- well, second to last thing, I should say, and that

21   is settlement conference.

22             I know the parties are obviously at the very

23   beginning stages of litigation and certainly discovery and

24   things of that nature, but I'm sure that everybody can

25   appreciate the costs that could be associated not just with

1    this case but just the general costs of publicity issues like

2    that.

3                    So if the parties are interested, I'm more than

4    happy to set a settlement conference earlier rather than

5    later.  It's up to the parties.  I'm not generally someone

6    that would impose that on you, but I do want to put it out

7    there, that the Court is willing to do an early settlement

8    conference if that's something that the parties are interested

9    in.

10                   But I will leave it to you to file something to

11   let us know or, you know, after this hearing, if you have a

12   chance to discuss it, whether by filing would probably be the

13   way to do it, that there be a request made through some sort

14   of stipulation of the parties to go ahead and set this for a

15   settlement conference.

16                   This case seems to me to be one that probably

17   could settle early rather than later, and I do think that as

18   it goes on, it will be harder to settle.  But, you know, like

19   I said, I wanted to leave that to the parties.

20                   Any thoughts on that from the plaintiff's

21   counsel?

22                   MS. LIBEU:  My general practice is I'm always

23   open to talking settlement if that's interested on the other

24   side.  So I would suggest that maybe counsel get together and

25   chat and see if there's a willingness to do that now rather

1    than later.

2                    THE COURT:  Okay.  Anything --

3                    MR. FISCHBACH:  I agree, Judge.

4                    THE COURT:  Okay.  Perfect.

5                    You know, my inclination when I walked out here

6    was I thought I should set this for monthly case management

7    conferences to make sure that we're all on track and everybody

8    was getting along, but I have to be honest with you, as I've

9    already indicated probably three times, I'm very pleased with

10   how things are going and how well you guys are working

11   together and certainly moving forward in discovery.

12                   My thought is, though, that because of the size

13   of the case and the complexity that this may end up being, is

14   to have more than one case conference.  So I'm thinking that

15   we should set one out for 60 days from today.

16                   We can do that telephonically on the next one,

17   just to make sure if there's any issues, any discovery

18   hiccups, anything that needs to be addressed, we can do that

19   at the case conference rather than requiring people to file

20   motions on discovery-related issues.

21                   And then I think at that point, depending on

22   where you're at with settlement, or even where you're at with

23   the discovery situation or amendments to the complaint or to

24   the claims, we can address whether or not, you know, the time

25   frames that we have set out in the scheduling order still make

1    sense or whether those need to be modified, and that way,

2    again, we're saving everybody time and effort from filing

3    things and going through that process.

4              Is there any objection to that from the

5    plaintiff's counsel?

6              MS. LIBEU:  No objection, your Honor.

7              THE COURT:  And defense?

8              MR. FISCHBACH:  No objection, Judge.

9              Just so I'm clear, you're suggesting that to the

10   extent discovery disputes do arise, that we should kind of

11   save them to address the Court at the next status conference

12   as opposed to papering the Court with motions?

13             THE COURT:  I would prefer that, but I will say

14   this.  I understand how discovery works, and I understand that

15   there are some times that you need an immediate decision, you

16   can't wait.

17             So to the extent that that happens, you're

18   obviously not prohibited from doing that, but I would say

19   that, you know, the types of discovery issues that you may be

20   arguing over but they aren't immediate, that we save those for

21   the case management conference.

22             One thing we could do, too, if you do have to

23   file something immediate, we could move up a conference and

24   just have it then as opposed to waiting.

25             But I think for right now we'll just set it for

1    60 days, and, like we said, if there's an emergency situation,

2    don't feel that you can't file something.  But to the extent

3    that you can save it for the conference, let's just save it

4    for the conference to save everybody time and money, and

5    that's how we'll proceed.

6              At this point is there anything further from the

7    plaintiff that you'd like to put on the record or that you

8    need to make the Court aware of?

9              MS. LIBEU:  No, your Honor, nothing further from

10   us.

11             THE COURT:  Okay.  Thank you very much.

12             And from the defense?

13             MR. FISCHBACH:  Nothing else, Judge.  Thank you

14   for your time this morning.

15             THE COURT:  Absolutely.  Well, thank you

16   everybody, I'll -- in terms of an updated protective order,

17   would seven days be enough time for you to submit a new

18   stipulated protective order to the Court?

19             MS. LIBEU:  I think so, your Honor.  We've been

20   working well together on getting things like that

21   accomplished, and I anticipate that will continue so that

22   should be no issue.  But we'll let you know if, for some

23   reason, seven days becomes a sticking point.

24             THE COURT:  Okay.  So for purposes of the order,

25   we'll order the parties to file an amended or stipulated

```
 1   protective order, however we want to put that.  I guess it's

 2   not amended because nothing has been entered yet, but a

 3   stipulated protective order with the Court for my signature.

 4   What is the date on that?

 5              THE CLERK:  Thursday, October 11th, your Honor.

 6              THE COURT:  And with respect to the case

 7   conference report, we'll go ahead and get a date and time for

 8   that and make sure that that's acceptable to the parties.

 9              THE CLERK:  Monday, December 3rd at 9:00 a.m.

10              THE COURT:  If you need to check your calendars,

11   please feel to do that, we can wait a minute.

12              MS. LIBEU:  That's fine for the plaintiff, your

13   Honor.

14              MR. FISCHBACH:  Works for the defense as well,

15   Judge.

16              THE COURT:  Perfect.  Well, thank you all again,

17   and with that we will be --

18              MR. FISCHBACH:  One question, Judge, sorry.

19              THE COURT:  Sure.

20              MR. FISCHBACH:  To the extent there are any

21   sticking points on a protective order, if there's one or two

22   little nits we just can't iron out, what is your preference

23   for how we submit those to the Court?

24              THE COURT:  What does the calendar look like?

25   Hold on one second.
```

1        (Discussion held off the record.)

2            THE COURT:  How about we do this.  How about if

3    there's any issues with the protective order, that the parties

4    contact the Court on Tuesday, December -- or October 9th, and

5    if we need to, we can set a telephonic conference either on

6    the 10th or the 11th in the morning to deal with that rather

7    than having people file, and we can just work those out over

8    the phone.

9            And I would just ask before if we do do that,

10   I'll just ask somebody to send me a copy of a redline version

11   again so that way we can just work through those issues just

12   the way we've done today.

13            Is that acceptable?

14            MS. LIBEU:  Yes, your Honor.

15            MR. FISCHBACH:  Certainly, your Honor, thank

16   you.

17            THE COURT:  Okay.  Perfect.  Okay.  With that,

18   we'll be in recess.  Thank you so much.

19            MS. LIBEU:  Thank you, your Honor.

20                        -o0o-

21        I certify that the foregoing is a correct
         transcript from the digital recording of proceedings
22       in the above-entitled matter.

23       /s/Margaret E. Griener          10/26/2018
          Margaret E. Griener, CCR #3, FCRR
24        Official Reporter

25

1

**'**

'CONFIDENTIAL [1] - 15:9

**/**

/s/Margaret [1] - 41:23

**1**

1 [4] - 1:6, 2:1, 2:23, 3:9
10 [1] - 34:15
10/26/2018 [1] - 41:23
10th [1] - 41:6
11 [1] - 34:15
11th [2] - 40:5, 41:6
12 [1] - 30:15
14 [2] - 2:25, 15:5
17 [1] - 34:14
18-CV-0296-LRH-CBC [1] - 2:5

**2**

2018 [4] - 1:6, 2:1, 3:10, 3:12
21 [1] - 21:17
25 [1] - 3:1
26(c [1] - 10:2
29th [2] - 3:10, 3:12

**3**

3 [3] - 1:22, 35:1, 41:23
31 [1] - 3:3, 3:9
31st [1] - 5:19
3:18-cv-296-LRH-CBC [1] - 1:5
3rd [1] - 40:9
3s [1] - 11:14

**4**

400 [1] - 1:23

**6**

6 [3] - 13:17, 35:1
6(b [2] - 26:24, 27:3
60 [2] - 37:15, 39:1

**7**

7 [1] - 15:4

**8**

8(b [1] - 16:25
8(b) [1] - 21:2
89501 [1] - 1:23

**9**

9 [1] - 20:20
9(a [2] - 3:8, 21:15
9:00 [2] - 2:1, 40:9
9th [1] - 41:4

**A**

A.M [1] - 2:1
a.m [1] - 40:9
ability [5] - 10:9, 14:12, 15:13, 22:20, 23:9
able [9] - 7:24, 8:7, 9:20, 10:10, 14:6, 22:18, 25:2, 25:16, 26:3
above-entitled [1] - 41:22
abroad [4] - 12:6, 12:7, 23:3, 23:4
absolutely [1] - 39:15
acceptable [2] - 40:8, 41:13
access [9] - 7:15, 7:23, 10:9, 10:23, 22:19, 24:3, 25:23, 28:24, 33:12
accomplished [1] - 39:21
according [1] - 3:7
accurate [1] - 4:3
add [1] - 5:25
addition [1] - 17:23
additional [3] - 4:1, 11:10, 18:3
address [4] - 17:19, 22:25, 37:24, 38:11
addressed [4] - 17:8, 33:13, 33:15, 37:18
addresses [1] - 13:19
adversaries [1] - 8:1
advise [1] - 8:22
AEO [2] - 13:4, 13:6
affect [1] - 5:15
agree [9] - 14:7, 21:13, 22:15, 23:15, 26:10, 28:3, 28:8, 29:19, 37:3
agreed [6] - 4:10, 6:10, 7:19, 7:20, 15:19, 35:14
agreeing [2] - 16:6,

28:6
agrees [1] - 24:19
ahead [2] - 36:14, 40:7
alerting [1] - 33:2
alerts [1] - 31:15
allay [1] - 15:25
allegations [2] - 23:25, 24:2
allege [1] - 23:5
alleged [1] - 20:9
alleging [1] - 10:22
ALLISON [1] - 1:14
Allison [1] - 2:7
allow [5] - 14:1, 28:23, 31:12, 31:17, 31:23
allowed [2] - 27:12, 29:14
almost [1] - 18:5
ambiguous [1] - 21:21
amend [2] - 5:11, 5:13
amended [5] - 5:25, 39:25, 40:2
Amendment [1] - 33:12
amendments [1] - 37:23
amount [1] - 11:15
analysis [1] - 9:21
Angeles [1] - 1:15
answer [2] - 3:1, 6:24
answering [1] - 5:19
anticipate [2] - 11:8, 39:21
apologize [1] - 16:22
APPEARANCES [1] - 1:13
appeared [1] - 23:6
applies [2] - 12:17, 26:8
apply [1] - 13:1
appreciate [7] - 3:22, 6:10, 8:12, 29:19, 33:22, 35:25
approaching [1] - 5:12
appropriate [5] - 9:24, 12:21, 13:11, 28:17, 32:10
appropriately [1] - 15:10
arbiter [1] - 13:10
area [1] - 6:8
arguing [1] - 38:20
arise [1] - 38:10
Arizona [1] - 1:19
assist [2] - 10:11, 25:16
associated [1] - 35:25
assume [1] - 5:21

assuming [3] - 5:21, 16:18, 26:25
assumption [1] - 3:14
assure [1] - 33:14
attachments [2] - 3:2, 3:4
Attorney [1] - 1:18
attorney's [2] - 13:2, 34:1
attorneys [2] - 11:19, 25:8
Attorneys [1] - 1:15
ATTORNEYS' [1] - 15:9
attorneys' [10] - 11:9, 13:8, 15:20, 15:24, 25:3, 25:23, 26:8, 26:14, 27:1, 27:8
August [2] - 3:10, 3:12
automatically [2] - 15:9, 15:14
avoid [2] - 20:15, 33:21
aware [3] - 2:14, 8:25, 39:8

**B**

b) [2] - 13:17, 34:14
Bag [2] - 9:14, 12:8
balance [4] - 12:19, 12:20, 12:25, 25:25
balancing [1] - 15:1
BALDWIN [1] - 1:2
based [2] - 8:23, 21:10
basis [3] - 7:9, 32:17, 33:5
Bates [3] - 17:20, 17:24, 18:4, 19:22, 19:23
battery [1] - 11:14
become [1] - 7:8
becomes [5] - 10:10, 25:17, 28:21, 30:11, 39:23
BEFORE [1] - 1:2
beginning [3] - 16:16, 24:22, 35:23
behalf [2] - 2:7, 2:8
best [2] - 13:14, 26:1
better [2] - 10:14, 20:3
between [3] - 4:10, 16:14, 24:15
beyond [2] - 4:2, 27:12
bit [8] - 4:5, 6:12, 6:17, 15:15, 24:21, 25:15, 27:17, 34:1
blanket [1] - 18:9
breach [2] - 8:18,

24:25
briefly [2] - 29:6, 32:3
brings [4] - 5:17, 9:10, 13:16, 20:20
broad [1] - 20:10
broadly [1] - 19:11
brought [3] - 8:23, 16:16, 30:10
Brown [2] - 9:14, 12:8

**C**

calendar [1] - 40:24
calendars [1] - 40:10
California [1] - 1:15
captures [1] - 14:16
CARLA [1] - 1:2
CARRY [1] - 1:2
cars [1] - 11:24
CASE [1] - 1:11
case [36] - 2:4, 2:5, 2:13, 2:15, 3:3, 3:5, 3:8, 4:13, 9:4, 9:13, 9:14, 9:15, 10:15, 11:11, 12:10, 12:11, 12:16, 13:24, 23:14, 23:18, 23:24, 24:18, 26:12, 26:21, 30:10, 34:18, 35:4, 36:1, 36:16, 37:6, 37:13, 37:14, 37:19, 38:21, 40:6
cases [3] - 12:19, 14:15, 14:17
caused [1] - 26:24
causing [3] - 12:3, 20:13, 31:25
caveat [1] - 15:19
CCR [2] - 1:22, 41:23
cellphones [1] - 25:10
certain [1] - 15:22
certainly [10] - 5:24, 6:2, 11:1, 18:23, 19:14, 21:6, 30:4, 35:23, 37:11, 41:15
certify [1] - 41:21
challenge [2] - 13:9, 34:20
chambers [2] - 20:24, 25:18
chance [1] - 36:12
change [1] - 15:23
changed [1] - 27:7
changes [2] - 9:21, 35:14
changing [1] - 30:21
chat [1] - 36:25
check [1] - 40:10
Circuit [3] - 9:14, 12:18, 12:21

2

circumstances [3] - 15:22, 23:19, 26:1
Civil [1] - 10:1
claims [1] - 37:24
clarify [2] - 18:15, 29:8
clarifying [1] - 29:20
clear [8] - 3:13, 19:22, 20:7, 20:11, 32:5, 35:13, 35:17, 38:9
CLERK [3] - 2:4, 40:5, 40:9
clerk's [3] - 30:20, 31:16, 34:7
client [2] - 12:12, 25:20
client's [1] - 26:19
close [1] - 3:21
comfortable [2] - 14:22, 22:18
commercially [1] - 11:12
communications [2] - 8:14, 8:19
company [1] - 12:11
complaint [3] - 2:23, 6:24, 37:23
complaints [1] - 7:2
completely [1] - 14:23
complex [2] - 8:11, 9:7
complexity [2] - 34:1, 37:13
comply [4] - 27:19, 30:3, 30:24, 34:4
complying [2] - 31:16, 33:10
compromise [1] - 29:24
compromising [1] - 16:7
concern [13] - 5:18, 6:8, 6:21, 7:21, 8:16, 13:5, 17:1, 18:7, 28:3, 28:4, 30:17, 34:6, 34:12
concerned [4] - 6:12, 6:17, 11:20, 12:4
concerning [2] - 15:12, 15:16
concerns [14] - 8:13, 10:8, 15:4, 16:1, 22:25, 23:22, 23:23, 24:5, 24:9, 26:11, 26:24, 27:5, 27:15, 35:9
concession [1] - 29:18
concordance [2] - 6:11, 7:15
conduct [2] - 23:13,

23:20
confer [1] - 20:22
conference [15] - 2:5, 26:12, 35:21, 36:4, 36:8, 36:15, 37:14, 37:19, 38:11, 38:21, 38:23, 39:3, 39:4, 40:7, 41:5
CONFERENCE [1] - 1:11
conferences [1] - 37:7
confident [1] - 21:13
confidential [28] - 4:7, 4:11, 11:3, 15:24, 17:3, 17:15, 17:17, 17:18, 18:4, 19:8, 19:12, 19:25, 20:3, 20:4, 21:19, 21:20, 22:1, 22:4, 27:4, 27:8, 27:10, 27:13, 29:14, 31:4, 32:8, 32:12
confidentiality [2] - 11:5, 18:9
confidentially [1] - 13:3
confusion [2] - 34:5, 35:5
conservatively [1] - 26:8
consider [2] - 19:2, 31:4
considering [2] - 5:5, 5:13
consultant [1] - 28:6
consultants [3] - 28:24, 29:8, 29:13
contact [1] - 41:4
contains [1] - 21:17
contemplates [1] - 10:3
contemporaneous [2] - 32:9, 33:2
contempt [1] - 24:23
continue [2] - 23:9, 39:21
continued [1] - 6:7
control [2] - 14:20, 22:21
copies [1] - 25:9
copy [1] - 41:10
corporation [2] - 1:4, 16:17
correct [5] - 11:7, 11:17, 19:10, 25:5, 41:21
costs [2] - 35:25, 36:1
counsel [27] - 4:10, 8:6, 8:22, 9:17, 10:11, 10:17, 11:4,

11:22, 11:25, 12:10, 12:12, 12:13, 12:21, 12:23, 12:25, 13:24, 14:20, 14:24, 15:19, 15:20, 17:22, 29:9, 33:14, 36:21, 36:24, 38:5
counterclaim [2] - 6:24, 23:6
counterclaims [1] - 3:1
country [2] - 23:10, 23:13
course [3] - 3:3, 15:19, 18:18
Court [17] - 23:20, 26:15, 27:16, 31:15, 33:2, 33:4, 34:16, 35:7, 36:7, 38:11, 38:12, 39:8, 39:18, 40:3, 40:23, 41:4
court [7] - 26:4, 30:5, 30:23, 31:3, 31:7, 32:1, 35:4
COURT [67] - 1:1, 2:10, 3:19, 3:25, 4:8, 4:14, 4:18, 5:2, 5:4, 5:9, 5:17, 7:18, 7:21, 8:4, 8:9, 11:7, 13:12, 14:10, 16:2, 16:9, 16:23, 17:6, 17:10, 17:13, 17:21, 17:25, 18:6, 18:20, 19:5, 19:9, 19:15, 19:24, 20:1, 20:6, 21:1, 21:3, 21:7, 21:15, 22:10, 22:13, 22:17, 23:21, 26:10, 27:7, 27:25, 29:11, 29:19, 29:23, 32:17, 33:18, 33:22, 35:12, 35:18, 37:2, 37:4, 38:7, 38:13, 39:11, 39:15, 39:24, 40:6, 40:10, 40:16, 40:19, 40:24, 41:2, 41:17
Court's [3] - 12:6, 15:25, 27:19
Courts [1] - 33:20
cover [2] - 18:24
create [1] - 33:25
creates [1] - 33:23
creating [1] - 34:12
credit [1] - 11:25
criminal [1] - 24:25
cutoff [1] - 5:21
CV [1] - 19:12
CVs [1] - 28:15

## D

database [1] - 7:23
date [4] - 2:4, 5:19, 40:4, 40:7
dates [4] - 5:22, 6:13, 6:14, 6:16
days [4] - 37:15, 39:1, 39:17, 39:23
deadline [1] - 5:11
deal [4] - 13:21, 28:23, 31:18, 41:6
dealing [1] - 9:16
dealt [1] - 18:14
December [2] - 40:9, 41:4
decision [2] - 38:15
deemed [2] - 15:9, 21:24, 27:4
default [1] - 15:14
defendant [9] - 2:8, 5:14, 10:19, 18:8, 22:18, 24:3, 24:17, 25:22, 27:11
Defendant [1] - 1:8
DEFENDANT [1] - 1:18
defendant's [2] - 17:4, 17:7
defendants [1] - 6:1
defense [11] - 14:24, 17:25, 18:9, 22:13, 22:24, 23:14, 26:3, 28:9, 38:7, 39:12, 40:14
degree [1] - 9:22
Delaware [2] - 1:4, 16:17
delete [2] - 12:1, 19:21
deleted [1] - 29:5
deleting [2] - 19:2, 19:17
deletion [1] - 16:17
delineated [1] - 7:5
deny [1] - 33:4
denying [1] - 12:15
deposition [1] - 15:8
depositions [3] - 5:5, 5:8, 5:15
derivative [1] - 20:9
derived [2] - 20:2, 20:7
designate [5] - 13:6, 13:8, 17:18, 25:3, 28:12
designated [14] - 4:7, 4:11, 10:6, 11:3, 11:9, 13:3, 17:14, 17:20, 19:22, 21:22, 27:13, 32:7, 32:12,

34:10
designated... [1] - 15:11
designating [3] - 17:3, 18:4, 20:4
designation [6] - 11:5, 13:8, 13:11, 26:9, 26:13, 27:1
detail [1] - 20:12
detailed [1] - 7:7
differences [1] - 16:13
different [7] - 5:25, 12:10, 16:24, 22:23, 24:21, 27:18, 35:13
difficult [3] - 8:11, 25:25, 26:20
digital [1] - 41:21
direct [1] - 13:12
directly [1] - 9:16
dis [1] - 4:23
disclose [2] - 11:21, 29:13
disclosed [6] - 4:5, 10:21, 10:23, 15:8, 24:4, 24:6
disclosing [2] - 24:17, 32:20
disclosure [1] - 12:19, 15:15
disclosures [3] - 3:12, 4:1, 4:3
discovery [21] - 2:21, 4:2, 4:13, 4:21, 5:18, 5:20, 6:9, 7:1, 7:11, 9:5, 9:20, 10:9, 10:22, 35:23, 37:11, 37:17, 37:20, 37:23, 38:10, 38:14, 38:19
discovery-related [1] - 37:20
discuss [2] - 9:11, 36:12
Discussion [1] - 41:1
discussions [1] - 5:7
disputes [2] - 7:11, 38:10
distinctions [1] - 16:13
District [1] - 35:6
DISTRICT [2] - 1:1, 1:1
docket [5] - 2:23, 2:25, 3:1, 3:3, 3:9
document [4] - 4:2, 4:15, 17:15, 18:18
documentary [1] - 4:6
documents [7] - 11:24, 17:23, 17:24, 18:11, 18:19, 19:22, 20:8
done [8] - 5:3, 9:23,

3

11:15, 17:22, 24:9,
25:7, 34:20, 41:12
**doubt** [1] - 23:8
**download** [1] - 14:1
**drafted** [1] - 30:25
**driven** [1] - 5:11
**due** [1] - 3:12
**duplicate** [2] - 25:11,
25:14
**during** [3] - 11:21,
15:8, 35:3

**E**

**e-mail** [1] - 20:23
**early** [2] - 36:7, 36:17
**easier** [1] - 16:13
**echo** [1] - 8:5
**effort** [1] - 38:2
**either** [1] - 41:5
**electronic** [2] - 6:9,
14:7
**emanates** [1] - 23:25
**emergency** [1] - 39:1
**employers** [1] - 28:16
**encouraged** [1] -
11:25
**end** [11] - 2:17, 7:11,
14:20, 14:21, 16:22,
21:9, 22:21, 24:13,
29:24, 34:18, 37:13
**ended** [2] - 14:17,
20:10
**ends** [1] - 20:13
**enforce** [1] - 34:25
**ensure** [2] - 33:10,
35:5
**entered** [3] - 4:12,
33:11, 40:2
**entirely** [2] - 25:15,
34:2
**entirety** [1] - 19:21
**entitled** [1] - 41:22
**entity** [1] - 12:16
**entry** [1] - 4:12
**error** [3] - 16:19,
16:20, 16:21
**ESI** [1] - 7:1
**especially** [4] - 6:3,
12:5, 15:12, 33:23
**essentially** [3] - 12:12,
23:8, 24:12
**events** [2] - 19:19,
23:7
**evidence** [1] - 4:6
**exact** [1] - 23:7
**exactly** [4] - 10:24,
12:24, 13:23, 14:16
**example** [1] - 32:6
**exception** [7] - 26:5,

27:6, 27:10, 27:22,
29:8, 29:10, 29:16
**exchanged** [3] - 3:18,
4:15, 4:23
**exclude** [1] - 9:20
**excluded** [1] - 14:23
**Exhibit** [2] - 13:14,
13:15
**expectation** [2] -
25:22, 31:7
**expectations** [1] -
30:21
**expected** [1] - 20:18
**expensive** [1] - 6:18
**expert** [4] - 12:25,
19:11, 25:8, 28:2
**experts** [1] - 12:22
**explain** [1] - 30:9
**explaining** [1] - 30:7
**extension** [1] - 2:24
**extensive** [1] - 9:23
**extent** [7] - 25:3,
31:22, 35:2, 38:10,
38:17, 39:2, 40:20
**extortion** [1] - 14:18
**extremely** [2] - 21:18,
21:25
**eyes** [10] - 11:9, 13:2,
13:8, 15:20, 15:24,
25:3, 26:8, 26:14,
27:1, 27:8
**EYES** [1] - 15:10

**F**

**FaceTime** [1] - 14:12
**fact** [5] - 10:3, 10:23,
11:17, 12:1, 34:9
**fair** [1] - 23:12
**familiar** [2] - 3:5
**family** [1] - 23:11
**favorably** [1] - 26:15
**FCRR** [2] - 1:22, 41:23
**fears** [2] - 23:4, 23:11
**Federal** [1] - 10:1
**fees** [1] - 34:1
**Few** [1] - 22:2
**figure** [1] - 20:24
**file** [13] - 30:19, 31:5,
32:9, 32:23, 33:1,
33:14, 34:7, 36:10,
37:19, 38:23, 39:2,
39:25, 41:7
**filed** [8] - 3:9, 11:21,
31:8, 31:9, 31:15,
33:2, 33:20, 34:7
**filing** [9] - 30:14,
31:11, 31:14, 32:6,
32:11, 32:15, 32:25,
36:12, 38:2

**fine** [3] - 18:15, 21:3,
40:12
**first** [5] - 2:14, 4:17,
10:18, 16:11, 32:25
**First** [1] - 33:12
**Fischbach** [1] - 2:9
**FISCHBACH** [30] -
1:18, 4:4, 5:1, 5:10,
7:20, 8:1, 16:4, 18:2,
19:1, 19:7, 19:10,
19:16, 20:21, 21:2,
22:15, 23:2, 26:6,
26:23, 27:23, 32:2,
33:19, 35:11, 35:17,
37:3, 38:8, 39:13,
40:14, 40:18, 40:20,
41:15
**fixed** [1] - 17:8
**fled** [1] - 23:10
**flout** [1] - 12:6
**fly** [1] - 27:2
**FOR** [2] - 1:14, 1:18
**foregoing** [1] - 41:21
**form** [1] - 4:6
**format** [2] - 7:19, 14:7
**formats** [1] - 6:11
**forms** [1] - 4:5
**forward** [5] - 2:20, 7:9,
10:14, 31:17, 37:11
**frames** [1] - 37:25
**frank** [1] - 30:12
**frankly** [2] - 24:24,
28:25
**free** [1] - 3:20
**front** [1] - 16:16
**future** [1] - 20:16

**G**

**gathered** [1] - 6:16
**general** [3] - 5:18,
36:1, 36:22
**generally** [1] - 36:5
**generated** [1] - 11:15
**given** [1] - 18:2
**glaring** [1] - 8:15
**going-forward** [1] -
7:9
**govern** [1] - 4:12
**grant** [1] - 14:11
**grave** [1] - 23:23
**great** [1] - 5:4
**Griener** [3] - 1:22,
41:23, 41:23
**guess** [7] - 5:17, 8:16,
10:17, 20:1, 21:21,
29:20, 40:1
**guys** [3] - 2:20, 6:6,
37:10

**H**

**half** [1] - 12:2
**handing** [1] - 11:18
**handle** [1] - 10:14
**happy** [4] - 21:11,
23:2, 28:22, 36:4
**harder** [2] - 14:24,
36:18
**harm** [1] - 12:3
**hear** [4] - 6:4, 6:6,
22:23, 24:11
**heard** [1] - 32:2
**hearing** [4] - 2:22,
3:20, 28:22, 36:11
**heart** [1] - 9:10
**held** [3] - 4:13, 24:23,
41:1
**helpful** [1] - 23:1
**hereby** [1] - 20:3
**hiccups** [1] - 37:18
**high** [1] - 14:18
**hire** [1] - 19:11
**hold** [1] - 40:25
**honest** [3] - 7:6, 28:2,
37:8
**Honor** [26] - 3:24, 4:4,
4:9, 5:1, 5:8, 8:6,
11:1, 12:9, 13:10,
16:21, 17:9, 18:16,
21:14, 22:9, 29:6,
33:17, 35:10, 35:16,
38:6, 39:9, 39:19,
40:5, 40:13, 41:14,
41:15, 41:19
**HONORABLE** [1] - 1:2
**hopeful** [1] - 13:23
**hopefully** [1] - 2:19
**house** [6] - 8:21, 9:17,
12:10, 12:11, 12:13,
12:23

**I**

**idea** [4] - 14:23, 22:18,
23:23, 23:25
**identifying** [1] - 17:24
**III** [1] - 1:18
**immediate** [4] - 9:9,
38:15, 38:20, 38:23
**immediately** [2] -
6:20, 7:4
**impose** [2] - 7:3, 29:4,
36:6
**imposed** [1] - 18:9
**impression** [1] - 6:5
**in-house** [6] - 8:21,
9:17, 12:10, 12:11,
12:13, 12:23
**INC** [1] - 1:4

**inclination** [1] - 37:5
**inclined** [2] - 14:11,
14:19
**include** [1] - 5:14
**includes** [1] - 32:7
**including** [2] - 11:13,
11:23
**inclusion** [1] - 16:18
**Incorporated** [1] - 2:6
**independent** [2] -
9:23, 18:23
**indicate** [3] - 13:18,
18:11, 34:15
**indicated** [4] - 22:17,
24:8, 28:22, 37:9
**indication** [1] - 15:7
**individual** [4] - 1:7,
5:14, 12:17, 16:18
**individuals** [1] - 30:3
**information** [25] -
3:22, 4:5, 11:2,
11:17, 11:18, 11:21,
11:23, 12:3, 12:16,
13:20, 15:8, 17:3,
17:16, 17:17, 18:23,
18:25, 21:18, 21:23,
23:6, 24:4, 25:1,
26:19, 30:15, 32:20
**initial** [3] - 3:12, 3:25,
4:2
**input** [1] - 19:17
**insert** [1] - 19:23
**instances** [1] - 32:6
**instead** [1] - 29:2
**intend** [1] - 5:6
**intending** [1] - 19:13
**intention** [1] - 18:13
**interested** [2] - 36:3,
36:8, 36:23
**interests** [1] - 15:1
**interim** [1] - 4:10
**internal** [2] - 8:19,
11:24
**internally** [2] - 30:22,
31:25
**interrogatories** [2] -
4:16, 4:24
**involved** [1] - 26:17
**iron** [1] - 40:22
**issue** [21] - 4:20, 7:15,
8:13, 9:3, 9:16, 10:4,
10:10, 11:5, 12:20,
13:20, 13:22, 14:5,
15:17, 16:8, 16:11,
17:25, 18:17, 26:3,
29:21, 32:14, 39:22
**issues** [25] - 2:18, 3:6,
3:15, 7:1, 8:3, 8:8,
8:15, 8:17, 8:21,
8:25, 9:7, 9:8, 10:19,

4

11:14, 25:6, 33:12, 33:24, 34:11, 36:1, 37:17, 37:20, 38:19, 41:3, 41:11
**itself** [5] - 12:22, 14:1, 20:16, 24:16, 30:2

## J

**joint** [1] - 9:5
**JUDGE** [1] - 1:2
**judge** [2] - 8:1, 30:9
**Judge** [22] - 5:10, 7:20, 16:5, 16:8, 18:3, 19:1, 19:10, 20:21, 22:15, 23:2, 26:6, 26:23, 27:23, 32:2, 33:19, 35:11, 35:17, 37:3, 38:8, 39:13, 40:15, 40:18
**July** [1] - 5:19
**jurisdiction** [4] - 27:16, 34:16, 34:17, 34:21
**jurisdictional** [1] - 35:6
**jurisdictionally** [1] - 34:22

## K

**keep** [1] - 29:14
**kept** [2] - 31:6, 32:14
**kind** [12] - 6:15, 6:20, 10:13, 13:14, 16:5, 18:14, 20:18, 20:24, 26:24, 27:6, 29:20, 38:10
**knowing** [1] - 12:6
**knowledge** [1] - 2:14

## L

**language** [7] - 20:23, 21:4, 21:14, 21:21, 21:25, 22:6, 22:12
**LAREN** [1] - 1:14
**last** [6] - 4:17, 34:15, 35:1, 35:13, 35:19, 35:20
**Law** [2] - 1:15, 1:18
**lawsuit** [3] - 11:21, 11:22, 16:24
**least** [1] - 10:15
**leave** [3] - 6:19, 36:10, 36:19
**legal** [1] - 12:25
**legitimate** [1] - 24:5
**letter** [1] - 17:23
**level** [2] - 2:15, 14:18

**liberally** [2] - 26:7, 26:18
**Libeu** [1] - 2:7
**LIBEU** [44] - 1:14, 3:17, 3:24, 4:9, 4:15, 5:3, 5:7, 7:17, 7:19, 8:5, 11:1, 11:8, 13:23, 15:18, 16:20, 17:5, 17:8, 17:11, 17:14, 17:22, 18:16, 18:21, 19:6, 19:14, 19:20, 19:25, 20:5, 21:6, 21:13, 22:8, 22:11, 29:6, 29:12, 29:22, 33:16, 35:10, 35:16, 36:22, 38:6, 39:9, 39:19, 40:12, 41:14, 41:19
**Libeu's** [1] - 19:17
**likely** [1] - 5:20
**limitation** [1] - 6:21
**limitations** [3] - 6:13, 7:3, 7:8
**limited** [5] - 10:5, 10:16, 13:2, 13:4, 25:23
**limiting** [2] - 10:8, 15:13
**line** [6] - 15:5, 21:17, 34:15, 34:23, 35:1
**lines** [3] - 21:14, 22:12, 34:15
**litigate** [1] - 26:21
**litigation** [13] - 8:12, 9:18, 20:14, 20:15, 20:19, 24:22, 26:16, 27:17, 28:10, 29:17, 34:18, 35:3, 35:23
**living** [2] - 23:3, 23:4
**local** [7] - 30:19, 30:20, 30:24, 31:20, 31:21, 32:3, 32:8
**location** [1] - 23:7
**long-term** [1] - 35:5
**look** [4] - 9:20, 30:21, 33:8, 40:24
**looked** [1] - 26:15
**looking** [3] - 5:22, 6:2, 14:3
**looks** [1] - 28:9
**Los** [1] - 1:15

## M

**MAGISTRATE** [1] - 1:2
**mail** [1] - 20:23
**main** [1] - 28:3
**maintain** [1] - 34:21
**major** [1] - 9:3
**MANAGEMENT** [1] -

1:11
**management** [7] - 2:5, 2:13, 2:16, 3:3, 3:8, 3:7:6, 38:21
**manufacturing** [1] - 11:14
**Margaret** [1] - 1:22, 41:23
**Martin** [1] - 2:6
**MARTIN** [1] - 1:7
**massage** [1] - 30:18, 32:4
**material** [4] - 14:3, 15:2, 31:14, 32:7
**materials** [17] - 11:9, 11:10, 11:12, 12:22, 13:1, 13:2, 13:4, 13:6, 13:7, 14:6, 14:23, 15:14, 15:21, 17:14, 22:19, 27:11
**matter** [1] - 41:22
**mean** [6] - 16:2, 18:5, 21:21, 22:2, 24:24, 30:4
**means** [1] - 27:1
**meant** [4] - 17:19, 18:21, 18:24
**mechanism** [7] - 10:2, 13:6, 13:9, 24:10, 25:12, 26:4, 31:20
**mechanisms** [1] - 24:16
**medium** [3] - 22:20, 24:15
**meet** [1] - 20:22
**Men** [1] - 22:2
**merit** [1] - 13:8
**metadata** [1] - 6:12
**metaformats** [1] - 6:11
**microphones** [1] - 3:21
**might** [3] - 5:22, 27:15, 32:15
**minute** [1] - 40:11
**modifications** [1] - 35:13
**modified** [3] - 31:21, 35:2, 38:1
**MONDAY** [1] - 2:1
**Monday** [1] - 40:9
**money** [1] - 39:4
**monthly** [1] - 37:6
**morning** [3] - 2:10, 39:14, 41:6
**most** [1] - 15:14
**motion** [14] - 31:5, 31:8, 31:10, 31:14, 31:18, 32:9, 32:11, 32:15, 32:18, 32:23, 33:5, 33:10, 34:6

**motions** [2] - 37:20, 38:12
**move** [7] - 2:20, 3:20, 10:14, 16:25, 31:17, 35:15, 38:23
**moves** [1] - 30:14
**movie** [1] - 22:2
**moving** [3] - 21:15, 23:12, 37:11
**MR** [29] - 4:4, 5:1, 5:10, 7:20, 8:1, 16:4, 18:2, 19:1, 19:7, 19:10, 19:16, 20:21, 21:2, 22:15, 23:2, 26:6, 26:23, 27:23, 32:2, 33:19, 35:11, 35:17, 37:3, 38:8, 39:13, 40:14, 40:18, 40:20, 41:15
**MS** [43] - 3:17, 3:24, 4:9, 4:15, 5:3, 5:7, 7:17, 7:19, 8:5, 11:1, 11:8, 13:23, 15:18, 16:20, 17:5, 17:8, 17:11, 17:14, 17:22, 18:16, 18:21, 19:6, 19:14, 19:20, 19:25, 20:5, 21:6, 21:13, 22:8, 22:11, 29:6, 29:12, 29:22, 33:16, 35:10, 35:16, 36:22, 38:6, 39:9, 39:19, 40:12, 41:14, 41:19
**Musk** [1] - 5:14

## N

**narrow** [1] - 21:5
**nature** [3] - 6:22, 20:6, 35:24
**necessarily** [2] - 9:17, 31:4
**necessary** [2] - 30:12, 34:3
**need** [16] - 3:22, 3:23, 7:12, 9:11, 25:6, 27:11, 28:5, 29:5, 31:21, 34:4, 35:2, 38:1, 38:15, 39:8, 40:10, 41:5
**needed** [2] - 25:16, 26:5
**needing** [1] - 10:24
**needs** [5] - 25:4, 30:24, 31:13, 31:19, 37:18
**NEVADA** [2] - 1:1, 2:1
**Nevada** [3] - 1:7, 1:23, 35:7
**new** [2] - 11:18, 39:17

**next** [5] - 8:13, 17:1, 28:1, 37:16, 38:11
**Ninth** [3] - 9:14, 12:18, 12:20
**nits** [1] - 40:22
**nothing** [4] - 6:5, 39:9, 39:13, 40:2
**notice** [2] - 19:8, 29:4
**notices** [1] - 28:2
**number** [8] - 2:5, 2:23, 2:25, 17:20, 17:24, 18:4, 19:23
**numbers** [1] - 11:24

## O

**object** [1] - 22:2
**objection** [5] - 22:3, 22:6, 38:4, 38:6, 38:8
**obligations** [1] - 35:6
**observations** [1] - 8:24
**obvious** [1] - 10:18
**obviously** [8] - 6:14, 10:2, 13:6, 17:16, 19:17, 30:18, 35:22, 38:18
**October** [3] - 1:6, 40:5, 41:4
**OCTOBER** [1] - 2:1
**OF** [2] - 1:1, 1:11
**office** [6] - 23:16, 23:17, 25:7, 30:20, 31:16, 34:7
**officers** [1] - 5:15
**offices** [1] - 25:23
**Official** [1] - 1:22, 41:24
**once** [1] - 34:18
**one** [23] - 4:25, 6:8, 9:14, 10:15, 12:8, 13:15, 14:17, 14:20, 20:1, 20:15, 21:16, 23:5, 26:11, 28:14, 31:19, 36:16, 37:14, 37:15, 37:16, 38:22, 40:18, 40:21, 40:25
**onerous** [3] - 6:17, 25:15, 26:17
**ones** [1] - 30:6
**ongoing** [1] - 18:7
**online** [3] - 12:3, 22:19, 24:10
**ONLY'** [1] - 15:10
**open** [2] - 20:10, 36:23
**open-ended** [1] - 20:10
**operates** [1] - 31:21

5

**opposed** [3] - 20:10, 38:12, 38:24
**opposing** [3] - 29:9, 33:6, 33:14
**order** [40] - 2:18, 2:24, 2:25, 3:2, 3:15, 4:12, 4:13, 4:20, 5:20, 6:6, 9:11, 9:12, 11:6, 13:7, 20:13, 20:14, 20:16, 24:15, 24:19, 24:20, 27:14, 28:19, 30:2, 30:11, 31:5, 32:19, 33:11, 34:19, 34:25, 35:7, 37:25, 39:16, 39:18, 39:24, 39:25, 40:1, 40:3, 40:21, 41:3
**orders** [4] - 12:6, 27:19, 30:7, 34:22
**original** [2] - 2:25, 29:9
**otherwise** [1] - 25:11
**ought** [1] - 32:13
**outside** [4] - 8:22, 10:6, 12:21, 27:15
**overall** [1] - 30:11
**overcome** [1] - 19:18
**overinclusive** [1] - 15:15
**overseas** [11] - 13:18, 13:20, 13:21, 13:25, 14:3, 14:4, 14:7, 14:9, 14:25, 23:19, 27:9
**own** [5] - 18:11, 18:18, 18:23, 23:14, 23:19

**P**

**papering** [1] - 38:12
**paragraph** [18] - 3:7, 3:8, 3:9, 13:17, 13:19, 15:4, 17:19, 18:5, 19:3, 19:18, 19:21, 20:20, 21:15, 21:17, 30:15, 34:14, 34:24
**parameters** [4] - 6:15, 7:12, 9:12, 9:25
**part** [3] - 5:10, 6:9, 14:5
**participate** [1] - 23:14
**particular** [9] - 11:20, 13:19, 15:5, 15:18, 15:25, 21:16, 24:3, 27:22, 30:16
**parties** [22] - 4:23, 6:19, 6:23, 7:14, 10:24, 16:14, 19:13, 20:22, 22:6, 25:25,

28:11, 31:2, 31:23, 35:22, 36:3, 36:5, 36:8, 36:14, 36:19, 39:25, 40:8, 41:3
**parties'** [3] - 12:15, 15:1, 18:11
**party** [13] - 9:17, 9:19, 10:9, 10:16, 12:12, 12:13, 12:15, 12:22, 14:18, 27:17, 31:13, 32:23, 33:6
**pendency** [1] - 35:3
**pending** [1] - 35:4
**people** [7] - 7:22, 8:24, 28:12, 28:24, 29:1, 37:19, 41:7
**people's** [1] - 28:15
**perfect** [7] - 4:18, 8:4, 16:9, 35:18, 37:4, 40:16, 41:17
**period** [1] - 31:12
**person** [2] - 10:10, 25:24
**perspective** [5] - 7:10, 15:16, 28:8, 32:22, 34:3
**Phoenix** [1] - 1:19
**phone** [1] - 41:8
**photograph** [1] - 25:11
**photos** [1] - 14:2
**phrase** [2] - 32:22, 33:9
**phrased** [1] - 15:5
**physically** [1] - 25:13
**pick** [1] - 3:21
**piece** [1] - 8:11
**placed** [1] - 7:12
**plaintiff** [7] - 1:5, 2:7, 17:2, 24:3, 24:17, 39:7, 40:12
**PLAINTIFF** [1] - 1:14
**plaintiff's** [7] - 20:2, 20:4, 20:7, 20:9, 24:4, 36:20, 38:5
**plan** [1] - 21:8
**pleadings** [2] - 5:12, 5:25
**pleased** [5] - 6:4, 6:6, 7:6, 20:17, 37:9
**plus** [2] - 8:2
**point** [27] - 4:2, 4:20, 4:22, 4:25, 5:4, 6:25, 7:3, 9:16, 12:9, 14:12, 18:5, 19:2, 19:4, 19:18, 22:8, 23:1, 24:2, 24:22, 25:4, 27:20, 28:15, 29:12, 29:15, 33:4, 37:21, 39:6, 39:23

**point's** [1] - 23:24
**points** [2] - 13:16, 40:21
**position** [6] - 23:20, 23:22, 24:7, 25:21, 27:18, 32:11
**posses** [1] - 18:22
**possession** [4] - 17:4, 17:7, 17:12, 18:19
**possible** [1] - 33:21
**potential** [1] - 8:25
**practice** [1] - 36:22
**precludes** [1] - 27:3
**prefer** [1] - 38:13
**preference** [1] - 40:22
**prepare** [2] - 21:9, 26:3
**prepared** [1] - 9:1
**preparing** [1] - 31:11
**prepping** [1] - 13:13
**presence** [2] - 25:8, 25:24
**present** [2] - 2:7, 2:8
**pretty** [1] - 9:23
**prevent** [5] - 14:8, 14:20, 24:12, 24:16, 25:16
**privacy** [2] - 23:11
**privilege** [3] - 8:17, 8:21, 9:8
**privileged** [1] - 8:14
**problem** [6] - 25:17, 28:21, 30:11, 30:19, 31:7, 34:9
**problematic** [2] - 7:8, 30:22
**problems** [2] - 7:25, 31:25
**Procedure** [1] - 10:2
**proceed** [1] - 39:5
**proceedings** [2] - 24:25, 41:21
**process** [3] - 11:14, 38:3
**produced** [2] - 17:12, 17:15
**producing** [1] - 11:11
**production** [1] - 4:24
**professional** [1] - 8:6
**professionalism** [1] - 8:2
**prohibited** [2] - 18:12, 38:18
**prohibits** [1] - 25:9
**prompted** [1] - 23:19
**properly** [1] - 34:10
**property** [2] - 20:4, 20:7
**proposed** [2] - 20:23, 21:14

**proprietary** [1] - 11:13
**protect** [1] - 10:24
**protected** [3] - 30:14, 31:14, 32:18
**protecting** [1] - 15:2, 26:19
**protections** [2] - 28:18, 30:2
**protective** [34] - 2:18, 3:15, 4:11, 4:13, 4:20, 6:6, 9:11, 9:12, 11:6, 13:7, 20:13, 20:14, 20:16, 24:15, 24:19, 27:14, 28:19, 30:2, 30:6, 30:10, 31:5, 32:18, 32:19, 33:11, 34:19, 34:22, 35:7, 39:16, 39:18, 40:1, 40:3, 40:21, 41:3
**proved** [1] - 24:1
**provide** [1] - 25:6
**provided** [6] - 3:14, 3:16, 3:17, 9:13, 15:21, 33:5
**provides** [1] - 24:16
**providing** [2] - 16:12, 30:6
**provision** [10] - 14:8, 15:18, 15:20, 15:21, 15:25, 17:2, 26:2, 27:10, 27:22, 29:9
**provisions** [1] - 18:10
**public** [1] - 32:13
**publicity** [1] - 36:1
**pull** [1] - 3:11
**punish** [1] - 23:12
**purposes** [3] - 2:22, 3:19, 39:24
**pursuant** [1] - 21:22
**put** [4] - 29:16, 36:6, 39:7, 40:1
**puts** [1] - 27:17

**Q**

**questions** [3] - 10:12, 13:15, 35:8
**quite** [4] - 4:5, 7:6, 24:23, 28:25
**quote** [1] - 21:18

**R**

**raise** [2] - 9:6, 35:9
**raised** [1] - 29:12
**rather** [5] - 36:4, 36:17, 36:25, 37:19, 41:6
**re** [1] - 21:9

**re-prepare** [1] - 21:9
**read** [5] - 9:5, 9:13, 19:11, 26:12, 31:10
**really** [17] - 2:17, 9:10, 10:11, 13:13, 22:3, 25:6, 28:1, 28:4, 28:9, 29:23, 29:25, 32:12, 32:15, 33:10, 33:14
**realm** [1] - 6:23
**reason** [3] - 14:6, 29:17, 39:23
**reasonable** [4] - 12:19, 12:20, 12:25, 26:25
**reasons** [1] - 33:8
**recess** [1] - 41:18
**reconsider** [1] - 23:20
**record** [6] - 3:13, 15:7, 26:22, 35:9, 39:7, 41:1
**recording** [2] - 24:12, 41:21
**redline** [2] - 16:12, 41:10
**reference** [1] - 3:10
**reflective** [1] - 31:20
**reflects** [2] - 21:18, 21:23
**relate** [1] - 11:12
**related** [2] - 8:17, 37:20
**relates** [4] - 6:9, 24:25, 27:18, 35:7
**released** [1] - 8:20
**remain** [1] - 31:12
**remained** [1] - 12:3
**Reno** [2] - 1:7, 1:23
**RENO** [1] - 2:1
**rephrase** [1] - 19:21
**report** [6] - 2:13, 2:16, 3:3, 3:8, 26:12, 40:7
**Reporter** [2] - 1:22, 41:24
**representative** [2] - 12:13, 12:15
**representatives** [1] - 30:5
**represented** [2] - 11:22, 12:23
**request** [3] - 29:8, 31:11, 36:13
**requests** [2] - 4:16, 4:24
**require** [3] - 28:6, 28:12, 29:1
**required** [2] - 29:13, 32:8
**requirement** [1] - 32:23

6

**requirements** [5] - 27:19, 29:5, 30:18, 30:22, 35:6
**requires** [1] - 32:25
**requiring** [1] - 37:19
**research** [1] - 9:24
**resolution** [1] - 16:7
**resolved** [1] - 2:20
**resourced** [1] - 23:8
**respect** [2] - 7:7, 40:6
**respectfully** [1] - 12:14
**respond** [1] - 22:24
**responsibility** [1] - 34:25
**resulting** [1] - 14:17
**retain** [2] - 34:16, 34:17
**revealed** [1] - 10:5
**review** [4] - 9:20, 13:1, 14:12, 15:21
**reviewed** [2] - 2:14, 2:22
**revisit** [1] - 7:12
**RICHARDS** [1] - 1:14
**Richards** [1] - 2:8
**room** [1] - 30:8
**rule** [14] - 10:3, 21:23, 27:6, 27:22, 30:19, 30:20, 30:25, 31:20, 31:21, 32:3, 32:8, 32:25, 33:23, 34:3
**rules** [1] - 31:16
**Rules** [1] - 10:1
**ruling** [1] - 29:7
**running** [1] - 32:14

### S

**safety** [1] - 23:4
**sanctions** [1] - 24:23
**save** [5] - 38:11, 38:20, 39:3, 39:4
**saving** [1] - 38:2
**scheduling** [5] - 2:25, 3:2, 5:5, 5:20, 37:25
**scope** [4] - 6:13, 9:25, 10:6, 27:15
**scrap** [1] - 11:15
**screen** [2] - 13:25, 14:16
**screen-sharing** [1] - 13:25
**screenshots** [3] - 11:23, 11:24, 14:2
**seal** [19] - 31:6, 31:9, 31:11, 31:12, 31:15, 31:19, 32:9, 32:11, 32:15, 32:18, 32:23, 33:1, 33:3, 33:5,

33:10, 33:20, 34:7, 34:8, 34:10
**sealed** [3] - 32:13, 32:16, 33:7
**sealing** [1] - 33:6
**search** [1] - 6:22
**seated** [1] - 3:20
**second** [2] - 35:20, 40:25
**secrets** [5] - 10:4, 12:19, 21:24, 24:5
**section** [3] - 13:17, 15:4, 16:25, 30:15, 34:14
**sections** [1] - 34:24
**see** [18] - 3:8, 6:8, 8:13, 8:15, 8:20, 8:25, 10:11, 10:13, 12:22, 13:3, 15:3, 15:13, 16:13, 17:1, 25:4, 25:13, 25:19, 36:25
**seeing** [1] - 18:3
**seem** [5] - 8:16, 9:15, 18:13, 29:16, 29:25
**send** [1] - 41:10
**sending** [1] - 27:4
**sense** [8] - 16:5, 29:1, 29:3, 29:23, 29:25, 33:15, 33:16, 38:1
**sensitive** [2] - 11:13, 15:15
**sent** [4] - 13:20, 17:23, 27:9, 27:11
**sentence** [1] - 15:6
**sentences** [1] - 35:1
**separate** [1] - 34:21
**serious** [1] - 25:17
**set** [12] - 2:4, 4:17, 13:2, 26:4, 28:22, 36:4, 36:14, 37:6, 37:15, 37:25, 38:25, 41:5
**settle** [2] - 36:17, 36:18
**settlement** [6] - 35:21, 36:4, 36:7, 36:15, 36:23, 37:22
**seven** [2] - 39:17, 39:23
**several** [1] - 2:12
**shall** [1] - 34:16
**share** [2] - 13:25, 14:6
**sharing** [3] - 13:25, 14:9
**showing** [1] - 11:16
**side** [6] - 4:25, 8:7, 11:5, 14:15, 34:11, 36:24
**sides** [6] - 3:18, 4:15,

5:3, 7:19, 10:12, 16:6
**sign** [3] - 27:14, 28:19, 30:7
**signature** [1] - 40:3
**signs** [1] - 24:18
**simple** [1] - 20:14
**simply** [1] - 6:25
**situation** [6] - 18:17, 24:18, 33:23, 34:12, 37:23, 39:1
**size** [1] - 37:12
**Skype** [1] - 14:12
**slowing** [1] - 4:21
**software** [1] - 14:1
**someone** [2] - 25:8, 36:5
**soon** [1] - 5:23
**sorry** [3] - 16:15, 20:21, 40:18
**sort** [15] - 6:22, 9:1, 9:4, 10:18, 14:25, 18:7, 21:4, 22:19, 24:10, 24:14, 26:5, 28:9, 31:13, 31:23, 36:13
**South** [1] - 1:23
**specific** [3] - 3:4, 22:5, 27:9
**specifically** [4] - 2:19, 20:8, 21:22, 28:12
**stages** [1] - 35:23
**stamping** [1] - 17:23
**stand** [1] - 3:22
**start** [3] - 3:7, 10:17, 35:1
**started** [1] - 5:5
**starting** [1] - 5:18
**statement** [1] - 9:5
**statements** [1] - 8:18
**States** [1] - 25:5
**STATES** [1] - 1:1
**states** [1] - 21:17
**status** [1] - 38:11
**stay** [1] - 3:20
**staying** [1] - 6:23
**step** [1] - 18:3
**Stephen** [1] - 2:8
**STEPHEN** [1] - 1:14
**sticking** [2] - 39:23, 40:21
**still** [4] - 23:15, 23:21, 24:11, 37:25
**stipulated** [3] - 39:18, 39:25, 40:3
**stipulation** [2] - 2:24, 36:14
**Street** [1] - 1:23
**strenuously** [1] - 22:1

**strike** [1] - 12:18
**strikes** [1] - 25:24
**struck** [4] - 6:20, 7:4, 12:21, 21:16
**stuck** [1] - 9:4
**stuff** [1] - 23:17
**subject** [1] - 16:24
**submit** [3] - 12:14, 39:17, 40:23
**submitting** [1] - 31:3
**sufficient** [2] - 25:2, 28:20
**suggest** [4] - 19:2, 19:16, 19:20, 36:24
**suggesting** [1] - 38:9
**suggestion** [2] - 21:4, 22:5
**suit** [1] - 34:21
**summon** [1] - 23:16
**superfluous** [1] - 18:5
**supposed** [3] - 6:15, 14:3, 14:16
**surprised** [1] - 24:24
**swallowing** [3] - 27:6, 27:21, 27:22

### T

**tactic** [2] - 28:10, 29:17
**team** [1] - 12:25
**teleconferencing** [2] - 22:20, 24:10
**telephonic** [1] - 41:5
**telephonically** [1] - 37:16
**term** [1] - 35:5
**terms** [8] - 6:13, 6:22, 8:2, 8:18, 24:19, 30:10, 33:11, 39:16
**TESLA** [1] - 1:4
**Tesla** [19] - 2:6, 4:6, 5:15, 9:14, 11:13, 11:23, 12:3, 17:16, 17:17, 18:24, 18:25, 19:3, 19:22, 23:6, 23:8, 26:8, 26:25, 32:7
**Tesla's** [6] - 10:17, 18:19, 23:13, 23:19, 23:24, 28:14
**testifying** [3] - 28:7, 28:13, 28:14
**THE** [72] - 1:2, 1:14, 1:18, 2:4, 2:10, 3:19, 3:25, 4:8, 4:14, 4:18, 5:2, 5:4, 5:9, 5:17, 7:18, 7:21, 8:4, 8:9, 11:7, 13:12, 14:10, 16:2, 16:9, 16:23,

17:6, 17:10, 17:13, 17:21, 17:25, 18:6, 18:20, 19:5, 19:9, 19:15, 19:24, 20:1, 20:6, 21:1, 21:3, 21:7, 21:15, 22:10, 22:13, 22:17, 23:21, 26:10, 27:7, 27:25, 29:11, 29:19, 29:23, 32:17, 33:18, 33:22, 35:12, 35:18, 37:2, 37:4, 38:7, 38:13, 39:11, 39:15, 39:24, 40:5, 40:6, 40:9, 40:10, 40:16, 40:19, 40:24, 41:2, 41:17
**theoretically** [1] - 27:16
**therefore** [1] - 23:13
**they've** [1] - 17:6
**thinking** [3] - 5:22, 6:2, 37:14
**third** [2] - 10:23, 25:24
**thoughts** [1] - 36:20
**three** [1] - 37:9
**Thursday** [1] - 40:5
**tick** [1] - 5:19
**tighten** [1] - 22:16
**titles** [1] - 28:16
**today** [6] - 2:11, 2:20, 9:11, 21:10, 37:15, 41:12
**together** [5] - 8:10, 21:7, 36:24, 37:11, 39:20
**took** [4] - 11:23, 17:16, 18:25, 32:3
**totally** [3] - 10:6, 30:12, 31:1
**touch** [1] - 12:2
**track** [1] - 37:7
**trade** [5] - 10:4, 12:19, 21:24, 24:5
**Transcribed** [1] - 1:22
**transcript** [1] - 41:21
**TRANSCRIPT** [1] - 1:11
**treat** [1] - 4:10
**trial** [1] - 24:1
**tried** [3] - 30:18, 32:4
**Tripp** [13] - 2:6, 4:4, 11:17, 11:19, 12:1, 12:5, 13:3, 13:24, 17:11, 18:19, 23:3, 27:1, 32:6
**TRIPP** [1] - 1:7
**Tripp's** [2] - 4:16, 15:20
**true** [2] - 7:16, 28:4
**truly** [1] - 26:3

**trying** [6] - 9:19, 9:24, 19:3, 20:15, 31:2, 33:21
**Tuesday** [1] - 41:4
**turn** [1] - 18:8
**turned** [1] - 28:15
**Tweeted** [1] - 11:22
**Tweets** [1] - 12:1
**two** [4] - 6:11, 18:12, 35:1, 40:21
**twofold** [1] - 32:24
**type** [2] - 20:13, 26:14
**types** [1] - 38:19
**typographical** [4] - 16:11, 16:19, 16:20, 16:21

## U

**ultimate** [1] - 13:10
**ultimately** [1] - 27:18
**under** [23] - 6:4, 10:1, 15:3, 15:22, 26:1, 27:3, 30:15, 30:18, 30:20, 31:4, 31:6, 31:9, 31:11, 31:12, 31:15, 32:8, 32:18, 33:1, 33:3, 33:20, 34:7, 34:8, 34:10
**understood** [2] - 29:22
**unfair** [2] - 24:7, 28:11
**unfolding** [1] - 23:7
**unheard** [1] - 10:16
**unilaterally** [2] - 17:3, 34:8
**UNITED** [1] - 1:1
**United** [1] - 25:5
**unknown** [3] - 28:6, 28:23, 29:13
**unless** [2] - 22:6, 22:23
**unnecessary** [1] - 26:21
**unseal** [1] - 34:8
**unusual** [1] - 18:17
**up** [16] - 3:11, 3:21, 3:22, 4:13, 4:21, 7:11, 9:24, 14:17, 16:16, 20:13, 21:8, 22:16, 26:5, 36:5, 37:13, 38:23
**updated** [1] - 39:16

## V

**variety** [1] - 10:12
**version** [3] - 16:12, 30:16, 41:10
**versus** [1] - 2:6

**via** [2] - 14:12, 22:19
**view** [1] - 32:13
**VIN** [1] - 11:24
**violate** [1] - 32:19
**violated** [1] - 30:10
**violations** [1] - 34:19
**Virginia** [1] - 1:23
**vs** [1] - 1:6

## W

**wait** [2] - 38:16, 40:11
**waiting** [1] - 38:24
**walk** [2] - 13:14, 13:15
**walked** [1] - 37:5
**wants** [1] - 30:8
**week** [1] - 4:17
**welcome** [1] - 19:17
**whole** [1] - 23:24
**WILLIAM** [1] - 1:18
**William** [1] - 2:8
**willing** [2] - 15:23, 36:7
**willingness** [1] - 36:25
**witness** [2] - 28:13, 28:14
**works** [3] - 25:20, 38:14, 40:14