**JACKSON LEWIS P.C.**
Joshua A. Sliker, (Nevada Bar No. 12493)
*joshua.sliker@jacksonlewis.com*
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 921-2460
Facsimile: (702) 921-2461

**HUESTON HENNIGAN LLP**
John C. Hueston (*admitted pro hac vice*)
*jhueston@hueston.com*
Robert N. Klieger (*admitted pro hac vice*)
*rklieger@hueston.com*
Allison L. Libeu (*admitted pro hac vice*)
*alibeu@hueston.com*
523 W. 6th St., Suite 400, Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Plaintiff and Counter-Defendant
Tesla, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TESLA, INC., a Delaware corporation, | Case No.:  3:18-cv-00296-LRH-CBC |
| Plaintiff, | |
| v. | **TESLA, INC.'s CASE MANAGEMENT REPORT** |
| MARTIN TRIPP, an individual, | |
| Defendant. | |
| AND RELATED COUNTERCLAIM | |

Pursuant to the Court's order dated October 1, 2018 (ECF No. 42), Plaintiff and Counter-Defendant Tesla, Inc. ("Tesla") hereby submits the following case management report outlining the currently existing discovery disputes between the parties.

1.   **Tripp Should Be Precluded From Exceeding the Presumptive Limit of Ten Depositions**

On November 8 and 26, 2018, Defendant and Counter-Plaintiff Martin Tripp ("Tripp") informed Tesla that he intends to depose an "initial round" of fourteen witnesses and as many as twenty witnesses in total. This violates Rule 30 of the Federal Rules of Civil Procedure, which limits each side to ten depositions without leave of Court. The ten-deposition limit is deemed presumptively reasonable by Rule 30. "A party seeking to exceed the presumptive number of depositions must make a particularized showing of the need for the additional discovery." *Authentec, Inc. v. Atrua Techs., Inc.*, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008). In this case, Tripp has not made a particularized showing of the need for additional depositions. Nor can he for at least two independent reasons.

*First*, this is not a complex action with numerous plaintiffs and defendants. It a typical case involving one plaintiff and one defendant. For that reason, the parties previously agreed there was no need to modify presumptive discovery limitations set by the Federal Rules. (See ECF No. 40 ¶ 9(b) ("The parties do not request changes to the discovery limitations imposed by the Federal Rules of Civil Procedure and LR 26-1(b).")) Tesla itself has noticed only five depositions. There is thus is no basis upon which Tripp can justify the taking of more than ten depositions in this matter.

*Second*, it is impossible for Tripp to make the required showing because he has not taken any depositions to date. "Courts generally do not grant leave to take additional depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2)(A)." *Acosta v. Sw. Fuel Mgmt., Inc.*, 2018 WL 1913772, at *6 (C.D. Cal. Mar. 28, 2018) (quoting *Finazzo v. Hawaiian Airlines*, 2007 WL 1425241, *3 (D. Haw. 2007)). As courts have aptly reasoned, "a party should appropriately exhaust its current quota of depositions, in order to make an informed request for an opportunity to depose more witnesses, before seeking leave to depose a legion of others." *Atrua*, 2008 WL 5120767, at *2 (N.D. Cal. Dec. 4, 2008) (citation omitted). Having not yet taken a

1  single deposition, Tripp cannot possibly demonstrate that there is information he needs that he cannot

2  obtain from his ten permitted depositions.

3     For the foregoing reasons, Tesla respectfully requests that the Court deny Tripp's request to

4  exceed the ten-deposition limit imposed by Rule 30.

5     **2.   Tripp Should Be Required to Appear for Deposition in Nevada**

6     On October 30, 2018, Tesla served a notice that Tesla intended to take Tripp's deposition on

7  November 29, 2018 in Reno, Nevada.  The next day, Tripp's counsel informed Tesla that they were

8  not available on the noticed date.  Tesla agreed to continue Tripp's deposition to a mutually

9  convenient date.  Thereafter, on November 8, 2018, Tripp's counsel informed Tesla that Tripp will

10  only appear for deposition in the United States if Tesla pays his travel expenses.  Otherwise, Tripp

11  will insist upon being deposed in Hungary, where he moved after this lawsuit was filed.  It is

12  unreasonable (and contrary to law) for Tripp to demand that Tesla pay his travel expenses to the

13  United States.  Although Tripp has not sought a protective order to prevent him from being deposed

14  in Nevada, Tesla respectfully submits that the Court should deny any such request if made.

15     "In the absence of a showing of good cause, a plaintiff is required to make [himself] available

16  for a deposition in the district in which the suit was filed."  *Mid-Century Ins. Co. v. Wells*, 2013 WL

17  12321555, at *4 (D. Nev. June 17, 2013) (citing *United States v. Rock Springs Vista Dev.*, 185 F.R.D.

18  603, 604 (D. Nev. 1999)).  This bedrock procedural rule applies with equal force to defendants, like

19  Tripp, who elect to file permissive counterclaims.  *See, e.g.*, *Fortune Mgmt., Inc. v. Bly*, 118 F.R.D.

20  21, 22 (D. Mass. 1987) ("[T]he filing of a permissive counterclaim results in a defendant-

21  counterplaintiff being treated as a party plaintiff for purposes of any depositions.") (citation omitted);

22  *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982) ("Filing a permissive counterclaim thus

23  results in a defendant-counterplaintiff being treated as a party plaintiff for purposes of any

24  depositions.") (citation omitted).  This is the rule in the District of Nevada.  *See, e.g.*, *Rock Springs*,

25  185 F.R.D. at 604 ("[A]bsent extreme hardship, a nonresident plaintiff should appear for his

26  deposition in the chosen forum.") (citation omitted); *cf. Okada v. Eighth Jud. Dist. Ct.*, 359 P.3d

27  1106, 1111 n.5 (Nev. 2015) (applying federal caselaw and holding that "a defendant who files a

28  permissive counterclaim is treated as a plaintiff").

In this case, Tripp elected to file permissive counterclaims. Under Rule 13 of the Federal Rules of Civil Procedure, counterclaims are permissive if they do not "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Here, Tesla's trade secrets claims and its claims for breach of contract and fiduciary duty arise out of Tripp's theft of Tesla's proprietary information. Tripp has asserted counterclaims that do not. In particular, Tripp alleges that Tesla made defamatory statements to law enforcement and the media about a call in which a friend of Tripp told Tesla that Tripp posed a threat to the physical safety of employees at the Gigafactory. (ECF No. 25 ¶¶ 53-63.) Tripp's counterclaims concerning the Gigafactory threat do not arise out of Tripp's theft of Tesla's proprietary information. In fact, the Gigafactory threat and Tesla's alleged statements did not occur until after Tripp's employment was terminated and this lawsuit was filed. Because Tripp elected to bring permissive counterclaims about the Gigafactory threat, he is required to appear for deposition in Nevada.

Even if all of Tripp's counterclaims were compulsory (which they are not), the Court has the authority to order Tripp to appear for deposition in Nevada. When addressing where a party's deposition is to take place, courts consider the following factors:

1.   The parties' convenience and relative hardships to attend the designated location;

2.   Cost of transportation and lost work to defendant;

3.   Expense and inconvenience to move voluminous documents;

4.   Whether the parties' counsel are located in the forum district;

5.   Whether the defendant is a large corporation whose employees often travel;

6.   Whether significant discovery disputes may arise and judicial economy favors resolution by the forum court or other similar concerns; and

7.   Whether the parties' claims and parties' relationship are such that appropriate adjustment of the equities favors a deposition site in the forum district.

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 2014 WL 4471419, at *1–2 (E.D. Cal. Sept. 10, 2014) (citation omitted).

These factors weigh heavily in favor of holding Tripp's deposition in Nevada rather than abroad. Among other things, the case is pending in Nevada, counsel for both parties are located in

(or close to) Nevada, and the documents and other evidence that will be used at the deposition are in Nevada as are most other witnesses.  Moreover, Tripp worked for Tesla in Nevada and resided in Nevada until this lawsuit was filed.  Deposing Tripp in Hungary, where he recently moved, would place a far greater burden and impose substantially greater costs upon Tesla and Tesla's counsel than holding his deposition in Nevada. *See Rock Springs*, 185 F.R.D. at 604-05 ("The Court notes that it was the [plaintiffs] who once lived here but have since moved.  No information is given about when that took place, but the [d]efendants should not have to forego their rights to take the depositions face-to-face because [the plaintiffs] elected to move.").  Holding the deposition in Hungary would also be equally (if not more) costly and burdensome for Tripp because he would have to pay for his own lawyers to travel to Hungary.  In addition, under the Court's protective order in this case, Tripp is prohibited from viewing documents designated as "attorneys' eyes only" except in person in his lawyers' offices in the United States.  (ECF No. 44 ¶ 9(b)(ix).)  To the extent that Tripp intends to review such documents before his deposition, he already will need to travel to the United States.

Likewise, the Court should reject any proposal by Tripp to hold his deposition remotely by videoconference.  As the District of Nevada has aptly reasoned, "[t]elephonic depositions are not recommended for obtaining controversial testimony, such as from a plaintiff, because the inquirer cannot observe the impact of his or her questions, evaluate the witness' nonverbal responses, or be able to ascertain whether anyone is listening in or coaching the witness." *Dieng v. Hilton Grand Vacations Co., LLC*, 2011 WL 812165, at *1–2 (D. Nev. Mar. 1, 2011) (citing *Rock Springs*, 185 F.R.D. at 604) (denying motion for telephonic deposition because "Defendant should not have to forego its right to take Plaintiff's deposition face-to-face because Plaintiff resides out-of-state").

For the foregoing reasons, Tripp should be ordered to appear for deposition in Nevada or another mutually agreeable location in the United States.

**3.     Andrea Szikszai Should Be Required to Appear for Deposition in Nevada**

In his counterclaims, Tripp alleges that Tesla's conduct caused Tripp to suffer "marital relationship problems."  (ECF No. 25 ¶ 76.)  In his initial disclosures, Tripp identified his wife, Andrea Szikszai, as a witness he may call at trial to testify about, among other things, "the damages Mr. Tripp suffered as the result of Tesla's conduct."  On October 30, 2018, Tesla served a notice that

Tesla intended to take Ms. Szikszai's deposition on November 28, 2018 in Reno, Nevada.   On November 8, 2018, Tripp's counsel informed Tesla that Ms. Szikszai will not appear for deposition in the United States.

The same factors that favor Nevada over Hungary as the location for Tripp's deposition compel the conclusion that Ms. Szikszai's deposition should be held in Nevada as well.  In particular, Ms. Szikszai is represented by the same lawyers as Tripp, which means that counsel for both parties *and the witness* are in or near Nevada.  And because Tripp apparently intends to bring Ms. Szikszai to Nevada for trial, fairness dictates that Tripp should also make her available in Nevada for deposition.

Alternatively, if Tripp withdraws Ms. Szikszai from his initial disclosures and agrees not to use her as witness (at trial, motion practice, or otherwise), there will be no need for Ms. Szikszai to come to the United States for deposition.  If Tripp continues to identify Ms. Szikszai as a relevant witness, Tripp should be required to confirm that he and Ms. Szikszai intend to waive spousal privilege over her testimony.  Otherwise, Tesla will be put through the burden and expense of deposing Ms. Szikszai only to potentially learn that she intends to assert privilege over matters for which Tripp represented that she would testify.

### 4. Tripp Should Be Required to Submit to a Mental Examination Pursuant to Federal Rule of Civil Procedure 35

Rule 35 of the Federal Rules of Civil Procedure authorizes the courts to order a party "whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."  On October 30, 2018, Tesla requested that Tripp submit to a mental examination pursuant to Rule 35.  On November 8, 2018, Tripp's counsel informed Tesla that they were considering the request.  Unless Tripp promptly consents to Tesla's request, Tesla intends to make motion requesting that the Court order Tripp to submit to mental examination pursuant to Rule 35.

A Rule 35 examination is appropriate if the party's mental or physical condition is "in controversy" and there is "good cause" supporting the order.  *See, e.g.*, *Gurshin v. Bank of Am., Nat'l Ass'n*, 2016 WL 384929, at *1 (D. Nev. Jan. 27, 2016).  Courts in the Ninth Circuit "will order

plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Id.* (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)).   In considering whether there is "good cause" to permit the examination, courts often look at the following factors: "(1) the possibility of obtaining desired information by other means; (2) whether plaintiff plans to prove her claim through testimony of expert witnesses; (3) whether the desired materials are relevant, and; (4) whether plaintiff claims ongoing emotional distress." *Id.* (internal citation and quotation marks omitted); *see also Luque-Villanueva v. Cty. of San Diego*, 2018 WL 2149366, at *2 (S.D. Cal. May 10, 2018) (finding good cause for Rule 35 examination where plaintiff "maintain[ed] a cause of action for intentional infliction of emotional distress"); *see also Large v. Regents of Univ. of California*, 2012 WL 3647485, at *4 (E.D. Cal. Aug. 22, 2012) (same).

Ordering Tripp to submit for a mental examination is appropriate in this case.  Among other things, Tripp placed his mental condition "in controversy" by asserting a counterclaim for intentional infliction of emotional distress. (ECF No. 25 ¶¶ 93-99.) Factors that establish "good cause" to order the examination include that Tripp claims ongoing emotional distress.  (*Id.* ¶ 98 (alleging that "[Tripp] has suffered ***and continues to suffer*** emotional and mental distress and pain and suffering" as a result of Tesla's alleged actions) (emphasis added).)  Good cause also exists because Tripp seeks emotional distress damages – including punitives – from Tesla.[1]  (*Id.* ¶ 99.)  For these reasons, a Rule 35 mental examination is warranted to allow Tesla a full and fair opportunity to rebut Tripp's emotional distress claims.  *See Gurshin*, 2016 WL 384929, at *3 (finding "good cause" because

---

[1] The precise amount and categories of Tripp's alleged damages remain elusive.  Although Tripp has twice amended his initial disclosures, he has not provided the damages calculation required by Rule 26(a)(1)(A)(iii).  Instead, Tripp asserts that he "will supplement his damages calculation as discovery progresses."  Tesla reserves all rights regarding Tripp's failure to provide the required damages calculation.

1  "mental examination will allow [defendant] to adduce relevant information about [plaintiff's] mental

2  condition").

3      In the event Tripp refuses to do so voluntarily, Tesla intends to make a motion requesting that

4  the Court order Tripp to submit to mental examination pursuant to Rule 35.

5      **5.**    **Tripp's Request to Depose Tesla's CEO Is Barred by the Apex Doctrine**

6      Although he has not served a notice of deposition or deposition subpoena, Tripp has informed

7  Tesla that he intends to depose Tesla's CEO Elon Musk.  The deposition is improper under the apex

8  doctrine.  As the highest-ranking executive of Tesla, Mr. Musk is an "apex" witness.  "Virtually

9  every court that has addressed deposition notices directed at an official at the highest level or 'apex'

10  of corporate management has observed that such discovery creates a tremendous potential for abuse

11  or harassment."  *Robinett v. Opus Bank*, 2013 WL 5850873, at *5 (W.D. Wash. Oct. 30, 2013)

12  (quoting *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25,

13  2007)); *see also Opperman v. Path, Inc.*, 2015 WL 5852962, at *1 (N.D. Cal. Oct. 8, 2015) ("One

14  rationale behind the apex rule is that highly placed corporate executives who have greater duties and

15  time constraints than other witnesses should be protected from the constant distraction of testifying

16  in lawsuits.") (internal citation and quotation marks omitted).

17      To address this potential for abuse and harassment, federal courts throughout the country

18  proscribe depositions of high-level corporate officials unless the party seeking the deposition

19  "establish[es] that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at

20  issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and

21  depositions of other employees, have been exhausted without success."  *Groupion, LLC v. Groupon,*

22  *Inc.*, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (quoting *Affinity Labs of Texas v. Apple, Inc.*,

23  2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011)); *Reif v. CNA*, 248 F.R.D. 448, 451-53 (E.D. Pa.

24  2008) (collecting "apex doctrine" cases).

25      This two-part test reflects the apex doctrine's purpose of protecting "busy, high level

26  executives who lack unique or personal knowledge."  *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D.

27  118, 126 (D. Md. 2009).  Further, the doctrine is premised on the idea that an opposing party will

28  likely be able to discover facts from lower-level employees who actually participated in the matters

1    at issue in the case.  *See Chick-Fil-A, Inc. v. CFT Development, LLC*, 2009 WL 928226, at *1 (M.D.

2    Fla. Apr. 3, 2009) (stating most courts have developed the doctrine "because the CEO of a large

3    corporation is familiar with the big picture of the operations of a company – and is not familiar with

4    the day to day operations of a business").[2]

5            In this case, there is no dispute that, as CEO of Tesla, Mr. Musk is at the "apex" of the

6    company.  As such, he is protected from deposition unless Tripp establishes that Mr. Musk has

7    unique personal knowledge that is not available from less-intrusive discovery methods.  Tripp cannot

8    make the required showing in this case because Mr. Musk does not have unique, personal knowledge

9    about the claims at issue.  Tesla's claims against Tripp arise out of Tripp's employment with Tesla

10   and misuse of the company's proprietary information.  Mr. Musk has no unique, personal knowledge

11   about Tripp's employment or his theft of Tesla's information.  Likewise, Mr. Musk has no unique,

12   personal knowledge of the facts surrounding Tripp's counterclaims.  While Tripp's pleading refers

13   to statements by Mr. Musk, whether such statements were made is not in dispute.  Rather, the factual

14   disputes with respect to Tripp's counterclaims are whether Tripp stole and provided Tesla's

15   proprietary information to third parties (ECF No. 25 ¶¶ 48-49) and whether Tesla received a warning

16   that Tripp posed a threat to the Gigafactory (ECF No. 25 ¶¶ 55-58).  Mr. Musk does not have unique,

17   personal knowledge about those issues.[3]

18   _____

19   [2] Even in cases where the apex doctrine's two-part test is satisfied, courts narrowly limit the scope
     of permissible inquiry and duration of depositions of high-level executives.  *See, e.g.*, *Finisar Corp.*

20   *v. Nistica, Inc.*, 2015 WL 3988132, at *4 (N.D. Cal. June 30, 2015) (limiting deposition of CEO to
     two hours and to "distinct issues . . . identified in [a] joint letter brief" filed by the parties); *Hunt v.*

21   *Cont'l Cas. Co.*, 2015 WL 1518067, at *3 (N.D. Cal. Apr. 3, 2015) (limiting deposition of Chairman
     and CEO to three hours and to "targeted issues identified in Plaintiff's filings"); *In re Transpac.*

22   *Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *6 (N.D. Cal. Mar. 6, 2014) (limiting
     executive's deposition to two hours); *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 265 (N.D.

23   Cal. 2012) (limiting deposition of corporate executive to two hours).

24   [3] The cases that Tripp cites are inapposite.  For example, in *Luangisa v. Interface Operations*, 2011
     WL 6029880 (D. Nev. Dec. 5, 2011), the court determined that the defendants failed to interpose an

25   "apex witness" objection to the deposition of defendants' owner *prior to the time the deposition had
     been held*.  *See id.* at *3, 13.  Defendants sought a protective order only after plaintiff terminated the

26   deposition when the owner refused to respond to most of plaintiff's questions.  *See id.* at *3.  Critical
     to the court's denial of the motion for the protective order were the facts that the defendants were

27   "simply companies created to service the [owner's] family," and that the owner "exercised significant
     or even total control over Plaintiff's [] duties."  *Id.* at *13.  Tesla bears no resemblance to the shell

28   company defendants in *Luangisa*.  Moreover, it cannot be argued that Mr. Musk exerted the same
     type of total and day-to-day control.  In *U.S. Commodity Futures Trading Comm'n v. Banc de Binary,
     Ltd.*, 2015 WL 556441, *2 (D. Nev. Feb. 11, 2015), the court denied defendant's motion for an apex

1    Even if Tripp could establish that Mr. Musk possesses unique, personal knowledge about

2    disputed issues (which he cannot), Tripp has failed to exhaust less-intrusive methods of discovery.

3    The required "less-intrusive methods" include serving interrogatories about the information that

4    Tripp seeks; taking the deposition of lower-level employees involved in the subject matter of the

5    litigation; and taking the deposition of Tesla itself.  *See, e.g.*, *Celerity*, 2007 WL 205067, at *5

6    (precluding deposition of plaintiff's CEO because plaintiff failed to show that "either interrogatories

7    or the depositions of lower-level employees have failed to provide the discovery [defendant] seeks");

8    *Groupion*, 2012 WL 359699, at *3 (denying request to depose defendant's executives because

9    "[plaintiff] has not established that other less intrusive means of discovery, such as interrogatories,

10   have been exhausted without success").  Tripp has not pursued any of these alternative discovery

11   methods.  Tripp has propounded no written discovery directly asking whether Mr. Musk has unique,

12   personal knowledge of the relevant issues.  And significantly, Tripp has yet to depose a single

13   witness.  Because Tripp has not taken Tesla's deposition or the depositions of any lower-level

14   employees, Tripp cannot demonstrate that he has exhausted less-intrusive means of discovery

15   without success.

16   Tripp has not served a subpoena or notice of deposition of Mr. Musk.  If he does so, Tesla

17   anticipates filing a motion for a protective order to preclude Tripp from deposing Mr. Musk unless

18   and until such time as Tripp demonstrates that Mr. Musk has unique, personal knowledge of disputed

19   issues that Tripp cannot obtain through other means of discovery.

20

21

22

23   witness protective order where the CFTC had demonstrated that (1) the apex witness, the CEO of the
     defendant banking group, ran the group's "day to day operations"; and (2) the Rule 30(b)(6) witness
24   for defendant had testified that he needed "to speak with the management" to answer critical
     questions in the case.  (Plaintiff U.S. CFTC's Opposition to Defendants' Motion for a Protective
25   Order, dated Dec. 11, 2014, 13-CV-992-MMD-VCF (ECF No. 84), at 5.)  Similarly, in *Resort
     Properties of Am. v. El-Ad Properties N.Y. LLC*, 2008 WL 2741131, at *3 (D. Nev. July 10, 2008),
26   the court denied the defendant's motion for an apex witness protective order where witnesses who
     had been deposed previously in the case were unable to recall important meetings that the apex
27   witness had attended.  *Id.*  Of additional relevance to the court was that the apex witness had been
     "personally responsible for initiating" the corporate transaction that gave rise to plaintiff's claims.
28   *Id.*

**6.    Tesla's Responses to Tripp's RFPs and Production of Documents**

On the afternoon of November 26, 2018, Tripp's counsel informed Tesla that Tripp intended to include certain "issues" regarding Tesla's responses to Tripp's requests for production of documents ("RFP") in his case management report to be filed the next day.  Despite the fact that Tesla served its discovery responses on October 24, 2018 (more than a month ago), this was the first time that Tripp raised any of these supposed issues with Tesla.  By springing these issues on Tesla a mere twenty-four hours before raising them with the Court, Tripp violated Local Rule 26-7, which requires the parties to meet and confer in good faith before seeking court intervention.  Accordingly, Tesla respectfully submits that the parties should meet and confer about Tripp's new issues before raising them with the Court so that Tesla can understand the issues and have an opportunity to attempt to resolve them informally.

Even if the issues raised by Tripp were ripe (which they are not), Tripp's new issues are meritless.  Tripp first served document requests on Tesla on September 24, 2018.  As discussed above, Tesla timely responded on October 24, 2018 and began rolling productions promptly thereafter.  Among other things, Tesla specifically identified the categories of documents that Tesla agreed to produce and provided Tripp with a list of the custodians, search terms, and time periods Tesla intended to use to identify potentially responsive electronically stored information ("ESI") for review.   (Plaintiff & Counter-Defendant Tesla, Inc.'s Resp. & Obj. to Defendant & Counter-Claimant's First Set of Requests for Production of Documents, dated Oct. 24, 2018, Exhibit 1 hereto, at 14-16.)

For more than a month, Tripp said nothing about Tesla's responses to his RFPs.  Then, on November 26, 2018, Tripp informed Tesla that he intended to raise the following "issues" with the Court the next day:

(a)    Tesla's failure to date to produce all communications it had with the media and the Storey County Sheriff's Office regarding Mr. Tripp and the purported threat on June 20, 2018;

(b)    Tesla's failure to date to produce emails or other electronic communications sent or received by Mr. Tripp during his employment at Tesla or referencing Mr. Tripp;

(c)    Tesla's refusal to produce an image and/or copy of any electronic device Tesla issued to Mr. Tripp during his employment; and

(d)    Tesla's failure to date to produce documents related to its recruitment of Mr. Tripp.

Without the additional context that would have been provided as part of any meet and confer, it is difficult to decipher precisely what Tripp contends are the supposed issues with Tesla's responses. Nevertheless, Tesla responds below as best as possible to each of the issues raised by Tripp.

(a)    <u>Tesla's Communications with the Media and the Storey County Sheriff's Office Regarding Tripp and the June 20, 2018 Threat</u>

On June 20, 2018, an operator at Tesla's Las Vegas call center received a phone call from someone who stated that he was a very close friend of Tripp. The caller told Tesla that Tripp posed a threat to the physical safety of employees at the Gigafactory because he was heavily armed, extremely upset, and extremely volatile. Tesla security immediately mobilized personnel to the Gigafactory and contacted the Storey County Sheriff's Office to report the call.

In RFP No. 2, Tripp requested that Tesla produce, among other things, communications with the Storey County Sheriff's Office and media regarding the threat to the Gigafactory. (Ex. 1 at 7-8.) In response, Tesla agreed to produce "communications with the Storey County Sheriff's Office and media." (*Id.* at 9.) Tesla also provided Tripp with a list of the custodians, search terms, and time periods Tesla intended to use to identify potentially responsive ESI for review. (*Id.* at 9, 14-16.) Because Tesla agreed to produce the documents that Tripp seeks, there does not appear to be a dispute between the parties on this issue.

(b)    <u>Tesla's Emails Sent By, Received By, or Referencing Tripp</u>

In RFP No. 3, Tripp requested that Tesla produce, among other things, all emails sent by, received by, or referring to Tripp. (Ex. 1 at 9-10.) Tripp's request is overbroad and unduly burdensome in that it seeks documents that are not relevant to the issues in this case. During the approximately eight months that Tripp worked at Tesla, Tripp sent and received several thousand emails, the bulk of which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The request also seeks trade secret, confidential, commercially sensitive, and

1   proprietary information not relevant to any claim or defense.  The burden and expense of reviewing

2   and producing all such documents outweighs the benefit of the proposed discovery and is

3   disproportionate to the needs of the case.

4        Notwithstanding Tripp's overbroad request, Tesla agreed to produce emails to, from, or

5   referring to Tripp to the extent that they concern relevant issues.  For example, Tesla agreed to

6   produce non-privileged emails to, from, or referring to Tripp on the following topics, among others:

7   (i) Tripp's employment records (*id.* at 10); (ii) communications between Tesla and any third-party

8   regarding Tripp (*id.* at 10); (iii) the amount of scrap and/or non-conforming material generated at the

9   Gigafactory (*id.* at 12); (iv) Tripp's misuse of Tesla's systems (*id.* at 7); (v) Tripp's false statements,

10  fabrication, of data, and modification of Tesla's proprietary information (*id.* at 7); (vi) the call placed

11  to Tesla's Las Vegas call center on June 20, 2018 regarding a threat to the Gigafactory (*id.* at 9); and

12  (vii) Tesla's response to the Gigafactory threat, including internal communications and

13  communications with the Storey County Sheriff's Office and media (*id.* at 9).  In addition, Tesla

14  provided Tripp with a list of the custodians, search terms, and time periods Tesla intended to use to

15  identify potentially responsive ESI.  (*Id.* at 14-16.)  Notably, Tripp is a custodian, which means that

16  Tesla is reviewing Tripp's emails for relevant documents.  (*Id.* at 15-16.)  In addition, Tesla applied

17  comprehensive search terms to Tripp's emails, including terms relating to the 622 containment,

18  battery modules, scrap and non-conforming material, and the media.  (*Id.*)  Tesla also applied "Tripp"

19  as a search term across the emails of fifteen other custodians.  (*Id.* at 14-15.)  Tripp has not raised

20  any issue with Tesla's list of search terms and custodians, nor has he identified any category of

21  relevant information that is not included in what Tesla agreed to produce.

22       For the foregoing reasons, there is no basis for Tripp to demand that Tesla undertake the

23  burden and expense of reviewing and producing thousands of irrelevant documents.

24       (c)    An Image of Any Electronic Device Tesla Issued to Tripp

25       In RFP No. 7, Tripp requested that Tesla produce a mirror image of the hard drive for any

26  computer or smart phone that Tesla issued to Tripp.  (Ex. 1 at 12.)  As discussed above regarding

27  RFP No. 3, Tripp's request is overbroad, unduly burdensome, and disproportionate to the needs of

28  the case in that it seeks documents regardless of relevance.  Tripp's request for a forensic image of

1  Tesla's electronic devices is particularly unreasonable because, by its nature, the request includes

2  production of trade secret, confidential, commercially sensitive, and proprietary information for no

3  discernable purpose.

4          To the extent that such materials are relevant to the case, Tesla has agreed to produce trade

5  secret and proprietary documents (appropriately designated under the protective order entered by the

6  Court).  There is no basis in law or logic, however, for Tripp to be given access to irrelevant

7  documents that have no bearing on the issues in dispute.  Tripp's overbroad request is particularly

8  unreasonable given that he has repeatedly demonstrated that he cannot be trusted with access to

9  Tesla's confidential materials.  As demonstrated in prior filings with the Court (*e.g.*, ECF Nos. 1 and

10  40), this action arises from Tripp's efforts – in spring 2018 – while he was working for the company –

11  to collect Tesla's confidential trade secret information and transfer it to third parties.  Tripp's illegal

12  actions continued even after the initiation of this lawsuit.  On August 15, 2018 (nearly two months

13  after this case was filed), Tripp publicly posted on Twitter screenshots and excerpts from confidential

14  Tesla documents he stole from the company, photographs of proprietary Tesla equipment and

15  facilities, and incendiary and false statements about Tesla.  Thus, the risk to Tesla in allowing Tripp

16  to have access to its most sensitive and confidential material is too great.  Conversely, there is no

17  prejudice to Tripp in denying him access to irrelevant materials.

18          (d)     Documents Related to Tesla's Recruitment of Tripp

19          In RFP No. 3, Tripp requested that Tesla produce, among other things, documents relating to

20  Tesla's recruitment of Tripp for employment.  (Ex. 1 at 9.)  In his counterclaim, Tripp alleges the

21  following: "In mid-2017, Counterdefendant initiated contact with and recruited Mr. Tripp, who was

22  then residing in Wisconsin, for an employment position at the Gigafactory.  During its recruitment,

23  Counterdefendant paid for Mr. Tripp to fly to Nevada for an interview and tour of the Gigafactory."

24  (ECF No. 25 ¶ 12.)  It is unclear what relevance, if any, this allegation has to any of the legal claims

25  Tripp has made against Tesla.  Moreover, Tesla admitted these allegations in its answer.  (ECF No. 28

26  ¶ 12.)

27

28

Accordingly, Tripp's request for documents relating to his recruitment is not relevant to any disputed issue and therefore imposes an undue burden on Tesla.

Respectfully submitted,

Dated: November 27, 2018                    **HUESTON HENNIGAN LLP**


_____

_____
Allison L. Libeu(*admitted pro hac vice*)
523 W. 6th St., Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Plaintiff and Counter-Defendant
Tesla, Inc.*

1

## **CERTIFICATE OF SERVICE**

2        I hereby certify and declare under penalty of perjury that on November 27, 2018, I

3    electronically filed the foregoing with the Clerk of Court for filing and uploading to the CM/ECF

4    system which will send notification of such filing to all parties of record.

5

6                              /s/ Joshua A. Sliker

7                              An employee of Jackson Lewis P.C.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TESLA INC.'S CASE MANAGEMENT REPORT