**JACKSON LEWIS P.C.**
Joshua A. Sliker (Nevada Bar No. 12493)
Joshua.Sliker@jacksonlewis.com
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone:    (702) 921-2460
Facsimile:     (702) 921-2461

**CHARIS LEX P.C.**
Sean P. Gates *(admitted pro hac vice)*
sgates@charislex.com
Douglas J. Beteta *(admitted pro hac vice)*
dbeteta@charislex.com
301 N. Lake Ave., Suite 1100
Pasadena, California 91101
Telephone:    (626) 508-1717
Facsimile:     (626) 508-1730

Attorneys for Plaintiff/Counter-Defendant
TESLA, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TESLA, INC., a Delaware corporation,<br><br>          Plaintiff,<br><br>   vs.<br><br>MARTIN TRIPP, an individual,<br><br>          Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 3:18-cv-00296-LRH-CBC<br><br>**TESLA, INC.'S OPPOSITION TO TRIPP'S *DAUBERT* MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY (ECF NO. 86)** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    A.    The Court Should Deny Tripp's Motion as Premature. .............................................. 2

    B.    The Court Should Deny Tripp's Motion Because He Failed to Meet and Confer as Required by the Local Rules. ................................................................................... 4

    C.    Tripp's Criticisms of Kinrich Go to Weight, Rather Than Admissibility. ................. 4

        1.    Rule 702 and *Daubert* Require Only That Expert Testimony Be Relevant and Reliable. ................................................................................... 4

        2.    An Event Study Is Not Required ...................................................................... 5

        3.    Kinrich's Alternative Methodology Is Reliable. ............................................. 6

        4.    Kinrich Need Not Reach the Ultimate Conclusion; His Opinions Are Relevant. ........................................................................................................... 9

        5.    Kinrich Appropriately Examined Intra-Day Prices. ..................................... 10

        6.    Tripp's Attacks on Kinrich's Prior Testimony Are Misleading and Irrelevant to The Question of Admissibility ................................................. 11

CONCLUSION ........................................................................................................................... 13

**TABLE OF AUTHORITIES**

**Cases**

*Abbey v. City of Reno*, Case No. 3:13-cv-0347-LRH-VPC,
  2014 U.S. Dist. LEXIS 62387 (D. Nev. May 6, 2014) ............................................................. 3

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*,
  853 F. Supp. 2d 181 (D. Mass. 2012) ................................................................................... 11

*Brown v. Brewer*, Case No. CV 06-3731-GHK (SHx),
  2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 27, 2010) ...................................................... 6

*Brown v. China Integrated Energy, Inc.*, Case No. CV 11-02559 BRO (PLAx),
  2015 U.S. Dist. LEXIS 19177 (C.D. Cal. Feb. 17, 2015) ....................................................... 8

*Campbell v. Garcia*, No. 3:13-cv-0627-LRH-WGC,
  2016 U.S. Dist. LEXIS 124047 (D. Nev. Sep. 13, 2016) ....................................................... 9

*City of Ann Arbor Employees Ret. Sys. v. Sonoco Prods. Co.*,
  827 F. Supp. 2d 559, 572 (D.S.C. 2011) ................................................................................ 5

*Cohen v. Trump*, Case No. 3:13-cv-2519-GPC-WVG,
  2016 U.S. Dist. LEXIS 117059 (S.D. Cal. Aug. 29, 2016) .................................................... 8

*Cooper v. Brown*,
  510 F.3d 870 (9th Cir. 2007) .................................................................................................. 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) .................................................................................................. 9

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ...................................................................................................... 1, 2, 4, 9

*Humetrix, Inc. v. Gemplus S.C.A.*,
  268 F.3d 910 (9th Cir. 2001) .............................................................................................. 5, 12

*In re Apollo Group, Inc. Sec. Litig.*,
  509 F. Supp. 2d 837 (D. Ariz. 2007) .................................................................................. 9, 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) ............................................................................................ 8

*In re Executive Telecard Sec. Litig.*,
  979 F. Supp. 1021 (S.D.N.Y. 1997) ............................................................................... 5, 6, 8

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
  252 F. Supp. 2d 1005 (C.D. Cal. 2003) .................................................................................. 5

*In re Nortel Networks, Inc.*,
  532 B.R. 494 (2015) .............................................................................................................. 12

*In re Novatel Wireless Sec. Litig.*,
　910 F. Supp. 2d 1209 (S.D. Cal. 2012)..................................................................10, 11

*In re Novatel Wireless Sec. Litig.*, Case No. 08cv1689 AJB (RBB),
　2013 U.S. Dist. LEXIS 154599 (S.D. Cal. Oct. 25, 2013) .....................................10, 11

*In re Oracle Sec. Litig.*,
　829 F. Supp. 1176 (N.D. Cal. 1993)................................................................................5

*Jones v. Harris*,
　665 F. Supp. 2d 384 (S.D.N.Y. 2009) .............................................................................3

*Kumho Tire Co. v. Carmichael*,
　526 U.S. 137 (1999).........................................................................................................5

*Morpho Detection, Inc. v. Smiths Detection, Inc.*, Case No. 2:11cv498,
　2012 WL 12893869 (E.D. Va. Dec. 3, 2012) ...............................................................12

*Perkins v. Standard Oil Co. of Cal.*,
　395 U.S. 642 (1969).........................................................................................................9

*Primiano v. Cook*,
　598 F.3d 558 (9th Cir. 2010) ......................................................................................4, 9

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, Case No. 94 Civ. 5587 (PKL)
　(RLE), 2000 U.S. Dist. LEXIS 3742 (S.D.N.Y. Mar. 24, 2000)...................................5, 6

*Schwartz v. Clark Cty., Nev.*, No. 2:13-CV-709 JCM (VCF),
　2018 U.S. Dist. LEXIS 57392 (D. Nev. Apr. 4, 2018).....................................................4

*Shell & Slate Software Corp. v. Adobe Sys. Inc.*, Case No. CV 02-8831 AHM
　(AJWx), 2004 WL 5486635 (C.D. Cal. Sept. 17, 2004) ................................................12

*Sprint/United Mgmt. Co. v. Mendelsohn*,
　552 U.S. 379 (2008).........................................................................................................9

*Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*, Case No. SACV 15-
　00246-CJC (JPRx), 2018 U.S. Dist. LEXIS 109309 (C.D. Cal. Jun. 26, 2018).................13

*United States v. Hankey*,
　203 F.3d 1160 (9th Cir. 2000) ........................................................................................5

*United States v. Martoma*,
　993 F. Supp. 2d 452 (S.D.N.Y. 2014) .............................................................................5

*United States v. Romero-Lobato*, No. 3:18-cr-00049-LRH-CBC,
　2019 U.S. Dist. LEXIS 80881 (D. Nev. May 13, 2019)................................................8, 9

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
　375 F.3d 1341 (Fed. Cir. 2004) *rev'd by* 546 U.S. 394 (2006) .......................................12

-iv-
TESLA, INC.'S OPPOSITION TO TRIPP'S *DAUBERT* MOTION
TO EXCLUDE EXPERT OPINION AND TESTIMONY

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
    546 U.S. 394 (2006)..........................................................................................................12

*Virgin Valley Water Dist. v. Vanguard Piping Sys.*, Case No. 2:09-cv-00309-LRH-
    PAL, 2011 U.S. Dist. LEXIS 4176 (D. Nev. Jan. 13, 2011) ...............................................3

*Visa Int'l Serv. Ass'n v. JSL Corp.*, Case No. 2:01-cv-0294,
    2006 U.S. Dist. LEXIS 81923 (D. Nev. Nov. 3, 2006) .......................................................3

**<u>Rules</u>**

Fed. R. Evid. 401 ...........................................................................................................................9

Federal Rule of Evidence 702.................................................................................................1, 4, 8

Local Rule 16-3(a) .........................................................................................................................4

Local R. 16-4 .................................................................................................................................3

Local R. 26-1(b)(5) ........................................................................................................................3

# INTRODUCTION

Defendant and Counterclaimant Martin Tripp's motion to exclude certain opinions and testimony of Tesla's damages expert, Jeffrey Kinrich, ECF No. 86, should be denied. It is a premature motion in limine. Such motions (as this Court has repeatedly ruled) should be brought at the eve of trial and after the pretrial order has been entered. Here, Tripp brings his motion while fact discovery is ongoing and before the Court has had a chance to rule on dispositive motions or review the proposed pretrial order. Moreover, the motion must be denied because Tripp failed to meet and confer before filing.

Although the Court need not go further, the motion also fails on the merits. Tripp contends that Kinrich's opinions should be excluded because (1) Kinrich did not conduct an "event study," (2) he did not opine on the ultimate conclusion regarding causation, and (3) Tesla's stock price increased in the days after the articles were published. Tripp is dead wrong; he misconstrues the law and misreads the applicable standards.

*First*, the law is plain that an "event study" is not required. An event study is but *one* methodology (using statistical regression analyses) to evaluate correlation between stock price movements and a particular event. It is *not* the *exclusive* means to do so. Indeed, courts have expressly rejected such exclusivity arguments and admitted testimony based on alternative methodologies regarding causation in cases similar to this one. Here, Kinrich focuses only on eliminating other causes (i.e., market trends and other news)—rather than the ultimate conclusion of causation—making Tripp's argument that an event study, with its full-blown regression analysis, is required even more of an overreach.

All that is required under Federal Rule of Evidence 702 and *Daubert* is that a qualified expert offer relevant and reliable testimony. Kinrich's testimony easily meets these requirements. Kinrich is a Certified Public Accountant and an expert with decades of experience and training in financial analysis and valuation. His testimony is plainly relevant; he used his specialized knowledge and experience to determine that declines in Tesla's market capitalization, which followed two Business Insider articles containing false allegations of misconduct based on distorted and manipulated confidential information that Tripp stole from Tesla, were not attributable to

market and industry trends or to other news stories about Tesla. By eliminating other causes, Kinrich's opinions makes it more likely that there is a causal link between Tripp's conduct and the stock movements. And, as explained more fully below, Kinrich's analysis is based on reliable methodology. The jury should thus be allowed to weigh the testimony.

*Second*, the law is also clear that an expert need not opine on the ultimate conclusion. Here, Tripp misconstrues Kinrich's opinions and presents out of context snippets of Kinrich's testimony to create the false impression that Kinrich said causation could not be shown. That is not his opinion, nor is that what he testified to. Instead, Kinrich was very explicit in stating that his opinion is limited to eliminating market and industry trends and other Tesla-related news as causing the price movements. Such testimony is entirely proper. Indeed, the courts have explicitly held that experts need not testify to ultimate conclusions, they need only offer *relevant* testimony. That is what Kinrich did here.

*Third*, Kinrich's opinion cannot be excluded merely because following the price drops Tesla's stock prices later increased in the following days. As courts have held in similar cases, Kinrich appropriately examined intra-day trading prices, rather than the extended time period for which Tripp argues.

Tripp also tries to attack Kinrich's credibility through misleading snippets from a few of the several hundred cases in which Kinrich testified. But Tripp cannot and does not challenge Kinrich's qualifications, which demonstrate that he is very well qualified to give his opinions. That is all *Daubert* requires.

All of Tripp's arguments go to weight, not admissibility. Accordingly, the Court should deny the motion; only the jury is entitled to weigh expert opinion.

## ARGUMENT

### A.  The Court Should Deny Tripp's Motion as Premature.

The Court should deny Tripp's motion because it is premature. Discovery in this action is still ongoing and numerous depositions are scheduled between now and September 9, 2019, the current deadline for completing discovery. ECF No. 81 (modifying certain pretrial deadlines). After

1  that, Tesla expects to file a motion for summary judgment, which is currently due by October 9,
2  2019. ECF No. 81.

3  The current deadline for filing a proposed pretrial order is not until November 8, 2019. ECF
4  No. 81. And, if either party files a dispositive motion, "the deadline for filing the joint pretrial order
5  will be suspended until 30 days after decision on the dispositive motions or further court order."
6  Local R. 26-1(b)(5). Because there is no proposed pretrial order, there is no trial date. *See* Local R.
7  16-4 (identifying procedure for proposing trial dates).

8  Motions to preclude expert testimony from being offered at trial are motions in limine that
9  should be not be adjudicated until the "eve of trial and after a pre-trial order has been filed." *Abbey*
10 *v. City of Reno*, Case No. 3:13-cv-0347-LRH-VPC, 2014 U.S. Dist. LEXIS 62387, at *3 (D. Nev.
11 May 6, 2014) (denying motion to preclude testimony from plaintiff's damages expert as
12 premature); *Virgin Valley Water Dist. v. Vanguard Piping Sys.*, Case No. 2:09-cv-00309-LRH-
13 PAL, 2011 U.S. Dist. LEXIS 4176, at *3-4 (D. Nev. Jan. 13, 2011) (denying motion to strike
14 various expert reports and expert opinions as premature and because it challenged the expert's
15 "ultimate conclusions" and thus went to weight rather than admissibility); *see also Jones v. Harris*,
16 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009) (denying, without reviewing, motion in limine as
17 premature; "In limine motions deal with evidentiary matters and are not to be filed until the eve of
18 trial. If we get that far, plaintiff will be told when it is time to file such a motion.").[1]

19 As the courts have explained, waiting until trial or shortly before trial to rule on motions in
20 limine allows the Court to view the challenged evidence in its "proper context," because the trial
21 court then has more information about what the actual issues to be tried and trial evidence will be.
22 *Abbey*, 2014 U.S. Dist. LEXIS 62387, at *2; *see also* Local R. 16-4 (requiring parties to file

---

[1] It does not matter that Tripp labeled his motion as a motion to exclude expert testimony rather than a "motion in limine." It is the substance of the motion, not the title, that counts. *Virgin Valley Water Dist.*, 2011 U.S. Dist. LEXIS 4176, at *2 ("The instant motion, although titled a motion to strike, is essentially a motion in limine[.]"). This Court has repeatedly treated motions seeking to preclude expert testimony, such as Tripp's, as motions in limine. *See, e.g., id.*; *Abbey*, 2014 U.S. Dist. LEXIS 62387, at *2-3 (treating motion to exclude expert testimony as motion in limine); *Visa Int'l Serv. Ass'n v. JSL Corp.*, Case No. 2:01-cv-0294, 2006 U.S. Dist. LEXIS 81923, at *5-10 (D. Nev. Nov. 3, 2006) (same).

proposed pretrial order listing, among other things, "issues of fact to be tried and determined at trial" and trial exhibits and objections to trial exhibits). Waiting also avoids the risk of wasting judicial resources on an advisory ruling where, as here, the issues that will actually be tried have not been finalized through decisions on dispositive motions and the entry of the pretrial order.

### B. The Court Should Deny Tripp's Motion Because He Failed to Meet and Confer as Required by the Local Rules.

Because Tripp's motion is, in fact, a motion in limine, he was required to meet and confer before he was permitted to file it. Specifically, Local Rule 16-3(a) states: "Motions in limine will not be considered unless the movant attaches a statement certifying that the parties have participated in the meet-and-confer process and have been unable to resolve the matter without court action." Tripp failed to do so, and his motion should thus be denied. *Schwartz v. Clark Cty., Nev.*, No. 2:13-CV-709 JCM (VCF), 2018 U.S. Dist. LEXIS 57392, at *16 (D. Nev. Apr. 4, 2018) (denying motion in limine where movant failed to attach certification that the parties met and conferred).

### C. Tripp's Criticisms of Kinrich Go to Weight, Rather Than Admissibility.

Even if the Court decided to reach the merits of Tripp's motion now (which it should not), Tripp's criticisms of Kinrich go to weight rather than admissibility.

#### 1. Rule 702 and *Daubert* Require Only That Expert Testimony Be Relevant and Reliable.

Federal Rule of Evidence 702 permits testimony regarding "scientific, technical, or other specialized knowledge" by experts qualified by "knowledge, skill, experience, training, or education" if the testimony is both relevant and reliable. Fed. R. Evid. 702. Expert testimony is reliable if it is "based upon sufficient facts or data," "the product of reliable principles and methods," and the expert "applies the principles and methods reliably to the facts of the case." *Id.*

The essential inquiries under *Daubert* are therefore not concerned with whether the expert's ultimate conclusions are "correct[]," but rather with the "soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594-595 (1993) (the "focus" under Rule 702 "must be solely on principles and methodology, not on the conclusions that they generate.").

Under this flexible inquiry, the reliability analysis for expert testimony based on technical or specialized knowledge (such as here) "may focus on personal knowledge or experience" of the expert. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). Furthermore, "the reasonableness of the assumptions underlying the experts' … analysis, [or] criticisms of an expert's method of calculation [are] matter[s] for the jury's consideration in weighing that evidence." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (calculations of lost profits were "necessarily an estimate" and "could not be shown with mathematical precision," criticisms thus went to weight rather than admissibility) (quotation marks and internal citations omitted).

### 2.      An Event Study Is Not Required

Tripp argues that Kinrich's analysis of Tesla's stock price movement should be excluded as "unreliable" because Kinrich did not conduct an "event study." ECF No. 86 at 6-13. An "event study" is a term of art that refers to a statistical regression analysis used to estimate the impact of an event on a drop in stock price by eliminating other potential causes. *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1014 (C.D. Cal. 2003) (citing *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, Case No. 94 Civ. 5587 (PKL) (RLE), 2000 U.S. Dist. LEXIS 3742, at *22-23 (S.D.N.Y. Mar. 24, 2000)); *see also United States v. Martoma*, 993 F. Supp. 2d 452, 457 (S.D.N.Y. 2014). Kinrich also eliminated other causes for a drop in Tesla's stock price but without using a regression analysis.

The courts are clear that a statistical regression analysis is not required. *See, e.g.*, *City of Ann Arbor Employees Ret. Sys. v. Sonoco Prods. Co.*, 827 F. Supp. 2d 559, 572 (D.S.C. 2011) (denying motion to exclude expert testimony about whether certain news caused stock price declines where expert did not conduct an "event study"); *RMED Int'l*, 2000 U.S. Dist. LEXIS 3742, at *22-23 (same). Indeed, the caselaw (including the very cases Tripp cites in his brief) makes clear that an expert can offer "something similar," i.e., an alternative methodology to show causation or rule out other causes. *See RMED Int'l*, 2000 U.S. Dist. LEXIS 3742, at *23 (discussing *In re Oracle Sec. Litig.*, 829 F. Supp. 1176 (N.D. Cal. 1993) and *In re Executive Telecard Sec. Litig.*, 979 F. Supp. 1021 (S.D.N.Y. 1997)); ECF No. 86 at 7. This is because

valuation of damages based on declines in stock prices is not "hard science" that can be evaluated using the scientific method. *Executive Telecard*, 979 F. Supp. at 1024. Financial valuation "is not an exact scientific methodology"; instead, "[e]stimations, predictions, and inferences based on professional judgment and experience are key ingredients in any valuation." *Brown v. Brewer*, Case No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *88-89 (C.D. Cal. June 27, 2010) (denying motion to exclude economic valuation expert) ("In a variety of contexts, the circuit courts have noted that economic valuation is less than an 'exact science.'") (citations omitted).

For example, in *RMED International*, the defendants sought to exclude the plaintiff's expert's analysis as "unreliable, because it does not utilize statistical methods to isolate the influence of company-specific events or market and industry factors on [the relevant] stock." 2000 U.S. Dist. LEXIS 3742, at *22. Defendants "emphasize[d] the difference between [the expert's] 'event analysis' and an 'event study.'" *Id.* However, the court rejected the argument that an event study is a required "predicate to admissibility under *Daubert*." *Id.* at *23. Rather, even though the expert did not use a statistical regression analysis and was "unable to isolate with mathematical certainty the effect of company-specific, market, or industry factors on [the] stock price," she was able to use "alternative methodologies" that passed muster under *Daubert*. *Id.* at *26. The court found the expert's testimony to be admissible, even without a statistical regression analysis or mathematical certainty, because it was informed by a detailed factual analysis and grounded on principles accepted by professionals who study the reaction of stock prices to news. *Id.* at *28-30.

### 3.   Kinrich's Alternative Methodology Is Reliable.

Kinrich's alternative methodology was likewise informed by a detailed factual analysis and grounded on accepted principles. Kinrich studied the timing of the publication of the two news articles and the movements of Tesla's stock and several stock indices in the period shortly after the publication of each article. ECF No. 86 at 34-36, 59-62 (Kinrich Report ¶¶ 19-22, 25 and Exs. 5-8). Based on his extensive experience regarding the financial theory of efficient markets, which includes academic research about how quickly new information is incorporated into the price of a publicly traded stock, Kinrich determined "it would be inappropriate to examine the stock price changes on June 4 and June 6 prior to the publication times" and that he should look at "intraday

trading data" for Tesla's stock during the period immediately after each article was published and until the close of regular trading on each day. *Id.*; *see also* Kinrich Dep. at 115:17-119:21, 166:16-168:21 (appropriate time period based on his knowledge and experience in the field and the application of accepted theory of efficient markets). Applying these principles to the facts and data regarding Tesla's stock price movements, Kinrich determined that Tesla's stock "incorporates changes in information quite quickly" because of factors such as the number of analysts covering Tesla's stock and the number of investors who own stock in Tesla. *Id.* at 116:10-117:21.

After he used his professional judgment to select the appropriate time period for study, Kinrich then studied Tesla's stock price movements during the period. He determined that "Tesla's share price fell $0.20 per share (or 0.07 percent)" during the relevant period on June 4, 2018. ECF No. 86 at 35 (Kinrich Report ¶ 21). He also determined that "Tesla's share price fell $0.78 per share (or 0.25 percent)" during the relevant period on June 6, 2018. ECF No. 86 at 35 (Kinrich Report ¶ 22). Kinrich applied these per share calculations to the total number of Tesla shares outstanding in the market to determine that Tesla's market capitalization decreased by $34 million immediately following the June 4 disclosure and by $134 million immediately following the June 6 disclosure. *Id.* (Kinrich Report ¶¶ 21-22).

Kinrich then used his extensive experience and training to select the S&P 500, the NASDAQ Composite Index, and the NASDAQ OMX Global Automobile Index as comparator indices to determine whether the decline in Tesla's stock price was attributable to general market or industry trends. *Id.* His study of the price movements of each of these indices in comparison to the price movement of Tesla's stock during the relevant periods led him to the conclusion that Tesla's stock price decline "is not attributable to general market or industry trends." *Id.*

Finally, Kinrich examined whether there was any other news regarding Tesla, apart from the Business Insider articles, that might have caused the drop in Tesla's stock price. Based on his study of news available on Factiva and Bloomberg regarding Tesla, he determined that "there was no additional news beyond re-reporting prior news between the June 4 Article and market close nor between the June 6 Article and market close on their respective days." ECF No. 86 at 35 & n.20 (Kinrich report).

Kinrich's analysis, like an "event study," was designed to rule out causation by market and industry forces or by Tesla-specific information unrelated to the Business Insider articles. He thus did exactly what courts have ruled should be included in a proper methodology. *See Executive Telecard*, 979 F. Supp. at 1026 ("a proper methodology . . . should include elimination for both general market factors *and* company specific factors") (emphasis in original).

Further, he used the sources commonly used by professionals to search for any other company-specific news that might have affected Tesla's stock during the periods that he studied and to support his opinion that "there was no additional news beyond re-reporting prior news between the June 4 Article and market close nor between the June 6 Article and market close on their respective days." ECF No. 86 at 35 & n.20 (Kinrich report).

Contrary to Tripp's contention, "subjective" judgment calls do not make Kinrich's analysis unreliable. *See*, *e.g.*, *United States v. Romero-Lobato*, No. 3:18-cr-00049-LRH-CBC, 2019 U.S. Dist. LEXIS 80881, at *17-18 (D. Nev. May 13, 2019) (Rule 702 "does not impose a requirement that the expert must reach a conclusion via an objective set of criteria or that he be able to quantify his opinion with a statistical probability."); *see also Cohen v. Trump*, Case No. 3:13-cv-2519-GPC-WVG, 2016 U.S. Dist. LEXIS 117059 at *35 (S.D. Cal. Aug. 29, 2016) ("subjective opinions based on an expert's experience are proper") (internal quotation marks and citation omitted). Indeed, numerous courts evaluating an "event study" have recognized this same point because "many decision points in designing an event study require some subjectivity: identifying news, categorizing which news is 'material,' and determining whether news should have a certain (albeit rough) magnitude of positive or negative influence on price are all subjective determinations." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 618 (C.D. Cal. 2009); *see also Brown v. China Integrated Energy, Inc.*, Case No. CV 11-02559 BRO (PLAx), 2015 U.S. Dist. LEXIS 19177, at *2, 21 (C.D. Cal. Feb. 17, 2015) (denying motions to exclude expert testimony).

The rest of Tripp's argument is improperly aimed at Kinrich's conclusions rather than his methodology. Tripp complains that the size of Tesla's decline in market capitalization following the publication of the two Business Insider articles is too big—calling it "eye-popping," ECF No. 86 at 3, "enormous," *id.* at 8, or "a strained attempt to manufacture high-dollar damages." *Id.* at 6.

Yet, Tripp acknowledges, as he must, that "the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Id.* at 3 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)); *see also Daubert*, 509 U.S. at 594-595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *Primiano*, 598 F.3d at 564. Tripp's constant attacks on the size of the decline in Tesla's market capitalization are thus irrelevant to the admissibility of Kinrich's testimony.

Under the flexible inquiry required by *Daubert*, Kinrich's testimony is sufficiently reliable to be admitted. Tripp's criticisms of Kinrich's method go to the weight the jury should give his testimony and can be raised by cross examination or through testimony from Tripp's expert.

### 4. Kinrich Need Not Reach the Ultimate Conclusion; His Opinions Are Relevant.

Tripp also claims that Kinrich's opinions have "no probative value," ECF No. 86 at 9, and are "not relevant" *id.* at 11, faulting Kinrich for not giving an opinion on the ultimate conclusion of causation. ECF No. 86 at 9-10 (citing Kinrich deposition testimony). But expert opinion need not reach the ultimate conclusion to be admissible. It need only be relevant. Kinrich's opinions are plainly relevant. Tesla is permitted to use Kinrich's testimony to "'support an inference of causation'" and leave "'the ultimate conclusion as to what the evidence proves for the jury.'" *In re Apollo Group, Inc. Sec. Litig.*, 509 F. Supp. 2d 837, 846 (D. Ariz. 2007) (quoting *Perkins v. Standard Oil Co. of Cal.*, 395 U.S. 642, 648 (1969)).

As this Court has repeatedly stated, the relevancy hurdle is low; it simply requires that the evidence "logically advance a material aspect of the party's case." *See, e.g., Romero-Lobato*, 2019 U.S. Dist. LEXIS 80881, at * 4 (citing *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more [or less] probable than it would be without the evidence." Fed. R. Evid. 401. "Further, the determination of whether evidence is relevant to an action or issue is expansive and inclusive." *Campbell v. Garcia*, No. 3:13-cv-0627-LRH-WGC, 2016 U.S. Dist. LEXIS 124047, at *4 (D. Nev. Sep. 13, 2016) (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008)).

1    Tripp cannot reasonably dispute that Kinrich's opinion makes it *more probable* that the
2 publication of the articles caused the decline; Kinrich's methodology included steps to investigate
3 and "rule out" other possible causes. Kinrich used his experience and training to select appropriate
4 indices that allowed him to study whether the declines could have been caused by market or
5 industry factors, and to arrive at his opinion that the decline in Tesla's stock price "is not
6 attributable to general market or industry trends." ECF No. 86 at 3 5 (Kinrich Report ¶¶ 21-22). He
7 also used the sources ordinarily used by professionals to search for any other Tesla-specific news
8 that could have affected Tesla's stock price during the relevant time periods, and testified that his
9 search revealed no such news during the period between the publication of each Business Insider
10 article and the close of regular trading on each day that he studied. ECF No. 86 at 35 & n.20
11 (Kinrich report). Kinrich's opinions regarding these points support an inference that the Business
12 Insider articles caused Tesla's stock price to drop.

   Kinrich was not required to reach an "ultimate conclusion" regarding causation. Rather, it is
sufficient that his opinions, based on the application of specialized knowledge that ordinary jurors
do not have, will help the jury evaluate causation and damages. *Apollo Group, Inc. Sec. Litig.*, 509
F. Supp. 2d at 846.

### 5.    Kinrich Appropriately Examined Intra-Day Prices.

   Tripp also argues that Kinrich's opinions should be excluded because he examined intra-day trading prices rather than a longer time period during which Tesla's stock prices eventually increased. But valuation professionals routinely conduct intra-day analyses to study the timing of a particular disclosure within a trading day and the stock price movement during a portion of the trading day immediately following that disclosure.

   For example, in *In re Novatel Wireless Sec. Litig.*, 910 F. Supp. 2d 1209 (S.D. Cal. 2012), the plaintiff's expert did an analysis of intra-day stock price movements in response to multiple reports that were published during the course of a single trading day. *Id.* at 1218-19; *In re Novatel Wireless Sec. Litig.*, Case No. 08cv1689 AJB (RBB), 2013 U.S. Dist. LEXIS 154599, at *33-34 (S.D. Cal. Oct. 25, 2013) (after reconsidering ruling, subsequently denying motion in limine). The court found that "[i]nterpreting the stock price movement" based on an analysis of evidence

regarding the times when the reports were published and the stock prices in short periods after publication was "well within [the expert's] expertise for *Daubert* purposes." *Id.* at 1219. Accordingly, the court ruled that the intra-day analysis was admissible, and if defendants disagreed with the expert's conclusions about the relevant time periods, they could "challenge it during cross examination or offer the testimony of their own expert." *Id.* at 1220.

Similarly, Tripp's argument regarding the relevant time period to examine the price movements is an issue for the jury; it does not go to admissibility. *See In re Novatel Wireless Sec. Litig.*, 2013 U.S. Dist. LEXIS 154599, at *32-34 (again denying motion to exclude plaintiff's damages expert); *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 191 (D. Mass. 2012) (faulting expert for *not* conducting "intra-day trading analysis" and suggesting that such analysis could "provide the jury with some basis for discerning the cause of stock price fluctuation").

### 6. Tripp's Attacks on Kinrich's Prior Testimony Are Misleading and Irrelevant to The Question of Admissibility

Tripp does not seriously question Kinrich's qualifications as an expert. Nor could he. Kinrich has significant knowledge, skill, experience, training, and education that qualifies him to offer calculations and opinions related to Tesla's damage claims. He is a Certified Public Accountant with more than 36 years of experience analyzing damages in commercial disputes. ECF No. 86 at 28 (Kinrich Report ¶ 2). He has an undergraduate degree in Mathematics from Pomona College, a Master of Science degree in statistics from Stanford, and an MBA from the University of Maryland, where he studied finance and quantitative methods. *Id.* He has decades of professional experience studying and applying damage quantification and valuation methods. ECF No. 86 at 37 (Kinrich CV). He has written numerous publications regarding the issues involved in calculating damages. ECF No. 86 at 42-43 ("Publications" section of Kinrich CV). He has been qualified to testify in numerous federal and state court trials. ECF No. 86 at 45-50 (detailing Kinrich's testimony since 2013).

Instead of challenging Kinrich's qualifications, Tripp focuses on a few misleading snippets from court decisions that did not accept some part of Kinrich's testimony for a variety of reasons in a few cases over the past 15 years. ECF No. 86 at 4-5. Those cases did not take issue with

Kinrich's "significant accomplishments and expertise in his field." *See, e.g., Shell & Slate Software Corp. v. Adobe Sys. Inc.*, Case No. CV 02-8831 AHM (AJWx), 2004 WL 5486635, at * 1 & n.3 (C.D. Cal. Sept. 17, 2004). Indeed, in two of the cited cases, the trial court did not exclude *any* portion of Kinrich's testimony, and Kinrich testified at trial.

For example, in *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, Kinrich's testimony was not excluded and he testified at trial as plaintiff's damages expert. Indeed, the appellate court affirmed the jury's verdict and award of damages as to the claim for intentional interference with prospective advantage based on Kinrich's trial testimony, while also ruling that the evidence presented at trial was not sufficient to support liability on a separate antitrust claim. 375 F.3d 1341, 1366-67 (Fed. Cir. 2004) *rev'd by* 546 U.S. 394 (2006). In fact, the Supreme Court ultimately *reinstated* the jury's original verdict of liability on that antitrust claim. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 407 (2006). Thus, Kinrich was permitted to testify about his opinions regarding damages, the jury awarded damages, and the entire verdict was upheld by the Supreme Court.

Kinrich also testified at trial in the case involving Nortel's massive bankruptcy, as did several other experts. *In re Nortel Networks, Inc.*, 532 B.R. 494, 549 & nn. 229-231 (2015) (citing Kinrich trial testimony). There, the court found "there is validity and error in all of the arguments" offered by all of the parties through their experts. *Id.* at 550. Then, the court, as the trier of fact, chose which testimony to accept from each of the experts. That the trier of fact did not accept one portion of Kinrich's trial testimony is irrelevant under *Daubert*. To the contrary, what happened in that case is exactly what should happen here—Kinrich should be allowed to testify, with the trier of fact free to accept or reject his testimony. *Humetrix*, 268 F.3d at 919.

Moreover, in several of the other cases cited by Tripp, the court's ruling regarding the admissibility of expert testimony turned on rulings on dispositive motions or evidence from fact witnesses that post-dated Kinrich's expert report. For example, the ruling in *Morpho Detection, Inc. v. Smiths Detection, Inc.*, was influenced by the court's ruling that damages for a specified time period were barred by laches. Case No. 2:11cv498, 2012 WL 12893869, at *5 (E.D. Va. Dec. 3, 2012). Likewise, the ruling in *Toyo Tire & Rubber Co. v. Doublestar Dong Feng Tyre Co.*,

turned on deposition testimony from a fact witness that her assumption about the number of sales the plaintiff company lost was based on her "gut feeling." Case No. SACV 15-00246-CJC (JPRx), 2018 U.S. Dist. LEXIS 109309, at *15 (C.D. Cal. Jun. 26, 2018) (citing deposition testimony).

These rulings only reinforce why this Court should not entertain Tripp's premature motion, which was inappropriately brought before fact discovery has been completed, before dispositive motions have been filed or decided, before the parties have submitted a proposed pretrial order, and before the "full context" for Kinrich's trial testimony is available to the Court.

## CONCLUSION

The Court should deny Tripp's motion to exclude Kinrich's testimony because it is premature and Tripp failed to meet and confer. If the Court reaches the merits, the Court should deny Tripp's motion because it raises criticisms that go to the weight to be given to Kinrich's testimony rather than its admissibility.

Dated: August 28, 2019                    **CHARIS LEX P.C.**

By: /s/ Sean P. Gates
Sean P. Gates
Attorneys for Plaintiff and
Counter-Defendant Tesla, Inc.

# CERTIFICATE OF SERVICE

      I hereby certify and declare under penalty of perjury that on August 28, 2019, I electronically filed the foregoing **TESLA, INC.'S OPPOSITION TO TRIPP'S *DAUBERT* MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY (ECF NO. 86)** with the Court's CM/ECF system which will send notification of such filing to counsel of record for all parties including:

    Robert D. Mitchell
    William M. Fischbach III
    Matthew D. Dayton
    TIFFANY & BOSCO, P.A.
    2525 E. Camelback Road
    7th Floor, Camelback Esplanade II
    Phoenix, AZ  85016-4229

    TEL:  602-255-6000
    FAX:  602-255-0103
    E-MAIL:  rdm@tblaw.com
    E-MAIL:  wmf@tblaw.com
    E-MAIL:  md@tblaw.com

    Attorneys for Defendant/Counterclaimant
    Martin Tripp

                                       /s/ Douglas J. Beteta
                                    Counsel at Charis Lex, P.C.

CERTIFICATE OF SERVICE