# Exhibit 1

**CONFIDENTIAL - Jeffrey H. Kinrich - 5/9/2019**

Page 1

```
              UNITED STATES DISTRICT COURT
                  DISTRICT OF NEVADA


TESLA, INC., A DELAWARE        )
CORPORATION,                   )
                               )
              PLAINTIFF,       ) CASE NO.
                               ) 3:18-CV-00296-LRH-CBC
           vs.                 )
                               )
MARTIN TRIPP, AN INDIVIDUAL,   )
                               )
              DEFENDANT.       )
_____)
                               )
MARTIN TRIPP, AN INDIVIDUAL,   )
                               )
              COUNTERCLAIMANT, )
                               )
TESLA, INC., A DELAWARE        )
CORPORATION,                   )
                               )
              COUNTERDEFENDANT.)
_____)


            C O N F I D E N T I A L

  (Pursuant to agreement of counsel, the following
      transcript has been designated confidential)


      EXPERT DEPOSITION OF JEFFREY H. KINRICH

          TAKEN THURSDAY, MAY 9, 2019

             LOS ANGELES, CALIFORNIA


Depo Dynamics, LLC
(888) 494-3370


     Reported by Alejandria E. Kate, C.S.R. No. 11897
                   Job No. 102342
```

```
 1              UNITED STATES DISTRICT COURT
 2                   DISTRICT OF NEVADA
 3
 4   TESLA, INC., A DELAWARE        )
     CORPORATION,                   )
 5                                  )
              PLAINTIFF,            ) CASE NO.
 6                                  ) 3:18-CV-00296-LRH-CBC
                   vs.              )
 7                                  )
     MARTIN TRIPP, AN INDIVIDUAL,   )
 8                                  )
              DEFENDANT.            )
 9   _____)
                                    )
10   MARTIN TRIPP, AN INDIVIDUAL,   )
                                    )
11            COUNTERCLAIMANT,      )
                                    )
12   TESLA, INC., A DELAWARE        )
     CORPORATION,                   )
13                                  )
              COUNTERDEFENDANT.     )
14   _____)
15
16
17
18
19
20
21        DEPOSITION OF JEFFREY H. KINRICH, TAKEN ON BEHALF
22   OF THE DEFENDANT, AT 9:44 A.M., THURSDAY, MAY 9, 2019 AT
23   523 WEST 6TH STREET, SUITE 400, LOS ANGELES, CALIFORNIA,
24   BEFORE ALEJANDRIA E. KATE, C.S.R. NO. 11897, PURSUANT TO
25   NOTICE.
```

```
 1            A P P E A R A N C E S:

 2

 3   ATTORNEYS FOR DEFENDANT COUNTERCLAIMANT MARTIN TRIPP:

 4        TIFFANY & BOSCO P.A.
          BY:  WILLIAM M. FISCHBACH III, ESQUIRE
 5        2525 EAST CAMELBACK ROAD
          PHOENIX AZ 85016
 6        602.255.6000
          wmf@tblaw.com
 7

 8
     ATTORNEYS FOR PLAINTIFF AND COUNTERDEFENDANT
 9   TESLA, INC.:

10        HUESTON HENNIGAN LLP
          BY:  ALLISON LIBEU, ESQUIRE
11             STEPHEN RICHARDS, ESQUIRE
          523 WEST 6TH STREET
12        SUITE 400
          LOS ANGELES CA  90014
13        949.273.4153
          alibeu@hueston.com
14        srichards@hueston.com

15

16   ALSO PRESENT:

17        JEFFREY LOPEZ, Videographer

18

19

20

21

22

23

24

25
```

```
 1   it's not going to change my answer.  The question
 2   doesn't -- I don't understand what that has to do
 3   with my prior answer, which is what I think you
 4   were responding to.
 5           If I'm wrong, you may try it again.
 6   BY MR. FISCHBACH:
 7       Q.   Did the three indices that you identified,
 8   did they finish up or down that day?
 9       A.   I don't know.  It wouldn't matter.
10       Q.   Why would it not matter?
11       A.   For all the reasons I described just a few
12   answers ago, that whatever happens before the
13   19 minutes is sunk, it's moot.  If the market
14   skyrocketed or plummeted before then, you don't
15   care.  It doesn't affect what is happening at that
16   point.
17       Q.   All right. Did you do any analysis to
18   determine whether or not the Tesla stock price
19   correlated with either the NASDAQ or the NASDAQ
20   Automotive Index for, say, June 5 to June 11?
21       A.   I did not, nor would it have any
22   relevance.  But the answer is no, I did not.
23       Q.   So, well, you told me before that looking
24   at what happened before publication was irrelevant;
25   is that right?
```

1  A.  Yes.
2  Q.  Now you're telling me what happened after
3  publication is also irrelevant?
4  A.  Not after immediately, that's why we do
5  the 19 minutes to the end of the business day.  But
6  what happens a day later or two days later or five
7  days later is irrelevant.
8  Q.  What -- what are you basing that on?
9  A.  Efficient markets.
10 Q.  Okay.  Explain that, please.  I -- I'm
11 familiar with the theory, but explain that.  If I'm
12 a juror and I'm a retired schoolteacher, explain
13 that theory to me and how it factors into your
14 opinion.
15 A.  A stock that's widely covered and
16 widely -- I'll leave it at covered, like Tesla,
17 because Tesla has a lot of people who are -- a lot
18 of analysts who follow it and a lot of investors in
19 it, incorporates changes in information quite
20 quickly.
21      So the kind of information that comes out,
22 whether it's an Elon Musk tweet, or a public
23 earnings announcement, or a leak from Tripp,
24 because Tesla is trading efficiently, it would be
25 expected to be incorporated quite quickly.

```
 1          And so the time period immediately after a
 2   disclosure is where you would expect to find the
 3   information.  By the time you get to the next
 4   business day, they would already be incorporated.
 5          And equally relevant, perhaps even more
 6   relevant, other news, other information then
 7   interferes -- "interferes" is the wrong word, but
 8   also occurs.  And so you can no longer distinguish
 9   the influences of the various causes.  That's why
10   the short period matters.
11          But over a long period of time, I mean,
12   the next day, as I recall, was the stockholders'
13   meeting.  And certainly the influence of the
14   stockholders' meeting would have a lot to -- would
15   be fairly, and if you look at it, you'd see that it
16   probably was.
17          So it's -- it's a distinguished -- sorry,
18   I spoke poorly.  You can distinguish the causation
19   elements and can no longer identify any influence
20   for the earlier news.  But that would already have
21   been incorporated anyway.
22      Q.   You don't have a causation opinion in this
23   case; correct?
24      A.   I don't have an ultimate conclusion.
25   I've -- as I said before, I've attempted to rule
```

1  out some things that would be potential causes, and
2  I think I've succeeded in that.
3          But I have not drawn the conclusion that
4  the entire 20 cents was caused by the disclosure
5  from Mr. Tripp, though it's not inconsistent with
6  what I've been able to find.
7      Q.  Going back to the issue of efficient
8  markets.
9          What, in your opinion, is the appropriate
10 amount of -- what was the appropriate window to
11 track the change in Tesla's stock price following
12 the publication of the article?
13     A.  It's not a predetermined amount.  It
14 depends on issues about news coverage and
15 disclosures and whether there are other intervening
16 but unrelated events.
17         In this case, tracking through the end of
18 the stock market close made sense.
19         The opening the next morning was already
20 influenced by this potentially, and by other news
21 events that had occurred about Tesla in the
22 intervening time, there were other news events.
23 And so you can no longer track it after that.
24     Q.  What other news events occurred between
25 the publication of the first Business Insider

```
 1   article on June 4th and when Tesla opened up for
 2   regular trading on June 5th of 2018?
 3        A.   I don't remember.  Just that they were
 4   there.
 5        Q.   Suppose the Business Insider article had
 6   come out one minute after trading had opened on
 7   June 4th, would you examine the stock price for the
 8   entire trading day as part of your analysis?
 9             MS. LIBEU:  Incomplete hypothetical.
10             THE WITNESS:  You might look at it.  It
11   depends on what else happens.  If there was other
12   news later in the day, that might be something you
13   cut off and you say, "I can no longer isolate the
14   impact of this event."
15             So you'd have to look at the underlying
16   facts and circumstances to decide what the
17   appropriate time period is.
18             Quite often on these kind of studies, an
19   entire day is relevant, but that assumes that the
20   only relevant news that came out is the item you're
21   studying.
22        Q.   According to Exhibit 5 of your report, the
23   price of Tesla stock just before the publication of
24   the first Business Insider article on June 4 was
25   $296.94; correct?
```

```
 1   to extend before the event, that goes to the whole
 2   day, for example, would be a clear error in
 3   methodology.
 4       Q.   But you said "any other time period."
 5            So, for example, what if the time period
 6   was from 19 minutes before the close of trading on
 7   June 4 to 24 hours after that?
 8       A.   Yes, that would also be an error.
 9       Q.   Why?
10       A.   Because of the intervening events.  The
11   other news that has come out about Tesla during
12   that time period.
13       Q.   What about 12 hours?
14       A.   Well, anything that passes the end of the
15   close, the market close would be -- let me back up.
16            After the market closed, the data in the
17   overnight trading is usually pretty lousy and is
18   not usually a good indicator of meaningful prices,
19   the volume is too low, the liquidity is bad, so
20   that's just a general principle.
21            Unless you need to do something during the
22   after-hours time, usually you ignore it.
23            So what we're really talking about is the
24   next day.  And the next day, we already have news
25   out, so it's confounded and you can't learn much at
```

```
 1   that point.
 2       Q.   So you're saying the only appropriate time
 3   period has to be between when the article was
 4   published and when the market closed at 4:00 p.m.?
 5       A.   Given these facts.  There are other cases
 6   where that isn't true.  There are other cases when
 7   the only meaningful event is the event at issue and
 8   the whole day may be relevant.
 9            In other words, maybe it came out before
10   the market opened, there's no other meaningful
11   information during the day and so the entire day's
12   stock price change is a meaningful measure.
13            So it's case by case, but given these
14   facts and given that the information didn't come
15   out until late in the day, the answer is yes.
16            I can't see another period.  I certainly
17   can't see a period that includes the next day when
18   you had a stockholders' meeting and you had
19   significant news about that coming out the next
20   day.
21       Q.   Okay.  But going back, I think this
22   started up on me asking you if a 12-hour period
23   would be appropriate.
24            And what's your answer on that?  Is it no
25   because it's after the close of trading on
```

1  June 4th?
2      A.   Yeah, you don't have any meaningful data
3  between close of business -- close of trading and
4  the open the next morning, so there's nothing there
5  to rely on.
6           If I had good trading data and the market
7  was active, then I might be able to do something
8  with that time, but that doesn't exist.
9      Q.   Would it be appropriate to use a period
10 of, say, the last 19 minutes of regular trading on
11 June 4th and the first hour of after-hours trading?
12     A.   No, because most after-hours stuff is
13 really bad.  I mean, just data-wise, it's really
14 bad.  You get very little market participations.
15 The volume typically declines by 100 fold.
16          Obviously, I don't know the particulars
17 here, but it's not uncommon to see 100-fold decline
18 in market volume.
19          And so you no longer get the efficient
20 market and liquidity expectations that you have
21 during the times the market was open.
22     Q.   All right.  Going back to the Schulz
23 report.
24          So you take issue with his critique of the
25 time period you selected.

```
 1              C E R T I F I C A T E
 2
 3          I, ALEJANDRIA E. KATE, a certified court
 4   reporter in the State of California, do hereby certify:
 5          That the foregoing deposition of
 6   JEFFREY H. KINRICH was taken before me at the time and
 7   place therein set forth, at which time the witness was
 8   duly sworn by me;
 9          That the testimony of the witness and all
10   colloquy and objections made at the time of the
11   deposition were recorded stenographically by me and
12   thereafter transcribed, said transcript being a true
13   copy of my shorthand notes thereof;
14          I further certify I am neither financially
15    interested in the action nor a relative or employee
16    of any attorney or any of the parties.
17          In witness whereof, I have subscribed my name
18   and signature this date, May 17, 2019.
19
20                          _____
21                          ALEJANDRIA E. KATE
                            California Certificate No. 11897
22                          Illinois Certificate No. 084.004797
23
24
25
```