Robert D. Mitchell (*admitted pro hac vice*)
William M. Fischbach III (*admitted pro hac vice*)
Fletcher R. Carpenter (*admitted pro hac vice*)
Jason C. Kolbe, Nevada Bar No. 11624
Kevin S. Soderstrom, Nevada Bar No. 10235

**TB TIFFANY & BOSCO** P.A.

Camelback Esplanade II, Seventh Floor
2525 East Camelback Road
Phoenix, Arizona 85016-4229
Telephone: (602) 255-6000
Fax: (602) 255-0103
E-mails: rdm@tblaw.com; wmf@tblaw.com;
frc@tblaw.com; jck@tblaw.com; kss@tblaw.com

Counsel for Defendant/Counterclaimant Martin Tripp

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| TESLA, INC., a Delaware corporation, find<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN TRIPP, an individual,<br><br>Defendant. | Case No. 3:18-cv-00296-LRH-CBC<br><br>**DEFENDANT/COUNTERCLAIMANT MARTIN TRIPP'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY**<br><br>**ORAL ARGUMENT REQUESTED PER LR 78-1** |
| MARTIN TRIPP, an individual,<br><br>Counterclaimant,<br><br>TESLA, INC., a Delaware corporation,<br><br>Counterdefendant | |

**I.  Kinrich's methodology is indefensible.  So Tesla has deployed procedural objections to delay this Court from passing on Tripp's *Daubert* motion.  This Court can and should rule on Tripp's motion, which does not seek to merely limit bits and pieces of trial testimony, but seeks to eliminate $167.37 million in market capitalization damages that constitute—literally—99.83% of Tesla's claimed damages in this case.[1]**

    **A.  Tesla's claim that any *Daubert* motion is a *de facto* motion in limine overlooks unimpeachable authority that a *Daubert* motion may be brought as a motion for summary judgment or other dispositive motion.**

Tesla' attempt to brand all *Daubert* motions as motions in limine ignores well-established precedent that litigants may assert a *Daubert* challenge via summary judgment under Rule 55, which has no meet and confer requirement and allows for a reply brief.  For example, in *In re Imperial Credit Industries, Inc. Securities Litigation*, a California District Court granted a defense motion for summary judgment that sought to exclude the plaintiff's damages expert under *Daubert* because he failed to perform a proper event study, and the Ninth Circuit affirmed.  252 F. Supp. 2d 1005, 1016 (C.D. Cal. 2003), aff'd sub nom. *Mortensen v. Snavely*, 145 Fed. Appx. 218 (9th Cir. 2005).  *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) (endorsing the use of summary judgment and directed verdict motions); *In re Williams Sec. litigation-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009) (affirming trial court's grant of summary judgment under *Daubert* where expert could not connect alleged misconduct with stock price decline).

Typically, a *Daubert* motion seeks to exclude witness testimony based on "the qualifications of [the expert], the reliability of their methodology, or the whether their testimony will assist the trier of fact," whereas a typical motion in limine seeks exclusion on another basis, such as "the timeliness of disclosure."  *Bedell v. Long Reef Condo. Homeowners Ass'n*, CV 2011-051, 2014 WL 11429298, at *1 (D.V.I. Feb. 21, 2014).  Courts have criticized litigants for filing a *Daubert* motion in the form of a motion in limine, particularly when done after the dispositive motion deadline.  *See, e.g., Novotny v.*

---

[1] Tesla's only other claimed damages are (1) $261,919 in "out of pocket costs" Tesla reportedly spent to investigate Tripp and (2) $7,385 in unearned wages that Tesla alleges are forfeit due to Tripp's breach of loyalty to Tesla.

2

*Weatherford Int'l*, LLC, 1:16-CV-260, 2018 WL 4053871, at *1 (D.N.D. May 9, 2018) ("A *Daubert* motion cannot be re-titled [as a motion in limine] to avoid the meeting of pre-established deadlines [for dispositive motions]."); *Friends of Maha'ulepu, Inc. v. Hawai'i Dairy Farms*, LLC, 224 F. Supp. 3d 1094, 1101 (D. Haw. 2016) (refusing to strike plaintiff's expert witness' declaration at summary judgment stage because the defendant had not previously requested a *Daubert* hearing); *Kern v. Hershberger*, 4:09-CV-264, 2010 WL 11531096, at *2 (E.D. Tex. Sept. 3, 2010) ("The Plaintiffs' motions in limine to exclude expert testimony are actually *Daubert* motions."); *Sivlerstein v. Procter & Gamble Mfg. Co.*, CV-108-003, 2009 WL 10678574, at *1 (S.D. Ga. Nov. 9, 2009) (denying defendant's motion in limine that "look[ed] suspiciously like a 'stealth' attempt to exclude the [plaintiff's] expert opinion" just prior to jury selection). It was prudent for Tripp to file his *Daubert* motion now to avoid any suggestion of untimeliness later.

Some courts—in either their local rules or scheduling orders—have an explicit meet and confer requirement for *Daubert* motions. This Court is not among them. LR 16-3(a) pertains to motions in limine, but does not specifically address *Daubert* motions. Tesla does not cite to any authority in this Court holding that parties must meet and confer under LR 16-3(a) before filing a *Daubert* motion.[2] Further, in this Court, motions in limine must be filed 30 days before trial and replies are not permitted absent leave of the Court. LR 16-3(a). Given this short timeframe and the inherent complexities in resolving *Daubert* issues, it stands to reason that *Daubert* motions are generally not within in ambit of LR 16-3(a). This is bolstered by the fact that a litigant may bring a *Daubert* motion as a Rule 55 motion for summary judgment, thereby avoiding the provisions of LR 16-3(a) altogether. For these reasons, a *Daubert* motion cannot be pigeonholed into LR 16-3(a).

---

[2] The lone authority cited by Tesla, *Schwartz v. Clark County*, 2:13-CV-709-JCM-VCF, 2018 WL 1627806 (D. Nev. Apr. 4, 2018), had nothing to do with *Daubert*. The motions in limine in that case sought to exclude (1) two undisclosed witnesses, (2) "statements by [plaintiff's] counsel containing beliefs or opinions about whether a witness lied during a deposition," and (3) the plaintiff's testimony regarding his retirement date. *Id.* at *1, 4.

Federal district courts "have very wide discretion when interpreting their local rules." *Gerritsen v. Escobar* y Cordova, 688 F. Supp. 556, 558 (C.D. Cal. 1988) (citing *Lance, Inc. v. Dewco Services*, Inc., 422 F.2d 778, 784 (9th Cir. 1970)).  Even if Tesla is correct in its interpretation of LR 16-3(a), this Court's flexibility in applying its own rules, coupled with notions of judicial efficiency, favor the Court ruling on the merits of Tripp's *Daubert* motion. *See, e.g., Simmons v. Safeway, Inc.*, 18-5522-RJB, 2019 WL 2921013, at *1–2 (W.D. Wash. July 8, 2019) (deciding *Daubert* motion on its merits despite movant's failure to file a meet and confer certificate in accordance with the local rules); *Bellitto v. Snipes*, 302 F. Supp. 3d 1335, 1347 n.11 (S.D. Fla. 2017) (same); *Dugas v. 3M Co.*, 3:14-CV-1096-J-39JBT, 2016 WL 3946802, at *1 (M.D. Fla. June 21, 2016) (same).

**B.**     **Expert discovery is complete and Tripp's motion is ripe for adjudication.**

Tesla disclosed Kinrich's identity and written report on November 8, 2018 per the Court's scheduling order.  Kinrich is Tesla's only disclosed expert and their only disclosed witness with respect to their market capitalization damages.  Tripp deposed Kinrich on May 9, 2019.  The discovery deadline is five days away, to wit: September 9, 2019.  There is no further discovery or disclosure that could impact Kinrich's opinion.

The cases cited by Tesla for its "prematurity" argument are distinguishable.  In both *Abbey v. City of Reno*, 3:13-CV-0347-LRH-VPC, 2014 U.S. Dist. LEXIS 62387, at *3 (D. Nev. May 6, 2014) and *Virgin Valley Water District v. Vanguard Piping System*, 2:09-cv-00309-LRH-PAL, 2011 U.S. Dist. LEXIS 4176, at*3-4 (D. Nev. Jan 13, 2011), the defendants sought to exclude the plaintiffs' experts based on their written reports alone, but without deposing those experts.  The Court in both cases therefore viewed the defense motions as premature.  In *Jones v. Harris*, 665 F. Supp. 2d 384, 404 (S.D.N.Y. 2009), the plaintiff was a *pro se* jail inmate that had "filed something captioned a Motion in Limine" five months prior, but the court "[did] not have a copy of this motion and [had] no idea what it [was] about," and

4

therefore deemed the motion "premature." *Id.*[3]

Expert discovery has been complete for months. Tesla does not proffer any forthcoming disclosure in the next five days that could impact Kinrich's opinion. Trial will not assist the Court in placing Kinrich's opinions in "full context." Given Kinrich's lack of any methodology to support his $167.37 million damages opinion, discussed *infra*, a *Daubert* hearing is unnecessary. *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 979 (9th Cir. 2009) ("District courts are not required to hold a Daubert hearing before ruling on the admissibility of scientific evidence.").

"[I]t is [Tesla's] burden under *Daubert* to establish admissibility, rather than [Tripp's] burden to establish inadmissibility." *Graham v. Playtex Products, Inc.*, 993 F. Supp. 127, 129 (N.D.N.Y. 1998) (citing *Lust By & Through Lust v. Merrell Dow Pharm.*, Inc., 89 F.3d 594, 598 (9th Cir. 1996)). If Tesla cannot meet its burden under *Daubert* now, it never will.

**II. Tripp's *Daubert* motion is not an attack on Kinrich's conclusions. Kinrich's arithmetic—multiplying the fractional and temporary dips in Tesla's stock price by the number of outstanding shares—is correct. The problem is *how* Kinrich reached his conclusion that this represented $167.37 million in damages to Tesla.**
   **A. The circumstances in this case required a traditional event study, but Kinrich did not perform one.**

Flawed arithmetic is not the basis for Tripp's motion. Tripp will stipulate that Kinrich got his math right. Kinrich's opinion on market capitalization damages must be excluded because he failed to conduct an event study or similar analysis.

Tesla acknowledges that courts have properly "rejected or refused to admit into evidence damages reports or testimony by damages experts in securities cases which fail to include event studies or something similar." *In re Imperial Credit Indus., supra*, 252 F. Supp. 2d at 1015 (citing *In re Oracle Sec. Litig.*, 829 F.Supp. 1176, 1181 (N.D. Cal. 1993)). Tesla concedes that Kinrich did not conduct any statistical or linear regression analyses to support his $167.37 million market capitalization damages claim. Kinrich was forced to concede

---

[3] Tesla also cites to *Visa International Service Association v. JSL Corporation,* 2:01-CV-0294-LRH (LRL), 2006 U.S. Dist. LEXIS 81923, at * 5 (D. Nev. Nov. 3, 2006). This citation is to the briefing by one of the parties. The court in that case ruled on the motion.

5

repeatedly in his deposition that he could not demonstrate that Tripp *caused* any decline in Tesla's stock price. Kinrich Deposition (Exhibit E to Tripp's *Daubert* motion) at 29:16-17 (Kinrich admitting he "did not reach an ultimate opinion on [the] subject" of causation), 100:11-13 ("Q. Is it your opinion that Tripp caused $167 million of market cap damage to Tesla's stock? A. I cannot reach that conclusion."), 100:18-21 ("Q. Is it your opinion that the Business Insider articles published on June 4 and June 6 caused Tesla's stock price to decline? A. I can't reach that conclusion"), 117:24 (Kinrich: "I don't have an ultimate conclusion [regarding causation]."), 194:5 (Kinrich: "I'm not concluding about causation.").

In the absence of a proper event study, Tesla argues that Kinrich "eliminated other causes for a drop in Tesla's stock price but without using a regression analysis." Tesla Response [ECF No. 89] at 5:18-19. Tesla cites only two cases to support its assertion that a regression analysis is unnecessary. Neither case is applicable to the facts here. First, in *City of Ann Arbor Employees' Retirement System v. Sonoco Products Company*, 827 F. Supp. 2d 559 (D.S.C. 2011), the plaintiff—whose expert did conduct an event study—moved to exclude the defendant's expert—who did not conduct an event study. The court denied the motion because the defense expert determined that the information at issue was "not new information disseminated to market," meaning "there was no 'event,' so there is no need for an event study." *Id.* at 572. The same cannot be said here. Kinrich identified two distinct events down to the minute: the June 4, 2018 article published at 3:42 PM Eastern Time and the June 6, 2018 article published at 3:21 PM Eastern Time. But Kinrich never followed through with the requisite linear regression analysis to show that Tripp caused any decrease to Tesla's stock price or to exclude other potential causes.

The other case is *RMED International, Inc. v. Sloan's Supermarkets, Inc.*, 94-CIV-5587-PKL-RLE, 2000 WL 310352 (S.D.N.Y. Mar. 24, 2000). In that case, there were two factors that "hindered [the expert's] ability to estimate plaintiffs' damages using statistical methods." *Id.* at *7. First, the defendant's "life as an operating company and the alleged fraud began at approximately the same time. Accordingly, there did not exist a meaningful price history for [the defendant's] stock that [the plaintiff's expert] could designate as the

control or 'clean' period from which to estimate its true value using statistical analysis." *Id.* at *7. Second, there was no singular event. The "[d]efendants' alleged misrepresentations and omissions were not revealed to the market in a single clean announcement. Rather, [the defendant's] stock price declined gradually" over time. *Id.* These two factors made an event study unfeasible in *RMED International*. Instead, the plaintiff's expert "conducted a microanalysis of each company-specific event which could have influenced [the company's] stock price, methodically charting those events on a daily basis, " resulting in a "seventy-page 'Event Analysis' containing a textual summary of each event placed next to the daily closing price of [the company's] stock for a seven-year period." *Id.* at *6. Under those circumstances, the court accepted this alternative methodology because it was "informed by a detailed factual analysis and grounded on principles generally accepted within the relevant field." *Id.* at *8.

The limiting factors in *RMED International* are not present here. Kinrich had pinpointed two events relatively close in time: the publication of Linette Lopez' Business Insider articles on June 4, 2018 and June 6, 2017. Kinrich identified two brief event periods: the 19- and 40-minute windows between the publication of the articles and market close. And unlike the plaintiff in *RMED International,* Kinrich had years and years of available Tesla stock price data "as the control or 'clean' period" from which to run a linear regression analysis. *Id.* at *7. Kinrich had everything he needed to perform a true event study, but chose not to.

In every other case cited by Tesla to alibi for Kinrich's failure to conduct a proper event study, the court rejected the expert testimony precisely because there was no event study. *See United States v. Martoma*, 993 F. Supp. 2d 452, 458 (S.D.N.Y. 2014) (excluding expert because he failed to conduct an event study that "connect[ed] the sudden decline in stock price to any other particular event"); *In re Imperial Credit Indus., supra*, 252 F. Supp. 2d at 1017 (granting defense motion for summary judgment because the plaintiff's expert failed to perform a proper event study); *In re Executive Telecard, Ltd. Sec. Litig.*, 979 F. Supp. 1021, 1026 (S.D.N.Y. 1997) (excluding expert testimony under *Daubert* due to expert's "failure adequately to distinguish between fraud related and non-fraud related company

specific influences on [the company's] stock price"); *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1181 (N.D. Cal. 1993) (disapproving derivative settlement and class settlement due to the plaintiffs' expert's "failure to employ" an event study).[4]

Characterizing Kinrich's analysis as "something similar" to an event study is like characterizing a tricycle as "something similar" to Boeing 747 because they both have wheels and go places. Kinrich never postulated what the price of Tesla stock would have been at the close of trading on June 4, 2018 and June 6, 2018 had the Business Insider Articles not been published. Kinrich Deposition (Exhibit E to Tripp's *Daubert* motion) at 120:2-16. Nor did he determine whether the fractional changes in Tesla's stock price or other market indices were statistically significant. *Id*. at 102:19-23, 103:22-24, 104:5-9, 110:15-111:2, 128:2-10. These are the key ingredients to any valid event study or similar analysis, *FindWhat Inv'r Group v. FindWhat.com*, 658 F.3d 1282, 1313 n.31 (11th Cir. 2011), but they are absent from Kinrich's $167.37 million damages analysis.

In the absence of a linear regression or other detailed analysis, Kinrich's opinion fails to satisfy Rule 702 and *Daubert*. *See In re 3dfx Interactive, Inc.*, 389 B.R. 842, 884 (Bankr. N.D. Cal. 2008), aff'd sub nom. *In re 3DFX Interactive, Inc.*, 585 Fed. Appx. 626 (9th Cir. 2014) (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (rejecting market capitalization damages analysis under *Daubert* because it lacked an event study and was based merely on the expert's "*ipse dixit*").

> **B. Kinrich's "alternative methodology" is unsupported by any methodology at all. Kinrich did not analyze whether movements in the S&P 500, NASDAQ, and NASDAQ OMX Global Automotive indices were statistically significant, nor did he analyze the correlation—if any—between Tesla stock and those three indices.**

The values of certain stocks and market indices at any given time are matters of public record and therefore not open to debate. Again, Tripp stipulates that Tesla stock declined by

---

[4] Tesla also cites *Brown v. Brewer*, CV-06-3731-GHK-SHX, 2010 WL 2472182 (C.D. Cal. June 17, 2010). *Brown* is inapposite because the plaintiff's theory of damages was premised on a company's sale at the time of a merger, not on a diminution in its stock price.

| | |
|---|---|
| 1 | 0.07% and 0.25% during the final minutes of trading on June 4 and June 6, 2018, respectively, |
| 2 | after the publication of Linette Lopez' Business Insider Articles.  Tripp further stipulates that, |
| 3 | with one exception,[5]  the value of the S&P 500, NASDAQ, and NASDAQ OMX Global |
| 4 | Automotive indices increased 0.02% to 0.16% during the same timeframes.  Kinrich just |
| 5 | places these two price movements side-by-side and, with no scientific analysis, declares that |
| 6 | they "indicate[] that the decline in [Tesla stock] is not attributable to general market or |
| 7 | industry trends."  Kinrich Report at ¶¶ 21, 22.  Simply observing "the mere simultaneous |
| 8 | existence of the two [price movements] clearly is not an appropriate methodology." *Meister* |
| 9 | *v. Med. Eng'g Corp.*, 267 F.3d 1123, 1129 (D.C. Cir. 2001) (affirming District Court's |
| 10 | decision to exclude expert testimony).  *Daubert* does not allow for ultimate conclusions |
| 11 | without any supporting analysis.  *Cf. Miller v. Asensio & Co., Inc.*, 364 F.3d 223, 234 (4th |
| 12 | Cir. 2004) (affirming zero damages verdict in securities fraud case where expert failed to |
| 13 | conduct proper event study) ("Whatever computations [the plaintiff's expert] made, however, |
| 14 | were apparently done in his head; [the expert] never committed any portion of his event |
| 15 | analysis, other than his ultimate conclusion, to written form."). |
| 16 | Conflicting fractional movements in Tesla's stock price and the S&P 500, NASDAQ, |
| 17 | and NASDAQ OMX Global Automotive indices are meaningless under *Daubert* unless |
| 18 | Kinrich can opine that (1) these fractional movements are statistically significant and (2) there |
| 19 | is a significant correlation between Tesla stock and the three indices.  Kinrich did not—and |
| 20 | could not—opine as to either.  *See* Kinrich Deposition (Exhibit E to Tripp's *Daubert* motion) |
| 21 | at 102:19-23 (Kinrich admitting the 0.07% drop in Tesla stock price on June 4, 2018 was |
| 22 | "inherently not [statistically significant]"), 103:22-24 (Kinrich: "I haven't calculated what |
| 23 | level of change is required in Tesla's stock to be statistically significant."), 104:5-9 (Kinrich |
| 24 | agreeing that "there was no statistically significant change in Tesla's stock price in the final |
| 25 | 19 minutes of regular trading on June 4"), 110:15-21 (Kinrich admitting he could not state |
| 26 | whether "the movement in any of [the] three indices was statistically significant in the last 19 |
| 27 | minutes of trading on June 4"), 100:22-111:2 (Kinrich admitting he did "no statistical analysis |

---

28   [5] The S&P 500 declined by 0.02% during the last 19 minutes of trading on June 4, 2018.

9

1  or linear regression analysis to analyze the general correlation between movement of Tesla's stock price and the movement of [the] three indices"), 128:2-10 (Kinrich: "[D]id the Tesla stock move in a statistically significant fashion[?]  [T]he answer is probably not.").

Kinrich also claims that there were no other negative Tesla news stories during final minutes of trading on June 4, 2018 and June 6, 2018 that could have impacted Tesla's stock price. Any inferences from this subjective conclusion must be rejected because they are unsupported by a proper event study or other scientific analysis. An event study or similar analysis uses data-driven analysis to establish the cause of the stock price decline *and* eliminate other factors. Kinrich's analysis does neither.

> An event study that fails to disaggregate the effects of confounding factors must be excluded because it misleadingly suggests to the jury that a sophisticated statistical analysis proves the impact of defendants' alleged fraud on a stock's price when, in fact, the movement could very well have been caused by other information released to the market on the same date.

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 190 (D. Mass. 2012), aff'd sub nom. *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82 (1st Cir. 2014).

Tesla does not cite a single case validating Kinrich's "alternative methodology" because it is not a methodology at all. Kinrich performed no linear regression or similar analysis to support his inference that Tesla's statistically insignificant stock price decline during the last few minutes of trading on June 4, 2018 and June 6, 2018 was inconsistent with an equally statistically insignificant increase in the S&P 500, NASDAQ, and NASDAQ OMX Global Automotive indices during those same periods. Further, Kinrich's subjective proclamation that there was no other negative Tesla news published during the same 19- and 40-minute periods is not an acceptable scientific method under *Daubert*. "Courts require rigorous event studies to avoid such fallacious post-hoc inferences." *Bricklayers*, 853 F. Supp. 2d at 190 (rejecting analysis of negative news article for AOL during event window).

Kinrich's "alternative methodology" is an attempt to infer causation from correlation. That approach has been soundly rejected in the *Daubert* context, and this Court should do no different here. *See, e.g., ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, CV-11-01056-PHX-NVW, 2014 WL 99017, at *10 (D. Ariz. Jan. 10, 2014), vacated and remanded on other grounds, 648 Fed. Appx. 609 (9th Cir. 2016) (excluding plaintiff's damages expert under *Daubert* where the expert "observe[d] the correlation between [the plaintiff's] decline in sales revenues and the date the [negative news] article was published and opine[d] that the correlation establishe[d] causation without any hard evidence"); *Brumbaugh v. Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1157 (D. Mont. 1999) (rejecting expert opinion under *Daubert* because "[c]orrelation of two events in time does not necessarily establish causation").

**C. Tesla cannot circumvent *Daubert* by relying on the inferential value of Kinrich's opinion when that opinion is unsupported by scientific method.**

Lastly, Tesla contends that Kinrich's market capitalization damages analysis supports an "inference" of causation, and therefore should be admissible under *Daubert*. Tesla's reasoning is backwards. "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." *Daubert*, 509 U.S. at 590. Stated differently, Kinrich's opinion must first comply with *Daubert*, and only after that may Tesla submit Kinrich's opinion for its thin inferential value.

But Kinrich cannot get past the *Daubert* threshold. His $167.37 million in market capitalization damages are unsupported by any reliable scientific method and are "connected to existing data only by the *ipse dixit*, or bare assertion, of [Kinrich]." *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999) (affirming exclusion of the plaintiff's expert because he "based solely on his belief and assumption without any scientific testing data or supporting research material in the record").

### III. Conclusion.

"Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet [FRE] 702's reliability standards by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). With Kinrich's $167.37 million in market capitalization damages, there is no "science" at all. No event study. No linear regression or data-driven analysis. No evidence of lost profits, diminished revenues, or lost customers. Just an audaciously large dollar figure, and unsupported inferences attempting to link Tripp to it.

Tesla's attempts to hype Kinrich's qualifications are meaningless in the absence of a reliable methodology. "[A]n expert's opinion must be an 'expert' opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Dana Corp. v. Am. Standard, Inc.*, 866 F. Supp. 1481, 1501 (N.D. Ind. 1994) (parenthetical in original). Kinrich can be the greatest mathematician on the planet. But his $167.37 million in market capitalization damages are unsupported by any reliable methodology, and should be excluded under *Daubert* and FRE 702.

DATED this 4th day of September, 2019.

        TIFFANY & BOSCO, P.A.

        By /s/William M. Fischbach III
          Robert D. Mitchell
          William M. Fischbach III
          Fletcher R. Carpenter
          Camelback Esplanade II, Seventh Floor
          2525 East Camelback Road
          Phoenix, Arizona 85016-4229
          *Counsel for Defendant/Counterclaimant*

# PROOF OF SERVICE

I am employed in the County of Maricopa, State of Arizona. I am over the age of 18 and not a party to the within action; my business address is Tiffany & Bosco, P.A. 2525 E. Camelback Road, Suite 700, Phoenix, Arizona 85016.

On September 4, 2019, I served the following described as:

**DEFENDANT/COUNTERCLAIMANT MARTIN TRIPP'S REPLY IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE EXPERT OPINION AND TESTIMONY**

on the following interested parties in this action:

John C. Hueston
Robert N. Klieger
Marshall A. Camp
Allison Libeu
Stephen Richards
Hueston Hennigan LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
jhueston@hueston.com;
rklieger@hueston.com;
mcamp@hueston.com;
alibeu@hueston.com;
srichards@hueston.com
*Attorneys for Plaintiff/Counterdefendant Tesla, Inc.*

Joshua A. Sliker
Jackson Lewis
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Joshua.sliker@jacksonlewis.com
*Attorney for Plaintiff/Counterdefendant Tesla, Inc.*

Sean P. Gates (*admitted pro hac vice*)
Douglas J. Beteta (*admitted pro hac vice*)
Charis Lex, P.C.
301 N. Lake Ave., Suite 1100
Pasadena, California 91101
sgates@charislex.com
*Attorneys for Plaintiff/Counterdefendant Tesla, Inc.*

**[X] (BY E-MAIL)** By transmitting the above documents to the above e-mail addresses.

**[X] (STATE)** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this 4th day of September, 2019 at Phoenix, Arizona.

*/s/ Kaleigh Stilchen*