UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA (RENO)


TESLA, INC,                    ) CASE NO:  3:18-CV-00296-LRH-CBC
                               )
              Plaintiff,       )          CIVIL
                               )
      vs.                      )        Reno, Nevada
                               )
MARTIN TRIPP,                  )    Monday, December 3, 2018
                               )
              Defendant.       )     (9:01 a.m. to 9:43 a.m.)
_____ )


TELEPHONIC CASE MANAGEMENT CONFERENCE

BEFORE THE HONORABLE CARLA BALDWIN CARRY
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:           ALLISON L. LIBEU, ESQ.
                         JOHN C. HUESTON, ESQ.
                         Hueston Hennigan, LLP
                         523 W. 6th Street, Suite 400
                         Los Angeles, CA 90014

For Defendant:           WILLIAM M. FISCHBACH, III, ESQ.
                         Tiffany & Bosco
                         2525 E. Camelback Rd.
                         Phoenix, AZ 85016

Court Reporter:          Recorded; Digital

Courtroom Administrator: LGM

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1        **Reno, Nevada; Monday, December 3, 2018; 9:01 a.m.**

2                        **(Call to Order)**

3                    **(Telephonic Conference)**

4        **THE CLERK:**  This District Court for the District of

5   Nevada is now in session, the Honorable Carla Baldwin Carry

6   presiding.  This is the date set for a telephonic case

7   management conference in Case Number 18-cv-0296-LRH-CBC, *Tesla,*

8   *Incorporated* versus Martin Tripp.

9            Present telephonically on behalf of plaintiff,

10  Allison Libeu.  Present telephonically on behalf of defendant,

11  William Fischbach.

12        **THE COURT:**  Good morning, everyone.  We are here

13  today for --

14        **MR. FISCHBACH:**  Good morning, your Honor.

15        **THE COURT:**  -- a case conference related to the Tesla

16  matter.  In preparation for today's hearing I have re-reviewed

17  the case minutes from the 10/1 status conference, which was at

18  Docket Number 42.  I have reviewed the stipulation and order to

19  continue that was filed at Document Number 51.  I have reviewed

20  defendant and counterclaimant Tripp's case management report at

21  Document Number 52, and the interim case management report

22  filed by plaintiff, Tesla, at Document Number 53.

23            I first off want to thank both counsel.  I am

24  learning very quickly that what would be a -- what you would

25  expect to see in most cases you don't, and so I really

1  appreciate how well the documents have been drafted and how

2  thorough they are.  It really does help me a lot in having

3  these hearings, so I just want to start with that.  So, thank

4  you both for that.

5          I think the best thing to do is I'm going to -- I

6  have a series of questions for both parties, and I'm just going

7  to go through the issues listed, and I think I'll go off of the

8  issues listed from Tesla's case management because there's more

9  issues in theirs, but they overlap with the issues that have

10 been presented by Mr. Tripp.

11         But let me start with this, and I'll start with

12 plaintiff's counsel.  Have the parties met and conferred

13 subsequent to the filing of the case management reports?  And I

14 believe, if I'm correct, it's Ms. Libeu?

15         **MS. LIBEU:**  Yes, your Honor.  And just for the

16 record, John Hueston of Hueston Hennigan has joined for

17 plaintiffs, as well.

18         **THE COURT:**  Okay.

19         **MR. HUESTON:**  Good morning, your Honor.

20         **THE COURT:**  Good morning.

21         **MS. LIBEU:**  Counsel for both sides met and conferred

22 since we submitted those case management reports to your Honor.

23 I think there are some issues where, you know, we've been able

24 to resolve, and, then, I think there are some that still

25 remain.

1          **THE COURT:**  Well, can you give me a background or at

2     least a snapshot of what has been resolved at this point so we

3     can just expedite -- and I should tell everybody --

4          **MS. LIBEU:**  Sure.

5          **THE COURT:**  -- we only have an hour, because I have

6     another hearing at 10:00 a.m.  I don't expect that we'll take

7     that long, but I want to try to move through this as fast as we

8     can to make sure we cover everything.

9          **MS. LIBEU:**  I think, your Honor -- and Mr. Fischbach

10    can correct me if I'm wrong -- he and I had a meet-and-confer

11    call, and I think we have resolved most of the issues having to

12    do with Tesla's document production for a couple of reasons.

13    We -- since -- between the time of the report and the

14    conference this morning, we've made an additional document

15    production, and we -- I have discussed with Mr. Fischbach what

16    additional documents are coming, and, then, we've also

17    discussed other requests he has that we are in the process of

18    looking into and meet and conferring.  But I think all of the

19    ones -- and, again, Mr. Fischbach, if he wants to raise

20    anything, I'll let him address that, but I think all of those

21    should be resolved.

22          **THE COURT:**  Okay.

23          **MS. LIBEU:**  So, then, I think we're left with really

24    is, then, just some issues with depositions, and, then, the

25    FRCP 35 exam that have not been resolved.

1          **THE COURT:**  Okay.

2          Mr. Fischbach, do you have anything to add with

3    respect to what's been resolved, sir?

4          **MR. FISCHBACH:**  No, I think with regard to the

5    written discovery I concur with plaintiff's counsel.  We're

6    working through it, your Honor.

7          **THE COURT:**  Okay.  Perfect.

8          Well, I think, in that case, what we'll do is we'll

9    just -- but you have met and conferred with respect to the

10   balance of the issues that were in the case management reports?

11         **MS. LIBEU:**  Yes, your Honor.

12         **THE COURT:**  And also with Ms. Libeu?  Okay.  I just

13   wanted to make sure.

14         **MS. LIBEU:**  Yes.

15         **THE COURT:**  Let me just go through each one in turn,

16   and we will -- like I said, I think -- well, depending on the

17   issue, I will direct which counsel I'd like to hear from first,

18   if that makes sense to the parties.

19         The first issue that I note --

20         **MS. LIBEU:**  Yes, your Honor.

21         **THE COURT:**  -- is what was identified under heading

22   number one in Tesla's case management report, and it has to do

23   with defense exceeding depositions, ten depositions.  Let me

24   just start with this.  I agree with what Mr. Tripp has stated

25   in his case management report, which was that this seemed to be

1   premature since no depositions had yet been noticed.

2          So, let me start with Ms. Libeu.  Have depositions

3   now been noticed by the plaintiff at this -- or the

4   counterclaimant and defendant, Mr. Tripp?

5          **MS. LIBEU:**  Mr. Tripp hasn't noticed any depositions.

6   We've noticed some depositions, but we -- for the record, your

7   Honor, we do agree that this is something that it's premature

8   and that we think the law requires him to exhaust his ten to

9   then determine whether he really needs more.

10         **THE COURT:**  Mr. Fischbach, do you have anything to

11  add to that, sir?

12         **MR. FISCHBACH:**  Judge, I think the simplest solution

13  is for us to do ten depositions and then concur with Tesla, so

14  then it could be that, you know, that Tesla might be fine with

15  a stipulation to exceed the ten dep.  And we agree it's a

16  little premature on that.

17         **THE COURT:**  Okay.  Well, that was sort of my sense is

18  that until -- and I guess I would say, to the extent that -- I

19  think you're both saying this, but I think that some of the

20  depositions and things like that, the discovery aspects of this

21  need to be exhausted before we get to the question of whether

22  or not more depositions beyond the ten should be scheduled.

23  So, I would ask that the parties exhaust that discovery at this

24  point, but to the extent that this becomes an issue, we can

25  certainly address that when it seems more ripe for review at

1    that point with the parties.  So, we will table that issue.

2         And I should state for the parties, based on my

3    review of everything, I do think it makes sense to have a

4    subsequent case management conference in, say, early February,

5    and I'll set that at that time.  But, to the extent that

6    there's issues that remain or issues that need to be revisited,

7    we'll revisit those at that next case management to hopefully

8    ensure that parties don't have to file extensive motions to

9    compel and other discovery-related motions.  So, that will be

10   tabled until the next case management conference, and, to the

11   extent that it needs to be raised at that time, we can discuss

12   it then.

13        Moving to the issue number two, heading number two in

14   the case management report of Tesla, and this has to do with

15   the location of Mr. Tripp's deposition.  Let me start with

16   this.  I agree that, as a plaintiff in this case, a counter

17   plaintiff, he would be required to have his deposition in a

18   location in the forum where the case is proceeding.  I am not

19   convinced that this is a compulsory counterclaim because it

20   relates to issues and things that happened subsequent to the

21   trade secrets issues that really form the basis of Tesla's

22   claims.  But with that being said, I do think that there is a

23   middle ground for everybody to work off of, because in all

24   my -- in all reality, he's actually being deposed as both a

25   plaintiff but also as a defendant.

1          So, have the parties talked or discussed this any

2    further and has any movement been made?  And I'll start with

3    Ms. Libeu.

4          **MS. LIBEU:**  We discussed, your Honor, and the

5    parties, I think, just agreed to disagree on this point on the

6    deposition.  We, obviously, think Mr. Tripp should appear in

7    the forum, but we're amenable to another mutually convenient

8    location, realizing that his counsel aren't in Nevada; they're,

9    I think, in Arizona, and we'd be amenable to a different

10   location than the forum in the United States; we just don't

11   think it's appropriate to have to travel to Hungary to take his

12   deposition.

13         **THE COURT:**  Well, I will say that that's not going to

14   happen.  So, that -- that will not be ordered by the Court

15   regardless of whatever the resolution would be.  I think that

16   would make absolutely no sense to have, you know, the only

17   person who doesn't travel be Mr. Tripp, under the

18   circumstances, especially because, as I already indicated, I do

19   not see these as compulsory counterclaims.  But I do think that

20   there's a middle ground for the parties to work on in order to

21   come to a better resolution.

22         I'll also state, for the record, I'm not inclined,

23   nor will I likely grant, any type of videoconference

24   deposition.  I think that this is the type of deposition,

25   especially if you are proceeding towards trial, where, as

1    counsel -- and I would say both for plaintiff and defendant --

2    it's going to be important to see how he is as a witness.  And

3    that would be very difficult to see the nuances of how someone

4    responds, the inflections of their voice, the way that they

5    appear; it's just simply not something you can readily observe

6    on a videoconference.  So, that would not be allowed.  However,

7    I do think that the parties should be able -- and I will also

8    say, for the record, that I think that being able to prepare

9    Mr. Tripp would be nearly impossible if the deposition didn't

10   occur in the United States and his counsel weren't able to sit

11   down with him and to go over the documents.

12          So, with all of that being said, I would ask for the

13   parties to meet and confer again to try to figure out if there

14   is another location in the United States, and maybe Arizona

15   would make the most sense, because that is where his counsel's

16   offices are, and that's where he's been directed to review

17   documents in person under the protective order.  But I think at

18   this point I think I've made it pretty clear what my

19   inclinations are on this, so I would ask the parties to meet

20   and confer on that again to try to come up with a resolution on

21   how that should be handled.

22          Is this a deposition that you anticipate taking

23   before the February time frame for another case management

24   conference?

25          **MS. LIBEU:**  It may or may not, but it certainly would

1   be around that time, assuming your Honor grants the stipulation

2   to extend the discovery deadline.  We are talking January,

3   February for depositions, in terms of availability of

4   Mr. Tripp.  We'll, obviously, work with him on the time period,

5   so it may or may not need to be before that February date.

6          **THE COURT:**  Well, I should say -- I should have

7   stated, for the record, I do intend to sign that.  I do have

8   some questions, though, about whether it's enough time, to be

9   totally frank with the parties, given everything that's going

10  on in this case.  So, but at the minimum, I'm going to agree to

11  the dates that you've already stipulated to.

12         So, Mr. Fischbach, is there anything that you'd like

13  to add, sir, with respect to that?

14         **MR. FISCHBACH:**  No, Judge.  I think we'll meet and

15  confer again, and I think Arizona does -- at least does make

16  some good sense.  I'll be candid.  I mean, our -- we were

17  hoping Tesla might agree to contribute to his travel expenses,

18  you know, given the kind of a -- of the disparity of financial

19  resources here, but it's something I can take up with Ms. Libeu

20  in a separate meet and confer.  We are targeting -- we're

21  trying to kind of line up as many depositions as we can kind of

22  back to back, and that's why we're targeting January, February.

23         In terms of an extension on the discovery time frame,

24  that was what Tesla was willing to agree to.  I tend to agree

25  with your Honor that probably more time is going to be needed,

1    but as for now that's what Tesla would agree to, and it's very

2    possible the issue may come up again.

3         **THE COURT:**  Well, I only say that because my

4    preference is to have people get dates that are realistic so

5    we're not having constant motions and stipulations filed.  And,

6    in all reality, I think that, you know -- like I said, I'm okay

7    with the dates that you have.  I just want to make sure that

8    it's enough time to get this done, because I'm not inclined to

9    grant extension after extension after extension.  And, so,

10   that's why I would make that caveat.

11        I would ask that the parties meet and confer and to

12   discuss even if there is any kind of fee splitting that could

13   be agreed to by the parties.  Like I said, he's not being

14   deposed simply as a plaintiff or a counterclaimant.  He's also

15   being deposed as a defendant in the case.  Now, of course, I

16   don't know that the rule requires any of those things, but I

17   think that there's ways to mutually agree on some way to get

18   this to a resolution without it needing to be brought to the

19   Court's attention again.  But what I will say is this, again,

20   meet and confer on this, and if you can't reach a resolution --

21   if you plan on doing a deposition before our next meet and

22   confer, I would ask that the parties file something in which

23   it's a joint document simply stating that the parties can't

24   agree on this particular issue and line out just in a couple of

25   paragraphs what your respective positions are, where you're at,

12

1    and we can try to schedule a teleconference as soon as

2    possible, so if you do try to get the deposition done before

3    our next case management conference, we can have that resolved.

4    But if you can wait until the next case management conference,

5    if you're unable to agree, we can just address it there.

6              So, any questions, Ms. Libeu, on the Court's position

7    on that?

8              **MS. LIBEU:**  No.  Thank you, your Honor.

9              **THE COURT:**  And Mr. Fischbach?

10             **MR. FISCHBACH:**  Well, Judge, maybe a suggestion;

11   during this meet and confer maybe would be a good time for the

12   parties to discuss another extension on discovery, and I don't

13   know if the Court can hold off on signing the order until we've

14   maybe met -- or come up with a different date, because --

15   because I'll agree, doing kind of repetitive extensions are

16   usually kind of a -- are problematic, and I'd prefer that we

17   kind of get together and stake out a good discovery cutoff date

18   that's realistic and then kind of back that into a subsequent

19   filing.

20             **THE COURT:**  Okay.  Well, let's table the question of

21   the extension and stipulation until the very end, and then we

22   can discuss that, and that way it can give Ms. Libeu an

23   opportunity to speak to that issue.  But let's move to the next

24   issue in the case management.  But thank you for that,

25   Mr. Fischbach.  I do appreciate that.

1          With respect to the deposition of the wife, I agree

2    Rule 45 does not extend to overseas depositions.  I don't know

3    that your subpoena would even be effective.  It's been my

4    experience you would have to go through the process of getting

5    what we call an MLAT in order to be able to do that.  That's a

6    difficult thing to do.  I also am unclear as to whether or not

7    she really is going to be called as a witness or whether or not

8    she simply was placed on the initial disclosure list.  However,

9    with that being said, she certainly appears to be somebody that

10   would have information that would be relevant to the case,

11   particularly as it relates to Mr. Tripp's alleged emotional

12   distress, any pressure that this put on the marriage or impact

13   to him; you know, she would be able to talk about her

14   observations in terms of how this affected him.  And with that

15   being said, spousal privilege, which is something brought up by

16   Tesla, that is a very narrow privilege in the state of Nevada.

17   It only extends to communications.  So, specifically, things

18   that were said between the parties would be privileged under

19   spousal privilege.  However, to the extent that she observed

20   anything, she experienced anything personally, anything of that

21   nature, that's all fair game.  That is not covered by

22   privilege.

23          So, I guess, the question -- and I'll start with

24   Mr. Fischbach as to this, which is, is this a witness that you

25   anticipate actually calling and relying on for purposes of this

1  case at trial?

2       **MR. FISCHBACH:**  Well, we're not entirely certain

3  right now, your Honor.  We did identify her as a party with

4  knowledge, but for purposes of this call, I don't want to

5  (indisc.) position that we don't intend to call her.

6       **THE COURT:**  Okay.

7       **MR. FISCHBACH:**  So, we would certainly reserve the

8  right to call her.  And to that end, I do believe that we would

9  invoke the privilege with respect to any communications, but I

10 agree with the Court that, you know, what she observed, what

11 she herself experienced, I think that is fair game to the

12 extent she was called as a witness in trial.

13      **THE COURT:**  Is there any claim in this that relates

14 to any sort of loss of consortium type claim?  I don't recall

15 seeing it that specifically alleged, but is that part of the

16 emotional distress and the pressure on the marriage that's -- I

17 apologize; this is so personal, but I do think it goes directly

18 to who else would be a witness to that other than Mr. Tripp.

19 So, can you elaborate on that at all, Mr. Fischbach, or is this

20 not a good time for that?

21      **MR. FISCHBACH:**  Oh, it's a good time, Judge.  You

22 know, loss of consortium is an interesting claim, because it's

23 a derivative claim, so, obviously, she's not asserting a loss

24 of consortium claim.  And to the extent, you know, Mr. Tripp

25 is -- I wouldn't say we're asserting a -- I don't know that

1   Mr. Tripp could necessarily assert a loss of consortium claim

2   because it did claim it's not derivative.  But I do suspect

3   that he would testify that it's put a stress on the marriage.

4   But, other than that, I think that's going to be the extent of

5   it.

6            THE COURT:  I guess what I was thinking in terms of a

7   middle ground on this, to the extent that this particular

8   individual could be a witness, I would suggest that Tesla

9   propose interrogatories or even a written deposition of sorts

10  to this particular witness to get information as to what she

11  really does know and what would likely be invoked in terms of

12  privilege, and then we can revisit whether or not we need to

13  address this in any more depth beyond that.

14            Is there any objection to that, Ms. Libeu?

15            MS. LIBEU:  No, I think that's fine, your Honor.  We

16  can do that and then address it secondarily.  In addition, I

17  think Mr. Fischbach and I can probably meet and confer on a

18  deposition, whether this one might be one where telephonic

19  would be appropriate.

20            THE COURT:  Okay.  Well, that -- let's add that to

21  your list, for lack of a better word, for the meet and confer

22  as to whether or not that's something that you can start to

23  work on to resolve.  My guess is that even at the meet and

24  confer that might be a bit even premature until you've

25  propounded some deposition -- or at least some questions

1   through interrogatories or even a written deposition before

2   that.  But I would suggest that you put that on the list, and

3   to the extent that that can't be resolved by our February meet

4   and confer or case conference, then we can address that in more

5   detail at that point.

6           Anything further on that, Ms. Libeu?

7           **MS. LIBEU:**  No.  Thank you, your Honor.

8           **THE COURT:**  Mr. Fischbach?

9           **MR. FISCHBACH:**  No, your Honor.

10          **THE COURT:**  Okay.  That takes us to the mental exam

11  of Mr. Tripp.  I think we have two last issues.  And I have to

12  be frank.  I think that given the fact that this particular

13  individual is making a claim of intentional infliction of

14  emotional distress, my inclination is that an independent exam

15  would make sense.  The question I have for Mr. Fischbach is,

16  are -- is he alleging continued emotional distress or emotional

17  distress that -- you know, prospective emotional distress, as

18  well as what he went through at the time?  Because I think that

19  may change the analysis to some extent.

20          Mr. Fischbach?

21          **MR. FISCHBACH:**  You know, Judge, it's a tough

22  question, as -- as I'm not -- I don't have a degree in

23  psychology or psychiatry.  Obviously, the events themselves

24  were very traumatic for Mr. Tripp.  You know, does he still --

25  does it still kind of impact him today?  Yes, it does, but I

1   think that's -- that can be said about any traumatic experience

2   that you had in the past.  I mean, that -- you know, that --

3   speaking as a veteran, that's kind of the nature of PTSD.  If

4   you have a traumatic event, and it typically lingers, you know,

5   for various periods and various degrees of intensity.  But

6   we're not making a claim that he is, for example, declaring

7   future mental health treatment.  He is not under the care of

8   any kind of mental health care provider at this point in time.

9   And, so, that's why we thought that the Rule 35 examination was

10  going a little too far given the extent of the claim.

11          **THE COURT:**  Well, I guess that, with that

12  explanation, I tend to agree.  I think that the question of

13  having a medical exam really relates more to what is currently

14  or ongoing, you know, medical issues related to a claim;

15  whereas, if we're talking strictly about things that are more

16  specific to the past, it seems to me that -- or the discovery

17  process itself would -- or at least eliminate those issues

18  through medical records or other types of, you know, evidence

19  that relates specifically to how his mental state was around or

20  about the time that all of this was happening.

21          So, my question to Ms. Libeu is, has there been

22  discovery requests propounded related to his medical history,

23  his medical records?  Have any of those things been provided,

24  and is there a need at this time for that medical exam in light

25  of what you've received or not received?

1          **MS. LIBEU:**  Two things, your Honor.  We have

2     propounded discovery on that issue.  They have produced no

3     medical records because they've said he never sought medical,

4     so there is no documentary evidence on this issue whatsoever.

5     And we've also asked questions about whether he's ever been

6     prescribed medication, taking medication, whether prescribed or

7     not, those things, and all of the answers have been no, no, no.

8     And there is no real evidence, other than what's in his head.

9          And, additionally, I will say in paragraph 98 in the

10    counterclaim, Mr. Tripp alleges that he has suffered and,

11    quote, "continues to suffer emotional and mental distress and

12    pain and suffering."  So, not only is it something that we can

13    only get from a examination of him, he does actually allege

14    continuing emotional distress in his counterclaims.

15         One other thing that we have been waiting on but

16    haven't received is in the initial disclosures there's supposed

17    to be a calculation of what he claims his damages are.  The

18    initial disclosures -- we've gotten a few amended sets, but the

19    damages calculation still says that Mr. Tripp is calculating it

20    and will get it to us at some point.  So, we still haven't

21    received that.  So, we've really gotten no information from

22    him, which is why we need the exam.

23         In addition, he's not -- he's alleging some sort of

24    compensatory damages that we don't know, and punitive.  So, to

25    fully and fairly be able to defend ourselves from what his

1    claims are, we have propounded discovery.  There isn't anything

2    other than what's in his head for us to get at.  This is why we

3    need the -- the exam.

4            **THE COURT:**  Mr. Fischbach?  Any response?

5            **MR. FISCHBACH:**  Several, Judge.   I think that

6    whatever is in Mr. Tripp's head can be obtained via a

7    deposition.  He doesn't need to sit for an independent medical

8    examination for that purpose.  In fact, we are particularly

9    concerned that Tesla would (indisc.) fact and, you know, misuse

10   it tactically and say that there is something that he's -- that

11   he -- she's somehow been trying to (indisc.) some kind of

12   mental deficit or liability, and as a result, the judge made

13   him sit for a mental exam.  I'm very concerned that that could

14   be used to prejudice Mr. Tripp, all for very, very little

15   evidentiary gain to Tesla.

16           With regard to the damages calculations, I think your

17   Honor is aware that, you know, unlike a liquidated claim for

18   damages in a breach of contract case or some -- or any other

19   kind of commercial case, that the case law is very clear that

20   damages in cases are defamation, (indisc.) invasion of privacy,

21   intentional infliction of emotional distress; those are

22   presumably within the province of the fact finder.  And it's

23   true there are times that you can assert, you know, a financial

24   loss.  For example, you could allege that the defamatory

25   statement caused you to miss out on employment or something

1   like that.  But we're not -- we're not claiming that.  With

2   regard to punitive damages, that -- that goes more to the state

3   of mind of the -- to Tesla than it does to Mr. Tripp.

4           So, again, Judge, I think at this point in time a

5   Rule 35 exam, at a minimum, is highly premature.  And I don't

6   think it's going to be necessary given that we're not asserting

7   that Mr. Tripp needs long-term mental health healthcare

8   treatment; we're not intending to call a psychiatrist, so -- to

9   talk about the impact of Tesla's conduct.  If either of those

10  were true, then a Rule 35 exam might make good sense, but not

11  under these circumstances.

12          **THE COURT:**  Well, I, unfortunately, do have some

13  experience with litigating the intentional infliction of

14  emotional distress claims, and what I would say is that I think

15  it's very difficult to do that under Nevada law absent some

16  medical records that show that there really was extreme and

17  severe emotional distress.  And when you're trying to defend a

18  case like that, without any sight of medical records, I think

19  that puts the defense in this case, which would be Tesla

20  because this is a counterclaim, at a very extreme disadvantage.

21  And how you would even deal with that if you can't get into the

22  question of what really is the emotional distress, because

23  that's been put at issue now by Mr. Tripp, not Tesla.  So, to

24  the extent --

25          **MR. FISCHBACH:**  (indisc.)

1          **THE COURT:**  Well, let me finish.

2          **MR. FISCHBACH:**  It --

3          **THE COURT:**  Let me finish.

4          **MR. FISCHBACH:**  I'm sorry.

5          **THE COURT:**  So, to the extent that that's been put at

6    issue, I think that, at the very minimum, before we can really

7    discuss this in any real substance, is there needs to be some

8    discovery.  What is the status of his medical records and

9    information related to that?  I mean, has he sought out any

10   kind of mental, you know, health assistance as a result of what

11   he claims to be the actions of Tesla?  Because if that isn't

12   the case, then I think that there is a defense to whether or

13   not this is a severe and extreme emotional distress such that

14   it would be compensable under Nevada law.

15         So, I'm going to ask the parties do this.  I would

16   ask that Mr. Fischbach respond to the discovery requests that

17   have been made by Tesla as it relates to the medical records to

18   provide them that information.  I would also want to make sure

19   that any evidence that you have will lead specifically to

20   whether or not this has been a severe and extreme, what that

21   conduct is exactly, and how that's been a severe and extreme

22   emotional distress, you know, what those symptoms have

23   essentially resulted in, and at that point the parties should

24   meet and confer to discuss whether or not Tesla still believes

25   that it needs this mental examination.  And if at that point

1  the parties can't agree, then we'll have this discussion, but

2  one thing I would like to do is to make sure that if we are

3  going down that road, that this is scheduled at the same time

4  that Mr. Tripp is already in the United States.  So, we need to

5  make sure that we get this resolved ahead of his deposition.

6         So, I guess, with that being said, this would be

7  another issue, I think, for the parties to meet and confer

8  over, but I think it requires first that Mr. Fischbach and the

9  plaintiff provide the necessary discovery to Tesla for Tesla to

10 be able to review that before you meet and confer over what

11 would necessarily be required for a Rule 35 examination.

12        Is there any questions for plaintiff on that,

13 Ms. Libeu?

14     **MS. LIBEU:**  No questions, your Honor; only just a

15 comment that we have asked for medical records and we've been

16 told there aren't any.  So, I don't know what, if anything,

17 Mr. Fischbach can provide in that area.

18     **THE COURT:**  Okay.  Mr. Fischbach, do you want to

19 respond to that?

20     **MR. FISCHBACH:**  Frankly, Judge, I was going to raise

21 the same concern, that there are no medical records, he has not

22 sought any kind of treatment.  He may do so in the future, and

23 if he does, we'd, obviously, disclose those records.  So,

24 it's -- there is nothing to provide in response to a request

25 for medical records.

1          **THE COURT:**  Have there been any interrogatories that

2     have been propounded specific to these questions of the

3     elements under the IIED claim?

4          **MS. LIBEU:**  Yes, your Honor.  We have propounded

5     interrogatories on whether he sought medical treatment, what

6     he's done in terms of, in the past, whether he's had similar

7     issues, whether he's taken medication, whether prescribed or

8     not, for his alleged emotional distress, and all of the answers

9     have essentially been no, no, no.  He hasn't alleged an

10    emotional -- he hasn't alleged that he has an emotional

11    illness.  So, that's something we do need to confer on given

12    that the answers are a little conflicting with the fact that

13    he's got an emotional distress claim out there.

14         **THE COURT:**  Well, there's -- you know, and to be

15    clear on the record, there is a distinction between having

16    emotional distress that would be part of and parcel to, you

17    know, the defamation and false-light related claims.  There is

18    another, different standard that would apply in the IIED round,

19    which is going to be severe and extreme emotional distress.

20    So, those two things are actually different, especially under

21    Nevada law.

22         So, I think at this point why don't you again meet

23    and confer with this issue, because, I have to be honest with

24    you, based on what I'm hearing just from counsel, I think an

25    IIED claim without any evidence to really establish severe and

1    extreme emotional distress, where there's no medical records,

2    there's no history, no evidence that someone actually sought

3    out any help as a relation to that particular claim, that would

4    be a hard claim to survive on motion for summary judgment.

5    Just -- just throwing that out there.  I'm not necessarily the

6    one that's going to decide that, but that would be a difficult

7    claim to pursue.

8            So, I think at this point, I think the parties should

9    meet and confer over exactly what it is that -- how this

10   claim's going to proceed.  And I do think that, Mr. Fischbach,

11   there is going to have to be some disclosure and discovery as

12   to what exactly it is that is being alleged is so severe and

13   extreme that would support an IIED claim.  And if you can't

14   establish that, that's a problem bigger than the emotional or

15   the mental examination question.   And at that point I'm not

16   sure if Tesla would want to have the mental examination,

17   because it may not be necessary if there can't be a showing

18   that there was extreme and severe emotional distress in the

19   first instance.

20           Now, to the extent that there's other emotional

21   distress that's not severe and extreme, I guess the question

22   again goes back to whether or not there's allegations of future

23   emotional distress or future damage that was done.  In that

24   type of instance, I'm not sure that a mental examination is

25   really necessary to go down that road.  Based on what's been

1    said, I know that there was the allegation in -- what is it --

2    paragraph 93, but I do think that the parties should meet and

3    confer and try to resolve some of these issues, and we can

4    revisit this at the next case management conference.  I guess

5    at this point I would ask that Mr. Tripp's deposition not be

6    scheduled until after that time so we can resolve some of these

7    issues to the extent they need to be resolved.

8            Is there any question on that, Ms. Libeu?

9            **MS. LIBEU:**  No, your Honor.

10           **THE COURT:**  Mr. Fischbach, is there anything you'd

11   like to add, sir?  I'm sorry; I think I may have cut you off.

12           **MR. FISCHBACH:**  No, your Honor.

13           **THE COURT:**  Okay.  Perfect.

14           That takes us, then, to the deposition of Elon Musk.

15   Let me state this for the record.  I do not believe that he

16   would fall within the apex rule.  And the reason for that is

17   this is not a case where a corporation is being sued in

18   relation to something that this particular individual doesn't

19   have personal knowledge of.  The very allegations that, as I

20   read them, in the counterclaim particularly relate specifically

21   to statements, emails, tweets that came directly from Mr. Musk.

22   So, to the extent that he has personal knowledge of the actions

23   taking place in this case and, in particular, the fact that his

24   own statements, as I understand them, are what raised the basis

25   for the defamation and false-light claims themselves, that

1    makes this different than most cases where the apex rule has

2    been used to prevent the deposition of a CEO or other high-

3    level corporate executive.  So, in this particular case, I do

4    not agree that he would be protected under the apex rule.

5           Now, with that being said, I do think that we are not

6    going to allow an extensive deposition; we're not going to

7    allow the deposition to be taken in Kansas or something to, you

8    know, somehow harass or otherwise take away Mr. Musk from his

9    daily activities as the CEO of Tesla.

10          So, with that being said, is there anything,

11   Ms. Libeu, that you would like to add to this issue?

12          **MS. LIBEU:**  Just very briefly, your Honor.

13          Mr. Musk's deposition hasn't been noticed or

14   subpoenaed, so we think technically this issue isn't even ripe

15   for resolution.  What we would like to have is, once it's

16   noticed, have the opportunity to file a formal briefing on the

17   issue, including to address the issues on ways in which we

18   think the deposition, if ordered, should be limited so it

19   doesn't turn into something that is beyond really the pale of

20   this case.

21          **THE COURT:**  Well --

22          **MS. LIBEU:**  We would -- we would request that

23   opportunity.

24          **THE COURT:**  Well, I guess, I -- but the question

25   would be, what more would you provide that you haven't already

 1   provided in the case management report?

 2           **MS. LIBEU:**  Right.  (indisc.)

 3           **THE COURT:**  I actually did some fairly significant

 4   independent research on this question before I got here today,

 5   and I've read what you filed, so I'm not sure that there is a

 6   lot more to add beyond what's already been filed, and I'm not

 7   saying I'm not going to allow it, but let me just put that out

 8   there.

 9           Mr. Fischbach, what is your --

10           **MS. LIBEU:**  Fair enough.

11           **THE COURT:**  -- position on this?

12           **MR. FISCHBACH:**  Well, Judge, we haven't formally

13   noticed any depositions because we were trying to identify

14   actual dates with plaintiff's counsel.  The depositions that

15   were noticed by opponent were done unilaterally -- unilaterally

16   without consulting us on dates.  So, I tend to agree with the

17   Court that I don't know that much else needs to -- obviously,

18   we will go out of our way -- I shouldn't say go out of our way,

19   but we -- we will not notice his deposition at an inconvenient

20   location.  I suspect it would either be Nevada or potentially

21   Northern California where the Tesla headquarters is.  If the

22   plaintiff wants to brief the issue, I suppose that's their

23   prerogative, but I simply agree with the Court on this.

24           **THE COURT:**  Well, let me state this for the record.

25   This is what I would like to see done.  Before we're going to

1   get into -- and I think I am inclined to allow additional

2   briefing if we get to that point.  But before we get to that

3   point, I think both parties -- and I think I am in agreement

4   that is a little bit premature given that it hasn't been

5   noticed yet.  However, I do agree with Tesla to the extent that

6   there are limitations that should be placed, and so with

7   those -- with that in mind, I'm not placing limitations on the

8   deposition, but I am directing the parties to do extensive, you

9   know, initial discovery before you get to the point of even

10  doing a notice for his deposition.  And by that I mean, are

11  there other employees at Tesla that can be interviewed?  Is

12  there a 30(b)(6) witness that could be deposed that may be able

13  to answer some of the questions that are at issue?  Have any

14  interrogatories been issued?  Have there been any requests for

15  admission that have been propounded specific to Mr. Musk's

16  statements?  Because if he makes admissions, then there may not

17  be a need for the deposition, in and of itself, and it may be

18  avoided entirely.

19          So, I would ask that the parties do that, that

20  discovery, before you get to that point.  If at that point,

21  after the discovery has been completed, that you feel that you

22  could do to get to the information you may need and you still

23  believe you need to take Mr. Musk's deposition, then go ahead

24  and notice it up at that point, or at least meet and confer on

25  it and then notice it up, and then if there's still a

1    continuing objection -- because at that point Tesla may not

2    have an objection to a limited two- or three-hour deposition --

3    then we can revisit this issue.  So, I'm not going to make any

4    decisions with any kind of prejudice, and I am inclined that if

5    we get to that point we will go ahead and have some additional

6    briefing, because I expect that the facts are going to change

7    fairly significantly from where we are today to where we would

8    be at that point given the discovery that I would hope would

9    occur.

10           So, to be clear, my ruling is essentially that the

11   parties need to do discovery specific to any issues related to

12   Mr. Musk and his personal knowledge, statements, et cetera,

13   before that deposition notice be given, and I'll leave it to

14   the parties as to what that discovery needs to be, but I have

15   already given you some suggestions.  If at that point you

16   believe you need to have the deposition, I would first ask that

17   you meet and confer to discuss with Tesla whether or not you

18   can come to an agreement on how that would be handled, and if

19   you can't, then I would ask that the parties -- let's -- I'm

20   assuming this is not going to happen before February.  Is that

21   probably fair to say, Ms. Libeu?

22           **MS. LIBEU:**  I think that's probably fair to say.

23   Yes, your Honor.

24           **THE COURT:**  Mr. Fischbach?

25           **MR. FISCHBACH:**  I think that's probably correct, your

1    Honor.

2            **THE COURT:**  Well, let's plan on this.  We'll at

3    least -- we'll include this on our agenda for our next case

4    management conference and see where we're at.  If it's still at

5    a point where it can't be resolved or it's still pending

6    because of additional discovery that needs to be needed, then

7    I'll go ahead and address how I want the parties to deal with

8    that from a motion practice perspective at that point.  So, up

9    to that, that would be my order, as I've already indicated.

10           Is there -- and I'm sorry if I'm not being clear, but

11   is that clear, Ms. Libeu, what I'm indicating I would like the

12   parties to do?

13           **MS. LIBEU:**  It is, your Honor.

14           **THE COURT:**  Okay.  Mr. Fischbach, any questions from

15   you, sir, or any additional comments?

16           **MR. FISCHBACH:**  No, your Honor.

17           **THE COURT:**  Okay.  I think that covers everything

18   that we had in the case management reports.  Is there anything

19   specific as to issues between the parties right now, Ms. Libeu?

20   And without getting into the stipulation and order, is there

21   anything else that Tesla would like to raise at this time?

22           **MS. LIBEU:**  Nothing, your Honor.

23           **THE COURT:**  Okay.  Mr. Fischbach, is there anything

24   additional from Mr. Tripp that you'd like to raise before we

25   get to the question of the stipulation?

1          **MR. FISCHBACH:**  Nothing, your Honor.

2          **THE COURT:**  Okay.  That takes us back to the question

3    of how long an extension of time should be granted.  I've

4    already kind of indicated my thoughts on it.  Mr. Fischbach has

5    already given his thoughts, but, Ms. Libeu, I'd like to give

6    you an opportunity to speak to these issues.

7          **MS. LIBEU:**  Certainly, your Honor.  Very briefly.

8          I'm sure that you have found, in cases that you have,

9    that no matter where you set for the discovery cutoff, that

10   things will lag up until the last minute.  Our strong

11   preference is, of course, not to drag out this case longer than

12   necessary.  We believe that the initial scheduling order is

13   compliant with the Nevada local rules, which I know Nevada

14   District Court (indisc.) strong preference on having cases

15   completed within a discovery period of 180 days.  This,

16   obviously, extends that, and we're more than happy to agree to

17   that, but we don't think this is a case where we need another

18   180 days.  We think another two months here is appropriate, in

19   that the parties have done document discovery and written

20   discovery already, so we're really talking about -- and expert

21   discovery.  So, we're really talking just about depositions

22   that remain left to be completed in the next -- it's really

23   three months from now.  And we think the parties can work

24   together -- they've worked together well so far -- to get those

25   scheduled and completed within the two-month period.  So, we

1    think that that's an appropriate length of time.

2         **THE COURT:**  Okay.  And I appreciate that, and I tend

3    to agree that when you have a little bit of fire under your

4    feet you tend to move a little quicker, and when you don't,

5    it's easy to let things kind of go to the wayside.

6         So, what I'll do is this.  I will go ahead and sign a

7    stipulation order as it's drafted with the dates that we have.

8    As I've already indicated, I am going to schedule another case

9    management conference for the beginning of February.

10        Ms. Clerk, can you give us a date?

11        **THE CLERK:**  Yes, your Honor.  February 6th, 2019, at

12   9:00 a.m.

13        **THE COURT:**  Does that work for you, Ms. Libeu, and

14   the plaintiff?

15        **MS. LIBEU:**  What did you say?  The 6th or the 5th?

16   I'm sorry.  I didn't hear.

17        **THE COURT:**   The sixth.

18        **MS. LIBEU:**  Perfect.

19        **THE COURT:**  And, Mr. Fischbach, will that work for

20   the defendant?

21        **MR. FISCHBACH:**  Yes, your Honor.

22        **THE COURT:**  Okay.  And what we can do at that time is

23   discuss where we're at, as, obviously, we've already kind of

24   discussed anyway, and if there is a need to discuss any further

25   extensions at that point we can do that.  I think that that

1   makes sense, and I appreciate the statements from Ms. Libeu on

2   that, those issues.

3           I guess, at this point, I don't have anything

4   further.  Is there anything further from the plaintiff?

5           **MS. LIBEU:**  No, your Honor.

6           **THE COURT:**  From the defense?

7           **MR. FISCHBACH:**  Nothing at this time, your Honor.

8           **THE COURT:**  Okay.  Thank you both very much.  And,

9   again, I want to again thank you for your filings and how

10  thorough and well done those are.  I also want to thank you

11  both for working so well together.  I have noticed throughout

12  this litigation that it's been very congenial and very

13  professional, and given the circumstances of this case, I could

14  see where it would be very easy for that not to be the case.

15  So, I do very much appreciate it, and with that, I hope you

16  both have a great day, and we'll be in recess.

17          **MS. LIBEU:**  Thank you, your Honor.

18          **MR. FISCHBACH:**  Thank you, your Honor.

19      **(Proceeding was adjourned at 9:43 a.m.)**

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

October 10, 2019

Signed                                    Dated

*TONI HUDSON, TRANSCRIBER*