# Exhibit 10 - Martin Tripp Deposition Excerpts

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

**REPORTER'S CERTIFIED TRANSCRIPT**

TESLA, INC., a Delaware          )
corporation,                     )
                                 )  Case No.:
        Plaintiff,               )
                                 )  3:18-cv-00296 LRH-CBC
              v.                 )
                                 )
MARTIN TRIPP,                    )     **CONFIDENTIAL**
                                 )
        Defendant,               )
_____)
                                 )
AND RELATED COUNTER-CLAIMS.      )
_____)


CONFIDENTIAL

VIDEOTAPE DEPOSITION OF MARTIN TRIPP

PHOENIX, ARIZONA
WEDNESDAY, SEPTEMBER 4, 2019
9:01 A.M.




DAVID M. LEE, RMR, CCR
Certified Reporter
Certificate Number 50391
File No.: 19-29468



| | | |
|---|---|---|
| 10:06 | 1 | Q.  BY MR. GATES:  All right.  I'm going to |
| 10:06 | 2 | give to you what is marked as Deposition Exhibit 2. |
| 10:07 | 3 | And so for some reason beyond my |
| 10:07 | 4 | technical expertise, several of the e-mails and |
| 10:07 | 5 | documents that I had printed out are without the |
| 10:07 | 6 | "CONFIDENTIAL" or Bates stamp, so what I'm going to |
| 10:07 | 7 | do is just designate the unmarked deposition |
| 10:07 | 8 | exhibits as "CONFIDENTIAL." |
| 10:07 | 9 | MR. FISCHBACH:  Do you want to write |
| 10:07 | 10 | "CONFIDENTIAL" on there, maybe on the copy for the |
| 10:07 | 11 | court reporter? |
| 10:07 | 12 | MR. GATES:  Sure.  Number 2.  And we can |
| 10:07 | 13 | resolve the issue, if need be, later on. |
| 10:07 | 14 | MR. FISCHBACH:  Obviously without -- without |
| 10:07 | 15 | waiving the right to contest it, but just so there's |
| 10:07 | 16 | no ambiguity. |
| 10:07 | 17 | MR. GATES:  Okay. |
| 10:07 | 18 | Q.  Okay.  So this e-mail, you recognize this |
| 10:07 | 19 | as a response from Linette Lopez on May 27th, sent |
| 10:07 | 20 | to you at 7:10 a.m., replying to your e-mail |
| 10:08 | 21 | offering to provide information to these news |
| 10:08 | 22 | outlets; right? |
| 10:08 | 23 | A.  Correct. |
| 10:08 | 24 | Q.  Did you know about Linette Lopez prior to |
| 10:08 | 25 | the e-mail from her? |

| | | |
|---|---|---|
| 10:08 | 1 | MR. FISCHBACH:  Object to the form of the |
| 10:08 | 2 | question. |
| 10:08 | 3 | THE WITNESS:  Answer? |
| 10:08 | 4 | MR. FISCHBACH:  Go ahead and answer, yeah. |
| 10:08 | 5 | THE WITNESS:  I didn't know about her.  I |
| 10:08 | 6 | possibly have read some articles by her, but I -- |
| 10:08 | 7 | the name was not familiar. |
| 10:08 | 8 | Q.  BY MR. GATES:  Okay.  You learned at some |
| 10:08 | 9 | point that she had a grudge against Elon Musk; |
| 10:08 | 10 | right? |
| 10:08 | 11 | MR. FISCHBACH:  Object to the form of the |
| 10:08 | 12 | question. |
| 10:08 | 13 | Answer if you can. |
| 10:08 | 14 | THE WITNESS:  I don't know if it was a |
| 10:08 | 15 | grudge; she definitely contested things that he |
| 10:08 | 16 | said and did. |
| 10:08 | 17 | Q.  BY MR. GATES:  Well, you described it as a |
| 10:08 | 18 | grudge; right? |
| 10:08 | 19 | A.  At some point I probably did. |
| 10:08 | 20 | Q.  You described it as also "She definitely |
| 10:08 | 21 | had it out for Elon." |
| 10:08 | 22 | A.  I would definitely agree with that. |
| 10:09 | 23 | Q.  Okay.  So you're not sure whether you knew |
| 10:09 | 24 | that at the point when you got this response from |
| 10:09 | 25 | Linette Lopez on May 27th? |

```
14:48   1      Q.  And you copied Chris Guenther.  Who is that?
14:48   2      A.  Chris Guenther was the gentleman that
14:48   3   originally hired me, and to my knowledge at the
14:48   4   time that this occurred, he was still in the same
14:48   5   role, which is something to the effect of the
14:48   6   senior engineer for all of Gigafactory.
14:48   7      Q.  Okay.  And JB Straubel?
14:48   8      A.  He is, I believe at the time, Chief
14:48   9   Technology Officer.
14:48  10      Q.  For Tesla.
14:48  11      A.  For Tesla.  I can't remember if he was in a
14:48  12   different role prior to --
14:48  13      Q.  So you thought it wasn't -- I'm sorry.  I
14:49  14   didn't mean to talk over you.  Go ahead.
14:49  15      A.  That -- that was it.
14:49  16      Q.  So you thought it was important to make sure
14:49  17   that the Chief Technology Officer for all of Tesla
14:49  18   was aware of your disagreement with this process
14:49  19   technician, Mr. Persyn?
14:49  20      A.  Yes, I believe so.
14:49  21      Q.  ==You tell Ms. Woolford you were -- you felt==
14:49  22   ==like you were being discriminated against.==
14:49  23      A.  ==Yes, I did.==
14:49  24      Q.  ==Why did you feel you were discriminated==
14:49  25   ==against?==
```

```
14:49   1        A.   During a one-on-one with myself, Imari
14:49   2   Henderson, and Michael Bowling just prior to this,
14:49   3   I was told that I was no longer a lead and there
14:49   4   was no such thing as a lead, yet I had to interact
14:49   5   with my counterparts in the other departments that
14:49   6   were considered leads, and I still had to perform
14:49   7   the same duties.  But at that point I was looked
14:49   8   down upon, and I felt I was being discriminated
14:49   9   against because I was being treated differently than
14:50  10   my peers, but I still had the same expectations of
14:50  11   me to do the same duties as I was doing.  And even
14:50  12   they were looking down upon me, kind of making jokes
14:50  13   about it.
14:50  14        Q.   You had the same pay; right?
14:50  15        A.   I don't know if it was the same pay or not.
14:50  16        Q.   Well, your pay didn't change; right?
14:50  17        A.   That is correct.
14:50  18        Q.   And you say you were being discriminated
14:50  19   against by whom?
14:50  20        A.   By Michael Bowling, Imari Henderson, the
14:50  21   process engineering technician supervisors for the
14:50  22   Stator line, many of the process engineering
14:50  23   technicians, my counterparts in the final assembly,
14:50  24   rotor, and inverter areas.
14:50  25              I don't know if I said Michael Bowling.
```

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 14:50 | 1 | Q. You did. |
| 14:50 | 2 | A. Yeah. |
| 14:50 | 3 | Q. You said also that the supervisor, one of |
| 14:50 | 4 | those two people you had identified before, was |
| 14:51 | 5 | making comments to the day shift asking if they |
| 14:51 | 6 | had -- if you had been "offending or harassing |
| 14:51 | 7 | them." Do you see that? |
| 14:51 | 8 | A. Yes, number 3. |
| 14:51 | 9 | Q. Yes. |
| 14:51 | 10 | What were the remarks that you were |
| 14:51 | 11 | referring to? |
| 14:51 | 12 | A. I was told by several process techs that the |
| 14:51 | 13 | supervisor was asking them -- I believe just that, |
| 14:51 | 14 | if I was offending or harassing them. |
| 14:51 | 15 | Q. And you thought that this supervisor was |
| 14:51 | 16 | showing favoritism to Mr. Persyn? |
| 14:51 | 17 | A. He was, yes. |
| 14:51 | 18 | Q. Okay. |
| 14:51 | 19 | So you wanted to bring this to the |
| 14:51 | 20 | attention of the head of HR at the Gigafactory. |
| 14:51 | 21 | A. Yes. |
| 14:51 | 22 | (Deposition Exhibit Number 67 was marked |
| 14:51 | 23 | for identification.) |
| 14:51 | 24 | Q. BY MR. GATES: Let me give you what's been |
| 14:52 | 25 | marked as Exhibit 67. |

```
 1              I CERTIFY that the foregoing deposition
 2   was taken by me pursuant to Notice; that I was then
 3   and there a Certified Reporter for the State of
 4   Arizona, and by virtue thereof authorized to
 5   administer an oath; that the witness before
 6   testifying was duly sworn by me to testify to the
 7   truth; that the questions propounded by counsel and
 8   the answers of the witness thereto were taken down
 9   by me in shorthand and thereafter transcribed under
10   my direction, and that the foregoing typewritten
11   pages contain a full, true, and accurate transcript
12   of all proceedings had upon the taking of said
13   deposition, all done to the best of my skill and
14   ability; that deposition review and signature was
15   requested.
16              I FURTHER CERTIFY that I am in no way
17   related to nor employed by any of the parties
18   hereto, nor am I in any way interested in the
19   outcome hereof.
20              DATED at Phoenix, Arizona, this 16th
21   day of September, 2019.
22
23   _____
24              David M. Lee, RMR, CRR
                Arizona Certificate No. 50391
25
```