Robert D. Mitchell (*admitted pro hac vice*)
William M. Fischbach III (*admitted pro hac vice*)
Fletcher R. Carpenter (*admitted pro hac vice*)
Jason C. Kolbe, Nevada Bar No. 11624
Kevin S. Soderstrom, Nevada Bar No. 10235

TB TIFFANY & BOSCO
      P.A.

Camelback Esplanade II, Seventh Floor
2525 East Camelback Road
Phoenix, Arizona 85016-4229
Telephone: (602) 255-6000
Fax: (602) 255-0103
E-mails: rdm@tblaw.com; wmf@tblaw.com;
frc@tblaw.com; jck@tblaw.com; kss@tblaw.com

Counsel for Defendant/Counterclaimant Martin Tripp

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TESLA, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN TRIPP, an individual,<br><br>Defendant. | Case No. 3:18-cv-00296-LRH-CBC<br><br>**DEFENDANT/COUNTERCLAIMANT MARTIN TRIPP'S MOTION TO COMPEL DEPOSITION OF ELON MUSK**<br><br>**FILED UNDER SEAL UNDER COURT ORDER (ECF No. 43)**<br><br>**ORAL ARGUMENT REQUESTED PER LR 78-1** |
| MARTIN TRIPP, an individual,<br><br>Counterclaimant,<br><br>vs.<br><br>TESLA, INC., a Delaware corporation,<br><br>Counterdefendant | |

## I. Background facts.

Tesla is an American automotive and energy company based in Palo Alto, California that specializes in electric car manufacturing. In 2018, Tesla had 45,000 employees and reported more than $21 billion in operating revenue. Tesla's CEO is billionaire Elon Musk, a South African-born technology entrepreneur who is Tesla's largest shareholder and is also the founder of SpaceX, a private space exploration company with aspirations to send people to Mars. Musk's vision and innovation seem to walk hand-in-hand with his penchant for controversial, and sometimes false, public statements on Twitter and other media. This latter attribute plays a pivotal role in Tesla's liability on Tripp's counterclaims for defamation and false light invasion of privacy.

In mid-2017, Tesla recruited Defendant/Counterclaimant Martin Tripp, along with thousands of other factory workers, to work in its "Gigafactory 1" under construction 23 miles outside of Reno, Nevada. The Gigafactory was billed as a state-of-the-art manufacturing facility that would produce batteries for Tesla's "clean energy" electric vehicles. Tripp began employment at the Gigafactory in October 2017. To Tripp's dismay and disappointment, the Gigafactory was not what Tesla portrayed it to be. Tesla managed the Gigafactory poorly and it generated huge amounts of scrap and wasted material, particularly when compared to other auto manufactures. Tripp raised concerns about this with management—to include Musk himself—but never received satisfactory responses and was largely ignored.

Frustrated, Tripp reached out to Linette Lopez, a reporter with the website Business Insider, to expose the truth and encourage Tesla to change. Lopez agreed to report on the issues and asked Tripp for information to verify his claims. Using his own login credentials, Tripp ran queries at the Gigafactory to download data to his laptop. Tripp sent this data to Lopez, along with photos and videos of the Gigafactory.

Lopez subsequently published two articles on Business Insider's website on June 4 and June 6, 2018 based in part on information from Tripp. Lopez's two articles are attached as **Exhibit A** and **Exhibit B.**

Tesla responded by deploying a covert investigative team to uncover the identity of the Business Insider "leaker." Tesla's investigators cross-referenced query logs ran by all Tesla employees with the information reported in the Business Insider articles, and pinpointed Tripp as the source for Lopez. Tesla investigators interrogated Tripp on June 14 and 15, 2018. When confronted with the evidence of the queries he ran, Tripp confessed to providing information to Lopez.

On June 17, 2018, Musk sent the following e-mail to all Tesla employees:

> I was dismayed to learn this weekend about a Tesla employee ***who had conducted quite extensive and damaging sabotage to our operations***. This included making direct code changes to the Tesla Manufacturing Operating System under false usernames and exporting large amounts of highly sensitive Tesla data to unknown third parties.
>
> The full extent of his actions are not yet clear, but what he has admitted to so far is pretty bad. His stated motivation is that he wanted a promotion that he did not receive. In light of these actions, not promoting him was definitely the right move.
>
> However, there may be considerably more to this situation than meets the eye, so the investigation will continue in depth this week. We need to figure out if he was acting alone or with others at Tesla and if he was working with any outside organizations.
>
> As you know, there are a long list of organizations that want Tesla to die. These include Wall Street short-sellers, who have already lost billions of dollars and stand to lose a lot more. Then there are the oil & gas companies, the wealthiest industry in the world — they don't love the idea of Tesla advancing the progress of solar power & electric cars. Don't want to blow your mind, but rumor has it that those companies are sometimes not super nice. Then there are the multitude of big gas/diesel car company competitors. If they're willing to cheat so much about emissions, maybe they're willing to cheat in other ways?
>
> Most of the time, when there is theft of goods, leaking of confidential information, dereliction of duty or outright sabotage, the reason really is something simple like wanting to get back at someone within the company or at the company as a whole. Occasionally, it is much more serious.

3

> Please be extremely vigilant, particularly over the next few weeks as
> we ramp up the production rate [for the Model 3] to 5k/week.

*See* Musk e-mail dated June 17, 2018 at 11:55 PM., attached as **Exhibit C** (emphasis added). That Musk even got involved was remarkable.  Tesla fires and disciplines employees daily. Musk intervened personally to deliver a vocal condemnation of Tripp to tens of thousands of Tesla employees.

Musk's statements were also false.  Tesla reportedly spent $261,919 on its covert investigation of Tripp [ECF. No 90-1], but never uncovered any evidence that Tripp had "sabotaged" or "damaged" Tesla's operations.  Tripp merely gave information he obtained with his own login credentials to a reporter, and admitted as much during his interrogation. Musk also insinuated falsely that Tripp was associated or otherwise working with an outside third-party "organization" to intentionally "cheat" or "sabotage" Tesla.

Although its investigation of Tripp continued through July of 2018, Tesla formally terminated Tripp on June 19, 2018.  On June 20, 2018, Tesla filed its Compliant against Tripp in the United States District Court for the District of Nevada in Reno, Nevada [ECF No. 1]. The Complaint seeks damages for trade secret misappropriation, breach of contract, breach of fiduciary duty of loyalty, and violations of Nevada's computer crimes laws.  Tesla seeks over $167 million in damages [ECF. No 90-1].

After learning he was being sued, Tripp e-mailed Musk to tell him that the information he (Tripp) leaked would expose Tesla's irresponsible business practices.  Incredibly, Musk— a billionaire presiding over a global technology empire—responded to this taunt from Tripp— a now-unemployed factory worker—and engaged him in an argumentative e-mail exchange:

> Tripp: "Don't worry, you have what's coming to you for the lies you have told to the public and investors."
>
> Musk: "Threatening me only makes it worse for you"
>
> Tripp: "I never made a threat. I simply told you that you have what's coming.  Thank you for this gift!!!!"
>
> Musk: "You should be ashamed of yourself for framing other people.

You're a horrible human being."

Tripp: "I NEVER 'framed' anyone else or even insinuated anyone else as being involved in my production of documents of your MILLIONS OF DOLLARS OF WASTE, Safety concerns, lying to investors/the WORLD. Putting cars on the road with safety issues is being a horrible human being!"

Musk: "There are literally injuries [sic] with Model 3. It is by far the safest car in the world for any midsize vehicle. And of course a company with billions of dollars in product is going to have millions of dollars in scrap. This is not news.

"However, betraying your word of honor, breaking the deal you had when Tesla gave you a job and framing your colleagues are wrong and some come with legal penalties. So it goes. Be well."

*See* E-mails dated June 20, 2018, attached as **Exhibit D** (emphasis in original).

Later on June 20, 2018, Shamara Bell, an employee at Tesla's Las Vegas call center, sent her supervisor an e-mail containing the following message in its entirety:

Received a call[.] Caller preferred to remain unknown. Friend of Martin Tripp is concerned that he may do something violent & volatile. Says he is concerned because he's very hostile & very well armed.

*See* E-mail dated June 20, 2018 1:50 PM, attached as **Exhibit E**. Tesla had neglected to repair its call center recording system that had been inoperative for several months. Thus, Tesla has never produced a recording or other evidence to substantiate this call.

By this time, Tesla and Musk were receiving press inquiries on the recently filed lawsuit against Tripp. At 5:29 PM on June 20, 2018, Musk told a reporter from The Guardian, "Tripp sent me a threatening email this morning. . . I was just told that we received a call at the Gigafactory that he was going to come back and shoot the place up." *See* Elon Musk e-mail thread dated June 20, 2018, attached as **Exhibit F**. Twenty-six minutes later, Tesla's communications team repeated the "shoot the place up" narrative Musk has just fed to the press.

> Just so you have a statement for the tip we received and I've included some additional background below.
>
> **Attributed to a Tesla spokesperson:**
>
> "This afternoon, we received a phone call from a friend of Mr Tripp telling us that Mr Tripp would be coming to the Gigafactory to "shoot the place up." Police have been notified and actions are being taken to enhance security at the Gigafactory."

*See* E-mail dated June 20, 2018 at 5:55 PM, attached as **Exhibit G** (quotes and emphasis in original). The anonymous caller to Bell said no such thing.

Tesla reported the alleged mass shooting threat to the Storey County Sheriff's Department. At roughly 6:43 P.M. on June 20, 2018, Sheriff's deputies met with Tripp in Reno. Tripp was unarmed, visibly shaken, and crying. Tripp advised the deputies that he had sold all of his firearms before moving to Reno except one, which Tripp had sold to another Tesla employee in May 2018. After interviewing Tripp, the deputies "concluded that TRIPP was not armed; did not likely have access to firearms; and did not present a threat at that time." The deputies notified Tesla that same day that the "active shooter threat was not viable." *See* Sheriff's Report, attached as **Exhibit H**.

Instead of expressing relief that the mass shooting threat did not exist, Tesla continued to disseminate its false narrative to the press that Tripp had threatened to "shoot the place up." Tesla did this even *after* the Sheriff's Department had told Tesla that Tripp presented no threat. *See* E-mail thread dated June 21, 2018 from Dave Arnold to Newsweek reporter Jason Murdock, attached as **Exhibit I.**

Roughly a week later, Tripp left the United States and moved to Budapest, Hungary with his family. He remains there to this day. Yet Musk wanted to keep the public spectacle alive. On July 5, 2018, Musk published the following statement on Twitter directed at Lopez, the author of the Business Insider articles: "Indeed, very simple question. To be specific: @lopezlinette, did you compensate or promise to compensate Martin Tripp for inside information about Tesla? Did he, under that inducement, provide you with exaggerated negative info, which you printed, but turned out to be untrue?" *See* July 5, 2018 Musk Tweet, attached as **Exhibit J.** At the time, Musk's Twitter account had 22 million followers. Musk's

statements falsely insinuated that Tripp had accepted a bribe or other compensation from Lopez.

Tripp filed his Counterclaim on July 31, 2018 seeking damages for defamation, defamation *per se*, false light invasion of privacy, and intentional infliction of emotional distress [ECF No. 25]. By way of stipulation, the counterclaim for intentional infliction of emotional distress has been dismissed [ECF No. 66].

The parties completed written discovery and all depositions other than Musk's on September 9, 2019. On September 12, 2019, the parties' counsel held a telephonic meet and confer regarding Musk's deposition. Tesla's counsel requested a general list of topics for Musk's deposition, and asked that Tripp's counsel consider a time limitation. Tripp's counsel obliged with a letter dated September 23, 2019. *See* **Exhibit K.** Tesla's counsel subsequently advised that Musk would not be deposed absent an order from this Court.

## II.     Applicable law.

Rule 26(b) governs the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Tesla has previously sought to block Musk's deposition citing the rarely applied "apex" witness doctrine. The "apex" witness doctrine has never been recognized or adopted by the 9th Circuit and the doctrine has been repeatedly rejected by the U.S. District Court of Nevada. *See Resort Props. of Am. v. El-Ad Props. N.Y. LLC*, No. 2:07-CV-00964-LRH-RJ, 2008 WL 2741131, at *3 (D. Nev. July 10, 2008) (describing an out-of-district decision outlining the "apex" doctrine as "nonbinding," describing the objection as "not well taken," and ultimately rejecting application of doctrine); *Luangisa v. Interface Operations*, No. 2:11-

CV-00951-RCJ, 2011 WL 6029880, at *13–14 (D. Nev. Dec. 5, 2011) (allowing deposition of "busy, high-ranking executive" because he had "personal knowledge of facts relevant to this lawsuit" and noting that "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition" (citation omitted)); *U.S. Commodity Futures Trading Comm'n v. Banc de Binary, Ltd.*, No. 2:13-CV-992-MMD-VCF, 2015 WL 556441, at *2 (D. Nev. Feb. 11, 2015) (observing that the Ninth Circuit "has not yet recognized" the "apex" doctrine and rejecting argument that "apex" doctrine applied because the requisite inquiry for quashing discovery is based on Federal Rules of Civil Procedure ("Rules") 26(b) and 26(c), not whether the discovery is directed to an "official occupy[ing] high level positions").

Thus, for purposes of this motion, the only question is whether Musk's deposition is within the scope of Rule 26(b). This Court should answer that question in the affirmative for the reasons discussed below.

**III.  Legal analysis.**

**A. The law of defamation and false light invasion of privacy.**

Tripp has asserted claims for defamation, defamation *per se*, and false light invasion of privacy. In Nevada, "a defamation claim requires demonstrating (1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 121 Nev. 307, 315 (2005). "A false statement involving the imputation of a crime has historically been designated as defamatory *per se*" and is "actionable without proof of damages." *Id.* (emphasis added). Defamation may be accomplished not only by express words, but also by insinuation and implication. *Ornatek v. Nevada State Bank*, 93 Nev. 17, 20 (1977) (noting that a statement may convey a defamatory meaning when viewed in light of the "extrinsic circumstances," and even though "the defamation does not appear from the words themselves").

The "false light invasion of privacy tort is an odd hybrid of defamation and intentional infliction of emotional distress. . . ." *Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002). In Nevada, "false light extends beyond defamation in one respect: A plaintiff need not show injury to reputation." *Id.* The injury in a false light action "is mental distress from having been exposed to public view." *Id.*

### B. Musk's deposition testimony is relevant to Tripp's claims for defamation and false light because Musk was the genesis for all of the statements that Tripp alleges to be false.

Tripp's defamation and false light invasion of privacy claims are predicated on the following four statements:

- Musk's June 17, 2018 e-mail to all Tesla employees claiming that Tripp "had conducted quite extensive and damaging sabotage to [Tesla's] operations" and Musk's suggestion that Tripp was associated or otherwise working with an outside third-party "organization" to intentionally "cheat" or "sabotage" Tesla. Counterclaim at ¶ 47-51.

- Musk's June 20, 2018 e-mail to The Guardian claiming that Tesla "received a call at the Gigafactory [stating] that [Mr. Tripp] was going to come back and shoot people." *Id.* at ¶ 53-65.

- Musk's July 5, 2018 Twitter post insinuating that Tripp had accepted a bribe from Lopez. *Id.* ¶ 67-69.

- Tesla's June 20 and June 22, 2018 press releases claiming that it "received a phone call from a friend of Mr. Tripp telling [Tesla] that Mr. Tripp would be coming to the Gigafactory to 'shoot the place up.'" *Id.*

Musk made the first three statements directly in his capacity as Tesla's CEO. Although the fourth statement was made by Tesla's communications team, it came after, and merely echoed, what Musk had already told The Guardian just minutes before. Stated differently, the false "mass shooter" news story started with Musk's e-mail to The Guardian, and Tesla's subsequent press release merely doubled down what its CEO had already published. Musk's deposition testimony regarding all of these statements is relevant to Tripp's claims for

9

defamation and false light under Rule 26(b).

### C. Musk's subjective motives toward Tripp are relevant to Tripp's claim for punitive damages under N.R.S. §§ 42.005 and 42.007.

Defamation cases are exempt from Nevada's statutory cap on punitive damages. Nev. Rev. Stat. Ann. § 42.005(2)(e). A jury may award punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." Nev. Rev. Stat. Ann. § 42.005(1). The key inquiry is whether the defendant had a "motive to vex, harass, annoy, or injure." *Phillips v. Clark County Sch. Dist.*, 903 F. Supp. 2d 1094, 1105 (D. Nev. 2012). Additionally, Nevada places restrictions on the recovery of punitive damages against a corporation for the conduct of its employees unless the culpable conduct is attributable to, or ratified by, an "officer, director, or managing agent" of the corporation. *See* Nev. Rev. Stat. Ann. § 42.007; *Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 746 (2008) ("N.R.S. 42.007 ensures that employers are subject to punitive damages only for their own culpable conduct and not for the misconduct of lower level employees.").

Given these factors, Tripp must be permitted to explore Musk's subjective motives and attitudes toward Tripp to present evidence to support an award of punitive damages. Evidence gathered thus far indicates that Musk was personally obsessed with Tripp and convinced that Tripp was a corporate saboteur that was in league with short-sellers of Tesla stock, whom Musk viewed as his archenemies. In a private e-mail exchange between Musk and prominent ███████████████████████████████, Musk stated,

> What would be really concerning is if Tripp was actually sent to work at Tesla by a short seller specifically in order to provide them with material non-public info and/or feed exaggerated negative info to journalists from a position of credibility on the inside. If Tripp was using a fake account to trash Tesla right after he started, then he either has serious mental issues, was working for a short seller or both.

*See* Musk forwarded e-mail dated July 10, 2018 at 6:55 PM (TES-TRIPP 0020112), attached as **Exhibit L**. In another e-mail exchange with ███████, Musk pondered whether "Tripp was

sent to work at Tesla directly or indirectly by Chanos." *See* Musk forwarded e-mail dated July 9, 2018 at 4:40 PM (TES-TRIPP 0020104), attached as **Exhibit M**. "Chanos" is Jim Chanos, a prominent hedge fund manager who is one of the largest short-sellers of Tesla stock and an outspoken critic of Musk.

Musk's approach to Tripp is consistent with Musk's attitude toward his critics in general. Musk will use his influence and social media prominence to destroy those critics by any means necessary. In another e-mail exchange, Musk and ▇▇▇▇ discussed their efforts to "unmask" other persons critical of Tesla, such as Lawrence Fossi. Fossi once blogged about Tesla anonymously under the handle "Montana Skeptic," and was typically critical of Tesla and Musk's business practices. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and Fossi felt compelled to cease blogging for fear of losing his job. *See* Musk forwarded e-mail dated August 21, 2018 at 4:02 A.M. (TES-TRIPP 0017351-53), attached as **Exhibit N**. *See also* Montana Skeptic Blog Post, "Farewell for Now," July 24, 2018, attached as **Exhibit O**.

Then there is the case of Vernon Unsworth. Unsworth was a British diver that participated in the rescue of a boys' soccer team trapped in an underwater cave in Thailand. Musk supplied a miniature submarine drone to help the rescue effort. Unsworth told CNN that Musk's submarine was "PR stunt" and "had absolutely no chance of working." Musk retaliated by Tweeting to his 22 million followers, without any evidence, that Unsworth was a "pedo guy" (i.e., a pedophile). Musk is now embroiled in a lawsuit with Unsworth over these defamatory remarks. *See* Complaint in *Unsworth v. Musk*, 2:18-CV-8048 (C.D. Calif.), filed September 17, 2018, attached as **Exhibit P**. Musk recently sat for a deposition in that case.

As for Tripp, it was not enough that Tripp be fired, defamed, and sued for $167 million. Musk tried, without success, to have Tripp prosecuted by state and federal authorities. *See* Exhibit N (TES-TRIPP 0017352). John Hueston, Tesla's former attorney of record in this case, gave an in depth PowerPoint presentation to representatives of the FBI and Nevada Attorney General's Office in July 2018 in which he asked for the criminal prosecution of

Tripp. *See* Deposition of Jacob Nocon, attached as **Exhibit Q**, at 96:19-105:6. No indictment or criminal charges resulted.

Musk's personal motives toward Tripp, and Musk's demonstrated willingness to do harm to his critics in general, are matters Tripp is entitled to explore to support his claim for punitive damages. *Cf. Am. Family Life Assur. Co. of Columbus v. Teasdale*, 733 F.2d 559, 569 (8th Cir. 1984) (noting that insurance company's desire to "punish past critics and silence future critics, regardless of the well-founded bases for their criticisms" was evidence of "vindictive" motive).

### D. Musk's subjective motives are relevant to the issue of actual malice.

Actual malice is "knowledge that [a] statement was false or with reckless disregard of whether it was false or not. Reckless disregard means that the publisher of the statement acted with a high degree of awareness of the probable falsity of the statement or had serious doubts as to the publication's truth." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 719 (2002) (internal quotes omitted).

Actual malice is an element of false light invasion of privacy. *See Cohen v. Hansen*, 2:12-CV-1401-JCM-PAL, 2015 WL 3609689, at *13 (D. Nev. June 9, 2015). Tesla claims that Tripp must prove actual malice on his defamation claims. A plaintiff alleging defamation must prove actual malice if (1) the plaintiff is a public figure or public official, (2) the statement involves a matter of public concern and the plaintiff seeks presumed or punitive damages, or (3) the defendant asserts a qualified privilege. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 763 (1985) (actual malice required for statements about private figure involving matters of public concern and the plaintiff seeks an award of punitive damages); *Pope*, 121 Nev. at 317 ("Under a qualified privilege, the plaintiff must prove by a preponderance of the evidence that the defendant abused the privilege by publishing the defamatory communication with actual malice."); *Pegasus*, 118 Nev. at 720 (actual malice required for public figure or limited purpose public figure plaintiff). Actual malice must be proven by clear and convincing evidence. *Nevada Indep. Broad. Corp.*, 99 Nev. At 414.

1        Tripp does not concede that actual malice is necessary for his defamation claims. Tesla's argument seems to be that Tripp is a limited purpose public figure because he "thrust himself into the limelight" by providing information to Lopez. But Tripp was an anonymous source to Lopez. To the extent Tripp gained public notoriety, it is because Tesla filed this widely publicized lawsuit and then disseminated a false "mass shooter" narrative to the press. The defendant cannot be the catalyst for the plaintiff becoming a limited purpose public figure. *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) ("[T]hose charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure."). But because Tesla has asserted the necessity for actual malice on Tripp's defamation claims, it underscores the need for Tripp to depose Musk on this issue.

    "The test [for actual malice] is subjective, with the focus on what the defendant believed and intended to convey, not what a reasonable person would have understood the message to be." *Nevada Indep. Broad. Corp. v. Allen*, 99 Nev. 404, 415 (1983). Because defendants rarely concede to harboring actual malice, plaintiffs invariably rely on circumstantial evidence to prove actual malice. *See Newton v. Nat'l Broad. Co., Inc.*, 930 F.2d 662, 684 n.42 (9th Cir. 1990) ("The actual-malice inquiry looks at circumstantial evidence of what the [defendants] knew rather than at circumstantial evidence of what turned out to be correct."); *Wynn v. Bloom*, 218CV00609JCMGWF, 2019 WL 1983044, at *4 (D. Nev. May 2, 2019) ("A plaintiff is entitled, however, to prove the defendant's state of mind through circumstantial evidence."). Factors to be considered include, without limitation, whether (1) "a story is fabricated or is based wholly on an unverified, anonymous source," (2) "the defendant fabricates a statement made by a source," (3) "the defendant's allegations are so inherently improbable that only a reckless person would have put them in circulation," (3) "there are obvious reasons to doubt the veracity of the informant or the accuracy of [the defendant's] reports," (4) "the defendant has a motive for defaming the plaintiff," (5) "the defendant knows or suspects that it has committed an error and refuses to acknowledge it," and (6) "the words or acts of the defendant before, at, or after the time of the communication indicate that the defendant knew that his or her statement was or may well have been false."

13

*Biro v. Conde Nast*, 963 F. Supp. 2d 255, 277–78 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015), and aff'd, 622 Fed. Appx. 67 (2d Cir. 2015) (citing cases) (internal quotes and cites omitted). *See also Duc Tan v. Le*, 177 Wash. 2d 649, 673 (2013) ("[A]ctual malice can also be inferred from circumstantial evidence, including a defendant's hostility or spite.")

Musk is the source of all statements that Tripp alleges to be false. To prove actual malice, Tripp must prove Musk's subjective state of mind by clear and convincing evidence. Musk's deposition must proceed to give Tripp "a fair opportunity to satisfy the actual malice standard." *Tavoulareas v. Piro*, 93 F.R.D. 35, 41 (D.D.C. 1981) (granting defamation plaintiffs' motion to compel the Washington Post's "internal memoranda, drafts of articles, communications, and other materials").

### E. Musk's deposition is proportional to the needs of the case.

This motion does not seek to compel copious amounts of documents or electronically stored information. It seeks to compel the deposition of one person. "[A] single deposition is well within what is proportional to the needs of the case." *Fountain v. United States*, CV 114-127, 2016 WL 4522660, at *2 (S.D. Ga. Aug. 29, 2016).

Tesla has resisted Tripp's efforts to explore the issues above via written discovery. Tripp propounded discovery to Tesla asking that it identify "by paragraph number all allegations in the Complaint and Counterclaim that Elon Musk has personal knowledge of." Tesla responded with blanket objections—including the inapplicable "apex" doctrine—and admitted only that Musk was the author of the two e-mails and the Tweet attached as Exhibits D, F, and J. *See* Tesla's Responses to Tripp's Second Set of Interrogatories (Interrogatory No. 14), attached as **Exhibit R**. Tesla also has deflected efforts to ascertain precisely what Musk knew and when he knew it by claiming generally that Musk relied on information from others. *See id.* (Interrogatory Nos. 12 and 13). But the best, and perhaps only, source to truly ascertain Musk's subjective knowledge and state of mind is Musk himself.

Tripp does respect and appreciate that Musk is a busy individual. But the test under Rule 26 is not whether Musk's deposition will present an inconvenience for him. The test is whether it is proportional to the needs of the case. It is difficult to see how the deposition of

14

the primary tortfeasor behind Tripp's claims would not meet that standard.

## IV. Conclusion.

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████

Musk was not a "bit player" in *Tesla v. Tripp* saga. If Musk did not wish to be personally deposed, he should not have gotten personally involved. Musk had a vendetta against Tripp, and it manifested in false and defamatory statements calculated to destroy Tripp's reputation. The "consequences" for that start with Musk sitting for a deposition under oath in this case.

Pursuant to LR IA 1-3, a meet and confer certificate is attached as **Exhibit S.**

DATED this 18th day of September, 2019.

TIFFANY & BOSCO, P.A.

By /s/William M. Fischbach III
   Robert D. Mitchell
   William M. Fischbach III
   Fletcher R. Carpenter
   Camelback Esplanade II, Seventh Floor
   2525 East Camelback Road
   Phoenix, Arizona 85016-4229
   *Counsel for Defendant/Counterclaimant*

## PROOF OF SERVICE

I am employed in the County of Maricopa, State of Arizona. I am over the age of 18 and not a party to the within action; my business address is Tiffany & Bosco, P.A. 2525 E. Camelback Road, Suite 700, Phoenix, Arizona 85016.

On October 18, 2019, I served the following described as:

**DEFENDANT/COUNTERCLAIMANT MARTIN TRIPP'S MOTION TO COMPEL DEPOSITION OF ELON MUSK**

on the following interested parties in this action:

Joshua A. Sliker
Jackson Lewis
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Joshua.sliker@jacksonlewis.com
*Attorney for Plaintiff/Counterdefendant*
*Tesla, Inc.*

Sean P. Gates (*admitted pro hac vice*)
Douglas J. Beteta (*admitted pro hac vice*)
Charis Lex, P.C.
301 N. Lake Ave., Suite 1100
Pasadena, California 91101
sgates@charislex.com
*Attorneys for Plaintiff/Counterdefendant*
*Tesla, Inc.*

**[X] (BY E-MAIL)** By transmitting the above documents to the above e-mail addresses.

**[X] (STATE)** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on this 18th day of October, 2019 at Phoenix, Arizona.

/s/Kaleigh Stilchen

16