1                   UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
2          BEFORE THE HONORABLE CARLA L. BALDWIN, MAGISTRATE JUDGE
                             ---o0o---
3

4     TESLA, INC., a Delaware        :
      corporation,                   :
5                    Plaintiff,      :
                                     :
6           -vs-                     :
                                     :
7     MARTIN TRIPP, an               :
      individual,                    :  No. 3:18-cv-296-LRH-CLB
8                    Defendant.      :
      _____   :  December 13, 2019
9                                    :
      MARTIN TRIPP, an               :  Reno, Nevada
10    individual,                    :
                     Counterclaimant,:
11                                   :
            -vs-                     :
12                                   :
      TESLA, INC., a Delaware        :
13    Corporation,                   :
                     Counterdefendant.:
14                                   :
      _____   :
15

16

17               TRANSCRIPT OF TELEPHONIC MOTION HEARING

18    APPEARANCES:

19    FOR THE PLAINTIFF:        WILLIAM M. FISHBACH, III
                                Attorney at Law
20                              Phoenix, Arizona

21

22    FOR THE DEFENDANT:        SEAN P. GATES
                                Attorney at Law
23                              Pasadena, California

24

25    Transcribed by:  Margaret E. Griener, CCR #3, FCRR

2

1          RENO, NEVADA, FRIDAY, DECEMBER 13, 2019, 9:00 A.M.

2                              ---oOo---

3

4               THE CLERK:  This is the date set for a

5    telephonic motion hearing in case number 18-cv-0296-LRH-CLB,

6    Tesla, Inc., versus Martin Tripp.

7               Present telephonically on behalf of the

8    plaintiff, Sean Gates.  Present telephonically on behalf of

9    defendant, William Fischbach.

10              THE COURT:  Good morning, everybody.

11              We are here for our motion hearing related to

12   the motion to compel for Mr. Musk's deposition.

13              Let me start by telling everybody what I have

14   reviewed in preparation for today's hearing.

15              First, I went over the complaint at docket

16   number 1, the answer and the counterclaims at docket 27, the

17   transcript of the December 3rd, 2018 hearing at docket 102,

18   the motion -- defense motion to depose Mr. Musk at 107 and all

19   the exhibits attached thereto, which I think some are

20   duplicated with other things I've reviewed already,

21   plaintiff's opposition at 112, the reply brief at 119.  I also

22   reviewed the motion to seal that defendant filed in connection

23   with the motion for the deposition at 108, the opposition at

24   114, and the reply brief at 120.

25              So let me start with this.  On the motion to --

1    well, actually -- yes, I'll start with the motion to seal.

2                   It's my understanding that Mr. Tripp's position

3    is that nothing should be confidential, and, in fact, that the

4    motion to seal was filed because of partial -- partially

5    because of the issue with the protective order and the marking

6    of some of these exhibits that were attached that were, in

7    fact, under the protective order.

8                   In Tesla's opposition, they have requested that

9    two -- basically two items that they believe should be sealed,

10   first, exhibit number -- or Exhibit N, which is a private

11   e-mail strain of communications, and then also in Exhibits L

12   and M, the names and private e-mail addresses of nonparties

13   and who are also not Tesla employees, and then also, to the

14   extent that those are sealed, then, any reference specific to

15   those particular items in the motion itself.

16                  Mr. Tripp's reply brief essentially argues that

17   the standard for sealing has not been met and therefore these

18   items should not be sealed.

19                  Did I -- let me start with Mr. Tripp.  Did I

20   state your position correctly, sir?

21                  MR. FISCHBACH:  You did, your Honor.

22                  THE COURT:  Okay.  And, Mr. Gates, did I state

23   Tesla's position correctly?

24                  MR. GATES:  You did, your Honor.

25                  THE COURT:  Okay.  I don't believe I need any

1    further argument, but I do want to give both of you the

2    opportunity, if you would like, to make a record on anything.

3              So I'll start with Mr. Fischbach.  Is there

4    anything else that you would like to put on the record, sir?

5              MR. FISCHBACH:  Not unless you have any

6    questions.

7              THE COURT:  Okay, perfect.

8              Mr. Gates?

9              MR. GATES:  The only thing I would say, your

10   Honor, is that we also have, as part of the opposition, the

11   declaration of Austin Marsh that lays out the reasons why the

12   material should remain sealed.

13             One is just to protect the privacy of the

14   individuals who aren't involved in the case in Exhibits L and

15   M, and then Exhibit N is -- also has to do with Tesla's

16   internal public relations strategy, their consulting --

17   communications with a consultant.

18             THE COURT:  Okay.  Thank you very much.

19             So I have reviewed everything, and, as has been

20   stated, the presumption is that court records are, in fact,

21   available for public view under the First Amendment, and

22   therefore, for an order to seal records to be granted, there

23   must be a compelling reason for sealing the records from

24   public view, and the sealing order must also be generally

25   tailored to only seal those matters that require the

1    protection.

2              As stated in Mr. Tripp's, I believe, reply

3    brief, certainly there is some case law that's developed

4    around dispositive and nondispositive motions.  However, that

5    standard, based on some case law, seems to be a little bit

6    influx, and therefore this idea that a lower standard of good

7    cause is sufficient or not sufficient, to be totally frank,

8    after reviewing the documents and the arguments by the

9    parties, I find that there are compelling reasons.  So even at

10   the higher standard, I agree with Tesla that the items that

11   they have requested to be sealed shall be sealed.

12             Starting with the Exhibit N issue, I agree that

13   the communications within the internal corporate strategy

14   related to the public relations should be sealed specifically

15   because, although some of that e-mail strain appears to relate

16   to this case, it also relates to various other items that are

17   totally unrelated, and, in fact, could be, I think, you

18   know -- I don't think that's appropriate for them to be made

19   public under the circumstances.

20             And because they do include strategic

21   communication and things of that nature, I do find that there

22   is a compelling reason for those to be sealed, and sealing

23   only that exhibit and references to it, I believe, is narrowly

24   tailored under the required rule.

25             As to the private names and e-mail addresses, I

1    agree, I believe that there are privacy interests related to

2    these individuals regardless of whether they may or may not be

3    public e-mails or individuals that may or may not be already

4    known.  I don't believe that people that are not parties to

5    litigation and who have -- you know, don't have any interest

6    in the litigation, that their personal information should be

7    protected and redacted, and we certainly have a slew of rules

8    that require that type of protection.  Although e-mail

9    addresses I don't think are specifically identified, they

10   certainly fall within the personal and private information

11   that we generally consider to be private.

12            And so, for those reasons, I will seal the

13   motion, or those items that has been requested by Tesla, and

14   then I would simply ask that a redacted version of the motion

15   be filed with the appropriate redactions and then the sealed

16   items, so that way this motion is on the public record.

17            Is there any question about that, Mr. Fischbach?

18            MR. FISCHBACH:  Judge, I would just -- to the

19   extent the motion references any of those exhibits, I believe

20   what is referenced is not within kind of the realm of what

21   Tesla's concern is about a public relations strategy.

22            I appreciate that there are things in those

23   e-mails that, because it was kind of a (inaudible)

24   conversation, it would go to Tripp and then other things, but

25   I don't believe there's anything in the motion that, to the

1  extent it references those exhibits, touches on the concerns

2  that Tesla has.  It certainly doesn't reference e-mail

3  addresses, doesn't identify anybody by name who is not a party

4  to the litigation.  Anything that's quoted from those exhibits

5  is directly relevant to the issues in this case.

6                THE COURT:  Okay.  Let me --

7                MR. FISCHBACH:  So I would just --

8                THE COURT:  Let me ask Mr. Gates.

9                Mr. Gates, do you have a problem with that?  I

10  tend to agree.  To the extent that the e-mail chain is related

11  to this case, I don't see why it needs to be sealed in the

12  motion itself.

13                MR. GATES:  No, your Honor.  I did not go

14  through their motion to try to figure out what exactly would

15  be redacted.  It's probably true that nothing needs to be

16  redacted out of the motion, but I just can't say without going

17  back and taking a look at it.

18                THE COURT:  Well --

19                MR. GATES:  I don't --

20                THE COURT:  Why don't you maybe meet and confer

21  privately?

22                MR. GATES:  We can meet and confer on that.

23  This will take us 5, 10 minutes to figure out.

24                THE COURT:  Okay.  Well, what we can do is, at

25  the end of this hearing, maybe you all can just get on the

8

1    phone together and meet and confer, and maybe we could call

2    you about 15 minutes later and make sure if there's any

3    issues, that we could resolve it on the phone if there are any

4    issues between the parties.

5                        MR. GATES:   That would work, your Honor.

6                        THE COURT:   Okay.   We'll get to that at the end

7    then.

8                        Let me start now -- moving to the motion for --

9    related to the deposition.   First of all, Tesla filed a

10   motion, a surreply, on December 10th of this -- earlier this

11   week, I guess.   I lose track of time.   I had an all-day

12   settlement conference with an inmate yesterday so I'm not

13   going to lie, I'm a little bit -- a little bit frazzled.

14                        So, anyway, I denied that motion at the minute

15   order at docket number 124, but I wanted to explain my

16   reasoning behind that to some extent because I think it's

17   important and I think it's relevant to the extent that there

18   would be any type of argument that either party would like to

19   make today on the call.

20                        First of all, the reasoning for the -- and the

21   purpose behind the surreply really boiled down to two

22   arguments; first, that in the reply brief Tripp quoted from an

23   extensive deposition transcript related -- or quoted from a

24   transcript from a prior case management conference, but,

25   according to Tesla, had not quoted all of the language

1    relevant to that particular case management conference and

2    what the Court had actually said in relation to this issue.

3                    And, secondly, Tesla argued that, in the reply

4    brief, Tripp had raised for the first time arguments related

5    to a deposition transcript of Mr. Musk in another matter, and,

6    for those two reasons, Tesla felt that it was important to

7    raise these issues with the Court and provide a surreply.

8                    I denied the surreply because basically it was

9    unnecessary.  First of all, I had already read the transcript

10   and, quite frankly, I remembered the transcript, and I knew

11   that later in that hearing I had reserved my ruling ultimately

12   on whether or not I would allow this which is why we even have

13   briefing in this case.

14                   So I appreciate the issue with Tesla, but I was

15   aware of it so there was no need for a surreply on that, and,

16   secondly, when I read the reply, I was already fully aware

17   that arguments made related to that deposition were not raised

18   from the first motion, and therefore, under the case law in

19   this district and under my following of that case law, I will

20   not consider issues raised for the first time in a reply

21   brief.

22                   And so, again, it was unnecessary for that

23   because I had already intended to make a record that I would

24   not be considering that argument.  So I appreciate Tesla's

25   surreply, but, as I stated, I denied it because I did not

1    believe it was necessary to file it.

2              Secondly, for purposes of clarification, to the

3    extent that there would be argument here today, I want both

4    parties to be clear that I don't want argument on those issues

5    because they've -- as I've already stated, I'm fully aware of

6    what was stated at prior case management conferences, but,

7    more importantly, I'm not going to consider arguments related

8    to issues that were not raised in the motion itself.

9              More importantly, I've also read, and I'm very

10   familiar with, all of the papers.  So to the extent that

11   either of you would like to make oral argument, I would like

12   it -- for you to -- if there's other arguments or other issues

13   that you would like to raise, that you feel that you need to

14   clarify or something like that, that's fine, but I would

15   simply ask that you not reargue your motion.

16             And so, with that, is there any question,

17   Mr. Fischbach, on that issue?

18             MR. FISCHBACH:  Judge, I just would like to

19   clarify that the issue about the length of Mr. Musk's

20   deposition was something that was raised in Tesla's response

21   brief.  They took issue with our initial proposal of four

22   hours, and then --

23             THE COURT:  Well, I'm not going to argue the

24   surreply and the appropriateness of a surreply that I already

25   denied.  So is there anything else that you need to raise?

1          MR. FISCHBACH:  No, Judge.  Unless you have any

2    questions for me, I believe we covered everything in the

3    briefing.

4          THE COURT:  Okay.  Mr. Gates, is there any -- so

5    do you not want to make any argument in addition to that on

6    the deposition issue, Mr. Fischbach?

7          MR. FISCHBACH:  Well, Judge, I don't want to

8    rehash the same arguments, but I -- to the extent I feel the

9    need to make a record, it's -- this is not a circumstance

10   where the apex rule would apply.  Mr. Musk is the tort feasor.

11   We are -- and he is an appropriate party or witness to depose

12   given his direct involvement in this case, and I don't even

13   think the apex rule applies.  It's just a matter of whether or

14   not his deposition is within the scope of discovery, and I

15   think we certainly made a record as to why that is.

16         THE COURT:  Okay.  Thank you very much, sir.  I

17   appreciate it.  I don't have any questions for you.

18         Mr. Gates, is there anything further that you

19   would like to argue or anything that you would like to make a

20   record on?

21         MR. GATES:  Yes, your Honor, if I may.

22         Let's start out, Mr. Musk is not the tort feasor

23   in this case.  Tesla is the defendant.  I did not add

24   Mr. Musk.  He's not a personal defendant.

25         So what it comes down to, as I understand from

1    the reply brief, is that Mr. Tripp believes that he is

2    entitled to a deposition of Mr. Musk because -- about his

3    motives for making the statements and knowledge of the facts,

4    and I just -- I don't think they've justified a deposition,

5    let alone a four-hour deposition, and certainly not a

6    seven-hour deposition on that, but -- and let me tell you why,

7    your Honor.

8              As you kind of indicated in the beginning, you

9    directed Mr. Tripp at the CMC to obtain by discovery, through

10   less intrusive means, whatever he needed -- he thought he

11   needed from Mr. Musk because that may obviate the need for a

12   deposition.

13             You said, for example, that if he serves RFAs,

14   and you get an admission, you may not need a deposition at

15   all, and on these issues the motives, the kind of subjective

16   mental state, as Mr. Tripp has phrased it, he just didn't do

17   the right -- he didn't do the discovery.  There's no

18   interrogatories on Mr. Musk's motives.  He didn't serve any

19   requests for admissions to say admit you did this because

20   you're trying to vex or harass Mr. Tripp, he didn't depose

21   some key witnesses.

22             Their theory is that Mr. Musk was out to destroy

23   Mr. Tripp, had some kind of vendetta or something like that.

24   Well, there were people who were in communication with

25   Mr. Musk about Mr. Tripp, and if he were really out to destroy

1    Mr. Musk [sic], they would have heard something or seen

2    something that would have indicated his -- this state of mind

3    issue, whether he had a motive to destroy, and those are

4    Mr. Sam Teller who is in the office of the CEO who was

5    identified in our interrogatory responses.  Mr. Teller is the

6    one who likely told Mr. Musk about the threat to the

7    Gigafactory, and so he communicated the facts to him.  They

8    didn't depose him.  They obviously didn't ask him any

9    questions about how did he react, was he upset, things like

10   that.

11               Mr. Jeff Jones, who was the head of security at

12   the time who was reporting to Mr. Musk about the

13   investigations and what Mr. -- they had found about Mr. Tripp.

14               Christian Krikericks (phon) who is the person

15   who was on the phone, or, excuse me, who sent the instant

16   message about the threat to the Gigafactory while the caller

17   was on the phone saying that Mr. Tripp was heavily armed and

18   headed to the Gigafactory.

19               They didn't take any of those.  They didn't take

20   a 30(b)(6) witness.  They could have put in another topic that

21   said, you know, what was your motive --

22               THE COURT:  I don't believe that's accurate.

23   It's my understanding that there was a 30(b)(6) witness that

24   was actually deposed.

25               MR. GATES:  There was a 30(b)(6) witness on two

1    topics, your Honor, one was the threat to the Gigafactory, and

2    the second was the scrap numbers.

3              On the threat to the Gigafactory, that witness,

4    they just -- they didn't ask, you know, what was the

5    motivation, what was Mr. Musk's motivation for sending the

6    e-mail to *The Guardian*.  They didn't -- and use our 30(b)(6)

7    witness so that would have been a fair --

8              THE COURT:  Well, how would a --

9              MR. GATES:  -- question.

10             THE COURT:  Wait, wait, wait, wait, wait.  So

11   here's the problem with your argument, and I'm going to cut

12   you off with this argument because I'll tell you right now I

13   don't buy it.

14             MR. GATES:  Okay.

15             THE COURT:  How would a 30(b)(6) witness be able

16   to testify to the subjective motivations of someone else?

17             MR. GATES:  If they had --

18             THE COURT:  How would they have personal

19   knowledge, or knowledge through the company, of the subjective

20   motivations of someone within the company that was making

21   statements?

22             MR. GATES:  So what this goes to, your Honor, is

23   kind of the argument that, well, because it's his subjective

24   motives, only Mr. Musk can know about that, and that's the

25   only way to get discovery about it is at deposition, and

1    that's exactly kind of the case of *Affinity Labs* which

2    rejected the proposition -- *Affinity Labs* was a case against

3    Apple.  They wanted to depose the CEO, Steve Jobs.

4                    THE COURT:  And is that controlling authority?

5                    MR. GATES:  On eight --

6                    THE COURT:  Is that controlling authority?

7                    MR. GATES:  No, it's not, your Honor.  It's from

8    the North -- it's persuasive.  It's from the Northern District

9    of California, but I think it's kind of right on point,

10   because Mr. Jobs -- there were 18 statements.  They wanted to

11   take the deposition of him because the argument was he made

12   the statements and therefore, by definition, he has firsthand

13   knowledge of what he meant by the statements, so basically

14   what was his subjective understanding of the statements.

15   Again, it's the subjective mental state, that's what they're

16   trying to get at.

17                    And the Court in that case denied the deposition

18   because, on seven of the statements, they had not taken

19   discovery, and, on the other 11, they either got what they

20   needed from other witnesses, or they failed to use less

21   intrusive means such as interrogatories or RFAs.

22                    So the case law -- we cited a number of other

23   cases where a CEO had made a statement, *Salter versus Upjohn*

24   was testimony to the United States Congress, *Thomas v IBM*

25   was -- the chairman actually wrote the policy that they were

1   challenging that they claimed was discriminatory.  So the fact

2   that a chairman made the statements doesn't automatically

3   create the possibility of deposition.  They still have to try

4   to get the -- get the facts through other means.

5            And they could have -- just for example, they

6   deposed Mr. Jacinto who was the one who, as we set forth in

7   our interrogatory responses, and he explained in the

8   deposition, was the one who reported to Mr. Musk about -- that

9   Mr. Tripp had stolen the confidential information and shared

10   it with a reporter.

11            And they didn't just ask him simple things like

12   how did he react when you told him about that, it was, was he

13   upset, did he curse, did he swear vengeance, did he say

14   anything to you suggesting he was motivated to harm Mr. Tripp,

15   and then for those who talked to Mr. Musk after the

16   statements, did Mr. Musk express any -- the reasons why he

17   made the statements.

18            They just didn't ask those kind of questions,

19   and that's exactly the type of discovery that you had directed

20   them to obtain in the CMC and is what's required under the

21   case law.

22            So, you know, it's like you can't avoid -- you

23   know, you can't just -- what they seem to have done is say,

24   well, Mr. Musk is the one who can only talk about his

25   subjective state of mind, so we're not going to ask anybody

 1    else about it, and then to give them a deposition is kind of

 2    rewarding their not doing exactly what they were told to do

 3    and what the case law requires.

 4              So that's why we don't think that they're

 5    entitled to a deposition, your Honor, because they didn't do

 6    the kind of homework that you gave them or the homework that's

 7    required under the case law.

 8              THE COURT:  But you don't dispute the fact that

 9    Mr. Musk was personally involved in this case, correct?

10              MR. GATES:  No, he was the one who made two of

11    the statements and sent the e-mail to the reporter.  I'm not

12    denying that, but the case law --

13              THE COURT:  But wasn't there a tweet?  We had a

14    tweet about whether or not --

15              MR. GATES:  Yeah, that's one of the two --

16    that's a -- there's an e-mail to the employees, there's a

17    tweet, and then there's an e-mail to a reporter so --

18              THE COURT:  But there was also an e-mail train

19    directly between Mr. Musk and Mr. Tripp the day that -- the

20    day that the lawsuit is filed where they banter back and

21    forth, and he uses one of those e-mails as what he sends then

22    to a reporter to support this idea that Mr. Tripp is volatile,

23    that he's dangerous, and that he's the one that's the threat

24    to the company, right?

25              MR. GATES:  He forwarded the e-mail to the

1    reporter, that is correct.

2              THE COURT:  From the e-mail train between

3    himself and Mr. Tripp.

4              MR. GATES:  Yes, he did, no denying that.  But

5    like I said --

6              THE COURT:  Wait.  Well, one thing I find

7    particularly concerning is his own declaration where he says

8    at paragraph number 7, page 3, that,

9              "I posted the tweet referenced in paragraph

10        67" of the complaint and counterclaim "which asked

11        Linette Lopez whether she had paid Mr. Tripp.  As I

12        stated, I did not personally conduct the

13        investigation...that it was performed by Tesla's

14        security team."  And then it says, "My questions to

15        Ms. Lopez were prompted by information provided to me

16        as a result of that investigation."

17              That alone I believe is a reason for him to be

18    deposed because he's talking about why he did something

19    because of information provided to him by others within the

20    company.  So what information was that, and how at all would

21    someone be able to get that through other means during

22    discovery?

23              MR. GATES:  On the tweets, that's referring to

24    the tweet, your Honor, they actually didn't serve any written

25    discovery on the tweet.  There was no interrogatory, no

1    request.  And, like I said, a simple interrogatory could have

2    been what were the reasons why or what were the purposes of

3    sending the tweet.  They didn't even do that.  So we don't

4    know what they would have obtained if they had done that.

5              They did depose the investigators who -- the

6    ones who provided the information to Mr. Musk.  They have the

7    information about what was provided to Mr. Musk because --

8              THE COURT:  Yeah, but they can't find out from

9    them what part of that information prompted him or gave him

10   concerns.  They only can say what they told him, that only

11   Mr. Musk can explain what it was about the information he

12   received that prompted him to do what he did.  Right?

13             MR. GATES:  Okay.  Well, that -- that -- that

14   goes back to exactly the issue in *Affinity Labs* which was the

15   argument that, by definition, Mr. Jobs is the only one who

16   could know what he meant about the statements, and in that

17   case the Court, nonetheless, denied a deposition because the

18   plaintiffs had not taken the requisite prior discovery.

19             On seven of the statements they didn't take any

20   discovery, just like Mr. Tripp didn't take discovery on these

21   tweets.  On the other 11, the Court found that they either

22   didn't -- they got what they needed from other witnesses, or

23   they failed to use less intrusive means.  So it's completely

24   analogous to what we have here, your Honor.

25             I understand the -- the kind of initial reaction

1   is, well, how can we know what is in his head, only he can say

2   that, but, under the case law, you try to get the discovery

3   through other means.

4               And people share what's in their head.  You

5   know, if he's really mad and he really has this plan to

6   destroy Mr. Tripp, I mean, he's probably going to say

7   something to somebody, and they just didn't ask those

8   questions.

9               THE COURT:  Okay.  Any other argument, sir?

10              MR. GATES:  Well, your Honor, if you're inclined

11  to grant the motion, then I would ask that there be some

12  limitations on it, especially with regard to some of these

13  extraneous issues that they seem to be focused on.

14              So under the case law, if there's a deposition

15  of an apex witness, what the courts do, and you can look at

16  the cases --

17              THE COURT:  I'm familiar with what the courts do

18  so -- yeah.

19              MR. GATES:  Okay.  So then we need some

20  limitations here because we -- there's some indications that

21  they want to take discovery that's very, very far afield, and

22  basically what they're looking for, your Honor, is, frankly,

23  it sounds to me like a character witness.

24              What they want to do is, you know, ask him

25  questions about every spat or every statement he's made about

1    someone who is supposedly a critic of the company, and, you

2    know, that is just simply improper character evidence.

3              They're trying to say that -- what they say

4    is -- the fact that he has made statements about other

5    supposed critics, quote, this is in the reply brief, "bears

6    directly on Musk's motives and willingness to tarnish Tripp's

7    reputation."

8              That's just asking for supposed evidence of

9    character and acts in conformity of character, and that's not

10   permissible under FRE 404.  It can't be the basis -- it can't

11   say, well, we need to know his motive here because, under 404,

12   you can only get evidence of prior acts for the basis of

13   motive if there's some logical basis to explain how the prior

14   acts provide a motive for the action here.

15             So it -- you know, why was he -- what was his

16   motive to carry a false -- this is an example of how it works,

17   what was the defendant's motive to carry a false ID.  Well, he

18   robbed a bank.  Okay.  So we get in the fact that he robbed

19   the bank to show that he had a motive to carry a false ID.

20             Here there's no logical basis between -- just,

21   for example --

22             THE COURT:  I'm going to just cut you off

23   because I already agree with you, sir, and --

24             MR. GATES:  Okay.

25             THE COURT:  -- I'm very familiar with the rules

1    of evidence, and so to the extent, if I am inclined to do

2    this, I absolutely agree that limitations need to be put on

3    there, and I fully appreciate the objections and arguments you

4    have on that.  Is there any other arguments that you would

5    like to make?

6              MR. GATES:  The last is just, your Honor, that

7    if it's really about, frankly, his motive and his knowledge of

8    the facts that led him to make the statements, that can be

9    done in 30 minutes.  I mean, that's a really -- there's not a

10   lot of topics there so --

11             THE COURT:  Well, I'm not sure that it's just

12   limited to his -- I think it's limited to his involvement in

13   investigations.  It's going to be -- will be related to his

14   knowledge of the extent of those investigations, what

15   information was being transferred from him to others and

16   vice-versa as it related particularly to some of the comments

17   that were made after Mr. Tripp was interviewed and things like

18   that.

19             So I don't think it's just limited to just the

20   tweet or just the e-mail.  I think there are some other

21   parameters around what was happening that underlie all of

22   those questions if I'm inclined to grant the motion.

23             So I'm not sure that it's quite as limited as

24   you're indicating, but I appreciate and I agree there will be

25   limitations both in scope and in time.

1           But I'd like to hear from Mr. Fischbach and his

2    response, and particularly, Mr. Fischbach, what I would like

3    you to focus on is that I think Mr. Gates makes some very good

4    arguments, and also arguments are well taken, with respect to

5    what discovery did you do that would have provided you this

6    information, or what is it about the information that you

7    could not get through other discovery, and just focus on that,

8    sir, if you could.

9           MR. FISCHBACH:  Yes, Judge.  I did the

10   depositions of both of -- and pardon my voice, I'm a little

11   under the weather right now.

12           But I deposed Mr. (Inaudible - feedback noise)

13   and Mr. Nocon (phonetic) who was the other investigator, and I

14   asked them about conversations they had with Mr. Musk, and

15   they were always very nonspecific, "yeah, I had some

16   conversations," they couldn't remember.  So it's just simply

17   not true to say that we didn't address those questions in

18   deposition.  They got very nonspecific responses.

19           Additionally, Tesla has ensconced its entire

20   investigation, at least with respect to e-mails and internal

21   communications, in attorney-client privilege.  So while we

22   have been permitted -- or we've deposed witnesses on their

23   personal knowledge of what went on, we were not able to get

24   e-mails, internal memoranda things like that, that also might

25   have been helpful to us in that regard because of Tesla's

1    obstructive use of attorney-client privilege.

2                        And we did submit written discovery on this,

3    Judge, I attached it to my reply.  And I think you practiced

4    long enough, Judge, both on the bench and before you assumed

5    the bench, that written discovery, particularly

6    interrogatories, have limited utility.  You --

7                        THE COURT:  That's a very kind way of putting

8    it.

9                        MR. FISCHBACH:  But, you know, there's all these

10   objections, and the responses are limited, and, you know, I've

11   gotten to the point where I've found the best way, you know,

12   to gather evidence is either in documents or in deposition

13   testimony because both of those speak to themselves.

14                       So we did conduct extensive discovery, Judge.  I

15   think we deposed something like 12 or 13 different Tesla

16   personnel to include a 30(b)(6) witness on the Gigafactory and

17   Tesla's statements in response to that threat.

18                       In terms of the idea that we're there to harass

19   Mr. Musk or anything like that, I mean, I would hope the Court

20   would know better than that.  I think you've seen counsel

21   conduct themselves very -- on both sides conduct themselves

22   very professionally in this case.  We just want to conduct

23   discovery, Judge, on claims that Mr. Tripp brought in this

24   case.

25                       With respect to 404(b), Judge, I mean, one of

1    two big exceptions to 404(b) is you can bring in other bad

2    acts to prove evidence of motive, opportunity, intent, things

3    like that.  So, you know, we do think those are areas that can

4    be explored even to the extent they might touch on other bad

5    acts because that's a very well-known exception to 404(b).

6              I don't know if you want to get to the time

7    limitation or want to get to that later, Judge.

8              THE COURT:  Well, I think that -- you know,

9    initially when I was going to come on the bench today my

10   intent, I thought, was just going to be to take this under

11   submission and to draft a written document.  But, you know, as

12   I sit here today and I think about this, I don't know that

13   that's necessary, nor do I think it's really productive

14   because I think the parties need direction and to be able to

15   get a decision so that things can move along as are necessary.

16             Let me start first with this.  Let me start with

17   the law of false light in Nevada because I think it's

18   important to understand why these issues may matter.

19             When we talk about the law of false light, and I

20   point to this case, although the case has actually been

21   withdrawn by the Nevada Supreme Court, but because it was my

22   case, I am particularly familiar with the Nevada Supreme

23   Court's consideration of the tort of false light from the

24   *Hyatt versus FTB* case that actually came down -- I believe it

25   was in 2013.

1          But, nonetheless, effectively what this tort

2   says is that when a defendant publicizes a matter that places

3   a plaintiff in a false light before the public, where that

4   false light would be highly offensive to a reasonable person,

5   and where the defendant had knowledge of, or acted with

6   reckless disregard to that falsity, and it was publicized,

7   then you have someone placed in a false light.

8          One of the things that I think is important when

9   we look at the case law, and we look at what the standards

10  are, knowledge is a personal, individual issue that often is

11  involved with subjective determinations, and that actually is

12  referencing an IGT game -- *International Game Technology* case

13  from 2018 from this district.

14         And so knowledge is unique, and sometimes and

15  most likely and most often, is something that's unavailable

16  through other means of discovery other than by the person

17  involved in the specifics of a particular case.

18         And when you look at the elements of a

19  defamation claim, and, of course, the defendant made false

20  statements of fact, and that they were not privileged to

21  communicate that, and they were made to a third-party, and

22  that when the defendant made those statements, they acted

23  either negligently, recklessly, or intentionally, and then, as

24  a result of that, the reputation is damaged.

25         Now, to the extent that, obviously, if there is

1    an argument for public figure as to Mr. Tripp, which I think

2    is sort of a tentative argument at best, you know, the

3    standards may be higher, but, nonetheless, it still goes to

4    what was going on with the defendant when statements were

5    published.  That is important.

6              And although Mr. Musk has not been sued

7    individually, he was speaking on behalf of the company, and

8    certainly the tweets coming from him personally, the e-mails

9    between him and Mr. Tripp personally, the e-mails to reporters

10   personally, all go to those questions and all make up part of

11   the actual paragraphs if you look at the complaint or the

12   counterclaim.

13             In specific paragraphs throughout the

14   counterclaim, Mr. Tripp is referencing statements and actions

15   taken specifically by Mr. Musk.  Just looking at paragraph

16   number 23, Mr. Tripp directly e-mailed, so there's

17   conversation about the e-mails.  It goes on to 25, and I could

18   go through all of those, but I don't think I need to because I

19   am very confident that both of the attorneys on the phone, who

20   I have great respect for and I know are very competent, are

21   very familiar with all of those paragraphs.

22             So this isn't a case where a CEO or a high-level

23   executive does not have personal involvement in the matter,

24   that is beyond question, and I think that's already been

25   conceded and appropriately so.

1            But then the question becomes this apex rule and

2    whether or not the Court would follow the apex rule given the

3    fact that I have not been able to locate any controlling

4    authorities specific to that from the Ninth Circuit.  But,

5    quite frankly, regardless of whether I agree with it or

6    whether I would adopt a strict version of it or a more relaxed

7    version of it because different districts in different

8    circuits have interpreted it in different ways, even at any of

9    those, I believe that under the apex rule this particular

10   individual should be deposed.

11            Starting with specifically what we talk about

12   with the apex rules, obviously, that first we have to look at

13   whether that particular person has unique personal knowledge

14   of relevant information, and I believe I've already set that

15   out based on what I've already said.

16            But, secondly is whether or not that information

17   could have been found by other less intrusive means.  And I

18   agree with Mr. Gates, and I do have some concern with respect

19   to this, but I also recognize -- and especially given the

20   unique elements of a false light in a defamation claim --

21   believe that this is not the type of thing that necessarily

22   could have been determined by less intrusive means, in other

23   words, the personal belief system or the personal knowledge,

24   actions and things that led to certain things that were

25   happening, particularly in light of Mr. Musk's own declaration

1    where he discusses that he took actions based upon information

2    he received during the course of an investigation, which

3    there's no way to know what exactly he's referencing to,

4    there's no way of knowing what he meant by that information

5    and how it affected his decision to make the tweet in the

6    first place, and those are all things that are highly relevant

7    and specific to paragraphs in the counterclaim that have been

8    pled in this case.

9              So with that being said, I believe that under

10   the -- even under the apex rule, Mr. Musk should and will be

11   deposed in this matter.

12             But to the extent that Mr. Gates has stated, and

13   I absolutely agree, I was very concerned just by some of the

14   attachments that I received that related to other lawsuits and

15   other depositions and other things that are going on.  To the

16   extent that there will be a deposition of Mr. Musk, it will be

17   limited to this case and this case alone, what happened in

18   this case, what's specifically alleged in this case, the

19   actions taken in this case.

20             But to the extent that you would like to depose

21   him on his -- you know, his objective or his, you know, other

22   acts in other cases or any of that as it goes to, you know,

23   his credibility or any of that, those are not issues that I'm

24   going to be allow to be gone into.

25             And I'm also going to limit the amount of time.

1    I think that the four -- I think there was a letter that was

2    sent by Mr. Fischbach identifying the topic areas that he

3    wanted to depose Mr. Musk on.  I believe that the first -- I

4    believe it's four are absolutely appropriate, and those are

5    the scope that this deposition will take, again, specific to

6    Mr. Musk's own personal knowledge and own personal actions but

7    not beyond that.

8                    And I agree with Mr. Gates that that does not

9    require a seven-hour deposition, that I believe it can be done

10   in three hours.  So rather than four hours, I will give you

11   three hours.

12                   But I will say this.  If there are any

13   shenanigans, Mr. Gates, by your client, he will -- I want to

14   know immediately.  So if there's any behaviors of personal

15   attacks, bullying, or not answering proper questions, being

16   snarky, anything that is going to be inappropriate, I want a

17   phone call when it happens, and I will consider shutting down

18   the deposition and then having it rescheduled in my courtroom

19   for seven hours.  Am I clear on that?

20                   MR. GATES:  Yes, your Honor.

21                   THE COURT:  Okay.  So I hope you can take some

22   time and prep your client to make sure that he understands

23   that's not going to fly with this Court.  So we're not even

24   going to go down that road.

25                   And if there's any indication that those types

1    of behaviors are happening, and it's making it difficult or

2    almost impossible for Mr. Fischbach to get through a

3    deposition in the time frame that I've suggested, then I will

4    reconsider this, and that's how I will likely handle it.

5             So unless you would like to make a trip to

6    lovely Reno, I suggest that he simply answer the questions

7    that are appropriately posed.

8             Now, that comes to the question of where the

9    deposition should take place.  I agree with what Mr. Fischbach

10   has already stated that counsel in this case have been

11   incredibly professional, have cooperated very well throughout

12   almost the entirety of this case.  I cannot -- I've already

13   said it before and I'll say it again, how much I appreciate

14   how well everybody has gotten along and seemed to be able to

15   work through issues so I believe that the two of you can work

16   those issues out, certainly, and to make it the most

17   reasonable and appropriate and convenient to Mr. Musk given

18   his busy schedule and his circumstances.

19             So with that, is there any question,

20   Mr. Fischbach, about the scope of my order or what will be

21   allowed in this particular matter, sir?

22             Mr. Fischbach?

23             MR. FISCHBACH:  Sorry, Judge, I had my phone on

24   mute.

25             THE COURT:  That's okay.  It's, like, oh, God,

 1   don't tell me I'm going to have to say that all again.

 2                   MR. FISCHBACH:  Judge, I just want to clarify

 3   something.  You stated the scope will be limited to the first

 4   four topics in my September 23rd letter.  The fifth topic is

 5   Elon Musk's knowledge of the alleged threat to shoot up the

 6   Gigafactory, including any statements --

 7                   THE COURT:  Okay.  Let me -- can you -- I

 8   can't -- I don't remember -- I know that it was an exhibit.

 9   Do you have the exhibit number or page that you can point me

10   to so I can look at exactly what it was?

11                   Oh, here, I found it already.  I believe it's at

12   page 45.  The issue that I -- oh, there was more than five, I

13   apologize.

14                   So the issue that I -- let me go through these.

15                   Obviously, the first is fine, second, third,

16   fourth, the fifth.  The sixth, only as to Mr. Tripp, not to

17   others outside of this case.  So any efforts for him to

18   publicly criticize or threaten legal action, et cetera, as to

19   Mr. Tripp, to the extent that any of that happened, I don't

20   recall that it did, but I don't want this going into any of

21   these other areas.

22                   And then, obviously, the last is exactly the one

23   that I wanted to prohibit because I don't want to be -- I

24   don't think that's an appropriate thing for this particular

25   deposition, and I definitely don't want you all going into two

1    hours of what happened in the Philippines or whatever place,

2    Thailand, or whatever case that was, and that was the purpose

3    behind that.  Does that clarify that, sir?

4              MR. FISCHBACH:  It does, your Honor, thank you.

5              THE COURT:  Okay.

6              MR. GATES:  Your Honor, this is Mr. Gates.

7              Just on this, I understand that the fourth one,

8    which is basically everything in the complaint and the

9    counterclaim seems reasonable, but that's not what they moved

10   on.  That wasn't the -- you know, what they asked in their

11   motion, and that broadens it significantly.

12             The motion was we need, you know, his subjective

13   mental state about when he made statements, and this opens it

14   up to kind of a lot more, so I would ask --

15             THE COURT:  Okay.  Which one are you looking at,

16   sir?  I'm sorry.

17             MR. GATES:  It's the fourth, the fourth bullet

18   point.

19             Number one is the statements made about

20   Mr. Tripp, okay.  E-mail communications, okay.  Knowledge of

21   the investigation, that makes sense.  But the fourth one is

22   basically his knowledge of, you know, every -- we have a long

23   complaint and we have a long counterclaim.  So that covers a

24   lot of ground, and that's not what they claim they need

25   discovery on.

1          THE COURT:  Well, what's your response,

2   Mr. Fischbach?  I tend to agree that might be overbroad to the

3   extent it goes beyond really -- I mean, it goes directly to

4   the question of what his knowledge is, but going paragraph by

5   paragraph through the complaint and the counterclaim, is that

6   your intent?

7          MR. FISCHBACH:  Well, Judge, you might find this

8   shocking, but, to some extent, I agree with Mr. Gates.

9          THE COURT:  I don't actually find that shocking.

10         MR. GATES:  We actually agree pretty often.

11         THE COURT:  Yeah, I was going to say I haven't

12  necessarily seen that very often.  So given that, how can we

13  limit that, sir?

14         MR. FISCHBACH:  Yeah, and I think, Judge, it's

15  only to the extent the issues in the complaint tend to overlap

16  with issues in the counterclaim.

17         THE COURT:  Okay.

18         MR. FISCHBACH:  For example, there are

19  allegations in the complaint about Mr. Tripp kind of being

20  this corporate saboteur that, you know, went in and rewrote

21  Tesla's code and everything like that, and those allegations

22  certainly dovetailed into what ultimately became the basis for

23  the defamation and false light claims.

24         So, you know, as far as things like, you know,

25  the scrap, the 30(b)(6) -- not 30(b)(6), but the AR

1    containment 622, I don't have any intention to ask Mr. Musk

2    about those items.  It's really just to the extent the

3    allegations in the complaint tend to overlap with the

4    allegations in the counterclaim, Judge, and, frankly, with

5    three hours, I mean, if I waste my time on extraneous things

6    like that, then, you know, shame on me.

7                    THE COURT:  Well, Mr. Gates, does that satisfy

8    your concerns?

9                    MR. GATES:  I mean, I totally respect

10   Mr. Fischbach, and we actually do get along quite well and

11   agree on a lot of things.

12                    I would still ask that we strike that one topic

13   only because I think everything he needs is covered in the

14   other ones that you identified, your Honor, and the other ones

15   are much more specific.  So then if we --

16                    THE COURT:  Well, the one thing I would say,

17   though -- and not to interrupt, I'm sorry, sir, but one thing

18   I would say is that the paragraphs I reviewed, the way I read

19   the counterclaim and the paragraphs contained therein really

20   are the same or really go to the items we've already talked

21   about.

22                    They're simply discussing, you know, this e-mail

23   was sent on this date, or Mr. Musk did this on this date.  To

24   me it seems almost duplicative and repetitive in terms of what

25   has already been ordered that he be deposed upon.

1              So I think maybe what the best way to do it,

2  Mr. Fischbach, is maybe just to tailor that to the matters

3  alleged in Mr. Tripp's counterclaim as it relates to, you

4  know, the communications and his actions, or something to that

5  effect, which I think gets you to the same place but

6  alleviates any question about it going into lots of extraneous

7  information and things like that.  Would that be an acceptable

8  resolution, Mr. Fischbach?

9              MR. FISCHBACH:  Yeah, I think so, Judge.

10              THE COURT:  Okay.

11              MR. FISCHBACH:  As long as -- I just don't want

12  to get into a scenario where I'm -- questions that are

13  relevant within the scope that you set forth here today are

14  not being answered because they also happen to -- the subject

15  matter also happens to appear in the complaint.  I just want

16  to make sure that that's not going to happen because I think

17  there is some, not a lot, but there's some overlap between the

18  factual bases for both the complaint and the counterclaim.

19              THE COURT:  Okay.  Well, Mr. Gates, was that an

20  acceptable tailoring of that, that I just said?

21              MR. GATES:  Well, to tailor it to the

22  counterclaim and the allegations about Mr. Musk's actions, was

23  that tailoring?  I got it's limited -- it's limited to the

24  counterclaim.

25              THE COURT:  Well, that's actually more -- I

1    think that's actually more limited than what I'm ordering

2    because it's not just his actions, it's information that he

3    may have received about the information, and some of those

4    paragraphs may go to that information.  So I think --

5                    MR. GATES:  Yeah, okay.  That's fair.  That's

6    fair.  But if it's the counterclaim and the information that

7    was provided to Mr. Musk in that -- as alleged in the

8    counterclaim, that makes sense.

9                    THE COURT:  Okay.  So I think it's -- limited to

10   the counterclaim and those items related to Mr. Musk's own

11   actions or information gleaned through the investigation

12   provided to Mr. Musk, or that he took actions as a result of,

13   I think hopefully, Mr. Fischbach, that is clear in terms of

14   making sure that your concerns are dealt with so there aren't

15   going to be unnecessary objections that you're questioning

16   about things in the counterclaim that you shouldn't and

17   vice-versa.  So are we all comfortable with that,

18   Mr. Fischbach?

19                    MR. FISCHBACH:  I think so, Judge.

20                    THE COURT:  Okay.  Perfect.

21                    All right.  So, Mr. Gates, are there any other

22   objections, sir, or anything else that you would like to raise

23   or put on the record?

24                    MR. GATES:  The only thing I would take a shot

25   at, your Honor, I really do think he could do this in two

-38-

1    hours.

2              THE COURT:  All right.  Well, I'm giving you

3    three, but I appreciate that.  Having been through enough

4    depositions -- and just objections alone will probably take an

5    hour so --

6              MR. GATES:  Well, I don't tend to do -- I don't

7    do long objections so --

8              THE COURT:  Okay.  Well, I appreciate that.

9              MR. GATES:  And Mr. Musk actually -- he was

10   deposed and testified in the Unsworth case, and that's not the

11   transcript that they gave to you, and if you saw that, it's

12   very clean.

13            THE COURT:  Okay.  Well, I'm glad to hear that,

14   and I have every expectation that everybody will behave very

15   well.

16            I do want to make clear I will be available so

17   if you could file at least something for the Court, and you

18   can do this under seal, letting me know the date and the times

19   that you'll be having this so I can block it on the calendar

20   and make sure that I am available if any major issues or

21   anything like that come up during the course of the

22   deposition, so that way you're not caught up on those types of

23   things, that would be very much appreciated.

24            Let me see.  Is there anything else we need to

25   cover?  Let me start with Mr. Fischbach.

```
 1                    MR. FISCHBACH:  Judge, I wanted to circle back
 2      to that issue of the sealing.  It's never been clear to me
 3      whether or not courts can seal parts of an ECF-numbered
 4      document or do you redact things or --
 5                    THE COURT:  You redact it.
 6                    MR. FISCHBACH:  As I recall, we --
 7                    THE COURT:  Yeah.  So you would file a redacted
 8      version, and then we would have the clean version that's filed
 9      under seal with all of the information available to the Court.
10      I think there's actually a local rule that describes that.
11                    MR. FISCHBACH:  Okay, Judge.  So I think what I
12      would suggest Mr. Gates and I do is we'll meet and confer
13      after this call here.  Obviously, per the Court's order, we'll
14      redact Exhibits L, M, and N in their entirety.
15                    THE COURT:  Okay.
16                    MR. FISCHBACH:  And then we'll make a decision
17      as to whether or not anything in the substantive motion itself
18      needs to be redacted.  And then do you want us to e-mail a
19      redacted version that the parties have agreed upon to your
20      chambers?
21                    THE COURT:  If you have agreed on everything,
22      then I would just go ahead and file the redacted version
23      that's not under seal, but file it.
24                    I guess the question becomes would you like me
25      to just go back on the record with you, or do you want to just
```

1    call my chambers if there are any issues?  Because I'm

2    available all day so --

3                    MR. FISCHBACH:  I don't expect us to have any

4    issues, Judge.  I just want to get it done in a way that's

5    sufficient for everybody.

6                    THE COURT:  Yeah, so --

7                    MR. GATES:  I don't anticipate any issues

8    either, your Honor.  I just need to put eyes on the motion

9    itself to make sure that -- to see if there's anything that

10   needs to be redacted.

11                   THE COURT:  Okay.  Well, the offer stands.  If

12   there is any major dispute or concern, you can just call my

13   chambers directly and let my assistant know, and then we'll

14   just get on the phone with you all and we'll get it figured

15   out.  So I don't expect to get a phone call, but if it's

16   necessary, that at least you know I'm available so we can get

17   that resolved so that doesn't, you know, slow up the case.

18                   Is there anything else, Mr. Gates, that you

19   would like to put on the record, or any other issues that you

20   think you need to raise with me or something I forgot to

21   cover?

22                   MR. GATES:  I don't believe so, your Honor.  I

23   think you've covered everything well.

24                   THE COURT:  Okay.  All right.  Well, thank you

25   both so much.  Again, as I've said in the past, and I'll say

1    it again, your briefing was excellent and very helpful.

2                      With that -- oh, I guess -- what is the

3    discovery cutoff date at this time?

4                      MR. FISCHBACH:  I believe it's the end of

5    January.

6                      THE COURT:  Okay.  Will that be a sufficient

7    amount of time to be able to get Mr. Musk's deposition

8    scheduled, or do you need -- I just don't know what his

9    schedule is going to be like and if you'll be able to get it

10   done in that time.

11                     MR. GATES:  I don't either.  I would say because

12   he is extraordinarily busy and travels a lot, so if we

13   could -- February 28th?

14                     THE COURT:  That's fine with me.  Mr. Fischbach,

15   do you have any problem with that?

16                     MR. FISCHBACH:  I don't, Judge.  I just think it

17   might also impact the dispositive motion deadline as well

18   though.

19                     THE COURT:  Okay.  And that's fair.  So why

20   don't we do this.  Why don't you file a stipulation to

21   continue the discovery cutoff and then any other deadlines

22   that flow from that time frame, including the dispositive

23   motion deadlines, so that way, hopefully within that next

24   month, you know, two and a half months or so, you'll have

25   enough time to get a time for the deposition.

—42—

1          Hopefully that's fair enough, and if that isn't

2   enough, then let me know.  We can always get on the phone and

3   we can figure out that we need to do if it turns out that

4   it's, you know, a couple of weeks later or something like

5   that.

6          Okay.  Mr. Fischbach, anything else?

7          MR. FISCHBACH:  No, Judge.

8          THE COURT:  And, Mr. Gates, anything else, sir?

9          MR. GATES:  No, your Honor.

10          THE COURT:  Okay.  Thank you both so much, and

11   we will be in recess.

12          MR. FISCHBACH:  Thank you.

13          MR. GATES:  Thank you.

14                         -o0o-

15

16          I certify that the foregoing is a correct
             transcript from the record of proceedings
17          in the above-entitled matter.

18          /s/Margaret E. Griener          2/8/2020
             Margaret E. Griener, CCR #3, FCRR
19          Official Reporter

20

21

22

23

24

25