# Exhibit 4
# Shamara Bell Deposition Excerpts

MSJ_087

```
 1                UNITED STATES DISTRICT COURT
                       DISTRICT OF NEVADA
 2

 3   TESLA, INC., a Delaware         )
     Corporation,                    )
 4          Plaintiff                )
                                     )
 5   VS.                             )
                                     )
 6   MARTIN TRIPP, an Individual,    )
            Defendant                )
 7   _____  ) Case No.
                                     ) 3:18-cv-00296-LRH-CBC
 8                                   )
     MARTIN TRIPP, an Individual,    )
 9          Counterclaimant          )
                                     )
10                                   )
     TESLA, INC., a Delaware         )
11   Corporation,                    )
            Counter Defendant        )
12

13                       CONFIDENTIAL

14           ----------------------------------

15          ORAL AND VIDEOTAPED DEPOSITION OF

16                     SHAMARA BELL

17                   SEPTEMBER 6, 2019

18                       VOLUME 1

19           ------------------------------------

20

21

22       ORAL AND VIDEOTAPED DEPOSITION OF SHAMARA BELL,

23   produced as a witness at the instance of the

24   DEFENDANT/COUNTERCLAIMANT, and duly sworn, was taken in

25   the above-styled and numbered cause on September 6, 2019,
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_088

```
 1   to you, or did you have that feature and it wasn't
 2   working?
 3            MR. BETETA:  Objection.  Lacks foundation.
 4       A.   The feature wasn't available to us.  Like, we
 5   didn't have call recording at that time.
 6       Q.   (By Mr. Mitchell)  Before you left Tesla's
 7   employment, did you at some later point obtain the ability
 8   to record phone calls?
 9       A.   We did.
10       Q.   And do you know when that happened?
11       A.   Good question.  I don't.  I don't recall the
12   exact date.  But I do know that it did happen because I
13   remember thinking, oh, I wish these calls were recorded
14   when I got that phone call.  But yeah, we did acquire it
15   after.  I don't know the time frame.
16       Q.   And you're certain that at the time of June 20,
17   2018, when you took the call that was in reference to
18   Martin Tripp, you did not have the ability to record?
19       A.   Absolutely certain.
20       Q.   Let's talk about the phone call that took place
21   on June 20.  Was the caller a male or a female?
22       A.   Male.
23       Q.   The call, according to records produced by
24   Tesla, appeared to last between five to six minutes.  Did
25   that correlate to your recollection?
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
         Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_089

 1      A.   It seemed like it was longer than that, but that
 2   could be accurate.
 3      Q.   Can you tell us specifically what you said to
 4   the caller and what the caller said to you?
 5      A.   Sure.  Specifically -- again, like I stated,
 6   this has been over a year.  But to the best of my
 7   recollection, when I answered the call, he didn't want to
 8   provide his information like a normal call would go.  But
 9   I still asked, you know, how can I help you today.
10           He did let me know, hey, I'm calling because I
11   have a friend who was recently terminated -- well, I won't
12   use the word "terminated" because that's not the word he
13   used.  I have a friend that was recently fired from your
14   company, and he's -- he's really upset.  I fear that
15   people are going to be -- are going to get hurt.  He's
16   extremely volatile and he's heavily armed, and I'm worried
17   about the safety of the employees in the Gigafactory.
18           So at that point, you know, I had to -- you
19   know, I have a habit of recapping the issue.  Okay, so I
20   reiterated his issue.  And I was like, well, I appreciate
21   your calling.  Can you just hold on just a little bit
22   longer?
23           You know, he again refused to leave his
24   information.
25           I asked, well, would you like to leave maybe a

www.huseby.com            Huseby, Inc. Regional Centers         800-333-2082
                Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_090

```
 1   phone number, a name, just something so that, you know, we
 2   can have on record for you.
 3           He declined.  He said he didn't want anything to
 4   do with -- you know, he didn't want his name tied to it.
 5   So he didn't want to have anything to do with it because
 6   Martin -- he said Martin Tripp was his friend.  Well, he
 7   didn't say the word Martin Tripp at that moment.
 8           I put him on hold to consult with my supervisor.
 9   I had never gotten a call like this and didn't know what
10   to do.  So I went to my supervisor and I let him know,
11   hey, there's somebody on my phone who says that he's a
12   friend of Martin -- well, he says he's a friend of someone
13   that has gotten fired recently and says he's extremely
14   upset.  He's heavily armed.  He's worried that people are
15   going to get hurt in the Gigafactory.
16           So my supervisor -- there was someone sitting
17   next to him.  And my coworker, she was like, I wonder if
18   he's talking about Martin Tripp.
19           I had never heard of Martin Tripp ever in my
20   life.  I was out of the loop.  So I returned to the line
21   just to see if I could confirm, and I did confirm.  I
22   said, well, is this call in regards to someone named
23   Martin Tripp.
24           They said, yes, this is in regards to Martin
25   Tripp.
```

www.huseby.com | Huseby, Inc. Regional Centers | 800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_091

```
 1              At that point, you know, all I could do was, you
 2   know, just commend the caller for being brave because he
 3   genuinely sounded like he was scared for the safety of
 4   others.  And it's a hard thing to do, especially if -- you
 5   know, and I told him the same.  It's a hard thing to do,
 6   you know, especially if you're a friend with someone.
 7   It's hard.  But I did appreciate the information and told
 8   him that I would escalate it to the appropriate teams.
 9              That's -- that's the gist of that conversation.
10   But, I mean, that's -- did you have any other questions
11   about that part of it or --
12      Q.   Thank you for that explanation.
13              Was there anything else about the call you can
14   recall that you shared with him or he shared with you?
15      A.   When you say "him," who are you referring to?
16   My supervisor or the caller?
17      Q.   Thank you.  The caller.
18      A.   That I shared with him?  There was no
19   information that I could share with him.  I just remember
20   just taking the information.  There's nothing that I could
21   share, though.
22      Q.   All right.  Was there anything else he told you
23   other than what you've just told me about?
24      A.   Let me think because I don't want to miss
25   anything.  It's been over a year.  Nothing.  Basically the
```

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_092

1  key points.  He said he was a friend of someone who was
2  extremely upset because his name was in the media.  He was
3  fired from Tesla.  He's worried about the safety of others
4  because he was extreme -- he was heavily armed and
5  volatile.  He's afraid people were going to get hurt, and
6  that was the purpose of his call.  He refused to provide
7  his contact information, didn't want to be involved, just
8  wanted to give us the forewarning.
9              That's -- that's basically all I can remember if
10 I had to sum that call up.  That's all I can remember at
11 this moment.  I mean, I've had multiple interviews, and my
12 statement pretty much -- probably my statement over a year
13 ago is more accurate than my recollection now.  But that's
14 all I can -- that's as accurately as I can describe that.
15     Q.  Thank you, Ms. Bell.
16         What was the caller's tone?  Did the caller
17 sound calm or nervous when he spoke to you?
18     A.  He sounded a little nervous only because --
19 well, I can't say only because.  But he did sound a little
20 nervous.  Conflicted, maybe.  Yeah, that's probably the
21 best way I can describe it.
22     Q.  And I think you indicated at some point you put
23 the caller on hold, right?
24     A.  Correct.
25     Q.  And if I heard you correctly, at that point you

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_093

```
 1   spoke with your supervisor?
 2        A.   Correct.
 3        Q.   Who was the supervisor you spoke with?
 4        A.   Angel Besinaiz.  I hope I'm saying his name
 5   right, last name, anyway.
 6        Q.   And do you recall what you said to the
 7   supervisor and what the supervisor said to you?
 8        A.   So I placed the caller on hold, went over to
 9   Angel.  He sat behind me.  And I just said, hey, you know,
10   I have -- I have somebody on my phone that says that they
11   are a friend to somebody that was fired recently, says
12   that he's worried about his friend hurting people.  He's
13   heavily armed, volatile.
14             So as far as what he said to me, it was just one
15   of those weird, like, I don't know, maybe a shocking
16   moment, like what do I do.
17             And then that's when my coworker chimed in, and
18   she was like, well, I wonder if this is in regards to, you
19   know, Martin Tripp.
20             So, you know, he said, you know, try to get a
21   little more information.
22             So I went back to my desk, and that's when I
23   tried to, you know, confirm, hey, who is this in regards
24   to.  But as far as my supervisor goes, he wanted more
25   specifics, you know, probe, try to figure out who was this
```

www.huseby.com   Huseby, Inc. Regional Centers   800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_094

1  in regards to so that way we can escalate the ticket
2  appropriately.
3       Q.    Who was the coworker that suggested the name
4  Martin Tripp to you?
5       A.    Her name was Payola, and I don't remember her
6  last name.  But she was there.  She was right next to him.
7       Q.    And how did she know the nature of the phone
8  call you were having?  I assume these are not on
9  speakerphone, are they?
10      A.    No.  So our desks weren't like blocked off into
11 cubicles like this, but she was sitting right next to my
12 supervisor at the time.  So, you know, it's -- she
13 overheard the conversation.
14            MR. MITCHELL:  Everybody, for some reason
15 my audio went out, and so let me -- my video went out.
16 Can you still hear me?
17            THE WITNESS:  I can, yep.
18            MR. MITCHELL:  Can we take a five-minute
19 recess so I can see if I can get back on board?
20            MR. BETETA:  Okay.
21            VIDEOGRAPHER:  Going off the record.  The
22 time is 11:12 a.m.
23       (Break taken from 11:12 a.m. to 11:19 a.m.)
24            VIDEOGRAPHER:  Back on the record.  The
25 time is 11:19 a.m.

www.huseby.com                Huseby, Inc. Regional Centers                800-333-2082
            Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_095

1   I'd like to look at is one that has a Bates number on the
2   lower right 21431.  So that's 21431, please.
3                (Discussion off the record.)
4                (EXHIBIT NO. 1 WAS MARKED)
5        Q.   (By Mr. Mitchell)  This is a couple of emails,
6   Ms. Bell.  And I'd like to turn your attention to the
7   earlier of the two emails.  So if you'd go to the second
8   page, I'd like to ask you if you recognize this as an
9   email that you sent on June 20, 2018, at 1:51 p.m.
10       A.   Yes, I do.  I did send it.
11       Q.   Ms. Bell, it was sent at 1:51 p.m.  Do you
12  recall that that was at, after, or shortly after the phone
13  call that you had had?
14       A.   Yes.  Yes, it was shortly after.
15       Q.   Do you think you were -- I think I may have
16  interrupted you.  Would you say that again?
17       A.   Yeah, I was just saying yes, it was shortly
18  after.
19       Q.   Thank you.  And you write to someone named
20  Kristin Krerowicz.  Can you tell me who that is?
21       A.   Yes.  Kristin, she was the secretary that was
22  responsible for -- well, I won't say responsible because I
23  don't know her responsibilities.  But I was advised to
24  send an email over to Kristin, who was our secretary, and
25  she would help to escalate the situation.

www.huseby.com        Huseby, Inc. Regional Centers        800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_096

 1   is my statement.
 2        Q.   And so this is a summary of the threat to the
 3   Gigafactory that you received on June 20, 2018; is that
 4   right?
 5        A.   Absolutely.
 6        Q.   And when did you write this summary?
 7        A.   The following day, June 21.
 8        Q.   And at the time you wrote this statement, was
 9   the call still fresh in your memory?
10        A.   It was.
11        Q.   And does this email accurately capture your
12   recollection of the threat to the Gigafactory?
13        A.   It does.
14        Q.   Do you recall if anyone tried to influence your
15   memory of the call?
16        A.   No, not at all.  Not at all, no influence.  This
17   is how I remember this call.
18        Q.   Are you aware that Tesla made a statement about
19   the threat you received concerning the Gigafactory?
20        A.   Yeah.  Yep.
21        Q.   And did you have an opportunity to see or hear
22   that statement in June of 2018, around that time?
23        A.   See or hear?  Like, you mean from Tesla or --
24        Q.   No.
25        A.   -- just the media?  Everything I heard was

1  through the media.
2      Q.   And when you heard that statement, did you
3  believe that Tesla's representation conveyed the gist of
4  the threat you received?
5      A.   Yeah.  Yep.
6      Q.   And let me go back to what's been marked as
7  Exhibit 4.
8      A.   Okay.
9      Q.   And towards the middle of the page, it said, "I
10 never said 'shoot the place up,' though.  Ain't that
11 ghetto."
12     A.   Right.
13     Q.   Is that right?
14     A.   Right.
15     Q.   And what did you mean by saying, "I ain't that
16 ghetto"?
17     A.   The verbiage, simply the verbiage.  I would --
18 like, if it wasn't, like, verbatim said in that
19 conversation, I would never say, oh, no, he said he's
20 going to shoot the place up.  No.  That's what I meant.
21 By ghetto, I just meant that particular verbiage.
22     Q.   And so even though the phrase "shoot the place
23 up" was ghetto, does the statement convey the gist of the
24 call you received?
25     A.   Yes, because if he's heavily armed --

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
          Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_098

```
 1                  MR. MITCHELL:  Objection --
 2                  THE REPORTER:  Objection what?  I couldn't
 3   hear.
 4                  MR. MITCHELL:  Ms. Bell, I know this is
 5   awkward, but if you could slow down before answering.
 6   There are some questions he asks that I may need to
 7   interpose a legal objection.  I don't want to throw you
 8   off, but if you could just give me a second, that way we
 9   won't talk over one another.
10             And what I said, Ms. Court Reporter, was,
11   "Objection, foundation, leading."
12                  THE WITNESS:  Okay.
13                  MR. BETETA:  You need the question read
14   back?
15                  THE WITNESS:  I forgot the question.
16                  MR. BETETA:  Yeah.  Could you read back the
17   question, if you don't mind?
18             (Pending question was read back.)
19        A.   Yes.
20        Q.   (By Mr. Beteta)  Did the caller specifically
21   state that Mr. Tripp was on his way to the Gigafactory to
22   start shooting?
23        A.   No.
24        Q.   But based on what the caller said, did you
25   understand that the caller was concerned that Mr. Tripp
```

www.huseby.com          Huseby, Inc. Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_099

1   might just do that?

2   A.   Absolutely.

3           MR. MITCHELL:  Objection.  Foundation,
4   leading.

5   A.   Absolutely.

6   Q.   (By Mr. Beteta)  And let me go back now to
7   what's previously been marked Exhibit 5.  You weren't
8   copied on this email, but could you take a look at the
9   first paragraph -- the first paragraph under that
10  statement "Attributed to a Tesla spokesperson."

11  A.   Okay.  Done.

12  Q.   Do you believe that the statement on Exhibit 5
13  that I just pointed to you accurately captures the gist of
14  the threat to the Gigafactory that you received?

15  A.   Yes.

16          MR. MITCHELL:  Objection to form.

17  Q.   (By Mr. Beteta)  And if you'd look at the bottom
18  of Exhibit 4, there's an email that starts there, and it
19  says on June 20, 2018.  It's an email from Mr. Musk.  You
20  can just read that, those -- that short paragraph to
21  yourself.

22  A.   (Witness complies.)  Okay.

23  Q.   And in the third sentence of that email,
24  Mr. Musk describes the call you received on June 20, 2018;
25  is that correct?

www.huseby.com          Huseby, Inc.  Regional Centers          800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_100

```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF NEVADA
 2

 3   TESLA, INC., a Delaware           )
     Corporation,                      )
 4           Plaintiff                 )
                                       )
 5   VS.                               )
                                       )
 6                                     )
     MARTIN TRIPP, an Individual,      )
 7           Defendant                 )   Case No.
     _____ )   3:18-cv-00296-LRH-CBC
 8                                     )
     MARTIN TRIPP, an Individual,      )
 9         Counterclaimant             )
                                       )
10                                     )
                                       )
11   TESLA, INC., a Delaware           )
     Corporation,                      )
12           Counter Defendant         )

13
                         REPORTER'S CERTIFICATION
14                    DEPOSITION OF SHAMARA BELL
                          SEPTEMBER 6, 2019
15
             I, Tobi Moreland, Certified Shorthand Reporter in
16   and for the State of Texas, hereby certify to the
     following:
17
             That the witness, SHAMARA BELL, was duly sworn by
18   the officer and that the transcript of the oral
     deposition is a true record of the testimony given by the
19   witness;

20           That the deposition transcript was submitted on
     September 16th, 2019 to the witness or to the attorney
21   for the witness for examination, signature and return to
     Huseby, Inc., by October 6th, 2019;
22
             That the amount of time used by each party at the
23   deposition is as follows:

24           Mr. Douglas J. Beteta..... 22 Minutes
             Mr. Robert D. Mitchell.....2 Hours, 8 Minutes
25
```

www.huseby.com            Huseby, Inc. Regional Centers            800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_101

```
 1
    deposition officer at the time said testimony was taken,
 2  the following includes counsel for all parties of record:

 3     Mr. Douglas J. Beteta, Attorney for Plaintiff/Counter
    Defendant
 4     Mr. Robert D. Mitchell, Attorney for
    Defendant/Counterclaimant
 5

 6          That $_____ is the deposition officer's
    charges to the Defendant/Counterclaimant for preparing
 7  the original deposition transcript and any copies of
    exhibits;
 8
            I further certify that I am neither counsel for,
 9  related to, nor employed by any of the parties or
    attorneys in the action in which this proceeding was
10  taken, and further that I am not financially or otherwise
    interested in the outcome of the action.
11
            Certified to by me this _____ day of
12  _____, 2019.

13

14
                              [signature]
15

16                            _____
                              Tobi L. Moreland, CSR 3317
17                            Expires 12/31/19
                              Huseby, Inc.
18                            1230 West Morehead Street
                              Suite 408
19                            Charlotte, NC 28208
                              Phone:  800-333-2082
20

21

22

23

24

25
```

www.huseby.com    Huseby, Inc. Regional Centers    800-333-2082
Charlotte ~ Atlanta ~ Washington, DC ~ New York ~ Houston ~ San Francisco

MSJ_102