# Exhibit 5
# Sarah O'Brien Deposition Excerpts

**CONFIDENTIAL - Sarah O'Brien - 6/5/2019**

Page 1

```
           UNITED STATES DISTRICT COURT
               DISTRICT OF NEVADA
_____
TESLA, INC., a Delaware    )
corporation,               )
                           )
         Plaintiff,        )
                           )
v.                         )     Case No.
                           )  3:18-cv-00296-LRH-CBC
MARTIN TRIPP, an           )
individual,                )
                           )
         Defendant.        )
_____)
MARTIN TRIPP, an           )
individual,                )
                           )
    Counterclaimant,       )
                           )
v.                         )
                           )
TESLA, INC., a Delaware    )
corporation,               )
                           )
    Counterdefendant,      )
_____)
```

CONFIDENTIAL

Videotaped Deposition of Sarah O'Brien

Menlo Park, California

Wednesday, June 5, 2019

Michael P. Hensley, RDR, CSR No. 14114

**Depo Dynamics, LLC**
**(888) 494-3370**

MSJ_104

7510e958-db9e-47e5-83ce-7749a8b79d37

CONFIDENTIAL - Sarah O'Brien - 6/5/2019

Page 72

```
 1  Q.     Okay.  What can you tell me about that, when you
 2  say "I believe so"?
 3  A.     I -- I -- I had spoken to security -- the
 4  security team a number of times during this time, to,
 5  obviously, get as much detail as possible.  I just can't
 6  remember the exact parts of those conversations.
 7  Q.     Can you remember any parts here today, as you
 8  testify under oath?
 9  A.     More just -- I -- I think everything that I've
10  said so far, really.
11  Q.     Do you know what was ultimately concluded, if
12  anything, by any internal investigation of Tesla -- by
13  Tesla, as to who made the call?
14  A.     I can't remember.
15  Q.     Do you -- do you recall ever having been told
16  what the conclusions were of Tesla's investigation,
17  whether you recall the details or not?
18  A.     I don't.
19  Q.     Did you have concerns, when this matter was
20  reported to you, that the call center -- the phone call
21  was not recorded by Tesla?
22  A.     I can't remember.
23  Q.     Did that cross your mind?
24  A.     No.
25  Q.     In your statement, the official statement you
```

**CONFIDENTIAL - Sarah O'Brien - 6/5/2019**

Page 73

```
 1   put out, again, you used this term, quote/unquote,
 2   "shoot the place up."
 3           Was that the statement that came directly from
 4   Shamara Bell?
 5   A.      That's the information I got from the security
 6   team, who I believe spoke to Shamara Bell.
 7   Q.      Okay.  Who -- who on the security team gave that
 8   information?
 9   A.      I was talking to -- at the time there was a chap
10   called Jeff Jones and another guy called Nick.  It would
11   have been one of them --
12   Q.      Okay.  But you don't recall who told you --
13   A.      -- but I can't remember which one.  Yeah.
14   Q.      All right.
15           But it would have been one of those two that
16   told you that was the exact language Ms. Bell used?
17   A.      Yes.
18   Q.      I think you indicated you may have subsequently
19   had a conversation with Ms. Bell.
20   A.      Yes.
21   Q.      Did you ask her if the terminology that was used
22   in the phone call was, quote, "shoot the place up," end
23   of quote?
24   A.      I can't -- I can't remember, but I don't think
25   so, just because of the nature of the conversation that
```

```
 1              THE WITNESS:  Yes.
 2   BY MS. LIBEU:
 3   Q.      How so?
 4              MR. MITCHELL:  Objection based upon the prior
 5   objection.
 6              THE WITNESS:  Because it -- it felt like it
 7   was -- again, it just felt like it was malicious.
 8   BY MS. LIBEU:
 9   Q.      And did you come to learn that Mr. Tripp was --
10   his employment was terminated by Tesla?
11   A.      Yes.
12   Q.      And did that factor into your analysis of
13   whether you thought that the call that had been made
14   about the potential threat to the Gigafactory was
15   credible?
16              MR. MITCHELL:  Objection.  Leading.
17              THE WITNESS:  Yes.
18   BY MS. LIBEU:
19   Q.      And how did that factor in?
20   A.      Because I -- I thought he was upset with Tesla.
21   Q.      And did you learn that a lawsuit had been filed
22   by Tesla, against Mr. Tripp?
23   A.      Yes.
24   Q.      And was it your understanding that Mr. Tripp was
25   named publicly in that lawsuit?
```

```
 1   A.      Yes.
 2   Q.      And did the lawsuit factor into your analysis as
 3   to whether you thought the call about the threat to the
 4   Gigafactory was credible?
 5           MR. MITCHELL:  Objection.  Leading.
 6           THE WITNESS:  Yes.
 7   BY MS. LIBEU:
 8   Q.      How so?
 9   A.      Because people already knew who Marty Tripp was,
10   med- -- media in particularly.
11   Q.      And you -- how did you learn that media at that
12   point knew who Martin Tripp was?
13   A.      Because they -- they contacted us, to -- to say
14   that.  And I -- I also think Marty had spoken to media
15   about it.
16   Q.      And did the fact that -- let's take those one at
17   a time.
18           Did the fact that the media already know Martin
19   Tripp's name factor into your analysis as to whether you
20   thought the call making the warning of a potential
21   threat to the Gigafactory was credible?
22           MR. MITCHELL:  Leading objection.
23           THE WITNESS:  Yes.
24   BY MS. LIBEU:
25   Q.      How so?
```

```
1   STATE OF CALIFORNIA )
                        ) ss.
2   COUNTY OF ALAMEDA   )

3       I, Michael Hensley, Certified Shorthand Reporter,
4   Registered Diplomate Reporter, in and for the State of
5   California, Certificate No. 14114,
6   do hereby certify:
7       That the witness in the foregoing deposition was by
8   me first duly sworn to testify to the truth, the whole
9   truth, and nothing but the truth in the foregoing cause;
10  that said deposition was taken before me at the time and
11  place herein named; that said deposition was reported by
12  me in shorthand and transcribed, through computer-aided
13  transcription, under my direction; and that the
14  foregoing transcript is a true record of the testimony
15  elicited and proceedings had at said deposition.
16      I do further certify that I am a disinterested
17  person and am in no way interested in the outcome of
18  this action or connected with or related to any of the
19  parties in this action or to their respective counsel.
20      In witness whereof, I have hereunto set my hand
21  this 13th day of June, 2019.
22
23  _____
    Michael Hensley, CSR NO. 14114
24
25
```