# Exhibit 57
# Martin Tripp Deposition Excerpts

MSJ_628

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

REPORTER'S CERTIFIED
TRANSCRIPT

| | |
|---|---|
| TESLA, INC., a Delaware corporation,        ) )  )  Plaintiff,               )  )                         v.   )  )  MARTIN TRIPP,            )  )                Defendant,  )  _____)  )  AND RELATED COUNTER-CLAIMS.)  _____) | Case No.:  3:18-cv-00296 LRH-CBC  CONFIDENTIAL |

CONFIDENTIAL

VIDEOTAPE DEPOSITION OF MARTIN TRIPP

PHOENIX, ARIZONA
WEDNESDAY, SEPTEMBER 4, 2019
9:01 A.M.

DAVID M. LEE, RMR, CCR
Certified Reporter
Certificate Number 50391
File No.: 19-29468



Martin Tripp-Confidential

| | | |
|---|---|---|
| 09:51 | 1 | Q. How should you be viewed then? |
| 09:51 | 2 | A. Preferably not viewed at all. |
| 09:51 | 3 | Q. All right. You wanted to remain anonymous. |
| 09:51 | 4 | A. That is correct. |
| 09:51 | 5 | Q. You wanted to continue with your job at |
| 09:51 | 6 | Tesla while continuing to provide information to |
| 09:51 | 7 | reporters. |
| 09:51 | 8 | A. Only if it was necessary. |
| 09:51 | 9 | Q. And you were going to do that for as long |
| 09:51 | 10 | as you thought it was necessary. |
| 09:51 | 11 | A. Yes. |
| 09:51 | 12 | Q. As determined by you. |
| 09:51 | 13 | A. Yes. |
| 09:51 | 14 | Q. So you thought by changing -- by -- excuse |
| 09:51 | 15 | me. Let me start that again. |
| 09:51 | 16 | You thought by sharing information with |
| 09:51 | 17 | Linette Lopez, you would change the -- what was |
| 09:52 | 18 | being done at the Tesla Gigafactory; right? |
| 09:52 | 19 | A. That was my hope. |
| 09:52 | 20 | Q. And you were going to continue to provide |
| 09:52 | 21 | information from Tesla to Linette Lopez as long as |
| 09:52 | 22 | it was -- you thought there were things that needed |
| 09:52 | 23 | to be changed at Tesla's Gigafactory. |
| 09:52 | 24 | A. If it involved public safety, yes. |
| 09:52 | 25 | Q. So a lot of the information that you |

Martin Tripp-Confidential

09:52    1    disclosed had to do with the amount of dollar value

09:52    2    of scrap.  Do you remember that?

09:52    3         A.  Yes.

09:52    4         Q.  How is that an issue of public safety?

09:52    5         A.  I can't say that it is.

09:52    6         Q.  Then why were you disclosing it to Linette

09:52    7    Lopez?

09:52    8         A.  Because there was a concern internally

09:52    9    amongst many employees.

09:52   10         Q.  Okay.  So there was a concern internally

09:52   11    amongst employees, and you didn't see it was

09:52   12    changing to your liking; right?

09:52   13              MR. FISCHBACH:  Object to the form of the

09:53   14    question.

09:53   15              THE WITNESS:  It was not changing to the

09:53   16    liking of anyone.

09:53   17         Q.  BY MR. GATES:  You didn't think that Tesla

09:53   18    was changing sufficiently in response to the

09:53   19    concerns about the level of scrap.

09:53   20         A.  That is correct.

09:53   21         Q.  And so because of that, you decided to

09:53   22    provide Tesla confidential information to Linette

09:53   23    Lopez.

09:53   24         A.  Yes.

09:53   25         Q.  But that's not an issue of public safety.

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 09:53 | 1 | A.  Not to my knowledge. |
| 09:53 | 2 | Q.  You also disclosed to her information about |
| 09:53 | 3 | the number of Model 3s that were being produced. |
| 09:53 | 4 | Do you remember that? |
| 09:53 | 5 | A.  Yes. |
| 09:53 | 6 | Q.  Was that an issue of public safety? |
| 09:53 | 7 | A.  I can't say that it is. |
| 09:53 | 8 | Q.  Why did you disclose it to Linette Lopez? |
| 09:53 | 9 | A.  Because Elon Musk was lying to investors and |
| 09:54 | 10 | the public about the amount of cars being produced |
| 09:54 | 11 | per day, and I was showing proof of that. |
| 09:54 | 12 | Q.  Okay.  Let's suppose that you thought the |
| 09:54 | 13 | numbers that you were being put to the public were |
| 09:54 | 14 | incorrect.  Why go to a reporter with Tesla |
| 09:54 | 15 | confidential information?  What's the importance of |
| 09:54 | 16 | that? |
| 09:54 | 17 | A.  I believed it was wrong.  I, myself, was an |
| 09:54 | 18 | investor with restricted stock units, and I believe |
| 09:54 | 19 | that it was wrong for him to say one thing, and we |
| 09:54 | 20 | were actually doing another. |
| 09:54 | 21 | Q.  So because you thought it was wrong, it was |
| 09:54 | 22 | okay to steal Tesla confidential information and |
| 09:54 | 23 | provide it to a reporter. |
| 09:54 | 24 | A.  Correct. |
| 09:54 | 25 | Q.  Did you raise the issue of the number of |

| 10:30 | 1 | Q.  So on May 27th at 12:39 p.m., when you sent |

10:30   1   Q.  So on May 27th at 12:39 p.m., when you sent

10:30   2   this e-mail, Exhibit 5, were you at work?

10:30   3   A.  I don't know.

10:31   4         (Deposition Exhibit Number 6 was marked

10:31   5   for identification.)

10:31   6   Q.  BY MR. GATES:  Okay.  Because let me give

10:31   7   you what's marked as Exhibit 6, which is an e-mail

10:31   8   from yourself to yourself, from your work e-mail

10:31   9   address to your personal e-mail address; right?

10:31   10   A.  That is correct.

10:31   11   Q.  And this you sent on May 27th at 2:58 p.m.

10:31   12   Do you see that?

10:31   13   A.  Yes.

10:31   14   Q.  And you were forwarding to your personal

10:31   15   e-mail address an internal Tesla e-mail; correct?

10:31   16   A.  That is correct.

10:31   17   Q.  Were you at work when you sent this?

10:31   18   A.  I believe I was at home, and I was using

10:31   19   the Outlook app to send it from my Tesla account to

10:31   20   my personal account.

10:31   21   Q.  Well, so below the first e-mail is an

10:31   22   e-mail from Christopher Swails to you on May 27th

10:32   23   at 2:33 p.m.  Do you see that?

10:32   24   A.  Yes.

10:32   25   Q.  Okay.  So you asked Christopher Swails to

**Martin Tripp-Confidential**

10:32    1    forward to you the e-mail at the bottom, which was

10:32    2    sent on March 19th; right?

10:32    3        A.  That is correct.

10:32    4        Q.  And Christopher Swails was one of the other

10:32    5    process technicians; right?

10:32    6        A.  That is correct.

10:32    7        Q.  Did you tell him why you wanted the e-mail

10:32    8    from March 19th?

10:32    9        A.  I asked him for the e-mail; I did not give a

10:32   10    reason.

10:32   11        Q.  Did you ask him in person?

10:32   12        A.  I believe I asked him in person.  Like I

10:32   13    said, I just believe.  I don't know for certain how

10:32   14    I sent that.

10:32   15        Q.  Okay.  So you asked Christopher Swails in

10:32   16    person in the factory; right?

10:32   17        A.  At some point, yes.

10:32   18        Q.  To send you this e-mail.

10:32   19        A.  Yes.

10:32   20        Q.  Okay.  And then on May 27th, 2018, at 2:33

10:33   21    p.m., he forwarded it to you; right?

10:33   22        A.  Correct.

10:33   23        Q.  And then less than half an hour later, you

10:33   24    forwarded it from your work account to your personal

10:33   25    account; right?

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 10:33 | 1 | A.  That is correct. |
| 10:33 | 2 | Q.  Were you authorized to send Tesla internal |
| 10:33 | 3 | e-mails to your personal e-mail account? |
| 10:33 | 4 | A.  No. |
| 10:33 | 5 | Q.  And did you know that at the time? |
| 10:33 | 6 | A.  Yes. |
| 10:33 | 7 | (Deposition Exhibit Number 7 was marked |
| 10:33 | 8 | for identification.) |
| 10:33 | 9 | Q.  BY MR. GATES:  All right.  I'll give you |
| 10:33 | 10 | what's been marked as Exhibit 7, and this is another |
| 10:33 | 11 | cover e-mail address without the attachments.  This |
| 10:33 | 12 | is an e-mail that says from you, and the "To" |
| 10:33 | 13 | is -- there's two "Me's" in the "To" line. |
| 10:34 | 14 | So was this -- were you sending this to |
| 10:34 | 15 | yourself? |
| 10:34 | 16 | A.  I would be inclined to believe that, but I |
| 10:34 | 17 | don't know. |
| 10:34 | 18 | Q.  Okay.  Do you recognize the subject "T |
| 10:34 | 19 | Scrap 2018"? |
| 10:34 | 20 | A.  Yes, I do. |
| 10:34 | 21 | Q.  And what was that? |
| 10:34 | 22 | A.  That was a data pull of all of the Bandolier |
| 10:34 | 23 | scrap for 2018. |
| 10:34 | 24 | Q.  Okay.  So this is on May 27th at 5:53 p.m. |
| 10:34 | 25 | You sent what appears to be, to yourself, two |

MSJ_635

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 10:34 | 1 | attachments; one entitled "T Scrap.zip" and one |
| 10:34 | 2 | entitled "T Scrap.xlsx"; correct? |
| 10:34 | 3 | A.  Correct. |
| 10:34 | 4 | Q.  And what is -- what was the "T Scrap |
| 10:34 | 5 | 2018.xlsx"?  Was that the pull you just described? |
| 10:35 | 6 | A.  That is correct. |
| 10:35 | 7 | Q.  What else was in the zip file? |
| 10:35 | 8 | A.  I don't know. |
| 10:35 | 9 | (Deposition Exhibit Number 8 was marked |
| 10:35 | 10 | for identification.) |
| 10:35 | 11 | Q.  BY MR. GATES:  All right.  Let me give you |
| 10:35 | 12 | what's been marked as Exhibit 8. |
| 10:35 | 13 | So Exhibit 8 is an e-mail that you sent |
| 10:35 | 14 | to Linette Lopez on May 27th at 6:11 p.m.  Is that |
| 10:35 | 15 | right? |
| 10:35 | 16 | A.  Correct. |
| 10:35 | 17 | Q.  And attached to that e-mail is the T Scrap |
| 10:35 | 18 | 2018.xlsx, the spreadsheet that we just discussed; |
| 10:35 | 19 | right? |
| 10:35 | 20 | A.  Yes. |
| 10:35 | 21 | Q.  And then also the zip file that we just |
| 10:35 | 22 | discussed; right? |
| 10:35 | 23 | A.  That is correct. |
| 10:35 | 24 | Q.  Okay.  And so you are sending to her -- this |
| 10:35 | 25 | was, you said, a pull of all the Bandolier data. |

| | | |
|---|---|---|
| 10:35 | 1 | A.  Yes. |
| 10:36 | 2 | Q.  And that was a pull of data from the Tesla |
| 10:36 | 3 | MOS; right? |
| 10:36 | 4 | A.  That is correct. |
| 10:36 | 5 | Q.  And was it for all of the Bandolier scrap |
| 10:36 | 6 | data in 2018 up to that date? |
| 10:36 | 7 | A.  That is correct. |
| 10:36 | 8 | Q.  And you understood that was Tesla's |
| 10:36 | 9 | confidential information; right? |
| 10:36 | 10 | A.  Yes. |
| 10:36 | 11 | Q.  You understood that you were not authorized |
| 10:36 | 12 | to disclose that to anyone outside of Tesla; right? |
| 10:36 | 13 | A.  Correct. |
| 10:36 | 14 | Q.  And you also forwarded to her the e-mail, or |
| 10:36 | 15 | the text of the e-mail that you had obtained from |
| 10:36 | 16 | Christopher Swails; right? |
| 10:36 | 17 | A.  Yes, I believe so. |
| 10:36 | 18 | Q.  So the text of the e-mail is at the bottom |
| 10:36 | 19 | of Exhibit 8 where, in bold, it says: |
| 10:36 | 20 | "Sent:  Monday, March 19th, 2018." |
| 10:37 | 21 | Do you see that? |
| 10:37 | 22 | A.  Yes, that is correct. |
| 10:37 | 23 | Q.  So that is -- that text below that point is |
| 10:37 | 24 | the e-mail that you had obtained from Christopher |
| 10:37 | 25 | Swails, so that's an internal Tesla e-mail; correct? |

Martin Tripp-Confidential

| 11:01 | 1 | A.  Okay. |
| 11:01 | 2 | Q.  Right? |
| 11:01 | 3 | A.  I'll -- |
| 11:01 | 4 | MR. FISCHBACH:  Object to foundation. |
| 11:02 | 5 | Answer if you can. |
| 11:02 | 6 | THE WITNESS:  I'll assume it's part of this |
| 11:02 | 7 | e-mail, and in that case the answer would be yes. |
| 11:02 | 8 | Q.  BY MR. GATES:  Okay. |
| 11:02 | 9 | So if you look at page 3 of the e-mail. |
| 11:02 | 10 | A.  (Witness complies.) |
| 11:02 | 11 | Q.  Do you recognize that the image on page 3 |
| 11:02 | 12 | is -- that's data from Tesla's systems; right? |
| 11:02 | 13 | A.  Correct. |
| 11:02 | 14 | Q.  Okay.  And this data was about the |
| 11:02 | 15 | production of Model 3s; right? |
| 11:02 | 16 | A.  That is correct. |
| 11:02 | 17 | Q.  So if you look at the -- |
| 11:02 | 18 | A.  Can I clarify? |
| 11:02 | 19 | Q.  Sure. |
| 11:02 | 20 | A.  It is about the parts produced for the Model |
| 11:02 | 21 | 3. |
| 11:02 | 22 | Q.  Okay.  Thank you for that clarification. |
| 11:02 | 23 | So Exhibit 17, was this picture taken |
| 11:02 | 24 | while you were in the Tesla factory? |
| 11:02 | 25 | A.  Yes. |

**Martin Tripp-Confidential**

| 11:02 | 1 | Q.   And is this your laptop? |
|---|---|---|

11:02   2   A.   Yes.

11:03   3   Q.   Okay.   Why did you take a photograph of this,

11:03   4   rather than doing like some kind of screenshot?

11:03   5   A.   It was probably faster for me just to take

11:03   6   a picture and send, and it was through my phone that

11:03   7   way.

11:03   8   Q.   Were you concerned that if you took some

11:03   9   kind of screenshot, you'd leave an electronic

11:03   10   digital trace of what you were doing?

11:03   11   A.   Yes.

11:03   12   Q.   So you thought it was safer to take a

11:03   13   photograph with your phone.

11:03   14   A.   Yes.

11:03   15   Q.   That data and that photograph of this data

11:03   16   in Exhibit 17, you understood at the time that you

11:03   17   were not authorized to share that information with

11:03   18   people outside of Tesla; correct?

11:03   19   A.   Yes.

11:04   20            (Deposition Exhibit Number 18 was marked

11:04   21   for identification.)

11:04   22   Q.   BY MR. GATES:   Okay.   I'll give you what's

11:04   23   been marked as Exhibit 18.

11:04   24            Okay.   So Exhibit 18 is an e-mail that

11:04   25   you sent to Linette Lopez on May 30th, 2018, at

**Martin Tripp-Confidential**



Martin Tripp-Confidential

| | | |
|---|---|---|
| 11:16 | 1 | queried from the Tesla MOS; right? |
| 11:16 | 2 | A.  Database, yes. |
| 11:16 | 3 | Q.  So that's Tesla confidential information; |
| 11:16 | 4 | right? |
| 11:16 | 5 | A.  Correct. |
| 11:16 | 6 | Q.  Which you were not authorized to share with |
| 11:16 | 7 | anyone outside of Tesla; right? |
| 11:16 | 8 | A.  Right. |
| 11:16 | 9 | Q.  And so by sharing this .pdf with all these |
| 11:16 | 10 | graphs, you were giving to Linette Lopez Tesla |
| 11:17 | 11 | confidential information. |
| 11:17 | 12 | A.  Yes. |
| 11:17 | 13 | Q.  Why did you send her these graphs?  What |
| 11:17 | 14 | were you trying to show her? |
| 11:17 | 15 | A.  They did not believe the dollar value of the |
| 11:17 | 16 | amount of scrap, so it was questioned, so we needed |
| 11:17 | 17 | absolute numbers to show that actual number.  That's |
| 11:17 | 18 | where these come in. |
| 11:17 | 19 | Q.  So these are to show, what, the underlying |
| 11:17 | 20 | data of your calculations? |
| 11:17 | 21 | A.  Yes. |
| 11:17 | 22 | Q.  Okay.  So if you look at, for instance, the |
| 11:17 | 23 | page that's marked GGL000243_ -- or _0001.0006. |
| 11:17 | 24 | A.  Okay. |
| 11:17 | 25 | Q.  You say it says:  "Stator Scrap for 2018." |

| 11:42 | 1 | A.   To get them reworked and out of the NCM |
| 11:42 | 2 | area. |
| 11:42 | 3 | THE CERTIFIED REPORTER:  "Out of the"? |
| 11:42 | 4 | THE WITNESS:  NCM area, "Non-Conforming |
| 11:42 | 5 | Material." |
| 11:42 | 6 | Q.  BY MR. GATES:  Okay.  So this page that |
| 11:42 | 7 | we're looking at, this screenshot from Tesla's MOS, |
| 11:42 | 8 | that's data that you took knowing that it was |
| 11:42 | 9 | confidential, and knowing that you shouldn't share |
| 11:42 | 10 | it with others, but that you sent to Linette Lopez; |
| 11:43 | 11 | right? |
| 11:43 | 12 | A.  Correct. |
| 11:43 | 13 | Q.  Okay.  Then the next few pages is a |
| 11:43 | 14 | PowerPoint presentation.  Do you see that? |
| 11:43 | 15 | A.  That is correct. |
| 11:43 | 16 | Q.  And that's a PowerPoint presentation that |
| 11:43 | 17 | you put together; right? |
| 11:43 | 18 | A.  Correct. |
| 11:43 | 19 | Q.  This is not something that Tesla put |
| 11:43 | 20 | together. |
| 11:43 | 21 | A.  No. |
| 11:43 | 22 | Q.  And so this was your description of the data |
| 11:43 | 23 | that you had pulled from the Tesla MOS; right? |
| 11:43 | 24 | A.  Correct. |
| 11:43 | 25 | Q.  And here it was -- the -- the point of this |

11:44   1      Q.  But didn't you tell Linette Lopez that these

11:44   2   vehicles were given to consumers and it was an

11:44   3   unsafe issue?

11:44   4      A.  I told her that they were in cars that had

11:44   5   passed through that point in the manufacturing

11:44   6   process.

11:44   7      Q.  Did she -- was she concerned that they had

11:45   8   been sold to consumers?

11:45   9      A.  Absolutely.

11:45   10     Q.  Well, but didn't you send out publicly all

11:45   11  the VIN numbers that you thought contained Model

11:45   12  3 -- Model 3 VIN numbers that you contended

11:45   13  contained punctured battery cells?  Didn't you make

11:45   14  that public?

11:45   15     A.  Yes.

11:45   16     Q.  And you told people that "If you have one

11:45   17  of these VIN numbers, you've got a punctured battery

11:45   18  cell in your car."

11:45   19         MR. FISCHBACH:  Object to the form of the

11:45   20  question.

11:45   21     Q.  BY MR. GATES:  Right?

11:45   22         MR. FISCHBACH:  Object to the form of the

11:45   23  question.

11:45   24         Answer if you can.

11:45   25         THE WITNESS:  Yes.

Martin Tripp-Confidential

| 11:45 | 1 | Q.   BY MR. GATES:   But you just told me you |
|---|---|---|
| 11:45 | 2 | didn't have proof of that. |
| 11:45 | 3 | A.   Correct. |
| 11:45 | 4 | Q.   So you lied in your tweet. |
| 11:45 | 5 | A.   No. |
| 11:45 | 6 | Q.   Oh, you didn't lie.   Okay. |
| 11:45 | 7 | You think that people who saw that, with |
| 11:45 | 8 | all those VIN numbers, believed that "Oh, well |
| 11:46 | 9 | Mr. Tripp is telling me that there may be a |
| 11:46 | 10 | punctured battery cell, but he doesn't know because |
| 11:46 | 11 | he doesn't have proof that it was actually sold |
| 11:46 | 12 | with that punctured battery cell."   Is that what you |
| 11:46 | 13 | were intending to convey? |
| 11:46 | 14 | MR. FISCHBACH:   Objection to foundation. |
| 11:46 | 15 | Answer if you can. |
| 11:46 | 16 | THE WITNESS:   I don't know what their |
| 11:46 | 17 | thinking was -- was at the time. |
| 11:46 | 18 | Q.   BY MR. GATES:   Were you intending to convey |
| 11:46 | 19 | to people that "Here are these VIN numbers.   I think |
| 11:46 | 20 | that they went through quality control, and were |
| 11:46 | 21 | charged at that stage.   I don't know whether or not |
| 11:46 | 22 | they were actually sold to consumers."   Is that |
| 11:46 | 23 | what you told people? |
| 11:46 | 24 | A.   I implied that there was a possibility that |
| 11:46 | 25 | these punctured cells were in vehicles. |

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 11:46 | 1 | Q.  You "implied." |
| 11:46 | 2 | A.  There's a possibility. |
| 11:46 | 3 | Q.  Is that kind of like evading? |
| 11:46 | 4 | A.  No. |
| 11:46 | 5 | Q.  Oh, okay. |
| 11:46 | 6 | Let's go to what's _0005.  Do you see |
| 11:46 | 7 | that's a color chart? |
| 11:46 | 8 | A.  (Witness complies.) |
| 11:47 | 9 | Q.  Can you tell us what that is? |
| 11:47 | 10 | A.  We're talking about that (indicating) right |
| 11:47 | 11 | there? |
| 11:47 | 12 | Q.  Correct. |
| 11:47 | 13 | A.  It's very difficult to make out.  I can't |
| 11:47 | 14 | tell you. |
| 11:47 | 15 | Q.  You can't tell? |
| 11:47 | 16 | A.  It's very difficult to -- to read it. |
| 11:47 | 17 | (Deposition Exhibit Number 23 was marked |
| 11:47 | 18 | for identification.) |
| 11:47 | 19 | Q.  BY MR. GATES:  All right.  I'll give you |
| 11:47 | 20 | what's marked as Exhibit 23. |
| | 21 | THE CERTIFIED REPORTER:  I think 22 might |
| | 22 | be next. |
| | 23 | MR. GATES:  Yes, but I'm going to mark this |
| | 24 | as 23 because I put the sticker on it already. |
| | 25 | Q.  Okay.  I'm giving you what's marked as |

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 11:47 | 1 | Exhibit 23, which is a colored chart.  The top of |
| 11:47 | 2 | the chart starts with a -- it gives a VIN number, |
| 11:48 | 3 | which is ███████████ which is the same VIN |
| 11:48 | 4 | number that is in the document that we were looking |
| 11:48 | 5 | at before and you couldn't make out; correct? |
| 11:48 | 6 | A.  Correct. |
| 11:48 | 7 | MR. FISCHBACH:  Sean, is this a -- a blowup |
| 11:48 | 8 | of 21, and if so, do you want to write the same |
| 11:48 | 9 | "CONFIDENTIAL" designation on it? |
| 11:48 | 10 | MR. GATES:  It has a "CONFIDENTIAL" |
| 11:48 | 11 | designation. |
| 11:48 | 12 | MR. FISCHBACH:  Oh, does it?  Okay.  Thank |
| 11:48 | 13 | you. |
| 11:48 | 14 | But if so, it looks like it's a blowup |
| 11:48 | 15 | of GGL000066_0005. |
| 11:48 | 16 | MR. GATES:  Correct. |
| 11:48 | 17 | MR. FISCHBACH:  Thank you. |
| 11:48 | 18 | MR. GATES:  In fact, it was -- you guys -- |
| 11:48 | 19 | well, it has a TRIPP Bates number, you just can't |
| 11:48 | 20 | read it, but it is there. |
| 11:48 | 21 | Q.  Okay.  So we're looking at Exhibit 23. |
| 11:48 | 22 | A.  Yes. |
| 11:48 | 23 | Q.  Okay.  Can you read that? |
| 11:48 | 24 | A.  Yes. |
| 11:48 | 25 | Q.  Okay.  It's a little bit better. |

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 11:50 | 1 | MR. GATES:  Oh, excuse me, yes.  This is |
| 11:50 | 2 | Exhibit 22.  Thank you. |
| 11:50 | 3 | Q.  So I'm giving you what's been marked as |
| 11:50 | 4 | Exhibit 22, which is a printout of a spreadsheet. |
| 11:50 | 5 | At the upper -- on the first page at the upper right, |
| 11:50 | 6 | it says:   "723 Model 3s affected." |
| 11:50 | 7 | Do you see that? |
| 11:50 | 8 | A.  Yes. |
| 11:50 | 9 | Q.  Okay.  So is this the spreadsheet and the |
| 11:50 | 10 | data that you gave to Linette Lopez? |
| 11:50 | 11 | A.  Yes. |
| 11:50 | 12 | Q.  And this was data that you took from Tesla's |
| 11:50 | 13 | systems; correct? |
| 11:50 | 14 | A.  Correct. |
| 11:50 | 15 | Q.  And this was information that you were not |
| 11:50 | 16 | authorized to share with anyone outside of Tesla; |
| 11:50 | 17 | right? |
| 11:50 | 18 | A.  Correct. |
| 11:50 | 19 | Q.  And this was your data that you believe |
| 11:50 | 20 | showed that there were 723 Model 3s that had |
| 11:50 | 21 | punctured or damaged cells in them; correct? |
| 11:51 | 22 | A.  Yes. |
| 11:51 | 23 | Q.  And again, you don't know whether or not |
| 11:51 | 24 | these vehicles were actually sold to consumers with |
| 11:51 | 25 | a punctured or damaged cell. |

| | | |
|---|---|---|
| 12:01 | 1 | Q.  So what was the attachment that you sent to |
| 12:01 | 2 | her? |
| 12:01 | 3 | A.  I can't say with a hundred percent |
| 12:01 | 4 | certainty what it was.  I can't remember. |
| 12:01 | 5 | Q.  Did you send her data about Model 3s? |
| 12:01 | 6 | A.  I would assume, but I can't make an |
| 12:01 | 7 | absolute. |
| 12:01 | 8 | Q.  Do you remember sending her data about the |
| 12:02 | 9 | number of Model 3s that were produced in 2018? |
| 12:02 | 10 | A.  I do. |
| 12:02 | 11 | Q.  Was that data that you got from Tesla? |
| 12:02 | 12 | A.  Yes. |
| 12:02 | 13 | Q.  And that was data that you were not |
| 12:02 | 14 | authorized to share with her. |
| 12:02 | 15 | A.  That is correct. |
| 12:02 | 16 | (Deposition Exhibit Number 26 was marked |
| 12:02 | 17 | for identification.) |
| 12:02 | 18 | Q.  BY MR. GATES:  All right.  This is Exhibit |
| 12:02 | 19 | 26. |
| 12:02 | 20 | A.  Thank you. |
| 12:02 | 21 | Q.  All right.  So Exhibit 26 is an e-mail that |
| 12:02 | 22 | you sent to Linda Lorel, otherwise known as Linette |
| 12:02 | 23 | Lopez, on June 5th, 2018, at 12:43 p.m.  The |
| 12:02 | 24 | "Subject" is:  "Valeo robot being removed and pic |
| 12:02 | 25 | of the query for all Model 3s." |

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 13:22 | 1 | A.  I believe that's correct. |
| 13:22 | 2 | (Deposition Exhibit Number 36 was marked |
| 13:23 | 3 | for identification.) |
| 13:23 | 4 | Q.  BY MR. GATES:  Okay.  I'll give you what's |
| 13:23 | 5 | been marked as Exhibit 36, which is an e-mail from |
| 13:23 | 6 | you to Linette Lopez on June 13th, 2018, at 10:55 |
| 13:23 | 7 | a.m.  Correct? |
| 13:23 | 8 | A.  Correct. |
| 13:23 | 9 | Q.  And she was asking about an engineer who |
| 13:23 | 10 | was laid off.  Do you remember who that was? |
| 13:23 | 11 | A.  Can you guide me to where? |
| 13:23 | 12 | Q.  Well, the subject line says:  "Is this the |
| 13:23 | 13 | engineer who was laid off?" |
| 13:23 | 14 | A.  Oh, thank you. |
| 13:23 | 15 | Could you just ask the question so I |
| 13:23 | 16 | understand again?  Because I just read it. |
| 13:23 | 17 | Q.  Yeah, sure.  I'm just trying to figure out |
| 13:23 | 18 | what engineer she was trying to understand whether |
| 13:23 | 19 | he was laid off. |
| 13:23 | 20 | A.  Ah, yes, okay.  It's regarding Charlie |
| 13:24 | 21 | Hill. |
| 13:24 | 22 | Q.  Hill. |
| 13:24 | 23 | Okay.  So -- |
| 13:24 | 24 | A.  Yes, down below, yes. |
| 13:24 | 25 | Q.  So Mr. Hill was laid off by Tesla? |

Martin Tripp-Confidential

13:24  1      A.  That is correct.

13:24  2      Q.  And Linette Lopez wanted to talk to him; is

13:24  3  that what this was about?

13:24  4      A.  That is correct.

13:24  5      Q.  And she was just verifying with you that he

13:24  6  had actually left the company.

13:24  7      A.  Yes.

13:24  8      Q.  And she also was asking about John

13:24  9  Sheridan; right?

13:24  10     A.  That is correct.

13:24  11     Q.  Did she ever indicate to you that she spoke

13:24  12  with John Sheridan?

13:24  13     A.  I don't remember.

13:24  14     Q.  At the top you say to her that you:  "[W]ill

13:24  15         talk to Rob, who is leaving for L.A."

13:24  16         Who is Rob?

13:24  17     A.  He would be Rob Duran, the process engineer

13:24  18  technician that I spoke to her about.

13:24  19     Q.  And did you give her his full name and

13:24  20  information, or were you going to talk to him

13:24  21  first, or what was this about?

13:25  22     A.  I had only given her his first name, and I

13:25  23  wanted to talk to him to see if he would be

13:25  24  interested in talking to her.

13:25  25     Q.  Okay.  So she's asking you to:  "[T]hink of

**Martin Tripp-Confidential**

| | | |
|---|---|---|
| 13:25 | 1 | anyone else upset enough to talk." |
| 13:25 | 2 | Do you see that in one of her e-mails |
| 13:25 | 3 | near the top? |
| 13:25 | 4 | A.  Yes. |
| 13:25 | 5 | Q.  Okay.  And so other than Rob, and who was |
| 13:25 | 6 | the other person that you mentioned? |
| 13:25 | 7 | A.  At the bottom, Charlie Hill. |
| 13:25 | 8 | Q.  Okay. |
| 13:25 | 9 | A.  I'm assuming that's who it is. |
| 13:25 | 10 | Q.  And John Sheridan, he was one of the people |
| 13:25 | 11 | that you said you spoke with about your concerns; |
| 13:25 | 12 | right? |
| 13:25 | 13 | A.  That is correct. |
| 13:25 | 14 | Q.  Was he a manager?  What was his position; |
| 13:25 | 15 | do you remember? |
| 13:25 | 16 | A.  I believe he was -- he -- he was going to |
| 13:25 | 17 | be a manager; I don't know if his title had been |
| 13:25 | 18 | changed. |
| 13:26 | 19 | (Deposition Exhibit Number 37 was marked |
| 13:26 | 20 | for identification.) |
| 13:26 | 21 | Q.  BY MR. GATES:  All right.  I'll give you |
| 13:26 | 22 | what's been marked as Exhibit 37. |
| 13:26 | 23 | So Exhibit 37 is an e-mail from you to |
| 13:26 | 24 | Linette Lopez dated June 15th, at 10:56 a.m.  Do |
| 13:26 | 25 | you see that? |

Martin Tripp-Confidential

1        DECLARATION UNDER PENALTY OF PERJURY

2            I, the undersigned, declare under

3   penalty of perjury, that I have read the foregoing

4   transcript of the testimony taken on September 4,

5   2019, in the above-referenced matter, and that the

6   foregoing is a true and correct transcript of my

7   testimony contained therein, except for the changes,

8   if any, noted on the attached errata sheet.

9

10          Executed this _____ day of _____,

11  20_____.

12

13               _____

14                   MARTIN TRIPP

15

16

17

18

19

20

21

22

23

24

25

MSJ_652

1            I CERTIFY that the foregoing deposition

2   was taken by me pursuant to Notice; that I was then

3   and there a Certified Reporter for the State of

4   Arizona, and by virtue thereof authorized to

5   administer an oath; that the witness before

6   testifying was duly sworn by me to testify to the

7   truth; that the questions propounded by counsel and

8   the answers of the witness thereto were taken down

9   by me in shorthand and thereafter transcribed under

10  my direction, and that the foregoing typewritten

11  pages contain a full, true, and accurate transcript

12  of all proceedings had upon the taking of said

13  deposition, all done to the best of my skill and

14  ability; that deposition review and signature was

15  requested.

16            I FURTHER CERTIFY that I am in no way

17  related to nor employed by any of the parties

18  hereto, nor am I in any way interested in the

19  outcome hereof.

20            DATED at Phoenix, Arizona, this 16th

21  day of September, 2019.

22

23            _____

24            David M. Lee, RMR, CRR
              Arizona Certificate No. 50391

25