# Exhibit 61
# Jeffrey Kinrich Deposition Excerpts

MSJ_677

**CONFIDENTIAL - Jeffrey H. Kinrich - 5/9/2019**

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TESLA, INC., A DELAWARE CORPORATION, | ) ) ) |
| PLAINTIFF, | ) CASE NO. ) 3:18-CV-00296-LRH-CBC |
| vs. | ) ) |
| MARTIN TRIPP, AN INDIVIDUAL, | ) ) |
| DEFENDANT. | ) ) |
| _____ | ) ) |
| MARTIN TRIPP, AN INDIVIDUAL, | ) ) |
| COUNTERCLAIMANT, | ) ) |
| TESLA, INC., A DELAWARE CORPORATION, | ) ) ) |
| COUNTERDEFENDANT. | ) |
| _____ | ) |

C O N F I D E N T I A L

(Pursuant to agreement of counsel, the following
transcript has been designated confidential)

EXPERT DEPOSITION OF JEFFREY H. KINRICH

TAKEN THURSDAY, MAY 9, 2019

LOS ANGELES, CALIFORNIA

Depo Dynamics, LLC
(888) 494-3370

Reported by Alejandria E. Kate, C.S.R. No. 11897
Job No. 102342

```
 1   perhaps it would be there's a natural link.
 2              Or perhaps another way to say it would
 3   just be that my understanding is that's an
 4   allowable remedy for the cause of action that's
 5   been asserted.
 6              I understand those may all be somewhat
 7   synonymous, I'm not sure if they're identical.
 8              On the third one, we can get into it when
 9   we get to it.  But I have attempted to rule out
10   other causes, but I do not ultimately conclude that
11   I have -- I know enough or can establish that
12   Mr. Tripp caused the amounts that resulted in the
13   stock price, though it's not inconsistent with
14   that.
15       Q.   All right.  So you have no opinion as to
16   whether or not the two Business Insider articles
17   harmed Tesla's stock price; is that correct, sir?
18       A.   I have no ultimate conclusion in that
19   subject.  I have opinions that address portions of
20   that, portions of the causation.
21              For example, I have attempted to rule out
22   certain other things that might, in fact, have been
23   causes before the analysis -- they were ruled out.
24              And so by stripping away other things, you
25   are left with something that the finder of fact
```

1  could conclude was causation, but I am not reaching
2  that ultimate conclusion on causation in that third
3  category.
4      Q.   Can you please turn to paragraph 11 of
5  your report on page 5.
6      A.   Yes.
7      Q.   All right.  The second sentence in
8  paragraph 11 states:
9               "Additionally, I have been asked
10             to discuss certain aspects of the harm
11             to Tesla caused by Plaintiff's
12             disclosure of confidential information
13             to the press."
14          Did I accurately state that sentence, sir?
15     A.   You did.
16     Q.   Are you aware that's the only time that
17 the word "cause" appears your report?
18     A.   No, but I'm happy to accept your
19 representation of that.
20     Q.   So I'm trying to reconcile that sentence
21 that I just read with the testimony that I just
22 received from you.
23          Are you stating in paragraph 11 that you
24 do have an opinion as to whether or not Tesla's
25 stock price -- strike that.

1  as the stock price, for example.
2      Q.   Would you consider your work in this case
3  an event study?
4      A.   It's in the same neighborhood, but it
5  is -- because I'm not concluding about causation, I
6  would say it probably isn't quite an event study,
7  but it certainly has some characteristics that are
8  related.
9      Q.   I will represent to you, Mr. Kinrich, that
10 the Tesla stock price closed at $332.10 on June 11.
11          Do you have any reason to dispute that?
12     A.   Since I don't know the answer, I have no
13 reason to dispute it no matter what number you gave
14 me.
15     Q.   And in this case, you used two specific
16 windows:  A window of the last 19 minutes of
17 trading on June 4 and the last 40 minutes of
18 trading on June 6th; is that correct?
19     A.   Yes.
20     Q.   If the stock price by June 11 was $332.10,
21 if you used a window of, say, June 4 to June 11,
22 then there would be no damages according to your
23 methodology; is that right?
24          MS. LIBEU:  Incomplete hypothetical.
25          You can answer.

```
 1                    C E R T I F I C A T E
 2
 3            I, ALEJANDRIA E. KATE, a certified court
 4   reporter in the State of California, do hereby certify:
 5            That the foregoing deposition of
 6   JEFFREY H. KINRICH was taken before me at the time and
 7   place therein set forth, at which time the witness was
 8   duly sworn by me;
 9            That the testimony of the witness and all
10   colloquy and objections made at the time of the
11   deposition were recorded stenographically by me and
12   thereafter transcribed, said transcript being a true
13   copy of my shorthand notes thereof;
14            I further certify I am neither financially
15    interested in the action nor a relative or employee
16    of any attorney or any of the parties.
17            In witness whereof, I have subscribed my name
18   and signature this date, May 17, 2019.
19
20                    _____
21                    ALEJANDRIA E. KATE
                      California Certificate No. 11897
22                    Illinois Certificate No. 084.004797
23
24
25
```