# Exhibit 16
# August 14, 2020 Hearing Transcript

```
 1              UNITED STATES DISTRICT COURT
                   DISTRICT OF NEVADA
 2    BEFORE THE HONORABLE CARLA L. BALDWIN, MAGISTRATE JUDGE
                      ---o0o---
 3

 4   Tesla, Inc.,               :  No. 3:18-cv-0296-MMD-CLB
                                :
 5              Plaintiff,      :
                                :  August 14, 2020
 6         -vs-                 :
                                :
 7   Martin Tripp,             :  United States District Court
                                :  400 S. Virginia Street
 8              Defendant.      :  Reno, Nevada  89501
                                :
 9   _____:

10

11

12                TRANSCRIPT OF MOTION HEARING

13   A P P E A R A N C E S:

14   FOR THE PLAINTIFF:         Alexander Spiro
                                 Jeanine Zalduendo
15                               Michael Lifrak
                                 Attorneys at Law
16

17   FOR THE DEFENDANT:         William Fischbach
                                 Robert Mitchell
18                               Attorneys at Law

19

     FOR THE DEFENDANT:         Martin Tripp
20

21   CLB/FTR:  081420@7:02am

22

     Proceedings recorded by digital recording produced by
23   computer-aided transcript

24

     Transcribed by:            KATHRYN M. FRENCH, RPR, CCR
25                               NEVADA LICENSE NO. 392
                                 CALIFORNIA LICENSE NO. 8536
```

1           Reno, Nevada, Friday, August 14, 2020, 7:02 a.m.

2                          ---oOo---

3

4           THE CLERK:  The United States District Court

5   for the District of Nevada is now in session.  The

6   Honorable Carla Baldwin presiding.

7           This is the date set for a video Status

8   Conference in case number 18:cv-0296-MMD-CLB, Tesla,

9   Inc. versus Martin Tripp.

10           Present by video on behalf of plaintiff,

11   Alexander Spiro, Jeanine Zalduendo and Michael Lifrak.

12           Present by video on behalf of defendant,

13   William Fischbach, Robert Mitchell.

14           And also present by video, Martin Tripp.

15           THE COURT:  Okay.  Good morning, everybody.

16   We are here for a Status Conference related to the

17   emergency motion that was filed by Tesla, I believe day

18   before yesterday.  Let me just go around the room.  I

19   think it would be helpful if I had everybody introduce

20   themselves.  I think this is the first time I've

21   actually seen some of you in person.

22           So, I'll go ahead with Tesla's attorneys.

23   If you could just go ahead and introduce yourselves for

24   the record, please.

25           MR. SPIRO:  Good morning, Your Honor.  This

1    is Alex Spiro.

2                    THE COURT:   Okay.   Thank you.

3                    MR. LIFRAK:   Good morning, Your Honor, this

4    is Michael Lifrak.

5                    UNIDENTIFIED SPEAKER:   (Unintelligible.)

6                    THE COURT:   Okay.   I think we have some

7    people on the call, so I'm going to make it very clear

8    to everybody that you need to put your phones on mute.

9    If we have extensive background information and noise,

10   we will be disconnecting the call.

11                   UNIDENTIFIED SPEAKER:   (Unintelligible.)

12                   THE COURT:   Okay.   I'm only going to give

13   one warning for that.   So everybody understands, if

14   you're on the call to listen to this hearing, if you

15   continue to interrupt, we will disconnect the call.

16                   So, let me go ahead and turn to Mr. Tripp's

17   attorneys.   I believe you're sitting in a conference

18   table.   If you could go ahead and introduce yourselves

19   please.

20                   MR. FISCHBACH:   Good morning, judge.

21   William Fischbach here.

22                   MR. MITCHELL:   And good morning, Your Honor.

23   Robert Mitchell.

24                   THE COURT:   Okay.

25                   And Mr. Tripp, is that you, sir?

```
1              MR. TRIPP:  Yes.
2              THE COURT:  Very nice to see you.  What time
3   is it where you're at, sir?
4              MR. TRIPP:  4:00 p.m.
5              THE COURT:  Okay.  Well, I tried to set this
6   at a time when it was somewhat of a decent hour for all
7   of us.  For those of us on the West Coast, it's a little
8   early.  But, I'm glad that we were able to get everybody
9   here together.
10             I'm going to go through several things
11  because, to be honest with you, Mr. Tripp, I think
12  there's been, um -- like they said in Cool Hand Luke,
13  "sort of a failure to communicate."  So, I think it's
14  going to be important for you to, sort of, understand
15  where we're at, um, for me to explain, sort of, the
16  process of how we got to where we are today, and to
17  go through several things because I'm not entirely
18  confident that you either were given the information or
19  that it was explained in a way that was understandable,
20  and so we're going to go through several things today.
21             Okay, sir?
22             MR. TRIPP:  Yes.  That is fine.
23             THE COURT:  Okay.
24             MR. TRIPP:  Appreciate that.
25             THE COURT:  I will also be asking you at
```

1    several points if you have any questions or

2    clarifications, as I will to Tesla's counsel.  But

3    just so you know, if you have any questions and I'm

4    speaking with anybody else, just hold on and I will

5    get to you for you to follow-up.

6            Okay.  Is there any questions about that,

7    sir?

8            MR. TRIPP:  Uh, no, there's not.

9            And I'm sorry.  I'm having to mute and

10   unmute, so it might take me a split second to respond.

11          THE COURT:  No.  I appreciate that.  Thank

12   you very much.

13          Okay.  So the first thing I want to talk

14   about is the Motion to Withdraw Counsel.  Sir, one thing

15   to understand is that you currently have what we call,

16   um, counsel of record in this case.

17          Now I know that there has been a disconnect

18   and an agreement, maybe, between you and your attorneys

19   that they will no longer be representing you, but for

20   purposes of the litigation, until the Court actually

21   enters an Order of Withdrawal, they remain your counsel.

22   And when you have an attorney, the Court speaks to your

23   lawyers and only your lawyers.  So, with that motion to

24   withdraw being on file, but it hasn't been granted yet,

25   technically, they are still your counsel of record.

1            Okay.  Is there somebody on the call that

2   has not muted their phone call because, again, if I have

3   to ask this again, we will be disconnecting the call.

4   Please mute your phones.

5            All right.  So with that being said, sir,

6   your attorney have filed a motion to withdraw at ECF

7   docket number 202.  I had ordered that in our Local

8   Rules you actually have the ability to object or to

9   file an opposition to that.  And I have to give you the

10  opportunity to do that, but I figured it might just make

11  sense to go ahead and cut to the chase and ask you on

12  the record if you have any objection to the withdrawal

13  of your counsel here today, sir?

14            MR. TRIPP:  I do not.

15            THE COURT:  Okay.

16            And let me turn to Mr. Spiro.  Do you have

17  any objection, at this time, sir, to the withdrawal of

18  Mr. Fischbach and Mr. Mitchell?

19            MR. SPIRO:  I do not, Your Honor.

20            THE COURT:  Okay.

21            So, I am going to grant the Motion to

22  Withdraw with the caveat that the attorney eyes only

23  documents will remain in their possession for the time

24  being.  I will address that at a later time.  But for

25  right now, until we have the issues around the

1  protective order resolved, I'm going to go ahead and

2  just keep the status quo as it relates to those

3  documents.

4           So Mr. Fischbach and Mr. Mitchell, you're

5  welcome to stay on the call, but if you would like to

6  disconnect, you can go ahead and do that.  You are

7  formally withdrawn from this case.

8           UNIDENTIFIED SPEAKER:  Thank you, judge.

9  I'd like to stay, if that's all right.

10          THE COURT:  Sure.  That sounds good to me.

11          All right.  So, moving on.  We have a lot of

12  issues going on in this case, obviously, and there's a

13  lot of ways that that could be dealt with.  You know, I

14  think that there's probably a lot of people expecting

15  that the Court's going to come out and be really upset

16  and be really angry and do a lot of things.  But, that's

17  just not how I roll.

18          So, what I would like to do before we get

19  into all of that is, like I said, I want to have a

20  discussion about some of how we got to where we're at

21  because, to be totally honest, Mr. Tripp, I have a

22  feeling that there is some, some genuine disconnect

23  and misunderstanding about some of the things that have

24  been going on in this case.  Um, I will tell you that

25  you have -- and as I know you know -- you have violated

1  the Protective Order that's in place in this case,

2  including an order that I entered on Monday.  I have

3  never seen anything like it.  I don't think any of my

4  colleagues have seen anything like it.  But, I'll be

5  honest with you.  I can tell from what I've seen of

6  your Twitter feed that a lot of it comes from a place

7  of frustration.  It appears to me that you're not

8  being listened to and, most importantly, you're not

9  being heard.  And so we're going to change that today.

10  Okay?

11          So, let me start out with explaining how we

12  got to where we're at with the Protective Order because

13  I do think that there is some confusion about that.  And

14  it might even be helpful for some of Tesla's lawyers

15  because they're new to this case as well.  They weren't

16  involved in that process.

17          So, after this case was filed in 2018 -- and

18  to clarify, too, I think you had mentioned something

19  about multiple judges being on your case.  There was a

20  judge assigned to your case originally, Judge Valerie

21  Cooke, and she retired.  She didn't withdraw.  She

22  retired.  And so I took over.

23          Judge Hicks, who was assigned to your case,

24  did recuse because there was the entry of some attorneys

25  in this case that he has a recusal issue with.  And so

```
 1   when he realized that they had joined the case, he

 2   recused from that -- for that purpose.  But, there

 3   hasn't been this mass exodus from your case on purpose

 4   or anything like that.  So, just to clarify that for

 5   you.  Okay?

 6            So when the case first was filed, obviously,

 7   it was assigned to Judge Cooke and then it got assigned

 8   to me when I took the bench.  And I had a Case

 9   Management Conference, which is really just a hearing

10   where I talk to the lawyers about how the case is

11   going to proceed through discovery, depositions, um,

12   document disclosures, and things like that.  And there

13   was an agreement that had been reached by your attorneys

14   at the time, as well as Tesla's.  And one of the primary

15   concerns at that point was because this case emanates

16   from the disclosure of confidential information.  And

17   then, apparently, there was some disclosure after the

18   case was filed about having that happen again.  And we

19   actually had a very lengthy discussion at a hearing

20   about what the terms of that Protective Order should

21   look like and how we were going to implement that.

22            I think it's important to understand -- I

23   think, you know, I know that I can --

24            (Unintelligible speaking.)

25            THE COURT:  Please mute your phones.
```

```
 1              Lisa, if that happens again, we're going to

 2   disconnect.

 3              THE CLERK:  Yes, Your Honor.

 4              THE COURT:  Okay.

 5              So, at any rate, back to this, Mr. Tripp,

 6   the reality was, is that we actually thought long and

 7   hard about this.  And a Protective Order is not just

 8   intended to protect Tesla.  There is information that

 9   would be disclosed, potentially, about your personal

10   information, your address, your social security number,

11   maybe financial information, if they asked for financial

12   information related to, for example, damages or things

13   of that nature.  And there is a protection that needs to

14   be in place for all parties because that information

15   should not be made publically available.  It shouldn't

16   be turned over to people that aren't part of this.

17              And of course in this case, obviously,

18   because Tesla has its corporate concerns, it, obviously,

19   seems to be more for their purpose, but the reality

20   is a Protective Order is there for all parties in the

21   litigation.  And so that order was -- once they had met

22   agreement and I signed it, it became my Order.  It was

23   no longer just an agreement between the attorneys and

24   yourself.  It was an Order of the Court.  And regardless

25   of whether your attorneys remain in this case or not, it
```

1  is still an Order of the Court.  If there is a request

2  to have that altered or change because you're unhappy

3  with what your counsel did in entering that Order, the

4  way to address that is to file a motion and ask for

5  that to be modified.  But, it doesn't matter if your

6  attorneys are involved or not because the Order is what

7  it is.  It is an Order of the Court.  It is no longer

8  just an agreement of the parties.

9           So do have any questions about that, sir, or

10 how that came to be?

11          MR. TRIPP:  No, I do not.

12          THE COURT:  Okay.

13          So when we had our hearing earlier this

14 week on the first emergency motion, I think there's

15 some confusion about what the Court did, partly because

16 you weren't here.  And again, you were represented by

17 counsel at that time.  I received a motion to withdraw,

18 I think, an hour before the hearing.  So, really, I

19 want to be clear.  The Court didn't really enter any

20 new orders.  No one did anything different.  All I did

21 was reaffirm that we had the Protective Order and that

22 there were provisions in that Protective Order that

23 prohibited the disclosure of certain information.  There

24 was no attempt to create new orders that were, you know,

25 intended to bypass your ability to talk to the Court

1    or give your response to what you had done.  To the

2    contrary, sir, I actually rejected the notion from

3    Tesla to just hold you in contempt and sanction you at

4    that point.  And I'm not sure if you're aware of that.

5            So, a couple of the tweets, I know, talked

6    about not getting due process, not being able to

7    respond.  And let me be very clear with you; that's

8    actually not correct.  What I did was reaffirm the

9    Protective Order and then I issued an Order to Show

10   Cause, where I specifically gave you a couple of weeks,

11   actually, to file exactly what you feel that you need

12   to file, which is a response, or an explanation of

13   why you shouldn't be held in contempt and why you

14   shouldn't be sanctioned.  And instead of doing that on

15   an emergency basis and only giving you a day or two to

16   respond, I gave you extra time to do that because I knew

17   you were getting rid of your attorneys, and that you

18   were either going to represent yourself or need to find

19   new attorneys, so it wouldn't be fair to make you do

20   that in only a couple of days.

21           I then gave Tesla an opportunity to respond.

22   But, I gave you the last word.  You actually have the

23   ability to file a reply brief to whatever they file.

24   And then I also ordered a hearing, where we were going

25   to have witnesses and have evidence taken before

1   anything was decided about what would happen.

2            The only reason I mention the issues of

3   case-ending sanctions, which would be dismissals of

4   counterclaims and things like that, was because it's

5   important that you're on notice that all of the

6   sanctions that are available could be so significant.

7   If I don't put you on notice of that, then those

8   sanctions can't be imposed and we would have to start

9   all over and do it all over again.  So for due process

10  purposes, just so you're aware, my purpose was to make

11  sure that you were on notice of all of the things that

12  would be considered, and that you would have the full

13  and fair opportunity to respond to that.

14            So, again, I think there is some lack

15  of clarity and maybe some confusion of what happened

16  and, as a result of that, I think it upset you quite

17  significantly.  So, I wanted to give you an opportunity

18  to understand that because, again, I'm not sure what

19  was communicated to you and, more importantly, I'm

20  just not sure what all you understood or didn't, maybe,

21  understand from all of that.

22            So, does that help clarify what happened

23  earlier this week, sir?

24            MR. TRIPP:  It certainly does, Your Honor.

25  And I appreciate it.  It makes much more sense than it

1  did hours ago.

2       THE COURT:  Okay.  All right.  Well, I'm

3  glad to hear that.

4       So, the only new thing that I did enter on

5  that Order was that I asked that you not contact Tesla's

6  attorneys.  And I did that for two reasons.  First

7  because the attorneys felt that the communications they

8  were receiving were threatening.  Now whether you

9  intended them to be threatening or not, or whether

10  that's how you think they were intend -- or read, it's

11  a little irrelevant in the sense that that's how they

12  felt when they received them.  So, to make sure that no

13  one felt that way, I put that Order in place.

14       But, the second thing that I think is

15  important for you to understand is, again, because you

16  were represented by counsel, the Rules of Professional

17  Conduct for attorneys in Nevada -- which these

18  attorneys, even if they're not from Nevada are bound

19  by in this case -- prohibits them from talking to a

20  represented party.  So, if they were to have to talked

21  to you, it would have violated their professional ethics

22  responsibilities.

23       So, to ensure that they weren't put in an

24  awkward spot, where they might be violating a rule by

25  talking to you when you're, technically, represented, my

1  ruling was just simply not to talk to you and you not

2  make contact with them until I ruled on the Motion to

3  Withdraw.

4         So, that was the only real alternate

5  decision -- or new part of any kind of Order that was

6  entered on Monday was, really, that.  And then, of

7  course, I entered the Order to Show Cause with the

8  time frames for responses and setting the evidentiary

9  hearing.

10         But in terms of the Protective Order and

11  your ability to respond and to be able to say your side

12  of the story, all of that was all available.  And like I

13  said, I think there was some confusion about that.  And

14  so I'm not sure how that happened, but I think that's

15  what fueled some of the fire over the last couple of

16  days.  So, I wanted to make sure that we clarified that

17  for you.  Okay, sir?

18         So do you have any questions about, about

19  any of that or anything that I've just said?

20         MR. TRIPP:  No, I do not.  Thank you.

21         THE COURT:  Okay.  Thank you so much.

22         Now, let's get to the skinny; why we're here

23  today.  So we're here today because, obviously, um, I

24  think fairly clearly, and as I've already stated, you

25  have decided to disclose information that was protected

1    by the Protective Order in this case in violation of my

2    Order and, again, of my Order of Monday.  And you've

3    chosen to do that with, quite clearly, knowing the terms

4    of those orders and recognizing that by doing so, that

5    you may very likely will be sanctioned for that.

6            But, I think it's important to understand

7    that everybody here is upset.  Tesla is upset.  Tesla's

8    attorneys are upset.  You are, clearly, upset.  I could

9    be upset, but, to be honest with you, I've had so many

10   people say some of the things that said on Twitter about

11   me before.  It really doesn't affect me too much, to be

12   honest with you.  I've had so many people tell me to

13   F' off or shove something in a dark place that, really,

14   it doesn't affect me too much anymore.  So, no worries

15   for me.  But I will get to the issues of how that

16   impacts, legally, what's going on in this case.

17           But, I think it's important for you to

18   understand from Tesla's perspective, that the reason

19   why they're so upset, it's not just the disclosure of

20   the documents.  I think their attorneys are upset

21   because the fact that you took to Twitter and put their

22   names and their e-mails and their personal information,

23   in terms of where they work, online, resulted in a lot

24   of phone calls and e-mails.  And to be honest with you,

25   it puts people's safety at risk.  Even if you don't

1   intend to do anything bad, you don't know what the

2   followers that you have on Twitter might do.  And in a

3   world where we have people showing up at people's doors

4   and shooting and doing all of these things, I think

5   they're quite upset about that.  And there was a

6   reference to that at our hearing earlier this week,

7   about the phone calls and the communications that they

8   were getting because that information was put on

9   Twitter.

10          And I know, from what you've said, that the

11  reason you're disclosing this is because you want people

12  to be safe and to know what they're doing when they're

13  buying a Tesla, I have to think that you may not be,

14  um, quite aware of the safety concerns that have been

15  impacted just by what you've done.  And I think it's

16  important for you to understand why they're so upset

17  because it's not just their information.  It's also the

18  safety issues that have now been put in place.

19          Now, like I said, I can tell that you're

20  upset and I can tell that you've been through a lot.

21  And your frustration doesn't just emanate from the last

22  week.  It emanates all the way from the time that you

23  were an employee with Tesla.  And I -- you know, I get

24  it.  You're upset.  You feel wronged.  You feel, again,

25  I think -- and I'm putting words in your mouth maybe,

1    but just go with me on this.  I get the impression that

2    no one has really been listening to you; that you aren't

3    being heard; that your clients -- or your attorneys

4    aren't really listening to what you want and how you

5    want this case to proceed.  And as a result of that, I

6    don't know what happened over the weekend that finally

7    blew up, but something blew up.

8              And so I want to take an approach with this

9    case a little different than what most judges would do.

10   I think most judges would simply be sitting here and

11   talking about what kind of sanctions and what we're

12   going to do and how we're going to make all this go

13   away.  But, I want to do something a little different

14   today.  And I'm going to ask everybody to go with me on

15   this.

16             I think it makes sense for us to have a

17   little impromptu settlement conference right now and I'm

18   going to ask everybody if they're okay with me meeting

19   with you privately, and meeting with Tesla privately,

20   to discuss whether or not we should setup a settlement

21   conference to, at the very minimum, to try to resolve

22   the issues that are going on right now with the

23   emergency Protective Order issues.

24             So, do you have any objection to that, sir?

25             MR. TRIPP:  No, I don't.

```
 1                    THE COURT:  Okay.

 2                    Mr. Spiro.

 3                    MR. SPIRO:  No, Your Honor.  No objection.

 4                    THE COURT:  Okay.

 5                    So, what we're going to do is we're going

 6    to go off the record and I'm going to move everybody on

 7    will Zoom call into separate Zoom rooms, and I'm going

 8    to talk to you:  And I'll talk to you privately.  And

 9    we're going to talk about whether or not we can, at

10    least, reach some sort of settlement or agreement on

11    what the status quo is going to be in this case, or

12    whether or not we can reach even a settlement of the

13    case, potentially.  Maybe not today, but maybe setup a

14    time that we can do that.

15                    So the way that this normally works,

16    Mr. Tripp, is I normally start with the plaintiffs in

17    a case.  And in this case, that is Tesla.  So, I want

18    you just to be patient with me.  I'm going to spend a

19    little time with them, but then I'm going to spend some

20    time with you, but know that I'm going to hear you.  I'm

21    going to listen to you.  And I'm going to take some time

22    today to try to figure out how we can make this right.

23                    Do you have any questions about that?

24                    MR. TRIPP:  No.  I appreciate that,

25    Your Honor.
```

```
 1              THE COURT:  Okay.  Thank you all so much.
 2              So, with that, we're going to go off the
 3    record and we're going to move everybody into their Zoom
 4    rooms, so just be patient with me and I'll be with you
 5    in just a moment.
 6              Mr. Fischbach and Mr. Mitchell, do you want
 7    to stick around for that or would you like to be in your
 8    own room or how do you want to roll?
 9              UNIDENTIFIED SPEAKER:  No, judge, I think
10    it's appropriate for us to go off the call at this
11    point.  If for any reason the Court needs to reach us,
12    both Mr. Mitchell and I are here in our office.
13              THE COURT:  Okay.  Well, I want to,
14    first off, before we get off the phone -- and I know,
15    Mr. Tripp, you have some disagreements with your
16    counsel, and I have said this on the record before,
17    but I want to tell Mr. Fischbach and Mr. Mitchell, you
18    have been consummate professionals in this case.  I very
19    much enjoyed having you practice in front of me.  Um,
20    thank you so much for all of what you've done.  You've
21    made this case quite enjoyable in terms of -- you know,
22    normally, attorneys, especially in a case like this and
23    this complexity, can be very difficult with one another.
24    And so thank you very much for the professionalism that
25    you showed while you were working on this case.  And
```

1    with that, I wish you the best.  And if you're ever back

2    in Reno, I hope you appear in front of me again.

3                    And so with that, let's get started.

4                    (Off the record.)

5                    THE CLERK:  In the matter of Tesla, Inc.

6    versus Martin Tripp, court is again in session.

7                    THE COURT:  Okay.  Well, I guess it's still

8    good evening, maybe good afternoon for some of you.

9    It's still morning here for me.  But, I am pleased to

10   announce that we did have some informal settlement

11   discussions about the ongoing emergency motions that

12   have been filed on behalf of Tesla related to the

13   violations of the Protective Order in this case, and

14   there has been an agreement that has been reached.  So

15   what we're going to do at this point is we're going to

16   put some material terms on the record related to that

17   conclusion.

18                    So, Mr. Tripp, for the first part, what I

19   need to do is I need to verify on the record some

20   different factual contentions.

21                    So, Mr. Tripp, it's alleged that starting

22   over the weekend, I believe it was on August 7, that

23   you did begin uploading information that was, um,

24   subject to a confidential Protective Order, and that you

25   did that knowingly and willfully.

```
 1                    Is that correct, sir?
 2                    MR. TRIPP:  Your Honor, that is correct.
 3                    THE COURT:  Okay.
 4                    And, that you continued to do that even
 5     after I entered a second Order earlier this week,
 6     where you continued to willfully and knowingly upload
 7     information that you had been ordered not to upload
 8     related to this litigation.
 9                    Is that correct, sir.
10                    MR. TRIPP:  That is correct.
11                    THE COURT:  And in light of that, you are
12     willing to, um, incur a sanction, um, from the Court
13     related to that, um, in terms of your knowing and
14     willful violation of the Court's Protective Order and
15     its subsequent Order related to the confidentiality of
16     certain documents.
17                    Is that correct, sir?
18                    MR. TRIPP:  That is correct.
19                    THE COURT:  Okay.  And so the -- this is
20     what you've agreed to in the follows:  You've agreed
21     to pay $25,000 in attorneys' fees to Tesla for the cost
22     that they had to incur to, um, either -- not only in
23     communicating with you and your counsel to have these
24     documents removed, but also in having to file motions,
25     as well as appear for hearings related to these
```

1    violations of the Protective Order and the Court's

2    subsequent Order.

3             Is that correct, sir?

4             MR. TRIPP:  That is correct.

5             THE COURT:  And that you will pay that money

6    within 60 days?

7             MR. TRIPP:  I will try.

8             THE COURT:  Okay.  And if you're unable to

9    do that, you will contact Mr. Spiro and we will discuss

10   how we can, uh, address that issue in 60 days time.

11            Is that correct?

12            MR. TRIPP:  That is correct.

13            THE COURT:  Okay.

14            You've also agreed that you will not

15   re-upload or re-post any of this information through

16   any means or mechanism; through the internet, through

17   e-mails, or through any other communications.  Sir,

18   that would also include printing out copies and mailing

19   it to anybody.

20            So, in other words, you're agreeing not to

21   disclose anything that is subject to the confidential

22   Protective Order in this case.  And should you do that

23   or become -- anybody becomes aware of that, you will

24   incur a $500 per day violation for, again, violating the

25   Court's protective Order, as well as violating the terms

1    of this particular settlement agreement.

2              Do you understand that, sir?

3              MR. TRIPP:  Yes, I do.

4              THE COURT:  But you will also take all

5    efforts to remove and take down any links, any postings,

6    or any other means or mechanisms that third parties

7    can access these documents, uh, including whether

8    it's on any type of Cloud based storage, Google Drive,

9    PlainSite, OneDrive, that you will -- Dropbox -- you

10   will remove any links on Facebook, Twitter or YouTube.

11   Um, and you will also not e-mail or otherwise make

12   these things available in any other way.  And if there's

13   any sites that I did not mention, that you will take

14   every effort to remove anything that has been improperly

15   uploaded at this point.

16             Do you agree to that, sir?

17             MR. TRIPP:  With the exception of PlainSite,

18   because I have no ability to upload or download anything

19   to or from there, I agree.

20             THE COURT:  Okay.  Well, to -- what I want

21   to make clear is that even though I might be mentioning

22   specific websites, it is not limited to those websites.

23   It's any website, or any other location where you have

24   uploaded these documents, that you're going to take

25   every effort to take them down.  So, that's really more

1    of the intent of what I'm saying here.

2              Do you understand that?

3              MR. TRIPP:  Yes, Your Honor.  If I uploaded

4    those documents, I will have them removed.

5              THE COURT:  Okay.  All right.

6              MR. TRIPP:  I will remove them.

7              THE COURT:  All right.  Thank you.

8              And, that within seven days, you will file a

9    Notice of Compliance with the Court and you will detail

10   all of the steps that you took to remove the documents

11   from the different websites, correct?

12             MR. TRIPP:  That is correct.

13             THE COURT:  Okay.

14             And, also that you agree that you will

15   not make anymore reference or description to anybody,

16   whether it be in person, whether it be over the phone,

17   whether it be an e-mail, or any other website, about

18   "the attorney eyes only" documents that you have

19   previously described, also in violation of the

20   Protective Order.

21             You agree to do that, correct, sir?

22             MR. TRIPP:  That's correct.  I agree.

23             THE COURT:  Okay.

24             All right.  And again, that would also be

25   subject to that $500 a day violation.  So if you go on

1    Twitter and you print a description about a document,

2    that, too, will trigger that $500.

3              Do you understand that, sir?

4              MR. TRIPP:  I do.

5              THE COURT:  Okay.

6              All right.  Do you have any questions or is

7    there anything about the terms that I've just put on the

8    record that are inaccurate or that I need to correct,

9    sir?

10             MR. TRIPP:  No.

11             THE COURT:  Mr. Spiro?

12             Oh.  You're on mute.

13             MR. SPIRO:  Yes, Your Honor.  Those terms,

14   uh, in terms of sanctions for the finding are, um,

15   permissible on our side.  And we thank the Court for

16   it's time this morning.

17             The only other thing I would just note for

18   the record because there was, uh, a moment of exchange

19   about it and I just want to make it clear, is that, um,

20   Mr. Tripp currently, as far as we understand, has that

21   amount of funds in his GoFundMe page, and we just wanted

22   to, since we've been discussing it this morning, just

23   put that on the record that we're aware of that fact.

24             THE COURT:  Uh, Mr. Tripp has indicated to

25   me that those funds are no longer available.  Um, but --

```
 1    so those funds have been paid out in other ways.  Um,
 2    but the purpose of the 60-day time frame is that if
 3    there is anymore money that is taken into that account,
 4    or if there is any financier behind his litigation
 5    costs, that he will make that payment to you.
 6              Okay?
 7              MR. SPIRO:  I understand the Court.
 8              THE COURT:  Okay.  All right.  Perfect.
 9              MR. SPIRO:  Thank you.
10              THE COURT:  Mr. Tripp, are there any other
11    questions or concerns or things that you would like to
12    place on the record, sir, before we conclude here today?
13              MR. TRIPP:  No, Your Honor.  I really
14    appreciate your time.
15              THE COURT:  Okay.  Thank you so much, sir.
16              Mr. Spiro, anything on behalf of the
17    plaintiffs?
18              MR. SPIRO:  No, Your Honor.
19              THE COURT:  Okay.
20              I want to thank everybody today for their
21    professionalism and for working with me and taking a
22    little bit of an unorthodox approach to address this.  I
23    appreciate all your time.  I very much appreciated being
24    able to speak with all of you.
25              And with that, motion number 207 is granted
```

1  based on the terms that I've already placed on the

2  record.  I do make a finding that Mr. Tripp did

3  willfully and knowingly violate the terms of the Court's

4  Protective Order, as well as its subsequent Order on

5  Tuesday, I believe it was August 11th, um, of this year;

6  and that the sanctions that are being imposed pursuant

7  to this agreement are appropriate and sufficient under

8  Rule 37(b)(2), as well as the inherent power of the

9  Court to enforce its own orders.  And, therefore, that

10  will be the sanction in this case.

11          And as I've already indicated, should there

12  be any more violations, the sanction will result in a

13  $500 per-day violation for any additional violations

14  of the Court's Protective Order.

15          With that, we will be in recess.

16          Thank you all so much and have a wonderful

17  day.

18          UNIDENTIFIED SPEAKER:  Thank you.

19          UNIDENTIFIED SPEAKER:  Thank you.

20

21      (Court Adjourned.)

22

23

24

25

1                        -o0o-

2

3        I certify that the foregoing is a correct
         transcript from the record of proceedings
4        in the above-entitled matter.

5    \s\ Kathryn M. French            August 28, 2020

6

     KATHRYN M. FRENCH, RPR, CCR                DATE
7    Official Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25