# Exhibit 17
# Litigation Funding Agreement

# LITIGATION FUNDING AGREEMENT

This Litigation Funding Agreement (the "Agreement"), effective November 16, 2018, is by and between Martin Tripp ("Claimant") and The Funicular Fund, LP ("Funder"), a Delaware limited partnership.

Claimant wishes to obtain, and Funder desires to provide, the financial support required to mount a vigorous legal defense and prosecute counterclaims against Tesla, Inc. ("Tesla") in the matter of Tesla, Inc. v. Martin Tripp, captioned 3:18-cv-00296-LRH-CBC in the United States District Court for the District of Nevada (the "Action").

Funder acknowledges that the financing provided pursuant to this Agreement is non-recourse; Funder shall be entitled to no recovery of attorney fees and expenses incurred if there are no Proceeds in the Action. Claimant acknowledges that Funder's obligations are limited to the financing provided pursuant to this Agreement; Funder shall have no liability for any attorney fees and expenses in excess thereof, adverse costs, damages, or other charges arising through the Action or otherwise.

Now, therefore, it is agreed as follows:

## 1.0 Definitions

*Action*: The lawsuit filed by Tesla against Claimant and counterclaims brought by Claimant against Tesla in the matter of Tesla, Inc. v. Martin Tripp, captioned 3:18-cv-00296-LRH-CBC in the United States District Court for the District of Nevada, including any refiling, counterclaim, appeal, settlement, enforcement action, arbitration, or other action or process related to the lawsuit, whether primary, ancillary, or parallel.

*Award*: The total monetary amount owed to Claimant reduced, but not below zero, by the total monetary amount owed by Claimant to Tesla, if any, on account of or as a direct or indirect result of the Action, whether by negotiation, arbitration, mediation, lawsuit, judgment, settlement, or otherwise. For the avoidance of doubt, "Award" includes both cash and the monetary value of non-cash assets at the time the Award is paid, and it excludes the value of injunctive, declaratory, or other non-monetary relief.

*Claimant*: Martin Tripp.

*Closing*: The date, not to exceed 10 business days, following the execution of this Agreement upon which the Investment Amount is delivered by Funder to the Trust Account.

*Common Interest Agreement*: the Common Interest and Confidentiality Agreement by and among Claimant, Funder, and Litigation Counsel executed as of September 24, 2018.

*Common Interest Material*: Common Interest Material shall have the definition agreed in the Common Interest Agreement. It includes, without limitation, any discussion, evaluation, negotiation, and any other communication and exchanges of information relating to the Action in any way, whether written or oral, between or among the Claimant, Litigation Counsel, and/or Funder, provided that such communication would be protected by attorney-client privilege between Litigation Counsel and the Claimant, work-product doctrine, or other discovery protection if not disclosed to a third party lacking a common legal interest.

*Conclusion of the Action*: The final resolution of the Action, whether by settlement, the entry of a non-appealable final judgment against the Claimant, or the enforcement of a final, non-appealable judgment in favor of the Claimant.

*Confidential Information*: Confidential Information shall have the definition and exclusions as set forth in the Common Interest Agreement. Confidential Information shall also include, without limitation: (i) the Common Interest Material; (ii) discussions and negotiations related to this Agreement, including drafts of this Agreement; (iii) to the extent not already covered as Common Interest Material, information relating to the Claim, including: (a) the information, of any type, relevant to understanding the Claim; (b) Litigation Counsel's or Funder's strategies, tactics, analyses, or expectations regarding the Action or Award; and (c) any professional work product relating to the Action or the Award, whether prepared for the Claimant, Litigation Counsel, or the Funder.

Notwithstanding the foregoing, information is not Confidential Information that (a) was or becomes generally available to the public other than by breach of this Agreement; (b) was, as documented by the written records of the receiving party, known by the receiving party at the time of disclosure to it or was developed by the receiving party or its representatives without using Confidential Information or information derived from it; (c) was disclosed to the receiving party in good faith by a third party who has an independent right to such subject matter and information; or (d) is required to be disclosed by law.

*Costs*: The expenses incurred by or on behalf of the Claimant for conducting the Action and complying with the terms of this Agreement which include, without limitation, professional fees, whether for attorneys, advisors, experts, or witnesses, and procedural fees relating to court, arbitration, or other process, including filing and arbitrator fees, provided that the amounts in each case are approved by Litigation Counsel. Litigation Counsel shall provide Claimant and Funder with periodic invoices detailing the Costs incurred.

*Funder*: The Funicular Fund, LP, a Delaware limited partnership.

*Investment Amount*: $150,000.

*Investment Factor*: Upon the Conclusion of the Action occurring within the first year following the Closing, ten percent (10%). Thereafter, the product of (i) the total number of days since closing divided by 365 and (ii) ten percent (10%).

*Litigation Counsel*: Tiffany & Bosco, P.A., an Arizona professional corporation, its affiliates, and any successor or supplementary counsel retained by the Claimant to conduct the Action and advise on this Agreement's terms, amendments, and assignments, on settlement proposals and on privilege issues. Such counsel has and shall have no direct or indirect economic relationship with the Funder prior to the Conclusion of the Action.

*Litigation Proceeds Right*: The right to receive Proceeds according to the Waterfall Schedule granted by Claimant to Funder by the terms of this Agreement.

*Litigation Proceeds Right Certificate*: A document substantially in the form of <u>Exhibit A</u> (i) reflecting ownership of the Litigation Proceeds Right; (ii) bearing a legend stating that the certificate and the right it represents may not be transferred, except among affiliates of Funder (as set forth in Section 2.2.7.2), without the express, written consent of the Claimant and then only if the transferee becomes a party to this Agreement; and (iii) certifying the existence of a perfected senior security interest in the Trust Account and in the Action.

*Proceeds*: Any and all value received by or for the benefit of Claimant to satisfy the Award, whether the Award results from settlement or other negotiated agreement or a judgment, order, or other determination by an independent party, such as a court or arbitrator.

*Trust Account*: The Interest on Lawyer Trust Account (IOLTA) maintained by Litigation Counsel for the benefit of Claimant, which has a balance of $13,785.80 as of the date of this Agreement. Upon presentment of periodic invoices to Claimant and Funder, and with the approval of Funder, which may not be unreasonably withheld, Litigation Counsel shall be authorized to release funds from the Trust Account to satisfy Costs, including Litigation Counsel's hourly attorney fees and approved third-party expenses.

*Unused Investment*: The difference between the total amounts deposited into the Trust Account prior to any Award, including the Investment Amount and amounts previously advanced by Claimant, on the one hand, and the Costs, not including any contingent fee, invoiced by Litigation Counsel or approved third parties, on the other. Upon Conclusion of the Action, and prior to the distribution of the Proceeds, if any, Litigation Counsel shall return to Funder the Unused Investment, if any, from the Trust Account.

*Waterfall Schedule*: The schedule set forth below establishing priority in right of payment with respect to the Proceeds. The Proceeds shall be paid into the Trust account and distributed promptly among Claimant, Litigation Counsel, and Funder according to the following schedule:

> *First*, to Funder, the amount equal to the product of the Investment Amount and the Investment Factor;
> *Second*, to Funder, the lesser of (i) the Investment Amount and (ii) the amount equal to the Investment Amount less the Unused Investment;
> *Third*, to Litigation Counsel, the amount, if any, of Costs incurred in excess of the balance of the Trust Account;
> *Fourth, in the event that total Proceeds are in excess of $300,000,* to GoFundMe donors, in proportion to the amounts donated;
> *Thereafter*, the remaining Proceeds to be distributed twenty-five percent (25%) to Litigation Counsel, as a contingent fee, fifty percent (50%) to Claimant, and twenty-five percent (25%) to Funder.

**2.0 Representations and Warranties**

2.1 Claimant's Representations and Warranties

2.1.1. Common Interest: Claimant has received Litigation Counsel's advice regarding the common-interest doctrine.

2.1.2 Full Disclosure: Claimant represents that, as of the date of this Agreement, Claimant has provided Funder with all material information relating to the Action, excluding information protected solely by the attorney-client privilege.

2.1.3. Fully Informed: Claimant represents that it has reviewed the disclosures provided by Funder, and Claimant does not object to the conflicts or potential conflicts described therein.

2.1.4 No Impairment:

2.1.4.1 Other than as already disclosed to Funder, Claimant has not taken any action (including executing documents) or failed to take any action, which (a) would materially and adversely affect the Action, or (b) would give any person or entity other than Funder or Litigation Counsel an interest in the Award or the Proceeds.

2.1.4.2 Claimant agrees and undertakes that (a) it will not institute any action, suit, or arbitration separate from the Action arising from the same facts, circumstances or law giving rise to the Action; (b) it will not

3

take any action or fail to take any action reasonably likely to have a materially adverse impact on the Action or Funder's share of any Proceeds; and (c) it will not take any action or fail to take any action that would give any person or entity an interest in the Action, Award, or potential Proceeds except as otherwise expressly permitted by this Agreement.

2.1.5 Solvency: Claimant has no bankruptcy proceedings outstanding or written notice of potential proceedings against it.

2.1.6 Advice on this Agreement: Claimant represents that Claimant has had the opportunity to seek independent counsel, and has been advised by Litigation Counsel, before entering into this Agreement.

2.1.7 Completeness and Accuracy: Claimant represents that as of the date of this Agreement, (a) all material information it and Litigation Counsel provided to Funder is true and correct, and (b) all its representations and warranties in this Agreement are true and correct.

2.1.8. Fully Informed: Claimant has been afforded access to sufficient information and the opportunity to ask all questions deemed necessary by it to evaluate the arrangements contemplated by this Agreement and has thoroughly reviewed all information provided to it.

2.2 Funder's Representations

2.2.1. Assistance: Funder may provide strategic and analytical assistance, as and when requested by Claimant or Litigation Counsel, which may include document review, financial analysis, and commentary on strategy and regulatory matters deriving from Funder's experience.

2.2.2. Fully Informed: Funder has been afforded access to sufficient information and the opportunity to ask all questions deemed necessary by it to evaluate the investment and has thoroughly reviewed all information about the Action provided to it.

2.2.3. Each person signing this document on behalf of Funder represents that: (i) Funder was not formed for the specific purpose of making the investment; (ii) the purchase of the Litigation Proceed Right is a permissible investment in accordance with its limited partnership agreement; (iii) the purchase of the Litigation Proceed Right has been duly authorized and approved; and (iv) the person signing this document and all other documents relating to this Agreement has been duly authorized to do so.

2.2.4. Funder represents and warrants that it is an "accredited investor" as defined under SEC Regulation D and has knowledge and experience in business and financial matters to such a degree as to enable it to evaluate the merits and risks of the investment. In relation to its income and/or net worth, Funder is able to bear the economic risk of this investment, including the risk of loss of all or part of the investment and the probable inability to sell or transfer the Litigation Proceed Right. Moreover, Funder has financial means that are adequate to provide for its current needs and contingencies and to sustain a complete loss of the investment, and it has no need for liquidity.

2.2.5 No Conflicts of Interest:

2.2.5.1 Funder has not, as of the date of this Agreement: (a) paid a referral fee to Litigation Counsel in connection with the Action, the Claimant, or this Agreement; (b) entered any transaction with Litigation Counsel that has or would make Litigation Counsel a part owner of Funder; (c) contracted with any other party or potential party to the Action; (d) engaged in negotiations with any other party or potential party to the Action; or (e) entered into any relationship with Claimant's Litigation Counsel that potentially conflicts with Claimant's interests regarding the Action.

2.2.5.2 Funder will not (a) pay a referral fee to Litigation Counsel in connection with the Action, Claimant, or this Agreement; (b) transfer or agree to transfer any ownership in Funder to Litigation Counsel; or (c) engage in any other activity establishing an economic relationship between Funder and Litigation Counsel. This provision shall survive the termination of this Agreement if the Agreement is terminated prior to the Conclusion of the Action.

2.2.6 No Waiver of Privilege:

2.2.6.1 As of the date of this Agreement, Funder has not disclosed any Common Interest Material to anyone without the prior written consent of the Claimant; and

2.2.6.2 Notwithstanding Subsection 4.2, Funder shall not disclose any Common Interest Material to anyone except its affiliates and representatives without prior written consent of the Claimant. For the avoidance of doubt, this prohibition does not prevent disclosure to the Funder's limited partners and/or any party to whom the Funder wishes to transfer part or all of its interest in the Action, provided Funder shall enter into an agreement with such recipients to preserve the confidentiality of the Common Interest Material on terms no less restrictive than those set forth in this Agreement for Confidential Information. This provision shall survive the termination of this Agreement and remain in effect until the Conclusion of the Action.

2.2.7 Secondary Market:

2.2.7.1 Funder represents that as of the date of this Agreement it has not sold or entered negotiations to sell part or all of its Litigation Proceeds Right to anyone.

2.2.7.2 Funder reserves the right to transfer its Litigation Proceeds Rights under this Agreement among its affiliates and limited partners (e.g., between accounts managed by the Funder's General Partner) in its sole and absolute discretion.

2.2.7.3 Funder shall not not transfer its interests under this Agreement to any third party without the express, written approval of Claimant.

**3.0 Additional Covenants**

3.1 Covenants of Claimant:

3.1.1 Representations Remain True: Claimant covenants that all of its representations and warranties shall continue to be true throughout the term of this Agreement. If any representation or warranty of Claimant ceases to remain true, Claimant will notify Funder in writing within five (5) business days.

3.1.2 Duty to Cooperate: Claimant covenants to cooperate in good faith in the prosecution of the Action until Conclusion of the Action. Specifically, Claimant will promptly and fully assist Litigation Counsel as reasonably necessary to conduct and conclude the Action. For the avoidance of doubt, such assistance includes all actions any Claimant may reasonably expect to undertake, including submitting to examination, verifying statements under oath, and appearing at any proceedings. The examples in the preceding sentence are illustrative and do not limit Claimant's duty to cooperate in any way.

3.1.3 Duty to Inform: Claimant agrees and undertakes to keep the Funder fully informed, or to cause Litigation Counsel to keep the Funder fully informed, about the progress of the Action. Specifically, (a) Non-Privileged Information: Claimant hereby irrevocably instructs Litigation Counsel, and if further instructions are needed, undertakes to instruct Litigation Counsel, to provide Funder with all material non-privileged information as soon as practicable, regardless of the information's source, confidentiality,

or form, unless the Funder already possesses or controls such information; (b) Attorney Work Product: Acknowledging that this Agreement contains provisions requiring the parties to protect the confidentiality of any Confidential Information disclosed to it and that such information includes attorney work product, Claimant hereby irrevocably instructs Litigation Counsel, and if further instructions are needed, undertakes to instruct Litigation Counsel to provide Funder with all material attorney work product relating to the Action as soon as practicable; (c) Attorney–Client Privileged Information: Relying on the parties' agreement that they share a common legal interest and that communicating attorney–client privileged information to the Funder in the furtherance of that interest does not waive the privilege, Claimant undertakes to share such information, provided that neither Claimant nor Litigation Counsel shall disclose attorney–client protected information to Funder unless Claimant has discussed with Litigation Counsel the information to be shared, the reason for the sharing, and the probable consequences if the sharing is ultimately held to waive the privilege.

3.1.4 No Change in Litigation Counsel Without Funder Notice: Claimant agrees and undertakes that it will not engage a new attorney or law firm to conduct the Action, either as replacement or supplemental Litigation Counsel, without providing the Funder thirty (30) days' prior written notice and without giving good faith consideration to Funder's response, if any. For the avoidance of doubt, "engage" in the immediately preceding sentence means "execute a retainer agreement or other contract to employ such attorney or law firm."

3.1.5 Funder Participation in Settlement Decision Making: (a) Claimant will immediately notify, or cause Litigation Counsel to notify, the Funder upon receiving a settlement offer, providing Funder with the complete details of the offer in such notice. Claimant will not respond to the settlement offer until after giving good faith consideration to Funder's analysis of the offer, provided that Funder communicates its analysis within five (5) days of receiving notice of the offer; (b) Claimant will not propose any settlement offer without first notifying Funder in writing of the proposed offer, including its complete details, and giving good faith consideration to Funder's analysis, provided that Funder communicates its analysis within five (5) days of receiving the proposed offer.

**4.0 Common Interest and Confidentiality**

4.1 Common Interest: Claimant and Funder agree they share a common legal interest and, to the degree necessary to further their common legal interest, agree to share Common Interest Material. Claimant and Funder agree the material would not be shared if the common legal interest did not exist.

4.2 Non-Disclosure Generally: During the term of this Agreement and for two (2) years following its termination, the recipient of Confidential Information shall not disclose, use, or make available, directly or indirectly, any Confidential Information to anyone, except as needed to perform its obligations under this Agreement or as the disclosing party otherwise authorizes in writing. When disclosing, using, or making Confidential Information available in connection with the performance of its obligations under this Agreement or as permitted by the disclosing party, recipient shall enter into an agreement with such secondary recipients to preserve the confidentiality of the Confidential Information on terms no less restrictive than as set forth in this Agreement. The recipient agrees that neither the execution of this Agreement nor the provision of Confidential Information thereto enables the recipient to use the Confidential Information for any purpose or in any way other than as specified in this Agreement.

4.3 Potentially Enforceable Disclosure Requests: If a party receives a potentially enforceable request for the production of Confidential Information, including without limitation a subpoena or other official process, that party will promptly notify the other party in writing, unless such notice is prohibited by law.

If allowed, such notice shall be given before complying with the request and shall include a copy of the request.

If the request is of the recipient of Confidential Information, and notice to the disclosing party is prohibited by law, the recipient must make a good faith effort to contest the disclosure, if appropriate. The recipient shall also make a good faith effort to obtain an agreement protecting the confidentiality of the Confidential Information prior to disclosing it.

If a party elects to contest the request, no party shall make any disclosure until a final, non-appealable or non-stayed order has been entered compelling such disclosure. The contesting party shall pay its own expenses and control its contest, provided that, if the recipient contests a request when forbidden by law to give the disclosing party notice of the disclosure request, the disclosing party shall reimburse the recipient's reasonable expenses promptly after being notified of them.

**5.0 Funding Terms**

5.1 Conditions to Closing: Prior to Closing, (a) the representations and warranties of the parties remain true in all material respects; (b) there has been no breach of the terms of this Agreement; and (c) Claimant and Litigation Counsel shall have executed a retainer agreement in form and substance reasonably satisfactory to Funder.

5.2 Purchase of the Litigation Proceeds Right: Subject to the terms and conditions of this Agreement, at Closing, Claimant shall sell to Funder, and Funder shall purchase from Claimant, the Litigation Proceeds Right by depositing the Investment Amount in the Trust Account. At Closing, the Funder shall receive the Litigation Proceeds Right Certificate duly executed by Claimant.

5.3 Additional Investment: Funder undertakes no obligation to make any additional investment beyond the Investment Amount. Notwithstanding the foregoing, in the event the Costs exceed the Investment Amount before the Conclusion of the Action, Funder agrees to negotiate in good faith with Claimant and Litigation Counsel regarding the amendment of this Agreement and/or purchase of an additional or modified Litigation Proceeds Right. Funder shall have the absolute right of first refusal prior to the sale of any Litigation Proceed Right to another funder.

5.4 No Commitment for Additional Financing: The Claimant acknowledges and agrees that Funder has not made any representation, undertaking, commitment, or agreement to provide or assist Claimant in obtaining any financing, investment, or other assistance, other than as set forth herein. In addition, Claimant acknowledges and agrees that (i) no statements, whether written or oral, made by Funder on or after the date of this Agreement shall create an obligation, commitment, or agreement to provide or assist Claimant in obtaining any financing or investment; (ii) Claimant shall not rely on any such statement by Funder or its representatives; and (iii) an obligation, commitment, or agreement to provide or assist Claimant in obtaining any financing or investment may only be created by a written agreement, signed by Funder and the Claimant, setting forth the terms and conditions of such financing or investment and stating that the parties intend for such writing to be a binding obligation or agreement.

**6.0 Termination**

6.1 Termination Only for Cause: This Agreement may not be terminated except for cause. Either party may terminate this Agreement for cause if the other party commits a material breach as defined in this Section, with the consequences as specified in this Section. Provisions of this Agreement relating to confidentiality and privilege, conflicts of interest, and forum selection shall survive termination.

6.2 Material Breach by Claimant:

6.2.1 Materiality: The provisions of this Agreement relating (a) to complete and accurate disclosure by Claimant of material information about the Action; (b) to cooperation in conducting the Action until Conclusion of the Action and of non-impairment of the Action; and (c) to the potential Award and any proceeds thereof are the very essence of this Agreement. Any breach by Claimant of those provisions is presumptively material, as is a breach by Claimant of any other provision that directly results in a reduction in the value of the Litigation Proceeds Right. The presumption of materiality may be rebutted by Claimant establishing that such breach did not in fact reduce the value of the Litigation Proceeds Right.

6.2.2 Notwithstanding the foregoing, failure to disclose material information about the Claim that supports the Claim, strengthens the Claim, had it been disclosed when required is not a material breach of the disclosure provisions.

6.2.3 Notice of Material Breach by Claimant: If Funder believes Claimant has materially breached this Agreement it shall promptly notify Claimant in writing who will have thirty (30) days to cure such breach, if capable of cure. A breach involving the failure to disclose material information or the failure to disclose existing claim impairment at contract execution cannot be cured.

6.2.4 Consequences of Material Breach by the Claimant: Subject to subsection 9.2 below, if Claimant commits an material breach without cure, Funder is entitled to an immediate refund of any Unused Investment upon demand in writing, while retaining its Litigation Proceeds Right. Funder shall have no further obligations under this Agreement other than the provisions that explicitly survive the termination of this Agreement. This provision shall not limit Funder's other remedies at law or equity.

6.3 Material Breach by Funder:

6.3.1 Materiality: Funder recognizes its commitments to protect Claimant's privileged information, and its assumption of a duty of good faith and fair dealing are of the essence of this Agreement. A material breach occurs if Funder fails to transfer the Investment Amount at Closing or if a disclosure by Funder directly results in waiver of privilege, if a judge, arbiter, or other third-party dispute resolution mechanism so rules and the waiver of privilege directly reduces the value of the Award or Proceeds. The breach by Funder of any other provision will be deemed material if it directly reduces the value of the Award or Proceeds.

6.3.2 Notice of Material Breach by Funder: If Claimant believes Funder has materially breached this Agreement, Claimant shall promptly notify Funder in writing who will have thirty (30) days to cure such breach, if capable of cure.

6.3.3 Consequences of Material Breach by Funder: Subject to subsection 9.2 below, if Funder commits an incurable breach or fails to timely cure a material breach, Funder's shall surrender any right to recovery of Unused Investment under this Agreement and Funder's recovery under the final provision of the Waterfall Schedule shall be reduced from twenty-five percent (25%) to ten percent (10%). This provision shall not limit any other remedies the Claimant may have in law or equity.

**7.0 Security Interest**

7.1 Trust Account: The Claimant hereby irrevocably instructs, and, if further instructions are needed, will instruct, Litigation Counsel to receive into the Trust Account any Proceeds that the Claimant becomes entitled to receive or that Litigation Counsel receives for the benefit of the Claimant.

8

100

7.2 Security Interest in the Proceeds: To secure its obligation to Funder represented by the Litigation Proceed Right owned by Funder, Claimant hereby grants Funder a security interest in any Proceeds held in the Trust Account or otherwise and any and all property therein, whether such property is in the account now or is after-acquired. Such security interest shall terminate upon Claimant paying Funder the full value of Funder's Litigation Proceeds Right or upon the Conclusion of the Action, if, at the Conclusion of the Action, Claimant is not entitled to receive any Proceeds pursuant to this Agreement.

7.3 No Other Security Interests: Claimant shall not grant a security interest in the Trust Account or the Action to anyone other than Funder without Funder's prior written consent.

**8.0 Miscellaneous**

8.1 Governing Law: This agreement shall be governed by California law.

8.2 Agreement to Arbitrate: Each of the parties hereby agrees that all controversies and disputes which may arise between them concerning any transaction or the construction, performance, or breach of this Agreement, whether entered into prior to, on, or subsequent to the date hereof, shall be determined by mandatory and binding arbitration. Any arbitration shall be held in San Francisco, California and administered by either Judicial Arbitration and Mediation Services ("JAMS") or the American Arbitration Association (the "AAA"), pursuant to the Federal Arbitration Act in accordance with this Agreement and the Commercial Arbitration Rules of JAMS or the AAA, as applicable. Selection of JAMS or the AAA is at the sole discretion of Funder. To the extent that any inconsistency exists between this Agreement and such statutes or rules, this Agreement shall control. Judgment upon the award rendered by the arbitrators may be entered in and enforced by any court having jurisdiction and in accordance with the practice of such court.

8.3 Notices: All notices, consents, waivers and other communications hereunder shall be in writing and shall be deemed to have been duly given when delivered (i) in person, (ii) by facsimile or other electronic means, with affirmative confirmation of receipt, (iii) one business day after being sent, if sent by reputable, nationally recognized overnight courier service or (iv) three (3) business days after being mailed, if sent by registered or certified mail, in each case to the applicable party at the following addresses (or at such other address for a Party as shall be specified by like notice):

If to Claimant:

    Martin A. Tripp
    Bocskai Utca 11/A
    Cece 7013
    Hungary
    Email: mtprotons@protonmail.com

With a copy (which shall not constitute notice) to Litigation Counsel:

    Tiffany & Bosco P.A.
    Camelback Esplanade II, Seventh Floor
    2525 East Camelback Road
    Phoenix, AZ 85106
    Attn: Robert D. Mitchell, Esq.
    Email: rdm@tblaw.com

If to Funder:

    The Funicular Fund, LP
    c/o Cable Car Capital LLC
    1449 Washington Street, #6

        San Francisco, CA 94109
        Attn:  Jacob Ma-Weaver
        Email: jacob@cablecarcapital.com

With a copy (which shall not constitute notice) to:
        Ragghianti Freitas LLP
        1101 Fifth Avenue, Suite 100
        San Rafael, CA 94901
        Attn: Jack G. Martel
        Email:  jmartel@rflawllp.com

8.4 Counterparts: This Agreement may be executed in counterparts, all of which taken together shall constitute one agreement binding on all the parties notwithstanding that all the parties are not signatories to the original or the same counterpart.

8.5 Severability: In case any provision in this Agreement shall be held invalid, illegal or unenforceable in a jurisdiction, such provision shall be modified or deleted, as to the jurisdiction involved, only to the extent necessary to render the same valid, legal and enforceable, and the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby nor shall the validity, legality or enforceability of such provision be affected thereby in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions be consummated as originally contemplated to the fullest extent possible.

8.6 Amendment: This Agreement may only be amended pursuant to a written agreement signed by each of party.

8.7 Entire Agreement: This Agreement and the documents or instruments referred to herein, including any exhibits attached hereto, which exhibits are incorporated herein by reference, embody the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants or undertakings, other than those expressly set forth or referred to herein or the documents or instruments referred to herein or the exhibits and schedules hereto, which collectively supersede all prior agreements and the understandings among the parties with respect to such subject matter.

    {REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS}

IN WITNESS WHEREOF, each party hereto has caused this Agreement to be signed and delivered by its respective duly authorized officer as of the date first above written.

*Claimant*:

_____
Martin A. Tripp

*Funder*:

THE FUNICULAR FUND, LP

By: Cable Car Capital LLC
Its: General Partner

By:_____
Name: Jacob Ma-Weaver
Title: Managing Member

ACCEPTED AND AGREED:

*Litigation Counsel*:

TIFFANY & BOSCO P.A.

By:_____
Name: Robert D. Mitchell
Title: Shareholder

11

EXHIBIT A

# LITIGATION PROCEEDS RIGHT CERTIFICATE

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THEY MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED.

For value received, The Funicular Fund, LP is the holder of a Litigation Proceeds Right in the original principal amount of $150,000.

The transfer, sale, assignment, hypothecation, encumbrance, or alienation of the rights represented by this certificate is restricted by a Litigation Funding Agreement among all the undersigned Claimant and The Funicular Fund, LP, dated as of November 16, 2018. All the terms and provisions of the Litigation Funding Agreement are incorporated by this reference and made a part of this certificate.

CLAIMANT:

_____
Martin A. Tripp

Dated: November 16, 2018

12

104